Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740

Proposed Counsel for Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| SUN GIR INCORPORATED, | Chapter 11 |
| Debtor and Debtor-in-Possession. | Jointly Administered With: |
| | 8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |
| Affects:<br><br>Harshad & Nasir, Incorporated,<br>Senior Classic Leasing, LLC,<br>DFG Restaurants, Incorporated,<br>Second Star Holdings, LLC, and<br>Third Star Investments, LLC | **EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF HARSHAD DHAROD IN SUPPORT THEREOF**<br><br>Hearing Date/Time/Location:<br>Date:  TBD<br>Time:  TBD<br>Location:  Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, California 92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, AND OTHER INTERESTED PARTIES:**

Sun Gir Incorporated ("SGI"), the debtor and debtor-in-possession ("Debtor"), along with its affiliated debtors (collectively, the "Debtors"), hereby submit this *Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. § 363(c): (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief (the "Motion").*

By this Motion, the Debtors seek entry of interim and final orders authorizing the Debtors to use cash collateral in the ordinary course of business pursuant to section 363(c) of the Bankruptcy Code, granting adequate protection to any entity asserting an interest in such cash collateral, and granting related relief.

In support of the Motion, the Debtors submit the following memorandum of points and authorities and the attached declaration of Harshad Dharod (the "Dharod Declaration").

The Debtors believe that a failure to enter an order granting this Motion may result in the immediate inability to fund critical operating expenses necessary to operate the Debtors' business, including payroll, food and inventory purchases, rent, utilities, insurance, and other essential costs. Any interruption in the Debtors' access to cash would disrupt operations across the Debtors' restaurant locations, jeopardize relationships with employees and vendors, risk defaults under franchise and lease agreements, and result in a substantial diminution in the value of the Debtors' estates and harm to creditors.

Accordingly, the Debtors respectfully request that the Court enter interim and final orders:

1. Granting the Motion pursuant to 11 U.S.C. § 363(c);
2. Authorizing the Debtors to use cash collateral in accordance with the Budget attached hereto, subject to permitted variances;

2

3.  Granting adequate protection to any entity asserting an interest in such cash collateral, including replacement liens to the extent applicable;

4.  Scheduling a final hearing on the Motion; and

5.  Granting such other and further relief as the Court deems just and proper.


Dated:  April 7, 2026

*/s/Eric Bensamochan*
ERIC BENSAMOCHAN
Proposed Counsel for Debtor and
Debtor-in-Possession

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

3

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF FACTS

#### A.  Background

Sun Gir Incorporated ("SGI"), the debtor and debtor-in-possession ("Debtor"), together with its affiliated debtors (collectively, the "Debtors"), is the lead debtor in a group of six affiliated chapter 11 debtors that collectively operate a chain of fifty-nine (59) Carl's Jr. restaurant locations in California, consisting of fifty-two (52) locations in Southern California and seven (7) locations in Northern California. The Debtors employ approximately 1,000 employees across their restaurant footprint and rely on continuous operations at each location to generate revenue.

The Debtors' business is substantial and highly cash-intensive. Based on the Debtors' books and records, the Debtors generated approximately $19.9 million in net sales during the first three months of 2026, representing approximately $6 to $7 million in monthly revenue. In order to generate this revenue, the Debtors incur significant ongoing operating expenses, including payroll, food and inventory costs, rent, utilities, royalties, advertising, and other ordinary-course expenses.

Despite generating substantial revenue, the Debtors have recently operated at a loss, with net losses exceeding $2 million during the same three-month period. These operating losses, combined with the Debtors' ongoing obligations, have created immediate liquidity constraints.

#### B.  Bankruptcy Filing

On April 2, 2026 (the "Petition Date"), SGI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). SGI remains in possession of its property and continues to operate and manage its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Also on the Petition Date, the Debtors' affiliated entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in related cases pending before this Court. The Debtors are seeking joint administration of the chapter 11 cases. No trustee, examiner, or official committee has been appointed.

**C. Prepetition Financing and Asserted Security Interests**

The Debtors are parties to certain prepetition loan and security agreements with The Northern Trust Company (the "Lender"), pursuant to which the Lender asserts security interests in substantially all of the Debtors' personal property, including accounts, inventory, equipment, general intangibles, and proceeds thereof.

The Debtors understand that UCC financing statements were prepared with respect to the Debtors, but may not have been filed in all applicable jurisdictions. Accordingly, the Debtors do not concede the validity, priority, extent, or perfection of any liens asserted by the Lender and expressly reserve all rights with respect thereto.

**D. Lease and Franchise Obligations**

The Debtors operate their restaurant locations pursuant to leases, subleases, and ground leases. These agreements require the Debtors to pay base rent, percentage rent tied to gross sales, taxes, common area maintenance charges, and other occupancy-related expenses.

Many locations require significant fixed rent obligations, often in excess of $100,000 annually per location, as well as additional payments tied to revenue, including percentage rent and franchisor-related fees. The Debtors' ability to continue operating depends on maintaining possession of these leased locations.

**E. Defaults Under Franchise and Lease Agreements**

On or about March 23, 2026, the Debtors received multiple written notices of default from Carl's Jr. Restaurants LLC, through counsel, relating to numerous

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

5

restaurant locations operated by the Debtors across both Southern and Northern California.

These notices assert defaults under franchise agreements and related sublease arrangements, including for failure to timely pay rent, royalties, and other required charges, and state that such defaults remain uncured despite prior efforts to resolve these issues.

The notices expressly warn that the Debtors must "immediately take all steps necessary to avoid termination of [their] franchise rights." The potential termination of franchise rights at one or more locations would result in the loss of the Debtors' ability to operate those locations and generate revenue.

These defaults, and the risk of further enforcement actions by the franchisor or landlords, underscore the Debtors' urgent need for liquidity and continued access to cash collateral to stabilize operations, address defaults, and preserve the value of their business.

**F.  Insurance Obligations**

The Debtors maintain insurance coverage necessary to operate their business, including general liability, property, and workers' compensation coverage.

The Debtors incur approximately $33,959 per month in insurance premiums, with the next payment due on or about April 15, 2026. Continued payment of these premiums is necessary to avoid any lapse in coverage and to protect the Debtors' operations, employees, and customers.

**G.  Need for Immediate Use of Cash Collateral**

The Debtors' business requires continuous access to cash to fund payroll, purchase inventory, pay rent and utilities, maintain insurance, and satisfy franchise-related obligations. The Debtors' expenses total millions of dollars on a monthly basis and must be paid in the ordinary course to maintain operations.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

As of April 6, 2026, the Debtors had approximately $900,000 in available cash across their accounts. These funds are maintained across multiple entities and accounts as part of the Debtors' centralized cash management system and are used to fund operations across approximately fifty-nine (59) restaurant locations.

The Debtors' available cash is insufficient to meet their ongoing obligations. As of April 2026, the Debtors have approximately $3.54 million in outstanding obligations, including amounts owed to vendors, landlords, and other operational creditors.

These obligations include, among other things, approximately $695,978 owed to McLane Company, Inc., approximately $54,015 owed to Freund Bakery, approximately $1.7 million in accounts payable and accrued expenses, and approximately $771,606 in rent and related occupancy costs.

The Debtors' available cash is insufficient to meet these obligations. Absent immediate authority to use cash collateral, the Debtors will be unable to meet these obligations, which would result in immediate disruption to operations across the Debtors' restaurant locations, loss of revenue, and substantial diminution of the value of the Debtors' estates.

II. **PROPOSED USE OF CASH COLLATERAL AND DISCLOSURES REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001**

**A. Purpose of Use of Cash Collateral**

The Debtors seek authority to use cash collateral to fund ordinary-course operating expenses necessary to maintain their business and preserve going-concern value. The Debtors' operations require continuous funding of payroll, food and inventory purchases, rent, utilities, insurance, royalties, advertising, and other essential expenses. Without access to cash collateral, the Debtors will be unable to continue operating their restaurant locations.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**The Bensamochan Law Firm**
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**B. Budget**

The Debtors have prepared a consolidated budget (the "Budget") reflecting anticipated receipts and disbursements across all restaurant locations. The Budget projects that the Debtors will generate approximately $6 to $7 million in monthly revenue and incur substantial ongoing operating expenses necessary to maintain operations.

A true and correct copy of the Budget is attached to the Dharod Declaration as Exhibit 1.

The Debtors seek authority to operate in accordance with the Budget, subject to a permitted variance of up to 10% on an aggregate basis, to allow for ordinary-course fluctuations in operations.

**C. Use of Cash Collateral is Necessary and Appropriate**

The Budget demonstrates that the Debtors' use of cash collateral will be limited to necessary and ordinary-course operating expenses required to preserve the value of the Debtors' business. The Debtors will not use cash collateral for any extraordinary or non-ordinary-course purposes.

The Debtors' continued operations will preserve jobs, maintain relationships with vendors and customers, and maximize the value of the Debtors' estates for the benefit of all creditors.

**D. Reservation of Rights**

The Debtors reserve all rights with respect to the validity, priority, extent, and perfection of any liens asserted by The Northern Trust Company or any other party. Nothing in this Motion or any order entered in connection herewith shall constitute an admission or stipulation regarding the existence, validity, priority, or perfection of any such liens.

**E. Adequate Protection**

To the extent that any entity is determined to hold a valid interest in the Debtors' cash collateral, the Debtors propose to provide adequate protection in the form of:

- Replacement liens on postpetition assets and proceeds; and

- Such liens shall be granted to the same extent, validity, and priority as existed as of the petition date, if any.

The Debtors submit that this proposed adequate protection is sufficient to protect any alleged interest in cash collateral, particularly where the Debtors continue to operate and generate revenue.

**F. Rule 4001 Disclosures**

Pursuant to Federal Rule of Bankruptcy Procedure 4001(b), the Debtors disclose that:

1. The Debtors do not concede that any entity holds a valid or perfected security interest in cash collateral;

2. The Debtors seek authority to use cash collateral solely for ordinary-course operating expenses as set forth in the Budget;

3. The Debtors propose to operate within the Budget, subject to a 10% variance; and

4. The Debtors propose to provide adequate protection as described herein, to the extent any such protection is required.

**III. USE OF CASH COLLATERAL SHOULD BE AUTHORIZED**

**A. Legal Standard**

Section 363(c)(2) of the Bankruptcy Code provides that a debtor-in-possession may not use cash collateral unless (i) each entity with an interest in such collateral consents, or (ii) the court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2).

The court may authorize the use of cash collateral where the interests of any entity asserting an interest in such collateral are adequately protected. 11

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

U.S.C. § 363(e). Adequate protection is required only to the extent that the use of such collateral results in a decline in the value of the secured creditor's interest. See *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988).

Adequate protection may be provided by, among other things, replacement liens or other relief that results in the indubitable equivalent of the secured creditor's interest. 11 U.S.C. § 361.

Courts routinely authorize the use of cash collateral where such use is necessary to preserve the debtor's operations and the value of the estate. See, e.g., *In re O'Connor,* 808 F.2d 1393 (10th Cir. 1987); In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982).

Bankruptcy courts have broad discretion to authorize the use of cash collateral where the debtor demonstrates a sound business justification and adequate protection. See, e.g., *In re Delaney-Morin*, 304 B.R. 365 (B.A.P. 9th Cir. 2003).

**B. The Debtors' Proposed Use of Cash Collateral is Appropriate**

The Debtors seek to use cash collateral solely to fund ordinary-course operating expenses necessary to maintain their business and preserve value. As set forth in the Budget, the Debtors' use of cash collateral is limited to essential expenditures, including payroll, inventory, rent, utilities, insurance, royalties, and other necessary expenses.

The Debtors' continued operations will preserve jobs, maintain relationships with vendors and customers, and maximize the value of the Debtors' estates. Absent such use, the Debtors' business would immediately cease operations, resulting in a substantial loss of value.

**C. Any Alleged Interest in Cash Collateral is Adequately Protected**

To the extent any entity is determined to hold a valid interest in the Debtors' cash collateral, the Debtors propose to provide adequate protection

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

10

through replacement liens on postpetition assets and proceeds, to the same extent, validity, and priority as existed as of the petition date, if any.

The Debtors' ongoing operations will preserve and potentially enhance the value of their business. Accordingly, any alleged secured party will not suffer a decline in the value of its collateral as a result of the Debtors' proposed use of cash collateral.

### D. Immediate and Irreparable Harm

The Debtors' financial position reflects an immediate liquidity shortfall, with approximately $900,000 in available cash compared to more than $3.5 million in outstanding obligations. Absent immediate authority to use cash collateral, the Debtors will be unable to fund critical operating expenses necessary to sustain their business. The Debtors generate approximately $6 to $7 million in monthly revenue but must continuously fund payroll, inventory, rent, utilities, insurance, royalties, and other essential costs.

If the Debtors are unable to access cash collateral:

- payroll for approximately 1,000 employees will not be met;
- the Debtors will be unable to purchase food and inventory;
- lease obligations will go unpaid, risking loss of restaurant locations;
- insurance coverage may lapse; and
- defaults under franchise and lease agreements may escalate, including potential termination of franchise rights.

Any such disruption would result in the immediate cessation of operations at one or more locations, loss of revenue, and a substantial diminution in the value of the Debtors' estates.

### IV.   NOTICE

The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee; (ii) The Northern Trust Company, as the entity asserting an interest in cash collateral; (iii) any known secured creditors; (iv) the Debtors' 20

11

largest unsecured creditors; and (v) such other parties as may be required pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Central District of California.

The Debtors submit that, in light of the nature of the relief requested and the exigent circumstances, no further notice is required.

## V.   CONCLUSION

The Debtors' ability to continue operating their business depends on immediate access to cash. The Debtors operate a substantial, multi-location restaurant business that generates millions of dollars in monthly revenue but requires continuous funding of operating expenses to sustain those operations. Absent access to cash collateral, the Debtors will be unable to meet payroll, purchase inventory, satisfy lease and franchise obligations, maintain insurance coverage, or continue operating their restaurant locations.

Accordingly, the Debtors respectfully request that the Court enter interim and final orders:

1. Authorizing the Debtors to use cash collateral pursuant to 11 U.S.C. § 363(c);

2. Authorizing the use of cash collateral in accordance with the Budget, subject to permitted variances;

3. Granting adequate protection as set forth herein;

4. Scheduling a final hearing on the Motion; and

5. Granting such other and further relief as the Court deems just and proper.

Dated:  April 7, 2026

/s/Eric Bensamochan
ERIC BENSAMOCHAN
Proposed Counsel for Debtor and
Debtor-in-Possession

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

12

**DECLARATION OF HARSHAD DHAROD**

I, Harshad Dharod, declare as follows:

**I.     INTRODUCTION**

1.    I am an officer of Sun Gir, Incorporated, the debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case ("Case"). I am also an officer, manager, or authorized representative of each of the affiliated debtors in these jointly administered cases (collectively, the "Debtors").

2.    I am familiar with the Debtors' day-to-day operations, business affairs, and financial condition.

3.    I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto.

4.    I am submitting this Declaration in support of the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the Debtors' first day motions (the "First Day Motions").

**II.    THE DEBTORS AND THEIR BUSINESS**

5.    On April 2, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.    The Debtors operate a multi-location quick-service restaurant business consisting of approximately fifty-nine (59) Carl's Jr. franchise locations throughout Southern California pursuant to franchise agreements with CKE Restaurants Holdings, Inc. Many of the Debtors' locations are operated from premises subleased from third-party landlords.

7.    The Debtors conduct their operations through multiple affiliated entities, including:

- Sun Gir, Incorporated ("SGI")

13

- Harshad & Nasir, Incorporated

- Senior Classic Leasing, LLC

- DFG Restaurants, Incorporated ("DFG")

- Second Star Holdings, LLC

- Third Star Investments, LLC

8. SGI and DFG are the entities responsible for employing and paying the Debtors' workforce and are referred to herein as the "Payroll Debtors."

9. Each Debtor entity owns and operates one or more restaurant locations, and together the Debtors operate an integrated enterprise with shared management, centralized financial oversight, and coordinated administrative functions.

10. The Debtors employ approximately 1,000 employees across all locations, including restaurant staff, managers, and administrative personnel. These employees are essential to maintaining the Debtors' operations.

### III. EVENTS LEADING TO THE FILING

11. The Debtors commenced these chapter 11 cases on an emergency basis to preserve operations, stabilize their business, and maximize value for creditors and other stakeholders. Absent immediate relief, the Debtors faced the risk of operational disruption that would have adversely affected employees, vendors, and ongoing business operations.

12. The Debtors began experiencing financial distress approximately two years prior to the Petition Date. This distress was driven by a significant increase in labor costs following changes to California law establishing a $20 per hour minimum wage for fast food workers, which materially increased operating expenses.

13. At the same time, the Debtors experienced declining sales, which the Debtors attribute in part to reduced marketing effectiveness and lack of innovation at the franchisor level, as well as increased competition in the

14

quick-service restaurant market. Turnover at the franchisor's executive level further contributed to operational challenges.

14. As a result of these combined factors—rising costs and declining revenue—the Debtors' financial condition deteriorated, ultimately leading to the commencement of these chapter 11 cases.

## IV. CASH MANAGEMENT SYSTEM

15. The Debtors maintain a cash management system (the "Cash Management System") consisting of multiple bank accounts, including general operating accounts, depository accounts, and payroll accounts, maintained by the Debtor entities in the ordinary course of business.

16. In the ordinary course of operations, the Debtors' restaurant locations generate revenue through cash and credit card transactions processed through point-of-sale systems. Cash receipts are deposited into the Debtors' depository accounts, and credit card and electronic payments are processed through systems provided by Expient and Heartland and deposited into the Debtors' accounts.

17. Certain of the Debtors' accounts operate within a zero-balance account ("ZBA") structure, whereby funds deposited into depository accounts are automatically swept on a daily basis into centralized operating accounts. These centralized accounts are used to fund payroll, pay vendors, and satisfy other operating expenses across the Debtors' businesses.

18. The Debtors' operations involve a high volume of daily transactions across approximately fifty-nine (59) restaurant locations. These transactions are processed and cleared on a continuous basis through the Cash Management System.

19. This Cash Management System enables the Debtors to efficiently manage liquidity, fund payroll, pay vendors, and maintain ongoing operations across multiple entities and locations.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

15

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

20. Any disruption to the Cash Management System would significantly impair the Debtors' ability to collect revenues, meet payroll, and satisfy vendor obligations, and would result in immediate and irreparable harm to the Debtors' estates.

## V.   **EMPLOYEES AND PAYROLL**

21. The Debtors rely on their employees to operate their restaurants and maintain customer service and revenue generation.

22. Payroll is processed through centralized systems across the Debtors' entities, including designated payroll accounts.

23. The Debtors process payroll on a bi-weekly basis. The Debtors' most recent payroll prior to the Petition Date was fully funded and paid on March 30, 2026. The Debtors' next scheduled payroll is April 13, 2026, which covers the pay period beginning at 12:01 a.m. on March 24, 2026 and ending at 12:01 a.m. on April 7, 2026. Because this pay period spans the Petition Date, a substantial portion of the April 13 payroll relates to work performed prior to April 2, 2026. Specifically, nine (9) of the fourteen (14) days in the pay period occurred prior to the Petition Date, and approximately sixty-four percent (64%) of such payroll constitutes prepetition wages.

24. The Payroll Debtors employ and pay the Debtors' workforce, all of whom continue to provide services in the ordinary course of business. SGI employs approximately 832 hourly employees whose schedules vary based on operational needs, and DFG employs approximately 57 employees, including approximately 49 hourly employees and 8 salaried employees. No insiders are included in the Payroll Debtors' payroll.

25. The Debtors are in the process of finalizing payroll calculations for the April 13, 2026 payroll. Because these chapter 11 cases were filed on an expedited basis, the payroll amounts described in the First Day Motions are based on good-faith estimates derived from the Debtors' books and records

16

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

and prior payroll data. To the extent there are any material changes to such amounts once payroll is finalized, the Debtors will promptly notify the Court.

26.  In the ordinary course of business, the Debtors also provide employee benefits, including health insurance provided through Cal Choice, Humana, and Covered California, with aggregate monthly premiums of approximately $22,319.88. The Debtors pay premiums and make contributions in connection with such benefit plans on behalf of their employees. Maintaining these benefits is critical to employee welfare and retention. Any interruption in employee health coverage would impose significant hardship on employees and their families and would likely result in additional employee attrition, which would impair the Debtors' operations. A portion of these amounts represent withholdings held in trust.

27.  Employees rely on regular payroll and benefits to meet ordinary living expenses, including housing, food, and healthcare costs. In my business judgment, failure to pay wages and maintain benefits in the ordinary course would result in immediate employee attrition and the inability to operate the Debtors' restaurant locations.

28.  In the ordinary course of business, the Debtors utilize a centralized payroll structure across affiliated entities. For the Debtors' Southern California operations, hourly employees, including cooks, cashiers, and shift leaders are employed through SGI, while general managers and district managers are employed through DFG.

29.  Certain Debtor entities do not directly employ personnel but operate restaurant locations supported by employees of affiliated entities.

30.  Failure to pay employees in the ordinary course would result in employee attrition, disruption of operations, and the Debtors' inability to operate their restaurant locations.

VI.  **VENDORS AND OPERATIONS**

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

31. The Debtors rely on numerous vendors to operate their business, including food suppliers, franchise licensors, maintenance providers, and point-of-sale and payment processing providers.

32. The Debtors rely on key vendors to supply food, beverages, and other essential inputs necessary to operate their restaurant locations, including McLane Company, Inc. ("McLane") as the Debtors' primary distributor of substantially all food and beverage inventory, and Freund Bakery as a supplier of bakery products.

33. The Debtors procure substantially all food and beverage inventory through McLane pursuant to a franchisor-mandated distribution system and do not maintain a separately negotiated agreement with McLane.

34. These vendors typically deliver inventory to the Debtors' restaurant locations two to three times per week, depending on store volume. The goods provided by these vendors are essential to daily operations, and there are limited, if any, practical alternative suppliers for many of these products.

35. McLane has advised the Debtors that, absent payment of outstanding amounts, it may impose materially more burdensome payment terms, including requiring additional weekly payments of approximately $25,000 until a reserve of approximately $550,000 is established, and may shorten payment terms significantly. The Debtors cannot operate their restaurant locations without continued deliveries from McLane.

36. The Debtors' current payment terms with McLane are net 14.

37. The Debtors incur approximately $359,000 per week in purchases from McLane, reflecting the Debtors' substantial reliance on McLane for ongoing operations.

38. If payments are not made in the ordinary course, vendors are likely to cease deliveries within a short period of time, which would immediately disrupt the

18

Debtors' operations. Even a brief interruption in vendor deliveries would force the Debtors to curtail or cease operations at multiple locations.

39. The Debtors rely on point-of-sale and payment processing systems provided by Expient and Heartland to process customer transactions. These systems are essential to the Debtors' operations, and the Debtors would be unable to operate their restaurant locations without them.

40. The Debtors' operations are highly dependent on continuous access to employees, vendors, and operating systems. If payroll is not paid or vendors cease delivering goods, the Debtors would be forced to shut down restaurant operations within a matter of days.

## VII. UTILITIES

41. The Debtors depend on utility services, including electricity, gas, water, and trash removal, to operate their restaurant locations. These services are necessary to prepare and serve food, maintain sanitation and health compliance, preserve inventory, and continue generating revenue.

42. Based on the Debtors' books and records reflected in the Debtors' utility schedule, the Debtors' average monthly utility expense is approximately $411,098.96, consisting of approximately $41,493.06 for water, $82,566.15 for gas, $234,093.96 for electricity, and $52,945.79 for trash removal.

43. If utility service is interrupted at one or more restaurant locations, the Debtors' operations would be disrupted immediately, which would materially harm the Debtors' business and estates. In my business judgment, uninterrupted utility service is essential to the Debtors' continued operations.

44. The Debtors propose to provide adequate assurance of payment to utility providers through the timely payment of all undisputed postpetition utility charges in the ordinary course of business. In the event the Debtors fail to timely pay any undisputed postpetition utility charge, the Debtors shall have ten (10) days from the due date reflected on the applicable billing statement

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

to cure such nonpayment. Pending resolution of any timely request for additional adequate assurance, the applicable utility provider shall not alter, refuse, or discontinue service to the Debtors.

45. In my business judgment, the Debtors' proposed adequate assurance procedures are reasonable under the circumstances. The Debtors are continuing to operate their restaurant business, the Debtors require uninterrupted utility services to preserve operations and value, and the Debtors' proposed procedures appropriately balance the Debtors' need to preserve liquidity during the early stages of these chapter 11 cases with utility providers' interest in protection against an unreasonable risk of nonpayment.

## VIII. NEED FOR FIRST DAY RELIEF

46. The First Day Motions are necessary to allow the Debtors to continue operating their business without interruption.

47. The requested relief will enable the Debtors to:

- maintain payroll and employee benefits;
- continue relationships with vendors;
- preserve their cash management system; and
- maintain essential services and operations.

48. Without the requested relief, the Debtors would face immediate and irreparable harm, including disruption of operations, loss of employees, and significant diminution in the value of the Debtors' estates.

49. The Debtors do not currently have access to debtor-in-possession financing or any other alternative source of liquidity. As a result, the Debtors' ability to continue operating their business is dependent on immediate access to cash collateral.

## IX. CASH COLLATERAL AND NEED FOR IMMEDIATE USE

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

50. I am informed and believe that the Debtors' cash on hand and incoming revenues may constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code, to the extent any entity is determined to hold a valid interest therein. The Debtors require immediate authority to use such cash to continue operating their business in the ordinary course.

51. The Debtors operate a large, multi-location restaurant business that generates approximately $6 to $7 million in monthly revenue. In order to generate this revenue, the Debtors must continuously fund substantial operating expenses, including payroll, food and inventory purchases, rent, utilities, royalties, advertising, and other ordinary-course expenses.

52. Based on the Debtors' books and records, the Debtors generated approximately $19.9 million in net sales during the first three months of 2026, but have operated at a loss during that period, with net losses exceeding $2 million. As a result, the Debtors face immediate liquidity constraints and do not have sufficient unrestricted cash to operate their business without access to cash collateral.

53. Based on my review of the Debtors' books and records, as of April 6, 2026, the Debtors had approximately $900,000 in available cash across their accounts. As of the same time, the Debtors had approximately $3.54 million in outstanding obligations, including amounts owed to vendors, landlords, and other operational creditors. These obligations include approximately $695,978 owed to McLane Company, Inc., approximately $54,015 owed to Freund Bakery, approximately $1.7 million in accounts payable and accrued expenses, and approximately $771,606 in rent and related occupancy costs. These amounts significantly exceed the Debtors' available cash on hand.

54. Absent immediate authority to use cash collateral, the Debtors will be forced to curtail or cease operations within days.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

55.   Continued operation of the Debtors' business as a going concern will preserve value for creditors and other stakeholders, whereas any interruption in operations would result in a rapid and significant diminution of value.

56.   The Debtors' operations are highly cash-intensive and require daily expenditures across approximately fifty-nine (59) restaurant locations. The Debtors must purchase food and supplies on a continual basis, meet payroll obligations for approximately 1,000 employees, and satisfy ongoing rent and utility obligations in order to keep their locations open and operating.

57.   The Debtors also incur approximately $33,959 per month in insurance premiums necessary to maintain coverage for their operations, with the next payment due on or about April 15, 2026. Failure to maintain insurance coverage would expose the Debtors to significant operational and financial risk and could result in the inability to continue operating their business.

58.   In addition, as described above, the Debtors have received multiple notices of default from the franchisor relating to various restaurant locations. These notices assert defaults under franchise agreements and sublease arrangements and warn of potential termination of franchise rights if such defaults are not addressed. The Debtors require access to cash collateral to stabilize operations and address these defaults.

59.   Without immediate authority to use cash collateral, the Debtors will be unable to fund critical operating expenses necessary to continue their business. Specifically, the Debtors would be unable to meet payroll, purchase food and inventory, pay rent and utilities, maintain insurance coverage, or satisfy franchise-related obligations.

60.   Any interruption in these payments would result in immediate disruption to operations, closure of restaurant locations, loss of revenue, and substantial diminution of the value of the Debtors' estates.

22

61. In my business judgment, the Debtors' continued operation will preserve the value of their business and maximize value for creditors. To the extent any entity is determined to hold a valid interest in cash collateral, such entity will be adequately protected because the Debtors' operations will maintain or enhance the value of the business.

62. The Debtors will use cash collateral solely in the ordinary course of business and in accordance with their business judgment to fund necessary operating expenses.

## X.    CONCLUSION

63. The relief requested in the First Day Motions is in the best interests of the Debtors, their estates, creditors, and all parties in interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th day of April, 2026, at La Palma, CA.

_____
Harshad Dharod

23

# EXHIBIT "1"

**FRIENDLY FRANCHISEES CORPORATION**
**CJ ALL**
For the Twelve Months Ending Thursday, December 31, 2026

| | 1/31/2026 | % | 2/28/2026 | % | 3/31/2026 | % | 4/30/2026 | % | 5/31/2026 | % | 6/30/2026 | % | 7/31/2026 | % | 8/31/2026 | % | 9/30/2026 | % | 10/31/2026 | % | 11/30/2026 | % | 12/31/2026 | % | Total | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Full Retail Sales (In Store) | 6,945,834.49 | 105.8% | 6,497,698.18 | 106.2% | 7,026,759.65 | 103.4% | 6,881,162.06 | 104.2% | 7,128,872.66 | 104.1% | 6,855,697.51 | 104.0% | 6,881,202.94 | 103.9% | 6,858,501.23 | 103.8% | 6,555,860.72 | 103.9% | 6,971,351.69 | 104.1% | 6,785,324.45 | 104.0% | 7,191,946.52 | 103.9% | 82,580,212.10 | 104.3% |
| Full Retail Sales (Online Sales) | 714,569.31 | 10.9% | 651,740.42 | 10.6% | 794,678.30 | 11.7% | 701,572.13 | 10.6% | 731,123.58 | 10.7% | 700,441.38 | 10.6% | 707,142.32 | 10.7% | 723,220.10 | 10.9% | 675,219.16 | 10.7% | 712,915.91 | 10.6% | 705,570.38 | 10.8% | 751,215.64 | 10.9% | 8,569,408.63 | 10.8% |
| Less Sales Discounts (In Store) | (857,780.62) | (13.1%) | (809,529.57) | (13.2%) | (829,847.10) | (12.2%) | (851,263.79) | (12.9%) | (879,733.64) | (12.8%) | (847,444.84) | (12.9%) | (847,118.68) | (12.8%) | (846,204.05) | (12.8%) | (804,808.78) | (12.8%) | (860,542.94) | (12.8%) | (840,751.50) | (12.9%) | (887,114.64) | (12.8%) | ############# | (12.8%) |
| Less Sales Discounts (Online Sales) | (238,573.03) | (3.6%) | (219,079.50) | (3.6%) | (196,055.71) | (2.9%) | (125,908.57) | (1.9%) | (129,498.67) | (1.9%) | (119,347.37) | (1.8%) | (119,289.15) | (1.8%) | (127,033.54) | (1.9%) | (117,393.30) | (1.9%) | (124,327.97) | (1.9%) | (124,561.53) | (1.9%) | (135,656.95) | (2.0%) | (1,776,725.29) | (2.2%) |
| Net Sales | 6,564,050.15 | 100.0% | 6,120,829.53 | 100.0% | 6,795,535.14 | 100.0% | 6,605,561.83 | 100.0% | 6,850,763.93 | 100.0% | 6,589,346.68 | 100.0% | 6,621,937.43 | 100.0% | 6,608,483.74 | 100.0% | 6,308,787.80 | 100.0% | 6,699,396.69 | 100.0% | 6,525,581.80 | 100.0% | 6,920,390.57 | 100.0% | 79,210,665.29 | 100.0% |
| **Direct Cost of Sales** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Ideal Food Cost | 1,376,829.52 | 21.0% | 1,261,560.58 | 20.6% | 1,373,434.49 | 20.2% | 1,332,915.65 | 20.2% | 1,382,396.60 | 20.2% | 1,329,627.00 | 20.2% | 1,336,336.85 | 20.2% | 1,333,876.76 | 20.2% | 1,272,771.49 | 20.2% | 1,316,564.42 | 20.2% | 1,396,558.10 | 20.2% | 16,064,359.95 | 20.3% |
| Less Food Variance | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Food | 1,376,829.52 | 21.0% | 1,261,560.58 | 20.6% | 1,373,434.49 | 20.2% | 1,332,915.65 | 20.2% | 1,382,396.60 | 20.2% | 1,329,627.00 | 20.2% | 1,336,336.85 | 20.2% | 1,333,876.76 | 20.2% | 1,272,771.49 | 20.2% | 1,316,564.42 | 20.2% | 1,396,558.10 | 20.2% | 16,064,359.95 | 20.3% |
| Paper (Including Newspaper & Kids Meals) | 102,005.92 | 1.6% | 89,568.57 | 1.5% | 92,639.93 | 1.4% | 89,396.76 | 1.4% | 92,541.62 | 1.4% | 89,075.64 | 1.4% | 89,631.05 | 1.4% | 89,434.80 | 1.4% | 85,160.25 | 1.3% | 90,475.11 | 1.4% | 88,008.53 | 1.3% | 93,411.74 | 1.4% | 347,271.48 | 1.4% |
| Operating Supplies (Excl New Prod) | 31,199.32 | 0.5% | 26,462.89 | 0.4% | 29,371.72 | 0.4% | 28,963.43 | 0.4% | 29,818.17 | 0.4% | 28,777.04 | 0.4% | 29,018.86 | 0.4% | 28,946.31 | 0.4% | 27,433.27 | 0.4% | 29,188.37 | 0.4% | 28,247.87 | 0.4% | 29,844.23 | 0.4% | 347,271.48 | 0.4% |
| Uniforms & Laundry | 574.08 | 0.0% | 534.56 | 0.0% | 593.55 | 0.0% | 448.66 | 0.0% | 469.82 | 0.0% | 458.84 | 0.0% | 459.05 | 0.0% | 446.82 | 0.0% | 424.25 | 0.0% | 458.32 | 0.0% | 453.09 | 0.0% | 486.28 | 0.0% | 5,807.32 | 0.0% |
| Ideal Commissary | 1,510,608.85 | 23.0% | 1,378,126.62 | 22.5% | 1,496,039.69 | 22.0% | 1,451,724.50 | 22.0% | 1,505,226.21 | 22.0% | 1,447,938.52 | 22.0% | 1,455,445.81 | 22.0% | 1,452,704.69 | 22.0% | 1,385,789.26 | 22.0% | 1,471,610.29 | 22.0% | 1,433,273.91 | 22.0% | 1,520,300.35 | 22.0% | 17,508,788.70 | 22.1% |
| Less Commissary Variance | 0.01 | 0.0% | 0.02 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.03 | 0.0% |
| Total Commissary | 1,510,608.84 | 23.0% | 1,378,126.60 | 22.5% | 1,496,039.69 | 22.0% | 1,451,724.50 | 22.0% | 1,505,226.21 | 22.0% | 1,447,938.52 | 22.0% | 1,455,445.81 | 22.0% | 1,452,704.69 | 22.0% | 1,385,789.26 | 22.0% | 1,471,610.29 | 22.0% | 1,433,273.91 | 22.0% | 1,520,300.35 | 22.0% | 17,508,788.67 | 22.1% |
| **Labor & Benefits** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Lead/Counter Person | 1,070,631.13 | 16.3% | 985,908.19 | 16.1% | 1,451,055.00 | 21.4% | 1,051,844.14 | 15.9% | 1,088,231.36 | 15.9% | 1,051,631.23 | 16.0% | 1,080,057.72 | 16.3% | 1,602,498.85 | 24.2% | 1,038,856.44 | 16.5% | 1,080,934.40 | 16.1% | 1,046,545.05 | 16.0% | 1,038,864.53 | 15.0% | 13,587,058.04 | 17.2% |
| Lead/Counter Person OT | 17,001.23 | 0.3% | 15,509.16 | 0.3% | 21,422.25 | 0.3% | 7,827.60 | 0.1% | 8,092.10 | 0.1% | 7,824.39 | 0.1% | 8,039.30 | 0.1% | 11,926.20 | 0.2% | 7,722.80 | 0.1% | 8,036.64 | 0.1% | 7,776.33 | 0.1% | 8,087.55 | 0.1% | 129,265.55 | 0.2% |
| Shift Supervisor /Asst Mgr/Night Mgr | 432,941.87 | 6.6% | 401,379.51 | 6.6% | 586,788.01 | 8.6% | 420,664.00 | 6.4% | 435,202.23 | 6.4% | 420,575.23 | 6.4% | 431,951.21 | 6.5% | 640,888.92 | 9.7% | 415,451.68 | 6.6% | 432,281.34 | 6.5% | 418,518.38 | 6.4% | 435,351.99 | 6.3% | 5,471,994.37 | 6.9% |
| Shift Supervisor /Asst Mgr/Night Mgr OT | 20,652.92 | 0.3% | 18,835.48 | 0.3% | 27,256.01 | 0.4% | 10,006.30 | 0.2% | 10,363.07 | 0.2% | 10,007.02 | 0.2% | 10,271.88 | 0.2% | 15,243.51 | 0.2% | 9,896.33 | 0.2% | 10,295.64 | 0.2% | 9,975.76 | 0.2% | 10,379.81 | 0.1% | 163,183.73 | 0.2% |
| Manager's Salary | 228,212.86 | 3.5% | 208,208.07 | 3.4% | 307,392.89 | 4.5% | 235,985.29 | 3.6% | 244,172.17 | 3.6% | 235,943.48 | 3.6% | 242,308.80 | 3.7% | 359,524.10 | 5.4% | 233,101.27 | 3.7% | 242,539.29 | 3.6% | 234,839.86 | 3.6% | 244,293.68 | 3.5% | 3,016,521.76 | 3.8% |
| Manager's OT | 29,860.26 | 0.5% | 27,243.39 | 0.4% | 38,081.99 | 0.6% | 19,303.28 | 0.3% | 19,954.59 | 0.3% | 19,295.12 | 0.3% | 19,825.46 | 0.3% | 29,410.69 | 0.4% | 19,043.76 | 0.3% | 19,817.66 | 0.3% | 19,175.23 | 0.3% | 19,942.35 | 0.3% | 280,953.78 | 0.4% |
| Sick/Vacation/Holiday | 100,381.82 | 1.5% | 25,735.93 | 0.4% | 35,167.88 | 0.5% | 23,207.39 | 0.4% | 23,969.47 | 0.3% | 23,192.21 | 0.4% | 23,840.91 | 0.4% | 35,361.49 | 0.5% | 22,868.46 | 0.4% | 23,800.95 | 0.4% | 23,014.29 | 0.4% | 88,990.31 | 1.3% | 449,531.11 | 0.6% |
| Labor Matrix | 1,792,461.11 | 27.3% | 1,637,836.40 | 26.8% | 2,404,229.55 | 35.4% | 1,720,347.95 | 26.0% | 1,779,548.17 | 26.0% | 1,720,022.19 | 26.1% | 1,767,690.22 | 26.7% | 2,646,319.98 | 40.0% | 1,700,460.95 | 27.0% | 1,768,381.89 | 26.4% | 1,711,677.41 | 26.2% | 1,779,480.36 | 25.7% | 22,428,456.18 | 28.3% |
| Less Labor Variance | (107,220.98) | (1.6%) | (44,983.33) | (0.7%) | (62,934.48) | (0.9%) | (48,490.05) | (0.7%) | (50,436.82) | (0.7%) | (48,446.49) | (0.7%) | (48,605.06) | (0.7%) | (48,533.78) | (0.7%) | (46,479.79) | (0.7%) | (49,324.03) | (0.7%) | (48,167.49) | (0.7%) | (66,429.86) | (1.0%) | (670,052.16) | (0.8%) |
| Total Actual Direct Labor | 1,899,682.09 | 28.9% | 1,682,819.73 | 27.5% | 2,467,164.03 | 36.3% | 1,768,838.00 | 26.8% | 1,829,984.99 | 26.7% | 1,768,468.68 | 26.8% | 1,816,295.28 | 27.4% | 2,694,853.76 | 40.8% | 1,746,940.74 | 27.7% | 1,817,705.92 | 27.1% | 1,759,844.90 | 27.0% | 1,845,910.22 | 26.7% | 23,098,508.34 | 29.2% |
| Manager's Bonus | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Workers' Compensation Ins. Premium etc | 163,319.96 | 2.5% | 163,319.96 | 2.7% | 163,319.96 | 2.4% | 163,319.78 | 2.5% | 163,319.78 | 2.4% | 163,319.78 | 2.5% | 163,319.78 | 2.5% | 163,319.78 | 2.5% | 163,319.78 | 2.6% | 163,319.78 | 2.4% | 163,319.78 | 2.5% | 163,319.78 | 2.4% | 1,959,837.90 | 2.5% |
| Payroll Taxes | 252,677.10 | 3.8% | 161,216.86 | 2.6% | 221,194.58 | 3.3% | 143,443.80 | 2.2% | 148,420.71 | 2.2% | 143,406.80 | 2.2% | 147,079.28 | 2.2% | 217,566.16 | 3.3% | 141,670.49 | 2.2% | 147,460.61 | 2.2% | 142,743.77 | 2.2% | 154,528.28 | 2.2% | 2,021,408.44 | 2.6% |
| Employees Benefits/(Award & Insurance) | 10,374.28 | 0.2% | 17,569.08 | 0.3% | 9,917.69 | 0.1% | 18,568.73 | 0.3% | 10,687.43 | 0.2% | 24,576.79 | 0.4% | 16,615.87 | 0.3% | 16,631.27 | 0.3% | 12,783.28 | 0.2% | 15,739.59 | 0.2% | 15,271.54 | 0.2% | 16,860.21 | 0.2% | 185,595.76 | 0.2% |
| Total Labor & Benefits | 2,326,053.43 | 35.4% | 2,024,925.63 | 33.1% | 2,861,596.26 | 42.1% | 2,094,170.31 | 31.7% | 2,152,412.91 | 31.4% | 2,099,772.05 | 31.9% | 2,143,310.21 | 32.4% | 3,092,370.97 | 46.8% | 2,064,714.29 | 32.7% | 2,144,225.90 | 32.0% | 2,081,179.99 | 31.9% | 2,180,618.49 | 31.5% | 27,265,350.44 | 34.4% |
| Total Direct Cost of Sales | 3,836,662.27 | 58.4% | 3,403,052.23 | 55.6% | 4,357,635.95 | 64.1% | 3,545,894.81 | 53.7% | 3,657,639.12 | 53.4% | 3,547,710.57 | 53.8% | 3,598,756.02 | 54.3% | 4,545,075.66 | 68.8% | 3,450,503.55 | 54.7% | 3,615,836.19 | 54.0% | 3,514,453.90 | 53.9% | 3,700,918.84 | 53.5% | 44,774,139.11 | 56.5% |
| Gross Margin | 2,727,387.88 | 41.6% | 2,717,777.30 | 44.4% | 2,437,899.19 | 35.9% | 3,059,667.02 | 46.3% | 3,193,124.81 | 46.6% | 3,041,636.11 | 46.2% | 3,023,181.41 | 45.7% | 2,063,408.08 | 31.2% | 2,858,284.25 | 45.3% | 3,083,560.50 | 46.0% | 3,011,127.90 | 46.1% | 3,219,471.73 | 46.5% | 34,436,526.18 | 43.5% |
| **Controllables** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Cash Over/Short | 2,130.45 | 0.0% | 1,964.57 | 0.0% | 2,226.57 | 0.0% | 2,101.80 | 0.0% | 1,895.74 | 0.0% | 2,196.16 | 0.0% | 1,980.57 | 0.0% | 2,075.92 | 0.0% | 2,029.11 | 0.0% | 2,134.21 | 0.0% | 2,071.13 | 0.0% | 2,439.24 | 0.0% | 25,245.47 | 0.0% |
| Credit Card Over/Short | 4,051.62 | 0.1% | 3,760.27 | 0.1% | 4,396.28 | 0.1% | 3,841.20 | 0.1% | 4,066.27 | 0.1% | 3,890.21 | 0.1% | 3,896.15 | 0.1% | 3,892.54 | 0.1% | 3,677.41 | 0.1% | 3,900.59 | 0.1% | 3,962.19 | 0.1% | 4,075.91 | 0.1% | 47,410.64 | 0.1% |
| Internal Penalty | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| **Repairs & Maintenance** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| R&M | 71,770.73 | 1.1% | 81,250.73 | 1.3% | 71,231.32 | 1.0% | 75,974.59 | 1.2% | 73,904.46 | 1.1% | 75,425.26 | 1.1% | 77,841.49 | 1.2% | 75,503.98 | 1.1% | 82,201.03 | 1.3% | 75,717.39 | 1.1% | 75,194.21 | 1.2% | 68,597.75 | 1.0% | 904,612.94 | 1.1% |
| R&M-Kitchen Equipment (Excl New Prod) | 34,516.63 | 0.5% | 26,372.72 | 0.4% | 39,426.17 | 0.6% | 27,154.85 | 0.4% | 27,964.18 | 0.4% | 26,985.91 | 0.4% | 27,229.10 | 0.4% | 27,136.55 | 0.4% | 25,706.64 | 0.4% | 27,343.99 | 0.4% | 26,467.79 | 0.4% | 27,972.39 | 0.4% | 344,276.92 | 0.4% |
| R&M-Point of Sale Equipment | 28,168.98 | 0.4% | 28,218.89 | 0.5% | 31,131.03 | 0.5% | 27,790.67 | 0.4% | 28,861.55 | 0.4% | 27,742.68 | 0.4% | 27,858.19 | 0.4% | 27,808.97 | 0.4% | 26,587.25 | 0.4% | 28,224.35 | 0.4% | 27,525.04 | 0.4% | 29,209.54 | 0.4% | 339,127.14 | 0.4% |
| R&M-Building Interior | 31,286.92 | 0.5% | 23,494.64 | 0.4% | 25,800.37 | 0.4% | 22,005.41 | 0.3% | 22,268.81 | 0.3% | 21,965.07 | 0.3% | 22,059.03 | 0.3% | 22,019.17 | 0.3% | 21,047.22 | 0.3% | 22,344.25 | 0.3% | 21,786.83 | 0.3% | 23,117.87 | 0.3% | 279,775.59 | 0.4% |
| R&M-Building Exterior | 24,945.94 | 0.4% | 10,912.26 | 0.2% | 12,161.28 | 0.2% | 11,831.66 | 0.2% | 12,260.47 | 0.2% | 11,797.25 | 0.2% | 11,861.34 | 0.2% | 11,835.35 | 0.2% | 11,288.13 | 0.2% | 11,989.44 | 0.2% | 11,669.65 | 0.2% | 12,370.62 | 0.2% | 154,923.39 | 0.2% |
| R&M-Major Projects | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Total Repair & Maintenance | 190,689.20 | 2.9% | 170,249.24 | 2.8% | 179,750.17 | 2.6% | 164,757.18 | 2.5% | 165,839.47 | 2.4% | 163,916.17 | 2.5% | 166,849.15 | 2.5% | 164,304.02 | 2.5% | 166,830.27 | 2.6% | 165,619.42 | 2.5% | 162,643.52 | 2.5% | 161,268.17 | 2.3% | 2,022,715.98 | 2.6% |
| Total Controllables | 196,871.27 | 3.0% | 175,974.08 | 2.9% | 186,373.02 | 2.7% | 170,700.18 | 2.6% | 171,801.48 | 2.5% | 170,002.54 | 2.6% | 172,725.87 | 2.6% | 170,272.48 | 2.6% | 172,536.79 | 2.7% | 171,654.22 | 2.6% | 168,676.84 | 2.6% | 167,783.32 | 2.4% | 2,095,372.09 | 2.6% |
| **Other Unit Overhead** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Utilities** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Telephone | 8,885.43 | 0.1% | 9,242.44 | 0.2% | 9,884.46 | 0.1% | 8,742.45 | 0.1% | 8,742.44 | 0.1% | 8,742.21 | 0.1% | 8,742.21 | 0.1% | 9,867.19 | 0.1% | 8,732.19 | 0.1% | 8,740.36 | 0.1% | 8,824.01 | 0.1% | 8,649.22 | 0.1% | 107,794.61 | 0.1% |
| Electricity | 213,573.57 | 3.3% | 201,025.46 | 3.3% | 211,661.78 | 3.1% | 206,677.98 | 3.1% | 213,410.60 | 3.1% | 255,663.71 | 3.9% | 296,615.79 | 4.5% | 306,033.63 | 4.6% | 320,686.26 | 5.1% | 258,986.54 | 3.9% | 225,336.97 | 3.3% | 2,946,145.46 | 3.7% |
| Gas | 94,219.06 | 1.4% | 88,596.93 | 1.4% | 98,408.68 | 1.4% | 90,748.23 | 1.4% | 83,611.30 | 1.2% | 78,611.57 | 1.2% | 82,574.03 | 1.2% | 82,122.23 | 1.2% | 80,785.61 | 1.3% | 85,558.93 | 1.3% | 80,411.90 | 1.2% | 96,876.46 | 1.4% | 1,042,524.93 | 1.3% |
| Water | 45,603.22 | 0.7% | 37,601.35 | 0.6% | 43,214.19 | 0.6% | 34,243.46 | 0.5% | 40,025.19 | 0.6% | 41,311.16 | 0.6% | 50,248.71 | 0.8% | 48,740.65 | 0.7% | 48,265.49 | 0.8% | 43,813.57 | 0.7% | 48,946.72 | 0.8% | 41,394.03 | 0.6% | 523,407.74 | 0.7% |
| Total Utilities | 362,281.28 | 5.5% | 336,466.18 | 5.5% | 363,169.11 | 5.3% | 340,412.12 | 5.2% | 345,789.53 | 5.0% | 384,328.65 | 5.8% | 438,180.74 | 6.6% | 446,763.70 | 6.8% | 458,469.55 | 7.3% | 397,099.40 | 5.9% | 374,655.80 | 5.7% | 372,256.68 | 5.4% | 4,619,872.74 | 5.8% |
| Armored Transport & Security | 28,145.84 | 0.4% | 28,145.84 | 0.5% | 28,145.84 | 0.4% | 28,145.84 | 0.4% | 28,145.84 | 0.4% | 29,691.29 | 0.5% | 28,145.84 | 0.4% | 28,145.84 | 0.4% | 28,145.84 | 0.4% | 28,145.84 | 0.4% | 28,145.84 | 0.4% | 28,145.84 | 0.4% | 339,295.53 | 0.4% |
| CC/ATM Charges | 94,420.26 | 1.4% | 88,576.79 | 1.4% | 98,572.45 | 1.5% | 93,933.94 | 1.4% | 96,947.09 | 1.4% | 94,150.97 | 1.4% | 94,183.32 | 1.4% | 93,149.24 | 1.4% | 90,592.80 | 1.4% | 95,169.07 | 1.4% | 98,975.79 | 1.4% | 1,131,322.85 | 1.4% |
| Banking Charges | 18,702.63 | 0.3% | 19,097.25 | 0.3% | 18,870.02 | 0.3% | 18,158.33 | 0.3% | 20,144.17 | 0.3% | 18,438.87 | 0.3% | 18,514.18 | 0.3% | 18,411.52 | 0.3% | 17,610.18 | 0.3% | 18,886.95 | 0.3% | 18,063.96 | 0.3% | 18,989.86 | 0.3% | 223,887.92 | 0.3% |
| Payroll Services | 8,036.37 | 0.1% | 6,147.33 | 0.1% | 9,913.08 | 0.1% | 6,471.92 | 0.1% | 6,745.25 | 0.1% | 6,473.06 | 0.1% | 6,486.80 | 0.1% | 9,409.81 | 0.1% | 6,219.18 | 0.1% | 6,596.59 | 0.1% | 6,453.25 | 0.1% | 19,823.81 | 0.3% | 98,776.45 | 0.1% |
| Equipment Leases/Rental | 5,825.84 | 0.1% | 2,944.71 | 0.0% | 5,398.63 | 0.1% | 721.86 | 0.0% | 532.83 | 0.0% | 784.69 | 0.0% | (7,445.77) | (0.1%) | 1,554.39 | 0.0% | 1,303.51 | 0.0% | 598.55 | 0.0% | 1,307.26 | 0.0% | 3,014.12 | 0.0% | 16,540.62 | 0.0% |
| Trash/Refuse Service | 53,408.48 | 0.8% | 58,432.07 | 1.0% | 57,810.52 | 0.9% | 55,394.21 | 0.8% | 55,394.21 | 0.8% | 55,394.21 | 0.8% | 55,394.21 | 0.8% | 55,394.21 | 0.8% | 55,394.21 | 0.9% | 55,394.21 | 0.8% | 55,394.21 | 0.8% | 668,198.96 | 0.8% |
| Delivery Charges | 155,200.86 | 2.4% | 138,444.71 | 2.3% | 159,285.39 | 2.3% | 153,743.92 | 2.3% | 160,220.75 | 2.3% | 154,510.12 | 2.3% | 158,256.27 | 2.4% | 147,957.24 | 2.3% | 156,254.07 | 2.3% | 154,553.02 | 2.4% | 164,538.28 | 2.4% | 1,856,885.14 | 2.3% |
| Royalties | 307,728.98 | 4.7% | 236,019.00 | 3.9% | 243,056.78 | 3.6% | 303,855.85 | 4.6% | 246,627.47 | 3.6% | 243,805.86 | 3.7% | 292,239.30 | 4.4% | 239,639.02 | 3.6% | 228,712.50 | 3.6% | 306,463.73 | 4.6% | 236,535.83 | 3.6% | 250,818.12 | 3.6% | 3,135,502.44 | 4.0% |
| Advertising | 461,593.53 | 7.0% | 354,028.66 | 5.8% | 364,585.32 | 5.4% | 455,783.83 | 6.9% | 434,838.25 | 5.3% | 369,003.39 | 5.6% | 455,165.54 | 6.9% | 359,458.54 | 5.4% | 343,866.68 | 5.5% | 459,695.62 | 6.9% | 360,521.97 | 5.5% | 382,305.56 | 5.5% | 4,730,847.09 | 6.0% |
| Local Store Marketing | 18,686.35 | 0.3% | 57,224.97 | 0.9% | 25,252.90 | 0.4% | 5,401.21 | 0.1% | 34,224.21 | 0.5% | 11,723.84 | 0.2% | 57,179.72 | 0.9% | 9,262.76 | 0.1% | 22,680.63 | 0.4% | 28,512.84 | 0.4% | 40,824.43 | 0.6% | 11,437.95 | 0.2% | 322,411.81 | 0.4% |
| Promotions - Other | 1,209.69 | 0.0% | 0.00 | 0.0% | 1,743.00 | 0.0% | 160.64 | 0.0% | 193.07 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 1,025.75 | 0.0% | 0.00 | 0.0% | 2,589.15 | 0.0% |
| Mileage & Miscellaneous | 1,162.00 | 0.0% | 1,162.00 | 0.0% | 1,743.00 | 0.0% | 1,162.00 | 0.0% | 1,162.00 | 0.0% | 1,162.00 | 0.0% | 1,743.00 | 0.0% | 1,162.00 | 0.0% | 1,162.00 | 0.0% | 1,162.00 | 0.0% | 1,087.00 | 0.0% | 1,162.00 | 0.0% | 15,031.32 | 0.0% |
| Total Other Unit Overhead | 1,516,402.13 | 23.1% | 1,326,089.51 | 21.7% | 1,375,803.04 | 20.2% | 1,463,345.67 | 22.2% | 1,360,964.67 | 19.9% | 1,368,466.95 | 20.8% | 1,594,126.39 | 24.1% | 1,421,188.30 | 21.5% | 1,402,114.52 | 22.2% | 1,553,978.87 | 23.2% | 1,371,294.45 | 21.0% | 1,406,787.52 | 20.3% | 17,161,162.02 | 21.7% |
| Income Before Facility Costs & G&A | 1,014,114.48 | 15.4% | 1,215,113.71 | 19.9% | 875,723.13 | 12.9% | 1,425,621.17 | 21.6% | 1,660,358.66 | 24.2% | 1,503,166.62 | 22.8% | 1,256,329.15 | 19.0% | 471,947.30 | 7.1% | 1,283,632.94 | 20.3% | 1,357,927.41 | 20.3% | 1,471,156.61 | 22.5% | 1,644,900.89 | 23.8% | 15,179,992.07 | 19.2% |
| **Facility Costs** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Rent | 723,327.30 | 11.0% | 723,327.38 | 11.8% | 723,327.38 | 10.6% | 723,327.38 | 11.0% | 723,327.38 | 10.6% | 723,327.38 | 11.0% | 723,327.38 | 10.9% | 723,327.38 | 10.9% | 723,327.38 | 11.5% | 723,327.38 | 10.8% | 723,327.38 | 11.1% | 723,327.38 | 10.5% | 8,679,928.56 | 11.0% |
| Percentage Rent | 0.00 | 0.0% | 76,091.94 | 1.2% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 10,353.21 | 0.2% | 0.00 | 0.0% | 0.00 | 0.0% | 3,634.79 | 0.1% | 0.00 | 0.0% | 90,079.94 | 0.1% |
| Common Area Maintenance | 38,765.13 | 0.6% | 46,996.74 | 0.8% | 34,913.84 | 0.5% | 60,980.49 | 0.9% | 41,449.09 | 0.6% | 52,148.01 | 0.8% | 46,495.14 | 0.7% | 39,812.91 | 0.6% | 39,638.24 | 0.6% | 54,247.33 | 0.8% | 57,494.69 | 0.9% | 36,616.81 | 0.5% | 549,558.42 | 0.7% |
| Property Taxes | 76,506.77 | 1.2% | 73,490.29 | 1.2% | 85,861.12 | 1.3% | 310,218.35 | 4.7% | 57,868.49 | 0.8% | 94,254.95 | 1.4% | 67,242.81 | 1.0% | 130,047.34 | 2.0% | 117,480.65 | 1.9% | 94,063.34 | 1.4% | 73,355.59 | 1.1% | 306,440.05 | 4.4% | 1,486,338.50 | 1.9% |
| Property & Liability Insurance | 33,755.54 | 0.5% | 36,022.93 | 0.6% | 32,996.72 | 0.5% | 34,246.75 | 0.5% | 33,640.81 | 0.5% | 33,659.01 | 0.5% | 33,466.09 | 0.5% | 33,659.67 | 0.5% | 41,626.80 | 0.7% | 34,143.46 | 0.5% | 33,755.59 | 0.5% | 33,773.48 | 0.5% | 414,746.85 | 0.5% |
| Licenses & Permits | 13,925.90 | 0.2% | 53,439.81 | 0.9% | 3,514.41 | 0.1% | 9,836.12 | 0.1% | 2,870.93 | 0.0% | 11,457.00 | 0.2% | 6,298.55 | 0.1% | 19,208.23 | 0.3% | 1,605.88 | 0.0% | 29,605.44 | 0.4% | 23,037.00 | 0.4% | 211,239.45 | 0.3% |
| Retirement Expense | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Total Facility Costs | 886,280.72 | 13.5% | 1,009,369.09 | 16.5% | 880,613.47 | 13.0% | 1,138,609.09 | 17.2% | 859,156.70 | 12.5% | 944,846.35 | 14.3% | 887,183.18 | 13.4% | 946,055.53 | 14.3% | 923,678.95 | 14.6% | 939,021.74 | 14.0% | 910,479.00 | 14.0% | 1,106,597.91 | 16.0% | 11,431,891.73 | 14.4% |
| Income Before G&A | 127,833.76 | 1.9% | 205,744.62 | 3.4% | (4,890.34) | (0.1%) | 287,012.08 | 4.3% | 801,201.96 | 11.7% | 558,320.27 | 8.5% | 369,145.97 | 5.6% | (474,108.23) | (7.2%) | 359,953.99 | 5.7% | 418,905.67 | 6.3% | 560,677.61 | 8.6% | 538,302.98 | 7.8% | 3,748,100.34 | 4.7% |
| **General & Administrative** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| District Manager Salary | 70,323.06 | 1.1% | 57,523.06 | 0.9% | 86,284.59 | 1.3% | 57,523.06 | 0.9% | 57,523.06 | 0.8% | 57,523.06 | 0.9% | 57,523.06 | 0.9% | 79,884.59 | 1.2% | 63,923.06 | 1.0% | 57,523.06 | 0.9% | 57,523.06 | 0.9% | 57,523.06 | 0.8% | 760,599.78 | 1.0% |
| Officers Salary | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Payroll Tax & Benefits (Admin) | 5,333.76 | 0.1% | 5,333.76 | 0.1% | 6,439.59 | 0.1% | 5,333.76 | 0.1% | 5,333.76 | 0.1% | 5,333.76 | 0.1% | 5,333.76 | 0.1% | 8,000.64 | 0.1% | 5,333.76 | 0.1% | 5,333.76 | 0.1% | 5,333.76 | 0.1% | 5,333.76 | 0.1% | 67,777.83 | 0.1% |
| Auto Expenses | 11,488.59 | 0.2% | 12,958.90 | 0.2% | 15,279.12 | 0.2% | 12,978.23 | 0.2% | 12,702.69 | 0.2% | 11,675.30 | 0.2% | 12,386.00 | 0.2% | 17,605.02 | 0.3% | 13,135.00 | 0.2% | 12,134.00 | 0.2% | 12,134.00 | 0.2% | 12,134.00 | 0.2% | 156,610.85 | 0.2% |
| Miscellaneous Bank Charges | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Computer Expenses | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Conferences & Seminars | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Donations | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Interest Income / Discount Earned | (2,218.43) | (0.0%) | (2,340.57) | (0.0%) | (2,148.02) | (0.0%) | (2,306.89) | (0.0%) | (2,131.41) | (0.0%) | (2,053.54) | (0.0%) | (2,356.68) | (0.0%) | (2,046.04) | (0.0%) | (1,961.61) | (0.0%) | (2,034.25) | (0.0%) | (25,969.83) | (0.0%) |
| Miscellaneous Income | (14,128.42) | (0.2%) | (12,431.57) | (0.2%) | (27,195.65) | (0.4%) | (11,565.70) | (0.2%) | (12,733.04) | (0.2%) | (18,748.18) | (0.3%) | (18,482.39) | (0.3%) | (19,397.02) | (0.3%) | (16,227.80) | (0.3%) | (14,987.99) | (0.2%) | (14,934.16) | (0.2%) | (13,081.23) | (0.2%) | (193,953.15) | (0.2%) |
| Legal expense | 40,000.00 | 0.6% | 41,130.07 | 0.7% | 47,500.00 | 0.7% | 31,153.29 | 0.5% | 12,984.60 | 0.2% | 21,512.70 | 0.3% | 61,422.98 | 0.9% | 16,482.78 | 0.2% | 32,141.88 | 0.5% | 50,417.71 | 0.8% | 35,617.25 | 0.5% | 12,500.00 | 0.2% | 371,709.97 | 0.5% |
| Management Fees | 250,000.00 | 3.8% | 250,000.00 | 4.1% | 250,000.00 | 3.7% | 250,000.00 | 3.8% | 250,000.00 | 3.6% | 250,000.00 | 3.8% | 250,000.00 | 3.8% | 250,000.00 | 3.8% | 250,000.00 | 4.0% | 250,000.00 | 3.7% | 250,000.00 | 3.8% | 250,000.00 | 3.6% | 3,000,000.00 | 3.8% |
| Meals & Entertainment | 233.40 | 0.0% | 511.91 | 0.0% | 409.72 | 0.0% | 1,642.19 | 0.0% | 938.08 | 0.0% | 700.28 | 0.0% | 710.93 | 0.0% | 714.45 | 0.0% | 1,155.12 | 0.0% | 719.67 | 0.0% | 708.33 | 0.0% | 2,916.16 | 0.0% | 11,360.24 | 0.0% |
| Miscellaneous | 3,534.16 | 0.1% | 7,534.16 | 0.1% | 12,523.90 | 0.2% | (1,133.51) | (0.0%) | 3,627.27 | 0.1% | 6,721.49 | 0.1% | 6,364.03 | 0.1% | 3,627.27 | 0.1% | 3,627.27 | 0.1% | 3,627.27 | 0.1% | 8,627.27 | 0.1% | 3,627.27 | 0.1% | 66,307.85 | 0.1% |
| Office Supplies | 2,584.48 | 0.0% | 1,558.14 | 0.0% | 2,140.92 | 0.0% | 3,248.00 | 0.0% | 3,977.93 | 0.1% | 6,677.39 | 0.1% | 1,654.02 | 0.0% | 1,714.55 | 0.0% | 2,499.04 | 0.0% | 2,925.55 | 0.0% | 2,043.91 | 0.0% | 2,423.56 | 0.0% | 33,447.49 | 0.0% |
| Postage | 693.32 | 0.0% | 1,698.10 | 0.0% | 1,849.67 | 0.0% | 388.66 | 0.0% | 531.55 | 0.0% | 530.98 | 0.0% | 269.54 | 0.0% | 131.30 | 0.0% | 1,145.96 | 0.0% | 702.94 | 0.0% | 120.73 | 0.0% | 7,874.33 | 0.0% |
| Professional Fees | 33,506.23 | 0.5% | 30,508.61 | 0.5% | 16,200.88 | 0.2% | 46,502.70 | 0.7% | 32,759.73 | 0.5% | 31,250.72 | 0.5% | 35,265.23 | 0.5% | 32,140.78 | 0.5% | 31,326.23 | 0.5% | 35,743.23 | 0.5% | 31,379.28 | 0.5% | 34,811.15 | 0.5% | 391,294.77 | 0.5% |
| Rebates | 0.00 | 0.0% | (240,179.64) | (3.9%) | 0.00 | 0.0% | (226,117.63) | (3.4%) | 0.00 | 0.0% | (225,570.20) | (3.4%) | 0.00 | 0.0% | (204.61) | (0.0%) | 0.00 | 0.0% | (155,906.53) | (2.3%) | 0.00 | 0.0% | (268,166.92) | (3.9%) | (1,308,145.52) | (1.3%) |
| Telephone - G&A | 433.08 | 0.0% | 433.08 | 0.0% | 649.62 | 0.0% | 433.08 | 0.0% | 453.08 | 0.0% | 458.08 | 0.0% | 493.08 | 0.0% | 433.08 | 0.0% | 788.08 | 0.0% | 538.08 | 0.0% | 533.08 | 0.0% | 6,195.04 | 0.0% |
| Training | 826.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 1,652.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 826.00 | 0.0% | 10,738.00 | 0.0% |
| Travel & Entertainment | 106.45 | 0.0% | 632.14 | 0.0% | 702.58 | 0.0% | 991.32 | 0.0% | 867.41 | 0.0% | 178.44 | 0.0% | 1,193.28 | 0.0% | 1,023.55 | 0.0% | 680.75 | 0.0% | 102.50 | 0.0% | 669.80 | 0.0% | 907.45 | 0.0% | 8,055.67 | 0.0% |
| Robbery/ Theft Expense | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Dues & Subscriptions | 825.37 | 0.0% | 495.72 | 0.0% | 495.72 | 0.0% | 510.30 | 0.0% | 524.88 | 0.0% | 690.27 | 0.0% | 554.04 | 0.0% | 554.04 | 0.0% | 5,472.99 | 0.1% | 568.62 | 0.0% | 568.62 | 0.0% | 11,858.35 | 0.0% |
| Q&A Expenses | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Taxes & Licenses | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Late Charges & Penalties | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Other Income/Expense | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Total General & Administrative | 403,541.05 | 6.1% | 156,191.87 | 2.6% | 411,958.64 | 6.1% | 260,762.24 | 3.9% | 138,291.70 | 2.0% | 408,256.21 | 6.2% | 368,781.26 | 5.6% | 177,699.03 | 2.7% | 410,982.47 | 6.5% | 393,633.35 | 5.9% | 128,851.94 | 2.0% | 356,638.57 | 5.2% | 3,615,790.32 | 4.6% |
| **EBITDA** | (275,707.29) | (4.2%) | 49,552.75 | 0.8% | (416,848.98) | (6.1%) | 26,249.84 | 0.4% | 662,910.26 | 9.7% | 150,064.06 | 2.3% | 364.71 | 0.0% | (651,807.26) | (9.9%) | (51,028.48) | (0.8%) | 25,070.32 | 0.4% | 431,825.67 | 6.6% | 181,664.41 | 2.6% | 132,310.02 | 0.2% |
| Timing Differences (Accrual Conversion) | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Legal Settlements | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Gain/Loss On Assets Disposal | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Depreciation | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Amortization | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Discnt Op & Impairment Loss | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| New Acquisition Cost | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Interest Expense | 121,490.22 | 1.9% | 102,172.96 | 1.7% | 89,640.30 | 1.3% | 94,731.72 | 1.4% | 90,483.44 | 1.3% | 92,242.41 | 1.4% | 88,071.17 | 1.3% | 89,753.10 | 1.4% | 88,507.64 | 1.4% | 84,453.26 | 1.3% | 86,017.13 | 1.3% | 81,944.44 | 1.2% | 1,109,507.59 | 1.4% |
| Provision for Income Taxes | 0.00 | 0.0% | 1,337.40 | 0.0% | 0.00 | 0.0% | 8,000.00 | 0.1% | 0.00 | 0.0% | 30,180.00 | 0.5% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 39,517.40 | 0.0% |
| **Net Income** | (397,197.51) | (6.1%) | (53,957.61) | (0.9%) | (506,489.28) | (7.5%) | (76,481.88) | (1.2%) | 572,426.82 | 8.4% | 27,641.65 | 0.4% | (87,706.46) | (1.3%) | (741,560.36) | (11.2%) | (139,535.92) | (2.2%) | (59,382.94) | (0.9%) | 345,808.54 | 5.3% | 99,719.97 | 1.4% | (1,016,714.97) | (1.3%) |
| Operating Supplies (New Product) | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| R&M-Kitchen Equipment (New Product) | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| R&M-Kitchen Equipment (New Store) | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| R&M-Building Exterior (New Store) | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| R & M - Remodel | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Total Capital | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% | 0.00 | 0.0% |
| Cash Flow before Debt/Equity payments | (397,197.51) | (6.1%) | (53,957.61) | (0.9%) | (506,489.28) | (7.5%) | (76,481.88) | (1.2%) | 572,426.82 | 8.4% | 27,641.65 | 0.4% | (87,706.46) | (1.3%) | (741,560.36) | (11.2%) | (139,535.92) | (2.2%) | (59,382.94) | (0.9%) | 345,808.54 | 5.3% | 99,719.97 | 1.4% | (1,016,714.97) | (1.3%) |

| In re:<br><br>Sun Gir Incorporated<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:26-bk-11056 |
| --- | --- |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.   My business address is:
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**A true and correct copy of the foregoing document entitled (*specify*): EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF HARSHAD DHAROD IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On   April 7, 2026   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

 Eric Bensamochan Eric@eblawfirm.us
 United States Trustee ustpregion16.sa.ecf@usdoj.gov
 Kenneth Misken DOJ-UST Kenneth.M.Misken@usdoj.gov
 William Schumacher wschumacher@winthrop.com

☐ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On   April 7, 2026   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on   ___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.   Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth St., Ste. 5130
Santa Ana, CA 92701-4593

John Youens-Crowe LLP john.youens@crowe.com

McLane Foodservice Inc c/o Alston & Bird-Jacob Johnson and Kennedy Bodnarek
Jacob.Johnson@alston.com
Kennedy.Bodnarek@alston.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 7, 2026 | Jennifer Svonkin | /s/ Jennifer Svonkin |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.   It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2012*

**9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-8
Case 8:26-bk-11056-SC
Central District of California
Santa Ana
Tue Apr  7 13:23:37 PDT 2026

Sun Cir Incorporated
1 Centerpointe Dr., Suite 400
La Palma, CA 90623-2530

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

Carl's Jr. Restaurants LLC
c/o DLA Piper LLP
1201 W Peachtree St., Ste 2800
Atlanta, GA 30309-3450

Carl's Jr. Restaurants LLC
c/o Eric Goldberg, Esq.
2000 Avenue of the Stars, Ste 400 N Towe
Los Angeles, CA 90067-4735

The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

US Securities & Exchange Commission
444 S Flower St., # 900
Los Angeles, CA 90071-2934

United States Trustee
411 W Fourth Street
Santa Ana, CA 92701-4504

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Attn:Will Schumacher The Northern Trust Comp
Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629

Eric Bensamochan
The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064-3371

End of Label Matrix
Mailable recipients    10
Bypassed recipients     0
Total                  10