William J. Schumacher (CA #303862)
wschumacher@winthrop.com
Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Telephone: 612-604-6478
Counsel for Northern Trust Company

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| SUN GIR INCORPORATED, | Chapter 11 |
| Debtor and Debtor-in-Possession. | Jointly Administered With:<br><br>8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |
| ☒ Affects All Debtors<br>☐ Affects Sun Gir Incorporated<br>☐ Affects Harshad & Nasir, Incorporated<br>☐ Affects Senior Classic Leasing, LLC<br>☐ Affects DFG Restaurants, Incorporated<br>☐ Affects Second Star Holdings, LLC<br>☐ Affects Third Star Investments, LLC | **LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING MOTION FOR INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c); AUTHORIZING THE USE OF CASH COLLATERAL; GRANTING ADEQUATE PROTECTION; AND GRANTING RELATED RELIEF**<br><br>Hearing Date/Time/Location:<br>Date:   April 9, 2026<br>Time:   1:30 PM Central Time<br>Location: Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, California 92701 |

The Northern Trust Company ("**Northern Trust**"), hereby submits this limited objection and reservation of rights with respect to the Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. 363(c) (the "**Motion**") filed by Sun Gir Incorporated ("**SGI**"), the debtor and debtor-in-possession ("**Debtor**"), along with its affiliated debtors (collectively, the "**Debtors**"). Northern Trust and Debtors are collectively referred to as the "**Parties**."

### INTRODUCTION

Northern Trust is a secured creditor of the Debtors with a lien in substantially all the assets of the Debtors. Northern Trust files this limited objection and reservation of rights because, although it recognizes the Debtors' need for interim access to liquidity and has engaged in productive discussions toward a consensual interim cash collateral order, the Motion should not be granted except on terms that provide Northern Trust with adequate protection of its interests in its prepetition collateral and cash collateral. Northern Trust does not object to an appropriately limited interim use of cash collateral pending a final hearing provided that such use is subject to an agreed budget, reporting and variance controls, continued adequate protection payments, replacement liens to the maximum extent permitted by the Bankruptcy Code, an allowed superpriority administrative expense claim under section 507(b), and full preservation of Northern Trust's rights and remedies under the Loan Documents and applicable law. To the extent the Motion seeks relief beyond those protections, Northern Trust objects and reserves all rights.

Northern Trust has worked in good faith with the Debtors to narrow issues and remains willing to continue those discussions. At present, however, Northern Trust objects to entry of any interim or final cash collateral order that fails to provide concrete and non-illusory adequate protection against diminution in the value of its collateral. Northern Trust therefore submits this limited objection to preserve its rights while the parties continue to negotiate a consensual form of interim relief.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

**Petition Date**. On April 2, 2026, (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "**Court**"). The Debtors have continued in the operation of their businesses and properties as debtors in possession pursuant to §§ 1107 and 1108.[1] No official committee of unsecured creditors has been appointed.

**Prepetition Secured Credit Facilities.** As of the Petition Date, the Debtors were indebted to Northern Trust as follows:

(1) Debtors are indebted to The Northern Trust Company ("**Northern Trust**") in the original principal amount of $20,000,000, representing the loan that Northern Trust extended to Debtors, evidenced by a Term Note dated September 5, 2025, that Debtors executed and delivered to Lender (the "**Note**").

(2) The Note is secured by an Assignment of Leases encumbering the real properties in Exhibit A attached to the Stipulation ("**Assignment of Leases 1**"). Assignment of Leases 1 is dated September 5, 2025.

(3) The Note is further secured by a second Assignment of Leases encumbering the real properties in the attached Exhibit A ("**Assignment of Leases 2**," which together with Assignment of Leases 1 are the "**Collateral Assignments**"). Assignment of Leases 2 is dated September 5, 2025.

---

[1] All references to "§" herein are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. unless otherwise noted. All references to "**Bankruptcy Rules**" are to the Federal Rules of Bankruptcy Procedure. All references to the "**Local Rules**" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

(4) The Note is further secured by a Commercial Security Agreement ("**Security Agreement**"), dated September 5, 2025, wherein Debtors granted Northern Trust a security interest in all accounts, general intangibles, inventory, goods, money, instruments, deposit accounts, certificate of deposit, deposits, investment property, books and records, documents of title, proceeds, products, replacements and increases of, additions and accessions to, and substitutions therefor (collectively, the "**Collateral**").

(5) Northern Trust perfected its security interests by filing UCC-1 financing statements as follows (the "**UCC-1s**"):

(a) Filing No. 2025506542-9 with the Nevada Secretary of State for Second Star Holdings LLC, on September 5, 2025;

(b) Filing No. U250190842227 with the California Secretary of State for Senior Classic Leasing, LLC, on September 5, 2025;

(c) Filing No. U250190846731 with the California Secretary of State for Third Star Investments LLC, on September 5, 2025;

(d) Filing No. U250190844332 with the California Secretary of State for Harshad & Nasir Corporation, on September 5, 2025;

(e) Filing No. U250190845123 with the California Secretary of State for Sun Gir Incorporated, on September 5, 2025; and

(f) Filing No. U250190843229 with the California Secretary of State for DFG Restaurants, Incorporated, on September 5, 2025.

(6) The business relationship between the Parties is governed by a Term Loan Agreement executed by Debtors and delivered to Northern Trust dated September 5, 2025 (the "**Loan Agreement**").

4

(7) The Parties and Carl's Jr. Restaurants LLC entered into a Tri-Party Agreement (the "**Tri-Party Agreement**"), dated September 5, 2025.

(8) Collectively, the Note, Collateral Assignments, the Security Agreement, UCC-1s, the Loan Agreement, the Tri-Party Agreement, and all other related documents executed in connection therewith are referred to as the "**Loan Documents**."

(9) As of the petition date, the amount due and owing by Debtors to Northern Trust pursuant to the Loan Documents is no less than $18,336,332.86, plus continuing interest, fees, costs, and other amounts that may be due and owing under the Loan Documents (the "**Indebtedness**").

(10)      Pursuant to the Loan Documents, Debtors are required to make monthly principal payments on or before the first day of each month in the amount of $238,095.24 plus accrued interest and any other amounts due under the Loan Documents.

### LIMITED OBJECTION AND RESERVATION OF RIGHTS

1.      Section 363 of the Bankruptcy Code provides that a trustee or debtor in possession may not utilize cash collateral unless the creditor holding an interest in such cash collateral absolutely consents or, after notice and a hearing, the court finds that the secured creditor's interests in the cash collateral is adequately protected. 11 U.S.C. § 363(c) and (e). "[W]hen a creditor opposes a proposed use of cash collateral, the guiding inquiry is whether its security interests are 'adequately protected' absent the additional protection that the cash collateral would provide." *In re Georgia Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see also In re Moore*, 465 B.R. 111 (Bankr. N.D. Miss. 2011) (debtors did not provide requisite adequate protection when proposing to spend crop proceeds that were creditor's cash collateral; denying proposed use of cash collateral).

2.      The burden is on the Debtors to establish that Northern Trust's interest in the Cash Collateral is adequately protected. See 11 U.S.C. § 363(p)(1). *See In re Goode*, 235 B.R. 584 (Bankr.

5

E.D. Tex. 1999) (Parker, J.); *In re Glasstream Boats, Inc.*, 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990). The Debtors must provide competent evidence, and unsubstantiated projections or proposals will not suffice. *See generally In re Harrow Leasing Corp.*, 35 B.R. 916 (Bankr. E.D. Pa. 1983).

3.      Adequate protection must protect the creditor's interest from any diminution in value while in use by a trustee or debtor-in-possession. *See, e.g., In re Gallegos Research Group*, 193 B.R. 577, 584 (Bankr. D. Col. 1995).  Thus, the extent of adequate protection a debtor should be required to provide is determined by the expected decrease in value of the secured creditor's collateral.

4.      Although section 361 of the Bankruptcy Code does not set forth an exhaustive list of what constitutes adequate protection, it does provide the most commonly accepted forms of adequate protection. Overall, protection is deemed "adequate" if the secured creditor's interests are preserved at "status quo" or are protected from dissipation by cash payments, replacement liens, and the like. *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1987).  Importantly, any adequate protection must not be illusory or speculative in value, and particularly, in the context of the use of cash collateral, must be "of the most indubitable equivalence." *In re Goode*, 245 B.R. 584, 589 (Bankr. E.D. Tex. 1999), *citing In re Waste Conversion Technologies, Inc.*, 205 B.R. 1004, 1007 (D. Conn. 1997).

5.      Pursuant to §§ 503(b) and 507(b), secured claimants are entitled to an administrative claim for any failure of adequate protection, including, without limitation, in connection with any adequate protection lien. *See generally* 11 U.S.C. §§ 503(b), 507(b).

6.      Replacement liens alone are not sufficient to adequately protect Northern Trust, "[b]ecause [Northern Trust] already has security interests in all assets and revenues, any replacement liens are nothing more than liens to which [Northern Trust] is already entitled." *See, e.g. In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 695 (Bankr. S.D. Tex. 2009) (denying debtor's use of cash collateral for lack of adequate protection on grounds that debtor could not grant replacement liens where Lender already had a lien on the collateral); *In re LTAP US, LLP, 2011 WL 671761*, at *3

6

(Bankr. D. Del. Feb. 18, 2011) (finding that "[p]roviding [a secured creditor] with a replacement lien on assets against which it already has a lien is illusory [protection]. [The] Debtor must provide [the creditor] with additional collateral."); *In re Pac. Lifestyle Homes, Inc.*, 2009 WL 688908, at *11– 12 (Bankr. W.D. Wash. Mar. 16, 2009) (explaining that a potential increase in non-cash collateral value through continued operations, coupled with liens on already-encumbered collateral, was insufficient adequate protection for the use of cash collateral).

7.      Subject to acceptable protections that Northern Trust is entitled to receive as perfected prepetition secured creditors, including without limitation, adequate protection for the use of Cash Collateral, Northern Trust supports entry of an order approving the Debtors' use of Cash Collateral. Northern Trust acknowledges that the Debtors face a serious liquidity crisis and urgently require some level of access to use of Cash Collateral on an interim basis.

8.      Northern Trust has engaged in discussions with the Debtors regarding, among other things, the proposed use of cash collateral, the proposed budget, and adequate protection issues. Those discussions have been productive, and have helped narrow the scope of open issues. While Northern Trust is hopeful that continued discussions may resolve its remaining concerns, it reserves all rights and objections with respect to both interim and final relief on the Motion. Northern Trust intends to work with the Debtors to address, among other things, the below-described areas

9.      **Adequacy of Replacement Liens**. Although the Debtors do acknowledge that they are required to provide adequate protection and propose to do so in the form of replacement liens, replacement liens on their own do not necessarily provide Northern Trust with adequate protection where Northern Trust already holds liens on substantially all of the Debtors' assets and revenues. To the extent the Debtors propose to rely on replacement liens as adequate protection, the Debtors must demonstrate that such liens provide real and incremental value and are coupled with other protections sufficient to protect Northern Trust from any diminution in the value of its collateral, including cash collateral.

7

10.    **<u>Appropriate Agreed Upon Conditions to the Use of Cash Collateral</u>**. Northern Trust seeks a limited set of customary protections as a condition to any interim use of cash collateral, including, without limitation, compliance with an agreed budget, weekly reporting and variance testing, continued post-petition payments consistent with the parties' agreement as a form of adequate protection, replacement liens on post-petition property to the maximum extent permitted by the Bankruptcy Code, an allowed superpriority administrative expense claim under section 507(b), and express provisions preserving Northern Trust's liens, claims, priorities, and remedies. Northern Trust continues to work with the Debtors to resolve these issues in connection with a consensual interim order and hopefully a consensual final order.

11.    Although Northern Trust is seeking some additional limited protections with respect to the Debtors' use of the Cash Collateral, Northern Trust expects at the interim hearing to consent to the Debtors' use of case collateral until the final hearing. Prior to the final hearing, Northern Trust wants to reach a broader set of agreements and limitations that would be included in a Cash Collateral stipulation or final order on the Motion, including, without limitation, adequate protection payments, replacement liens on post-petition property to the maximum extent permitted by the Bankruptcy Code, and an allowed superpriority administrative expense claim under section 507(b).

12.    Subject to the foregoing, the Northern Trust looks forward to achieving a consensual Interim Order and thereafter a consensual Final Order. Northern Trust will continue its good faith efforts to resolve its concerns through its ongoing dialogue and negotiation with the Debtors and continued analysis and due diligence. Nonetheless, Northern Trust hereby expressly reserves all of its rights, claims, objections, and remedies, including the right to amend, modify, or supplement this reservation of rights, to seek discovery, to raise additional objections and to introduce evidence at the interim and final hearings on the Motion, on any grounds, as may be appropriate. Further, Northern Trust further reserves its right to

8

amend or supplement this limited objection and reservation of rights, based upon any facts or arguments that come to light prior to the hearing on these issues.

Dated:  April 9, 2026

/s/ William J. Schumacher
William J. Schumacher (CA #303862)
wschumacher@winthrop.com
Winthrop & Weinstine, P.A.
Counsel for Northern Trust Company

42490788v2

9

# EXHIBIT A

**(List of Leases)**

| Unit # | Address | City | State | Zip | Franchise Agreement Effective Date | Franchise Agreement Expiration Date |
|---|---|---|---|---|---|---|
| 7351 | 6310 Platt Ave./Victory | Woodland Hills | CA | 91367 | 12/23/20 | 12/22/30 |
| 7352 | 1625 Santa Anita Ave. | S. El Monte | CA | 91733 | 12/23/20 | 12/22/30 |
| 7355 | 14344 Roscoe Bl/Lennox | Panorama City | CA | 91404 | 12/23/20 | 12/22/30 |
| 7358 | 9803 E. Las Tunas | Temple City | CA | 91780 | 12/12/20 | 12/11/30 |
| 7359 | 18756 Sherman Way/Geyser | Reseda | CA | 91335 | 12/23/20 | 12/22/30 |
| 7360 | 1465 E. Colorado Blvd. | Pasadena | CA | 91106 | 12/23/20 | 12/22/30 |
| 7361 | 14080 Francisquito | Baldwin Park | CA | 91706 | 12/23/20 | 12/22/30 |
| 7362 | 165 E. Duarte Rd. | Arcadia | CA | 91006 | 12/23/20 | 12/22/30 |
| 7363 | 18237 Colima Rd. | Rowland Heights | CA | 91745 | 12/23/20 | 12/22/30 |
| 7365 | 810 S. Grand | Glendora | CA | 91740 | 12/23/20 | 12/22/30 |
| 7366 | 19305 Victory Bll/Tampa | Reseda | CA | 91335 | 12/23/20 | 12/22/30 |
| 7367 | 2400 S. Azusa | West Covina | CA | 91792 | 12/12/20 | 12/11/30 |
| 7368 | 5575 Woodman Ave./Burbank | Van Nuys | CA | 91401 | 12/23/20 | 12/22/30 |
| 7369 | 141 S. Diamond Bar Blvd. | Diamond Bar | CA | 91765 | 12/23/20 | 12/22/30 |
| 7371 | 16815 Devonshire St./Petit | Granada Hills | CA | 91344 | 12/23/20 | 12/22/30 |
| 7372 | 5633 Whittier Blvd. | Los Angeles | CA | 90022 | 12/12/20 | 12/11/30 |
| 7373 | 1320 N. San Fernando Rd. | Burbank | CA | 91504 | 12/12/20 | 12/11/30 |
| 7374 | 12358 Washington Blvd | Whittier | CA | 90606 | 12/23/20 | 12/22/30 |
| 7375 | 1900 San Gabriel Blvd. | San Gabriel | CA | 91776 | 12/23/20 | 12/22/30 |
| 7376 | 11509 Laurel Cyn/Kalisher | San Fernando | CA | 91340 | 12/23/20 | 12/22/30 |
| 7377 | 210 S. Hacienda Blvd. | City of Industry | CA | 91744 | 12/23/20 | 12/22/30 |
| 7378 | 6457 Sepulveda Bl/Haynes | Van Nuys | CA | 91411 | 12/23/20 | 12/22/30 |
| 7379 | 9861 DeSoto Ave/Lassen | Chatsworth | CA | 91311 | 12/23/20 | 12/22/30 |
| 7380 | 505 W. Las Tunas | San Gabriel | CA | 91776 | 12/23/20 | 12/22/30 |
| 7381 | 10409 Whittier Blvd. | Whittier | CA | 90606 | 12/23/20 | 12/22/30 |
| 7382 | 1124 W. Glenoaks | Glendale | CA | 91202 | 12/23/20 | 12/22/30 |
| 7383 | 20105 Saticoy St/Winnetka | Canoga Park | CA | 91306 | 12/23/20 | 12/22/30 |
| 7384 | 19400 Ventura Blvd. | Tarzana | CA | 91356 | 12/12/20 | 12/11/30 |
| 7385 | 1400 Foothill Blvd. | La Verne | CA | 91750 | 12/23/20 | 12/22/30 |
| 7386 | 3832 Peck Rd. | El Monte | CA | 91732 | 12/23/20 | 12/22/30 |
| 7387 | 18090 W. Chatsworth St. | Granada Hills | CA | 91344 | 12/23/20 | 12/22/30 |
| 7389 | 9505 Sepulveda Bl/Plummer | Sepulveda | CA | 91343 | 12/23/20 | 12/22/30 |
| 7391 | 2980 E. Workman Ave. | West Covina | CA | 91791 | 12/23/20 | 12/22/30 |
| 7392 | 2521 W. Commonwealth | Alhambra | CA | 91803 | 12/12/20 | 12/11/30 |
| 7393 | 573 N. Azusa Ave. | Covina | CA | 91722 | 12/23/20 | 12/22/30 |
| 7394 | 140 E. Foothill Blvd. | Pomona | CA | 91767 | 12/23/20 | 12/22/30 |
| 7396 | 1302 Huntington Dr. | Duarte | CA | 91010 | 12/23/20 | 12/22/30 |
| 7397 | 2030 Montrose Ave. | Montrose | CA | 91020 | 12/23/20 | 12/22/30 |
| 7398 | 19782 E. Walnut Dr. N | City of Industry | CA | 91789 | 12/23/20 | 12/22/30 |
| 7400 | 21201 Sherman Way | Canoga Park | CA | 91303 | 12/23/20 | 12/22/30 |
| 7401 | 20900 Roscoe Bl/DeSoto | Canoga Park | CA | 91304 | 12/23/20 | 12/22/30 |
| 7402 | 8875 Glenoaks Blvd. | Sun Valley | CA | 91352 | 12/23/20 | 12/22/30 |
| 7403 | 12653 Sherman Way | North Hollywood | CA | 91605 | 12/23/20 | 12/22/30 |
| 7487 | 7649 Van Nuys Bl./Keswick | Van Nuys | CA | 91401 | 12/12/20 | 12/11/30 |
| 7488 | 13151 Crossroads Pkwy S. | City of Industry | CA | 91746 | 12/12/20 | 12/11/30 |
| 7489 | 1231 W. Caesar Chavez | Monterey Park | CA | 91754 | 12/23/20 | 12/22/30 |
| 7491 | 1190 W. Foothill Blvd. | Azusa | CA | 91702 | 12/23/20 | 12/22/30 |
| 7492 | 1471 N. Montebello | Montebello | CA | 90640 | 12/23/20 | 12/22/30 |
| 7493 | 5166 Vineland | North Hollywood | CA | 91601 | 12/23/20 | 12/22/30 |
| 7494 | 15360 Whittier Blvd. | Whittier | CA | 90603 | 12/23/20 | 12/22/30 |
| 7495 | 485 N. Rosemead | Pasadena | CA | 91107 | 12/12/20 | 12/11/30 |
| 7625 | 3215 N. Broadway | Los Angeles | CA | 90031 | 01/07/22 | 01/06/32 |
| 8150 | 6601 Lankershim Blvd | North Hollywood | CA | 91606 | 09/25/22 | 09/24/32 |
| 861 | 3640 Industrial Drive | Santa Rosa | CA | 95403 | 08/31/14 | 08/31/44 |
| 862 | 495 Stony Point | Santa Rosa | CA | 95401 | 06/28/16 | 06/28/46 |
| 864 | 6460 Redwood Drive | Rohnert Park | CA | 94928 | 04/28/16 | 04/28/46 |
| 866 | 1000 Farmers Lane | Santa Rosa | CA | 95405 | 07/29/16 | 07/29/46 |
| 863 | 1037 Vine Street | Healdsburg | CA | 95448 | 02/27/14 | 02/27/44 |
| 7466 | 373 Aviation Blvd | Santa Rosa | CA | 95403 | 04/19/21 | 04/19/31 |
| 7780 | 15895 Dam Rd Exit | Clearlake | CA | 95422 | 10/13/08 | 10/13/38 |