Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740

Proposed Counsel for Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| SUN GIR INCORPORATED, | Chapter 11 |
| Debtor and Debtor-in-Possession. | Jointly Administered With: |
| | 8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |
| Affects: | |
| ☐ Harshad & Nasir, Incorporated | **CASE MANAGEMENT CONFERENCE STATUS REPORT NUMBER 1:** |
| ☐ Senior Classic Leasing, LLC | |
| ☐ DFG Restaurants, Incorporated | Date: May 13, 2026 |
| ☐ Second Star Holdings, LLC | Time: 1:30 p.m.<br>Crtm: 5C |
| ☐ Third Star Investments, LLC | 411 West Fourth Street<br>Santa Ana, CA 92701 |
| ☒ Affects All Debtors | |

**TO THE HONORABLE SCOTT C. CLARKSON, OFFICE OF THE UNITED STATES TRUSTEE, ALL SECURED CREDITORS AND THEIR COUNSEL (IF KNOWN), 20 LARGEST UNSECURED CREDITORS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that pursuant to 11 USC section 105(d) the debtor and debtor in possession, through counsel, does hereby submit the following case management conference status report.

**I.      The Debtor's business, operations, principal assets and liabilities**

Sun Gir Incorporated ("SGI"), together with its affiliated debtors (collectively, the "Debtors"), operate a multi-location quick-service restaurant business consisting of fifty-nine (59) Carl's Jr. franchise locations throughout California, including fifty-two (52) locations in Southern California and seven (7) locations in Northern California. The Debtors employ approximately 1,000 employees across all locations and continue to operate all locations as debtors-in-possession.

The Debtors generate approximately $6 million to $7 million in monthly revenue and generated approximately $19.9 million in net sales during the first three months of 2026. Despite substantial revenue generation, the Debtors operated at a net loss exceeding $2 million during the same period due to increased labor costs, declining sales, franchise-related obligations, lease burdens, and vendor pressures.

As of April 15, 2026, the Debtors had approximately $1,065,656 in cash on hand across their operating accounts. The Debtors' principal assets include cash, accounts receivable, franchise rights, leasehold interests, inventory, equipment, and operating restaurant locations.

The Debtors' principal liabilities include secured obligations asserted by The Northern Trust Company, which asserts indebtedness of approximately $18,336,332.86 secured by substantially all Debtors' assets, together with obligations to landlords, franchisor obligations, vendor obligations, payroll obligations, utility expenses, and insurance obligations. McLane Foodservice, Inc. also asserts secured claims relating to inventory and proceeds thereof pursuant to a purchase money security agreement.

The Debtors' utility expenses average approximately $411,098.96 per month, and insurance premiums total approximately $33,959 per month. Significant vendor obligations include approximately $695,978 owed to McLane and approximately $54,015 owed to Freund Bakery, in addition to approximately $1.7 million in accounts payable and accrued expenses and approximately $771,606 in rent and related occupancy costs.

2

**II.      What precipitated the case filing**

The Debtors' chapter 11 filings were precipitated by a sustained period of financial distress driven by significant operational cost increases, declining revenue, vendor pressure, and franchise-related defaults.

Over the past two years, the Debtors experienced substantial increases in labor costs, most significantly resulting from California's increase in the fast-food minimum wage to $20.00 per hour. This materially increased payroll expenses across all fifty-nine operating restaurant locations and significantly compressed already thin operating margins.

At the same time, the Debtors experienced declining sales and reduced customer traffic, which management attributes in part to competitive pressures within the quick-service restaurant industry, reduced franchisor marketing support, and operational disruptions associated with executive turnover at the franchisor level.

These financial pressures were compounded by significant lease burdens, increasing rent obligations, rising utility expenses, insurance costs, and substantial vendor obligations necessary to maintain ongoing operations. In particular, McLane Foodservice, Inc., the Debtors' primary food distributor, required immediate reserve funding and threatened to materially shorten payment terms absent additional protections, creating an immediate risk of supply disruption across all store locations.

In addition, the Debtors received multiple prepetition default notices relating to franchise agreements and sublease obligations involving Carl's Jr., creating substantial risk of franchise termination, lease enforcement, and operational disruption if immediate restructuring efforts were not undertaken.

The Debtors also required continued access to cash collateral subject to the asserted liens of The Northern Trust Company in order to fund payroll, utilities, rent, vendor obligations, insurance, and ordinary course operations. Without immediate bankruptcy protection and use of cash collateral, the Debtors faced severe liquidity constraints that threatened their ability to continue operating.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

As a result of these combined pressures, the Debtors commenced these jointly administered chapter 11 cases on April 2, 2026, in order to preserve going concern value, stabilize operations, protect franchise operations, maintain employee continuity, and pursue an orderly restructuring for the benefit of creditors and stakeholders.

**III.      What the Debtors hope to accomplish in these chapter 11 cases**

The Debtors filed these chapter 11 cases with the goal of preserving enterprise value, maintaining uninterrupted operations across all restaurant locations, and implementing an operational restructuring that will allow the business to emerge as a viable going concern.

The Debtors seek to use chapter 11 to stabilize liquidity, preserve vendor relationships, maintain franchise operations, and continue ordinary course operations while addressing burdensome lease obligations, vendor pressures, and secured lender issues.

A primary objective of the Debtors is to rationalize underperforming locations through strategic lease rejection and operational restructuring. The Debtors have already commenced that process by filing a lease rejection motion for a location that that previously closed prepetition.

The Debtors also seek to negotiate consensual use of cash collateral, preserve relationships with critical vendors such as McLane Foodservice, Inc., address lender concerns with The Northern Trust Company, and maintain compliance with franchise obligations necessary to preserve the value of the operating business.

The Debtors intend to propose a chapter 11 plan that maximizes value for creditors through continued operations, operational efficiency, lease rationalization, and restructuring of secured and unsecured obligations, rather than liquidation of the enterprise.

**The Bensamochan Law Firm**
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

4

Preserving approximately 1,000 employee jobs, maintaining customer operations across the Carl's Jr. franchise system, and maximizing creditor recoveries through reorganization rather than liquidation remain the Debtors' central restructuring objectives.

**IV.      The principal business and financial problems facing the Debtors and how the Debtors intend to address these problems**

The Debtors' principal business and financial problems include liquidity constraints, increased labor costs, declining sales, burdensome lease obligations, vendor pressure, franchise defaults, and secured lender issues.

The most immediate issue facing the Debtors is liquidity. The Debtors require ongoing access to cash collateral in order to fund payroll, rent, utilities, insurance, food inventory, franchise obligations, and ordinary course operating expenses across all fifty-nine restaurant locations. Without continued access to cash collateral, the Debtors would be unable to maintain operations.

The Debtors are addressing this issue through continued negotiations with The Northern Trust Company and compliance with the Interim Cash Collateral Order entered by this Court, including weekly reporting, budget compliance, and adequate protection obligations.

A second major issue is the significant increase in labor costs caused by California's fast-food minimum wage increase to $20.00 per hour. This materially increased payroll expenses across all operating locations and substantially reduced profitability. At the same time, the Debtors have experienced declining sales and reduced customer traffic, which further compresses margins and limits available operating cash.

The Debtors are addressing these operational issues through tighter budget controls, labor cost management, store-level performance review, and elimination of underperforming locations that do not contribute positively to enterprise value. Burdensome lease obligations represent another major issue. Certain store locations continue to generate negative cash flow while carrying significant rent, tax, insurance, and

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

maintenance obligations. The Debtors have begun lease rationalization efforts by filing a motion to reject the lease of a previously closed location and will be filing a motion to reject the lease for Store No. 7393 located at 573 N. Azusa Avenue, Covina, California, which is operating at a sustained financial loss.

Vendor pressure also remains significant. McLane Foodservice, Inc., the Debtors' primary food distributor and critical vendor, required immediate reserve funding and additional weekly reserve payments in order to continue ordinary course supply arrangements. Maintaining uninterrupted vendor relationships is critical to preserving operations.

The Debtors are addressing this issue through critical vendor relief, continued reserve payments, and careful cash management designed to preserve food supply and operational continuity.

Finally, the Debtors continue to address franchise defaults and related operational risks involving Carl's Jr. franchise agreements and subleases. Preserving franchise rights is essential to the Debtors' reorganization strategy and overall enterprise value.

The Debtors intend to address these issues through operational stabilization, lease rationalization, vendor management, continued lender negotiations, and formulation of a chapter 11 plan focused on preserving going concern value and maximizing creditor recoveries.

**V.      The main legal disputes facing the Debtors**

The Debtors are presently addressing several significant legal and operational disputes arising both prepetition and postpetition.

First, the Debtors continue to address cash collateral and lender-related issues involving The Northern Trust Company, which asserts secured claims of approximately $18,336,332.86 and liens on substantially all Debtors' assets. The Debtors are currently operating pursuant to an Interim Cash Collateral Order, with a continued hearing scheduled for May 13, 2026.

6

Second, the Debtors continue to manage significant vendor disputes involving McLane Foodservice, Inc., the Debtors' primary food distributor and a critical vendor asserting purchase money security interests in inventory and proceeds. McLane required immediate reserve funding and continues to receive additional weekly reserve payments pursuant to the interim relief approved by this Court.

Third, the Debtors continue to address franchise defaults and related disputes involving Carl's Jr. franchise agreements and related sublease obligations. Prior to the Petition Date, the Debtors received multiple default notices concerning franchise obligations, lease defaults, and related rent obligations, creating substantial risk of franchise termination and operational disruption.

The Debtors are also evaluating underperforming lease locations and pursuing lease rejection where appropriate. One lease rejection motion has already been filed for a previously closed location, and the Debtors will be filing an additional motion to reject the lease for Store No. 7393 located at 573 N. Azusa Avenue, Covina, California, which is operating at a sustained loss and imposes significant continuing administrative expense on the estate.

Additionally, creditor Nydia Del Socorro Lazo has filed a Motion for Relief from the Automatic Stay seeking permission to proceed with a pending California Court of Appeal matter involving age discrimination and wage-and-hour claims arising from her prior employment with Sun Gir Incorporated. The underlying litigation was originally filed in Los Angeles Superior Court in May 2023 and includes claims for age discrimination, meal and rest break violations, inaccurate wage statements, unpaid wages, failure to produce personnel records, and unfair business practices. Summary judgment was previously entered in favor of the Debtor, and the matter is presently on appeal before the California Court of Appeal, Second Appellate District. The appeal was fully briefed and set for hearing on May 6, 2026, but was stayed as a result of the Debtors' chapter 11 filing. The creditor seeks limited stay relief solely to permit the appellate proceeding to proceed to final determination, while leaving enforcement of any judgment subject to further

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

bankruptcy court proceedings. The Debtors are reviewing the motion and evaluating the appropriate response.

The Debtors are further reviewing potential avoidance actions and related estate claims, including potential preference actions, postpetition transfer review, and other claims arising under sections 544 through 550 of the Bankruptcy Code, as part of their ongoing restructuring efforts.

**VI.      Estimated timing for confirmation of a plan**

The Debtors are presently focused on stabilizing operations, maintaining vendor relationships, preserving franchise operations, resolving cash collateral issues, and rationalizing underperforming lease locations.

Given the size and operational complexity of these jointly administered cases, together with ongoing lender negotiations, vendor issues, lease rejection strategy, franchise-related concerns, and pending litigation matters, the Debtors anticipate filing a proposed chapter 11 plan and disclosure statement after completion of the immediate operational stabilization process.

The Debtors presently propose a target deadline of August 29, 2026 for filing a disclosure statement and chapter 11 plan, subject to modification based upon continued operational developments and cash collateral resolution.

**VII.     Whether the Debtors are a health care business**

The Debtors are not health care businesses as defined under the Bankruptcy Code.

**VIII.    Whether the Debtors are a small business debtor or a single asset real estate debtor**

The Debtors are not small business debtors as defined under 11 U.S.C. § 101(51D), and the Debtors are not single asset real estate debtors as defined under 11 U.S.C. § 101(51B).

**IX.      Compliance with the requirements of the United States Trustee**

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

Since the Petition Date, the Debtors have worked diligently to comply with all requirements imposed by the Office of the United States Trustee and applicable Bankruptcy Code provisions.

The Debtors are working to ensure full compliance with all United States Trustee requirements, including debtor-in-possession accounts, insurance, monthly operating reports, payroll obligations, tax compliance, and other reporting obligations.

The Debtors have also continued to maintain ordinary course operations, preserve books and records, and coordinate with professionals and the Office of the United States Trustee regarding case administration.

The Debtors are in the process of completing all monthly operating reports, tax compliance requirements, and other standard chapter 11 reporting obligations.

The Debtors will continue to fully cooperate with the Office of the United States Trustee and comply with all ongoing reporting and administrative requirements throughout these chapter 11 cases.

**X.      Cash collateral**

The Debtors' continued use of cash collateral remains critical to the preservation of operations and the success of these chapter 11 cases.

The Northern Trust Company asserts prepetition secured claims of approximately $18,336,332.86 and liens on substantially all Debtors' assets, including cash collateral. McLane Foodservice, Inc. also asserts purchase money security interests relating to inventory and proceeds.

The Court previously entered an Interim Order Authorizing Use of Cash Collateral. On April 29, 2026, the Debtors filed a proposed further Interim Order Authorizing Continued Use of Cash Collateral, which, if approved, will permit continued use of cash collateral through May 13, 2026, subject to the terms of the approved budget and adequate protection provisions.

If granted, the Interim Order authorizes payment of ordinary course operating expenses, including payroll, rent, utilities, insurance, food inventory, franchise obligations,

**The Bensamochan Law Firm**
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

and critical vendor payments necessary to preserve operations. The Order also permits continued reserve payments to McLane and authorizes payment of H-1B visa-related management expenses, while prohibiting insider payments absent further Court approval.

The Debtors are required to comply with budget reporting, weekly variance reporting, and a 10% permitted variance threshold. Replacement liens and section 507(b) superpriority protections were granted to Northern Trust, together with additional adequate protection provisions.

The continued cash collateral hearing is scheduled for May 13, 2026. The Debtors are continuing negotiations with Northern Trust and other parties in interest in an effort to reach a consensual final cash collateral arrangement that preserves operations and maximizes value for the estates.

**XI.     Estate professionals**

The Debtors will be seeking Court approval via applications to employ general bankruptcy counsel, The Bensamochan Law Firm, Inc., through Eric Bensamochan, Esq., as general bankruptcy counsel for the Debtors and Debtors-in-Possession.

The Debtors also anticipate seeking approval to employ CR3 Partners, LLC, with Tim Skillman serving as Chief Restructuring Officer, to assist with operational restructuring, liquidity management, lender negotiations, cash collateral compliance, financial reporting, and restructuring strategy.

The Debtors continue to evaluate whether additional professionals, including accounting professionals, special litigation counsel, or other restructuring professionals, may be necessary as these cases progress.

No official committee has been formed as of the filing of this Status Report.

It is too early in these jointly administered chapter 11 cases to provide a reasonably accurate estimate of total professional fees. However, given the operational complexity of the cases, ongoing lender negotiations, cash collateral issues, lease restructuring efforts, franchise-related disputes, and other contested matters, the Debtors anticipate that these will remain active and heavily administered chapter 11 proceedings.

10

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**The Bensamochan Law Firm**
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**XII.   Cash flow**

The Debtors have submitted a four-week cash flow forecast in connection with the interim cash collateral process and ongoing restructuring efforts, which is attached hereto as **Exhibit A**. The forecast covers the period from April 21, 2026 through May 18, 2026 and reflects the Debtors' near-term liquidity position and operational performance.[1]

The forecast reflects total projected collections of approximately $6.46 million and total operating disbursements of approximately $6.96 million during the four-week period, resulting in projected negative net cash flow of approximately ($645,000).

The forecast further reflects a decline in available cash from approximately $1.45 million to approximately $304,000 by the end of the forecast period, underscoring the Debtors' continued reliance on cash collateral and the need for careful liquidity management.

The Interim Cash Collateral Order limits management-fee related payments to ordinary course salaries totaling approximately $35,184.24, together with $12,500.00 for H1(b) visa store managers, while prohibiting insider payments absent further Court approval.

The Debtors continue to revise financial projections as necessary based on operational performance and restructuring efforts.

Cash preservation and disciplined expense management remain central to the Debtors' restructuring strategy.

**XIII.   Proposed deadline for filing claims**

The Debtors anticipate requesting that the Court establish a general bar date for non-governmental proofs of claim following stabilization of initial case administration and continued progress on operational restructuring.

---

[1] The Debtors are not yet in a position to submit a reliable 60-day line-item budget. The Debtors continue to work with their secured lender and other parties in interest to develop a longer-term budget and, in the interim, have prepared this four-week cash flow forecast to reflect current operations and liquidity needs.

At present, the Debtors anticipate proposing a claims bar date approximately ninety (90) days after entry of an order establishing the deadline, subject to coordination with the Office of the United States Trustee and other parties in interest.

Governmental claim deadlines shall remain governed by applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The Debtors will seek entry of an appropriate bar date order in due course.

**XIV.   Unexpired leases and executory contracts**

The Debtors' lease portfolio and franchise-related obligations are central to these chapter 11 cases and to the Debtors' overall restructuring strategy.

The Debtors currently continue to operate all fifty-nine (59) restaurant locations. One previously filed lease rejection motion involved a store location that had been closed prepetition for approximately two years but for which ongoing lease obligations remained.

The Debtors will also file a motion to reject the lease for Store No. 7393 located at 573 North Azusa Avenue, Covina, California. That location has generated sustained losses and imposes significant continuing rent and operating costs that materially impair restructuring efforts. The store generated direct operating losses and would incur additional losses when required general and administrative expenses are allocated.

The Debtors continue to evaluate additional underperforming lease locations and may seek further lease rejection relief where appropriate. Lease rationalization remains an important part of preserving enterprise value and maximizing creditor recoveries.

The Debtors also continue to evaluate executory contracts and franchise agreements to determine whether assumption, rejection, or modification is appropriate in connection with the reorganization process.

**XV.   Anticipated sale of estate assets**

At present, the Debtors do not anticipate immediate liquidation or sale of substantial estate assets as part of their restructuring strategy.

12

The Debtors' primary objective is to preserve going concern value through continued operation of the business, stabilization of vendor and lender relationships, lease rationalization, and formulation of a confirmable chapter 11 plan.

The Debtors are focused on operational restructuring rather than liquidation and intend to maximize creditor recoveries through continued business operations and strategic restructuring of underperforming locations.

To the extent future asset sales become necessary or beneficial, including potential sales of equipment, leasehold interests, or other non-core assets, the Debtors will seek appropriate Court approval in the ordinary course.

At this time, no significant asset sale motion is pending.

**XVI.  <u>Proposed deadlines for the filing of a disclosure statement and plan</u>**

Given the operational complexity of these jointly administered cases, ongoing lender negotiations, lease restructuring efforts, franchise-related issues, and continued cash collateral matters, the Debtors require additional time to stabilize operations before filing a disclosure statement and chapter 11 plan.

The Debtors presently propose a target deadline of August 29, 2026 for filing a disclosure statement and chapter 11 plan, subject to modification based upon continued operational developments and cash collateral resolution.

The Debtors believe this timeline is realistic and necessary to permit sufficient evaluation of lease rationalization, claims analysis, cash collateral resolution, and formulation of a feasible confirmable plan.

The Debtors will continue to work with secured creditors, the Office of the United States Trustee, and other parties in interest toward formulation of a consensual and confirmable chapter 11 plan.

Dated:  April 29, 2026

*/s/Eric Bensamochan*
ERIC BENSAMOCHAN
Proposed Counsel for Debtor and
Debtor-in-Possession

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

# Exhibit A

**Sun Gir, Inc.**

4-Week Cash Flow Forecast

Actual Beginning Bank Balance as of 4/20/2026

($000s)

| Forecast Week<br>Period Ending | 1<br>4/27/26<br>Forecast | 2<br>5/4/26<br>Forecast | 3<br>5/11/26<br>Forecast | 4<br>5/18/26<br>Forecast | 4 Weeks<br>5/18/26<br>Total |
|---|---|---|---|---|---|
| Revenue | 1,526 | 1,531 | 1,532 | 1,532 | 6,120 |
| Other Income / Offsets | 90 | 88 | 77 | 88 | 343 |
| **Total Collections** | **1,616** | **1,619** | **1,608** | **1,620** | **6,463** |
| | | | | | |
| **Operating Disbursements** | | | | | |
| Sales Tax | (628) | - | - | - | (628) |
| COGS (Food & Paper) | (402) | (404) | (405) | (405) | (1,615) |
| Personnel | (413) | (622) | (413) | (622) | (2,069) |
| Insurance (Medical, Dental, WC) | (1) | (167) | - | (19) | (187) |
| Occupancy | (1) | (39) | (16) | (869) | (925) |
| Utilities | (101) | (88) | (102) | (90) | (382) |
| Marketing & Royalties | (169) | (154) | (154) | (163) | (641) |
| Repairs & Maintenance | (51) | (36) | (35) | (35) | (156) |
| Operating Supplies & Other Store-Level | (41) | (52) | (23) | (30) | (147) |
| G&A | (4) | (4) | (31) | (5) | (44) |
| Management Fees | (54) | (63) | (54) | - | (170) |
| **Total Operating Disbursements** | **(1,865)** | **(1,628)** | **(1,232)** | **(2,239)** | **(6,964)** |
| | | | | | |
| **Operating Cash Flow** | **(249)** | **(9)** | **376** | **(619)** | **(501)** |
| | | | | | |
| **Non-Operating Disbursements** | | | | | |
| Interest Expense | - | (89) | - | - | (89) |
| Principal | - | - | - | - | - |
| Professional Fees | - | (4) | (4) | (6) | (14) |
| BK Professional Fees | - | (90) | (90) | (90) | (270) |
| Store Closures Benefit - Rent | - | - | - | 200 | 200 |
| Store Closures Benefit - Cash flow before Rent | - | - | - | 29 | 29 |
| **Total Non-Operating Disbursements** | **-** | **(183)** | **(94)** | **133** | **(144)** |
| | | | | | |
| **Net Cash Flow** | **(249)** | **(192)** | **282** | **(486)** | **(645)** |
| | | | | | |
| **Beginning Bank Balance** | **1,450** | **700** | **508** | **790** | **1,450** |
| Net Cash Flow | (249) | (192) | 282 | (486) | (645) |
| Outstanding Checks | (500) | - | - | - | (500) |
| **Ending Book Balance** | **700** | **508** | **790** | **304** | **304** |

| In re:<br><br>Sun Gir Incorporated<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:26-bk-11056 |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**A true and correct copy of the foregoing document entitled (*specify*) <u>CASE MANGEMENT CONFERENCE STATUS REPORT NUMBER 1</u>** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  <u>April 29, 2026</u> , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
 Eric Bensamochan <u>Eric@eblawfirm.us</u>
 United States Trustee <u>ustpregion16.sa.ecf@usdoj.gov</u>
 Kenneth Misken DOJ-UST <u>Kenneth.M.Misken@usdoj.gov</u>
 William Schumacher <u>wschumacher@winthrop.com</u>
 Eric D Goldberg <u>eric.goldberg@dlapiper.com</u>
 Dustin P Branch <u>branchd@ballardspahr.com</u>
 Nahal Zarnighian <u>zarnighiann@ballardspahr.com</u>
 Michael John Agoglia  <u>michael.agoglia@alston.com</u>
 Jacob A. Johnson <u>jacob.Johnson@alston.com</u>
 Dustin P. Branch <u>branchd@ballardspahr.com</u>

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On  <u>April 29, 2026</u>  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth St., Ste. 5130
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  <u>April 29, 2026</u>  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 29, 2026 | Jennifer Svonkin | /s/ Jennifer Svonkin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2012*                                                                                           **9013-3.1.PROOF.SERVICE**

| In re: | | CHAPTER 11 |
|---|---|---|
| Sun Gir Incorporated | | CASE NUMBER 8:26-bk-11056 |
| | Debtor(s). | |

Freund: Sherry.W@Freundbakery.com

Sectran Security Inc spulido@sectransecurity.com

Flue Steam Inc. summer@fluesteam.com

John Youens-Crowe LLP john.youens@crowe.com

Covina Properties LLC bettina@packagemore.com

The Wasserstrom Company reneepennington@wasserstrom.com

Hewlett-Packard Financial Services Co
P.O Box 402582
Atlanta GA 30384-2582

Securities & Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, California 90071-9591

LA Dept of Water & Power
PO Box 30808
Los Angeles, CA 90030-0808

Southern California Edison
P.O. BOX 300
Rosemead, CA 91772-0002

Los Angeles County Tax Collector
P.O Box 54018
Los Angeles, CA 90054-0018

Orchid Bay LLC c/o Columbia Bank
110.S. Fairfax Avenue
Los Angeles, CA 90036

Crosspoint Realty Services, Inc
P.O. Box 889288
Los Angeles, CA 90088

Xenial Inc
PO Box 930157
Atlanta, GA 31193-0157

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                  **F 9013-3.1**

Label Matrix for local noticing
0973-8
Case 8:26-bk-11056-SC
Central District of California
Santa Ana
Wed Apr 29 18:08:30 PDT 2026

McLane Foodservice, Inc.
c/o Alston & Bird LLP
Attn: Jacob Johnson
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3467

Sun Gir Incorporated
1 Centerpointe Dr., Suite 400
La Palma, CA 90623-2530

The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

Watt Laverne, LLC
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

Carl's Jr. Restaurants LLC
c/o DLA Piper LLP
1201 W Peachtree St., Ste 2800
Atlanta, GA 30309-3450

Carl's Jr. Restaurants LLC
c/o Eric Goldberg, Esq.
2000 Avenue of the Stars, Ste 400 N Towe
Los Angeles, CA 90067-4735

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

The Wasserstrom Company
4500 E Broad St
Columbus, OH 43213-1360

US Securities & Exchange Commission
444 S Flower St., # 900
Los Angeles, CA 90071-2934

United States Trustee
411 W Fourth Street
Santa Ana, CA 92701-4504

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Watt Laverne, LLC
c/o Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Eric Bensamochan
The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064-3371

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Carl's Jr. Restaurants, LLC

(d)The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

(u)Nydia Del Socorro Lazo

End of Label Matrix
Mailable recipients    14
Bypassed recipients     3
Total                  17