Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740

Proposed Counsel for Debtor and
Debtor-in-Possession

**FILED & ENTERED**

**MAY 08 2026**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY bolte       DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| SUN GIR INCORPORATED, | Chapter 11 |
| Debtor and Debtor-in-Possession. | Jointly Administered With: |
| | 8:26-bk-11057-SC |
| | 8:26-bk-11058-SC |
| | 8:26-bk-11060-SC |
| Affects: | 8:26-bk-11061-SC |
| | 8:26-bk-11062-SC |
| ☐ Harshad & Nasir, Incorporated | **INTERIM ORDER GRANTING DEBTOR AND DEBTOR-IN-POSSESSION'S EMERGENCY MOTION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c) AND GRANTING RELATED RELIEF** |
| ☐ Senior Classic Leasing, LLC | |
| ☐ DFG Restaurants, Incorporated | |
| ☐ Second Star Holdings, LLC | |
| ☐ Third Star Investments, LLC | |
| ☒ Affects All Debtors | Date: April 23, 2026 |
| | Time: 11:00 a.m. |
| | Crtm: 5C |
| | 411 West Fourth Street |
| | Santa Ana, CA 92701 |

Upon the emergency motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of interim and final orders pursuant to section 363(c) of title 11 of the United States Code (the "Bankruptcy Code"): (i) authorizing the use of cash collateral; (ii) granting adequate protection; and (iii) granting related relief; and upon the

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

Declaration of Harshad Dharod and the Declaration and statements of Tim Skillman in support of the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and the Court having found that the Debtors have demonstrated that immediate and irreparable harm would result absent the relief requested herein pursuant to Bankruptcy Rule 6003; and that notice of the Motion was sufficient under the circumstances; and the Court having been advised that, as of April 15, 2026, the Debtors had approximately $1,065,656 in cash on hand across their operating accounts; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS:**

1. Pursuant to Bankruptcy Rule 6003, the Debtors have demonstrated that immediate and irreparable harm would result absent the relief requested herein.

2. McLane Foodservice, Inc. (with its affiliates, "McLane") asserts that Senior Classic Leasing, LLC's ("Senior Classic") inventory purchased from McLane and all proceeds thereof (the "McLane Collateral") are subject to McLane's pre-petition security interests ("McLane Prepetition Liens") granted pursuant to a Purchase Money Security Agreement, dated April 8, 2025 (the "McLane PMSA"), and properly perfected via a UCC-1 filed in the State of California on April 9, 2025 (filing number U250124990229).

3. The Northern Trust Company ("Northern Trust") asserts that Debtors are indebted to Northern Trust in the original principal amount of $20,000,000, representing the loan that Northern Trust extended to Debtors, evidenced by a Term Note dated September 5, 2025, that Debtors executed and delivered to Lender (the "Note"). Northern Trust asserts that the Note is secured by an Assignment of Leases dated September 5, 2025 ("Assignment of Leases 1"), encumbering the real properties listed in Exhibit A thereto. Northern Trust further asserts that the Note is secured by a second Assignment of Leases dated September 5, 2025 ("Assignment of Leases 2," which together with Assignment of Leases 1 are the "Collateral Assignments"), encumbering the real properties in Exhibit A attached thereto.

2

Further, Northern Trust, the Debtors, and Carl's Jr. Restaurants LLC entered into a Tri-Party Agreement (the "Tri-Party Agreement"), dated September 5, 2025.

4. Northern Trust asserts that the Note is further secured by a Commercial Security Agreement ("Security Agreement"), dated September 5, 2025, wherein Debtors granted Northern Trust a security interest in substantially all the Debtors' assets, including but not limited to, all accounts, general intangibles, inventory, goods, money, instruments, deposit accounts, certificate of deposit, deposits, investment property, books and records, documents of title, proceeds, products, replacements and increases of, additions and accessions to, and substitutions therefor (collectively, the "Northern Trust Collateral" and with the McLane Collateral, the "Collateral").

5. As of the petition date, Northern Trust asserts that the amount due and owing by Debtors to Northern Trust pursuant to the Loan Documents is $18,336,332.86 (the "Northern Trust Indebtedness").

6. Northern Trust asserts a perfected security interest by filing UCC-1 financing statements as follows (the "NT UCC-1s"):

   a. Filing No. 2025506542-9 with the Nevada Secretary of State for Second Star Holdings LLC, on September 5, 2025;

   b. Filing No. U250190842227 with the California Secretary of State for Senior Classic Leasing, LLC, on September 5, 2025;

   c. Filing No. U250190846731 with the California Secretary of State for Third Star Investments LLC, on September 5, 2025;

   d. Filing No. U250190844332 with the California Secretary of State for Harshad & Nasir Corporation, on September 5, 2025;

   e. Filing No. U250190845123 with the California Secretary of State for Sun Gir Incorporated, on September 5, 2025; and

   f. Filing No. U250190843229 with the California Secretary of State for DFG Restaurants, Incorporated, on September 5, 2025.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

3

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

7. Northern Trust asserts that the business relationship between Northern Trust and the Debtors is governed by a Term Loan Agreement executed by Debtors and delivered to Northern Trust dated September 5, 2025 (the "NT Loan Agreement"). Collectively, the NT Note, NT Collateral Assignments, the NT Security Agreement, NT UCC-1s, the NT Loan Agreement, the Tri-Party Agreement, and all other related documents executed in connection therewith are referred to as the "Northern Trust Loan Documents."

8. Pursuant to the Loan Documents, Northern Trust asserts that the Debtors are required to make monthly principal payments on or before the first day of each month in the amount of $238,095.24 plus interest and any other amounts due under the Northern Trust Loan Documents.

9. The applicable Debtors assert a critical need exists to use the McLane Collateral and for McLane to continue to extend post-petition credit in order to continue the operation of its business. Without the foregoing, the applicable Debtors assert they will not be able to pay their direct operating expenses and obtain goods and services needed to carry on their businesses during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estates.

10. The Debtors assert a critical need exists to use the Northern Trust Collateral. Without the foregoing, the applicable Debtors assert they will not be able to pay their direct operating expenses and obtain goods and services needed to carry on their businesses during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estates.

11. The permission granted herein to allow the Debtors to obtain the use of McLane's cash collateral, as defined in section 363(a) of the Bankruptcy Code (the "McLane Cash Collateral") and Northern Trust's cash collateral, as defined in section 363(a) of the Bankruptcy Code (the "Northern Trust Cash Collateral" and with the McLane Cash Collateral, the "Cash Collateral") and is necessary to avoid immediate and irreparable harm to the Debtors.

4

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

12. This Court concludes that entry of this Interim Order is in the applicable Debtors' best interests and its estates and creditors as its implementation will, among other things, allow for the continued operation and rehabilitation of the Debtors' existing businesses.

13. Notice of the Motion was sufficient under the circumstances and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

14. The Debtors are authorized to use Cash Collateral on an interim basis through May 13, 2026, solely as set forth herein.

15. The Debtors are authorized to use Cash Collateral to fund:

    a. payment of prepetition wages and employee obligations in accordance with the Court's order approving the wages motion;

    b. payment of McLane in accordance with the Court's order approving the critical vendors motion; and

    c. payment of postpetition operating expenses incurred in the ordinary course of business, including payroll, rent, utilities, insurance, and inventory, through the continued hearing.

16. The Debtors shall not:

    a. make any payments to insiders or insider entities;

    b. pay any management fees other than ordinary course salaries up to $35,184.24 and $12,500.00 to H1(b) Visa store managers; or

    c. make any payments on account of prepetition obligations except as expressly authorized by this Order or other orders of the Court.

17. Except as otherwise set forth in this Interim Order, the Debtors are authorized to use Cash Collateral to pay ordinary and necessary operating expenses, including all postpetition amounts due to Carl's Jr. Restaurants LLC ("Franchisor") under the Franchise Agreements and restaurant subleases between Franchisor and the Debtors, pursuant to the budget attached hereto as Exhibit "A" (as amended from time to time pursuant to Paragraph 13, below, the "Budget") and on the terms set forth in this Interim Order.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

18. Each week, beginning the first week this Interim Order approving this use of Cash Collateral is entered by the Court, by no later than Friday at 5:00 p.m. (prevailing Pacific Time) Debtors shall deliver to the advisors for Northern Trust, Franchisor and McLane a variance report (a "Variance Report") setting forth (i) Debtors' actual cash flow for the preceding week compared to the Budget (ii) the actual disbursements made during the preceding week compared to the applicable line item in the Budget, and (iii) an explanation of any material variances. For purposes of this Interim Order, Debtors shall ensure that at no time shall there occur an unfavorable variance of more than 10% from the aggregate cumulative operating cash disbursements (on a consolidated basis) in the Budget for the four (4) week period ending the week prior to the delivery of the Variance Report, tested every week on a cumulative rolling four (4) week basis (any such variance a "Non-Permitted Variance"). Any further proposed budget shall be of no force and effect unless and until it is approved by Northern Trust and until such approval is given, the prior Budget shall remain in effect; provided, that if a proposed budget has been neither approved nor disapproved within two (2) weeks of its delivery, it shall be deemed a Budget; provided further, that if Northern Trust or McLane has rejected a proposed budget, Debtors may seek authorization of the Court to make such budget a Budget (and Northern Trust and/or McLane may oppose such relief).

19. As adequate protection of Northern Trust's interests in the Collateral and Cash Collateral and for the use of the Cash Collateral, to the extent of Northern Trust's prepetition liens and claims, Northern Trust is hereby granted as security for its prepetition claims against the Debtors (A) valid, enforceable, first priority, fully perfected security interests in and liens on all of Debtors' Collateral, including postpetition proceeds, products, offspring, rents, and profits of the prepetition Collateral and other postpetition replacement Collateral, and all proceeds thereof (the "Northern Trust Adequate Protection Liens") with the same validity, priority, and extent as Northern Trust's prepetition liens, subject to further order of the Court, and (B) a super-priority administrative expense claim under sections 503 and 507 of

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

the Bankruptcy Code to the extent of any diminution of the Collateral during the Debtors' chapter 11 cases (the "Northern Trust Adequate Protection Priority Claims").

20. As adequate protection for the use of the McLane Cash Collateral, to the extent of McLane's prepetition liens and claims, McLane is hereby granted as security for its prepetition claims against Senior Classic (A) valid, enforceable, first priority, fully perfected security interests in and liens on all of Senior Classic's inventory purchased from McLane and all proceeds thereof, including post-petition inventory (the "McLane Adequate Protection Liens") with the same validity, priority, and extent as McLane's prepetition liens, subject to further order of the Court, and (B) a super-priority administrative expense claim under sections 503 and 507 of the Bankruptcy Code to the extent of any diminution of the McLane Collateral during the applicable Debtors' chapter 11 cases (the "McLane Adequate Protection Priority Claims").

21. All obligations of the applicable Debtors to McLane on account of McLane's shipment of goods to the applicable Debtors after the Petition Date (A) shall be entitled to priority over all other administrative expense claims pursuant section 364(c)(1) of the Bankruptcy Code except McLane Adequate Protection Priority Claims and Northern Trust's Adequate Protection Priority Claims, which such claims shall be of equal priority, and (B) shall be secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by valid, enforceable, fully perfected security interests in and liens on the applicable Debtors' inventory purchased from McLane and all proceeds thereof (including post-petition inventory), to the same extent, against the same Debtor(s), and with the same priority as McLane's liens on the Debtors' property immediately prior to the filing of the Debtors' bankruptcy petitions, such that McLane's postpetition trade credit will be secured in the inventory purchased from McLane and all proceeds thereof to the same extent and with the same priority as McLane's prepetition claims were secured by the Debtors' property prepetition; for the avoidance of doubt, to the extent McLane held on the Petition Date valid, enforceable, fully perfected first priority security interests in the Senior Classic inventory purchased from McLane, McLane is hereby granted valid, enforceable, fully perfected first priority security interests

7

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

in the inventory purchased from McLane (including post-petition inventory) and all proceeds thereof subject to no superior liens, claims, or interests.

22. The liens granted to McLane and Northern Trust hereunder automatically attach and become valid and perfected immediately upon entry hereof without the requirement of any further action by any party; provided that if McLane or Northern Trust determines to file any financing statements, notice of liens or similar instruments, the applicable Debtors will cooperate and assist in any such filings and the automatic stay shall be modified to allow such filing.

23. As further compensation for the consensual use of the Collateral (including Cash Collateral) by Debtors, and in accordance with sections 361 and 363 of the Bankruptcy Code, upon fourteen (14) days negative notice to the Court, the United States Trustee and any committee appointed pursuant to section 1103 of the Bankruptcy Code in this case, if no party objects to the proposed payment, Northern Trust and/or McLane shall receive from Debtors, not later than five business days after the negative notice period has expired if no party has objected, or if a party objects, five days after the Court makes a final ruling regarding the proposed payment, payments of reasonable and documented fees and disbursements (including upon conversion to chapter 7) incurred subsequent to the Petition Date.

24. The Budget attached hereto as Exhibit A is approved, including an allowed variance in the aggregate not to exceed 10% of the four week budget.

25. The Debtor shall, on a weekly basis, segregate those amounts set forth in the BK Professional Fees line item and such amounts shall only be utilized to pay Professionals' Fees as and when approved and in accordance with any applicable order(s) entered in the Cases.  For the avoidance of doubt, and notwithstanding anything to the contrary contained herein, all amounts segregated shall remain available to pay Professionals' Fees regardless of whether the Debtors' usage of cash collateral is extended beyond May 13, 2026, or in the event the Cases are either converted to Chapter 7 or dismissed.

26. A continued hearing on the Motion shall be held on May 13, 2026, at 1:30 p.m. PST, or such other date and time as the Court may direct.

27. Nothing in this Order shall constitute a finding regarding the validity, priority, or extent of any alleged lien or claim, and all rights of the Debtors and parties in interest to challenge the same are expressly reserved.

28. All applicable banks and financial institutions are authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, wires, and automated clearing house transfers issued by the Debtors, whether issued before, on, or after the Petition Date, provided that sufficient funds are available.

29. The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

30. The requirements of Bankruptcy Rule 6003 are satisfied.

31. The stay imposed by Bankruptcy Rule 6004(h) is waived.

32. This Order shall be immediately effective and enforceable upon entry.

33. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

### 

Date: May 8, 2026

Scott C. Clarkson
United States Bankruptcy Judge

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**Sun Gir, Inc.**

4-Week Cash Flow Forecast

Actual Beginning Bank Balance as of 4/20/2026

($000s)

| Forecast Week<br>Period Ending | 1<br>4/27/26<br>Forecast | 2<br>5/4/26<br>Forecast | 3<br>5/11/26<br>Forecast | 4<br>5/18/26<br>Forecast | 4 Weeks<br>5/18/26<br>Total |
|---|---|---|---|---|---|
| Revenue | 1,526 | 1,531 | 1,532 | 1,532 | 6,120 |
| Other Income / Offsets | 90 | 88 | 77 | 88 | 343 |
| **Total Collections** | **1,616** | **1,619** | **1,608** | **1,620** | **6,463** |
| | | | | | |
| **Operating Disbursements** | | | | | |
| Sales Tax | (628) | - | - | - | (628) |
| COGS (Food & Paper) | (402) | (404) | (405) | (405) | (1,615) |
| Personnel | (413) | (622) | (413) | (622) | (2,069) |
| Insurance (Medical, Dental, WC) | (1) | (167) | - | (19) | (187) |
| Occupancy | (1) | (39) | (16) | (869) | (925) |
| Utilities | (101) | (88) | (102) | (90) | (382) |
| Marketing & Royalties | (169) | (154) | (154) | (163) | (641) |
| Repairs & Maintenance | (51) | (36) | (35) | (35) | (156) |
| Operating Supplies & Other Store-Level | (41) | (52) | (23) | (30) | (147) |
| G&A | (4) | (4) | (31) | (5) | (44) |
| Management Fees | (54) | (63) | (54) | - | (170) |
| **Total Operating Disbursements** | **(1,865)** | **(1,628)** | **(1,232)** | **(2,239)** | **(6,964)** |
| | | | | | |
| **Operating Cash Flow** | **(249)** | **(9)** | **376** | **(619)** | **(501)** |
| | | | | | |
| **Non-Operating Disbursements** | | | | | |
| Interest Expense | - | (89) | - | - | (89) |
| Principal | - | - | - | - | - |
| Professional Fees | - | (4) | (4) | (6) | (14) |
| BK Professional Fees | - | (90) | (90) | (90) | (270) |
| Store Closures Benefit - Rent | - | - | - | 200 | 200 |
| Store Closures Benefit - Cash flow before Rent | - | - | - | 29 | 29 |
| **Total Non-Operating Disbursements** | **-** | **(183)** | **(94)** | **133** | **(144)** |
| | | | | | |
| **Net Cash Flow** | **(249)** | **(192)** | **282** | **(486)** | **(645)** |
| | | | | | |
| **Beginning Bank Balance** | **1,450** | **700** | **508** | **790** | **1,450** |
| Net Cash Flow | (249) | (192) | 282 | (486) | (645) |
| Outstanding Checks | (500) | - | - | - | (500) |
| **Ending Book Balance** | **700** | **508** | **790** | **304** | **304** |