Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740
Email: eric@eblawfirm.us

Proposed Counsel for Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| SUN GIR INCORPORATED | Chapter 11 |
| Debtor and Debtor-in-Possession. | **Jointly Administered With:**<br><br>8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |

Affects:

☐ Harshad & Nasir, Incorporated
☐ Senior Classic Leasing, LLC
☐ DFG Restaurants, Incorporated
☐ Second Star Holdings, LLC
☐ Third Star Investments, LLC

☒ Affects All Debtors

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING (I) THE AGREEMENT WITH CR3 PARTNERS, LLC TO PROVIDE TIM SKILLMAN TO SERVE AS THE DEBTORS' CHIEF RESTRUCTURING OFFICER AND (II) TO PROVIDE TEMPORARY STAFF EFFECTIVE AS OF APRIL 14, 2026; DECLARATION OF TIM SKILLMAN IN SUPPORT**

[No hearing required unless requested per L.B.R. 2014-1(b)]

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, IF KNOWN, AND OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Sun Gir Incorporated and the above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed this Motion seeking authorization and approval of the agreement with CR3 Partners, LLC to provide Tim Skillman to serve as the Debtors' Chief Restructuring Officer and to provide temporary staff effective as of April 14, 2026.

**PLEASE TAKE FURTHER NOTICE THAT** no hearing will be conducted hereon unless a written response is filed with the clerk of the United States bankruptcy court at 411 West Fourth Street, Santa Ana, CA 92701 before close of business on May 27, 2026, which is at least 14 days from the date of service hereof.

**PLEASE TAKE FURTHER NOTICE THAT** any response shall be in writing and filed with the clerk, and a copy must be served upon counsel for the moving party prior to the date and time set forth herein. If a response is filed, a hearing will be held with notice only to the objecting party.

**PLEASE TAKE FURTHER NOTICE THAT** if no hearing on such notice or motion is timely requested, the relief requested shall be deemed to be unopposed, and the court may enter an order granting the relief sought or the noticed action may be taken.

Dated: May 13, 2026

**THE BENSAMOCHAN LAW FIRM, INC.**

/s/Eric Bensamochan
Eric Bensamochan, Esq. SBN 255482
Proposed Counsel to the Debtors and
Debtors In Possession

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

2                                    **MOTION**

Sun Gir Incorporated and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "SGI" or the "Debtors"), respectfully state the following in support of this motion (this "Motion"):

**RELIEF REQUESTED**

1. SGI respectfully seeks entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing and approving (a) the agreement with CR3 Partners, LLC ("CR3") effective as of April 14, 2026, as modified by this Motion, a copy of which is attached hereto as Exhibit B (the "CRO Agreement"), pursuant to which CR3 has agreed to provide Tim Skillman to serve as the Debtors' Chief Restructuring Officer ("CRO") as well as other personnel as needed from time to time to support the CRO (collectively, the "Temporary Staff"); and (ii) the employment of Mr. Skillman and the Temporary Staff, effective as of April 14, 2026.

2. CR3 has recently announced it will soon be acquired by Oliver Wyman, LLC ("Oliver Wyman"), with an expected closing date of the acquisition to occur on June 1, 2026. SGI and CR3 further seek entry of an order approving the assignment of the CRO Agreement to Oliver Wyman, attached hereto as Exhibit C, effective as of the closing date of the acquisition.

**JURISDICTION AND VENUE**

3. The United States Bankruptcy Court for the Central District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter concerns the administration of this bankruptcy estate; accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363(b), Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1(b) and 9013-1(o).

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

3                                                    **MOTION**

**BACKGROUND**

A.      General Background

5.      SGI is a quick service restaurant franchisee that operates 59 locations across California and employ approximately 1,000 employees.  The Debtors' business depends on uninterrupted operations, timely payment of expenses, and accurate financial reporting to stakeholders.

6.      On April 2, 2026 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

7.      Since the Petition Date, the Debtors have faced heightened scrutiny regarding their financial reporting, cash flow projections, and liquidity management, particularly in connection with their use of cash collateral and communications with key stakeholders.  The Debtors have taken steps to improve transparency, including enhancing reporting and providing additional financial information.  However, given the complexity of the Debtors' operations and the demands of these chapter 11 cases, the Debtors determined that additional restructuring leadership and financial oversight are necessary.

8.      In light of these circumstances, the Debtors determined that retaining an experienced restructuring firm to provide CRO services is appropriate to assist with financial management, liquidity oversight, restructuring strategy, and stakeholder communications.  The Debtors therefore retained CR3 to provide CRO services.

9.      Through its CRO services, CR3 will assist the Debtors with financial reporting, cash flow forecasting, liquidity management, and restructuring related analysis. CR3 will also assist in strengthening financial controls and overseeing financial

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

4

**MOTION**

management functions to promote transparency and improve the reliability of financial information provided to creditors and other stakeholders.

B. The Appointment of Mr. Skillman as CRO.

10. Attached hereto is the declaration of Mr. Skillman, which demonstrates that CR3 and Mr. Skillman are disinterested persons.

## QUALIFICATIONS

11. The Debtors are familiar with the professional standing and reputation of CR3 and Mr. Skillman, as well as the Temporary Staff, who the Debtors understand and recognize have a wealth of experience in providing interim management and restructuring services to debtors and other interested parties in restructurings and reorganizations. CR3 professionals provide crisis management, turnaround, financial and management consulting, as well as business, operational and strategic assistance typically in distressed business settings. CR3 serves troubled companies, debtors, and secured and unsecured creditors, creditors' committees, equity holders, and other parties in both in-court and out-of-court engagements. Furthermore, CR3 professionals have provided restructuring and financial advisor services in numerous complex cases across the country.

12. CR3 is well qualified to act on the Debtors' behalf, given its extensive knowledge and expertise regarding chapter 11 proceedings. Mr. Skillman has more than 25 years of corporate recovery, bankruptcy, financial advisory, and interim management experience. He has held Chief Restructuring Officer and other interim management positions for various companies, including companies operating under bankruptcy protection. He also has advised numerous clients with regard to debtor in possession financings, covenant negotiations, bankruptcy preparation, asset sales, business plans, operational improvement, liquidity forecasts, wind-downs and restructuring and sale strategies.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**MOTION**

**SCOPE OF SERVICES**[2]

13.     CR3 will make Mr. Skillman available to serve as CRO of the Debtors and make the Temporary Staff available to perform other services required of CR3, as set forth in the CR3 engagement letter (the "CRO Agreement") and this Motion.

14.     Mr. Skillman will focus primarily on the Debtors' chapter 11 process and its efforts to seek either a going concern sale or reorganization pursuant to a Chapter 11 plan, as well as provide leadership at the Company and advice and guidance with respect to the Debtors' bankruptcy strategy.  CR3's scope of services includes, but is not limited to, the following:

a.     Provide oversight and support to the Company and the Company's other professionals in connection with execution of the Company's business plan, reorganization plan, any sales process, and the overall administration of activities within the chapter 11 proceeding;

b.     Provide oversight and assistance in connection with the preparation of financial reporting and related disclosures required by the bankruptcy court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports, and any other disclosures required by the Company in connection with the bankruptcy process, or in keeping with our professional and ethical responsibilities;

c.     Provide oversight and assistance in connection with the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of proposed transactions for which court approval is sought;

---

[2] The Proposed Order shall control in the event of any inconsistency with the terms of this Motion or the CRO Agreement.  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the CRO Agreement.

**MOTION**

**The Bensamochan Law Firm**
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

d.    Participate in meetings and provide assistance to any official committee(s) appointed in the case, the U.S. Trustee, other parties in interest, including contractual counterparties, and professionals hired by the same;

e.    Evaluate and make recommendations as needed to maximize the value of the Company's assets;

f.    Provide oversight and assistance in connection with the preparation of analysis of creditor claims;

g.    Provide oversight and assistance in connection with the evaluation and analysis of avoidance actions, including, fraudulent conveyances and preferential transfers, and in the defense and prosecution of other litigation, if necessary;

h.    Provide testimony, and exhibits, in litigation/bankruptcy matters as required;

i.    Evaluate the cash flow generation capabilities of the Company for valuation maximization opportunities;

j.    Provide oversight and assistance in connection with communications and negotiations with constituents including investors and other critical constituents to the successful restructuring of the Company, as well as to directly communicate with stakeholders where appropriate, and to establish communication protocols;

k.    Subject to Company approval, manage professionals engaged by the Company or committees or other stakeholders involved in a chapter 11 or restructuring of the Company, and to directly communicate with such stakeholders as appropriate;

l.    Assist in development of a plan of reorganization and in the preparation of information and analysis necessary for the development of a plan and disclosure statement, and confirmation of a plan in the chapter 11 proceeding; and

m.    Perform other tasks as directed by the Company and agreed to by CR3, including all tasks necessary to facilitate the Company's restructuring, or in keeping with our ethical responsibilities, at CR3's sole discretion.

15.    With respect to all such efforts outlined above, the CRO will seek to interface and report in a timely manner to the Debtors' Board any decisions to be considered by the

**MOTION**

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

Board, furnish to the extent possible all financial or other information requested by or on behalf of the Board, and attend Board meetings and report progress on sale or restructuring initiatives and actions instructed by the Board.  Additionally, the CRO will interact with the Debtors' retained professionals to ensure that work is performed efficiently and without duplication of effort.

## COMPENSATION

16.      The Debtors propose to compensate CR3 on an hourly fee basis for the time worked on the engagement by CR3's professionals (the "CR3 Professionals") with such billings to occur monthly, all as more fully set forth in the CRO Agreement.  The principal CR3 Professionals responsible for this engagement, including Mr. Skillman, propose to bill at the following standard hourly rates in the following ranges, which rates are subject to periodic increase, upon notice to the Debtors:

| Professionals | Hourly Rate |
|---|---|
| Tim Skillman | $950 |
| Partners | $795 – 1295 |
| Directors and Managers | $450 - $795 |
| Senior Associates | $375 - $450 |

17.      Notwithstanding the foregoing hourly rates, CR3 has agreed to a blended hourly rate cap of $700, which the Debtors submit provides a meaningful cost control mechanism and further demonstrates the reasonableness of the proposed compensation structure.

18.      In addition, CR3 will seek reimbursement for reasonable and necessary expenses incurred in connection with the Chapter 11 Cases, including but not limited to travel, postage, telephone conferences, etc. all as more fully set forth in the CRO Agreement.

19.      If the Court approves the relief requested herein, Mr. Skillman will be employed as CRO and the Temporary Staff will be authorized to provide services to the

**MOTION**

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

Debtors pursuant to section 363 of the Bankruptcy Code, rather than CR3 being retained as a professional under section 327 of the Bankruptcy Code.  Accordingly, CR3 will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, and to maintain transparency, CR3 will file with the Court and serve on the Debtors, the U.S. Trustee, and counsel to the Committee, a report (the "Staffing Report") by the 28th day of each month covering the previous month, which Staffing Reports will provide information on CR3's compensation for such month and the names, job classifications, billing rates, and functional areas of the CR3 Professionals performing the engagement.  The Staffing Reports will further summarize hours worked by activity category (e.g., financial management, operational management, hearings, etc.) and reimbursable expenses by expense category.  Parties in interest in the Chapter 11 Cases shall have the right to object to CR3's compensation and expenses set forth in Staffing Reports within 14 days after CR3 files such reports.  Such compensation and expenses shall be subject to Court review if an objection is filed.

20.    In the absence of an objection, CR3 may be paid fees, subject to the $700/hour cap, and expenses pursuant to the Staffing Report for the prior month.  In the event of an objection, only fees and expenses not subject to the objection may be paid, until such time as any objection is resolved.

21.    To the best of the Debtors' knowledge, the compensation arrangement provided in the CRO Agreement and described herein is consistent with, and typical of, arrangements entered into by CR3 and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

**INDEMNIFICATION**

22.    As a material part of the consideration for which CR3 has agreed to provide the Services described herein, and pursuant to the CRO Agreement, the Debtors have agreed to indemnify CR3 and certain related entities as set forth in the CRO Agreement.

**MOTION**

23.     The terms of the Services Agreement and indemnification provisions included therein were negotiated at arm's-length between the Debtors and CR3, and the Debtors respectfully submit that these provisions of the CRO Agreement are reasonable and in the best interests of the Debtors, their estates, and their creditors. Moreover, consistent with the practice in this jurisdiction, the Debtors request, and CR3 has agreed, that the Court approve the indemnification provisions reflected in the CRO Agreement subject to the modifications set forth in the proposed Order.  The Debtors believe that the proposed modifications to the indemnification provisions of the Services Agreement are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction and, therefore, should be approved.

**BASIS FOR RELIEF**[3]

24.     Section 363(b) of the Bankruptcy Code provides in pertinent part:  "The trustee, after notice and a hearing, may, use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment.  See In re Walter, 83 B.R. 14, 19–20 (B.A.P. 9th Cir. 1988); ; In re Phoenix Steel Corp., 82 B.R. 334, 336-36 (Bankr. D. Del. 1987).

25.     The proposed use, sale or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by a sound business justification.  See In re Montgomery Ward, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such

---

[3] Pursuant to section 363(c) of the Bankruptcy Code, entering into contractual arrangements for the provision of interim management is within the ordinary course of Debtors' business as contemplated by the Bankruptcy Code.  Corporations routinely hire and fire senior executives.  Notwithstanding this contention, the Debtors have filed the Motion in the interest of full disclosure to the Court and the Debtors' stakeholders.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

actions"). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. See, e.g., Institutional Creditors of Continental Air Lines v. Continental Air Lines (In re Continental Air Lines), 780 F.2d 1223, 1226 (5th Cir. 1986) (court applied "business judgment" standard in context of proposed "use" of estate property). Moreover, pursuant to section 105 of the Bankruptcy Code, a court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of a debtor's assets. See, e.g., In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986).

26. Once a debtor articulates a valid business justification, "the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See id. (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

27. Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. See, e.g., In re First Servs. Corp., 25 B.R. 66, 69 (Bankr. D. Conn. 1982). Indeed, courts have approved such a request by debtors under section 363(b) of the Bankruptcy Code for the purpose of employing officers to provide interim management and/or restructuring services. See, e.g., In re BHCosmetics Holdings LLC, Case No. 22-10050 (CSS) (Bankr. D. Del. Feb. 7, 2022) [Docket No. 128]; In re The Collected Grp., LLC, Case No. 21-10663 (LSS) (Bankr. D. Del. Apr. 30, 2021) [Docket No. 125]; In re F+W Media, Inc., Case No. 19-10479 (KG) (Bankr. D. Del. Apr. 3, 2019) [Docket No. 122]; In re Fallbrook Techs. Inc., Case No. 18-10384 (MFW) (Bankr. D. Del. Apr. 10, 2018).

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

11                                                      **MOTION**

28.     Given the current status of these proceedings, it is imperative that the Debtors fill the position of CRO now.  Given his significant restructuring experience, including serving as CRO for other companies in chapter 11, and familiarity with the Debtors' operations, their books and records, and the Chapter 11 Cases, the Debtors submit that Mr. Skillman is an appropriate person to serve as the Debtors' CRO.  The Debtors submit that, based on the circumstances of the Chapter 11 Cases, the relief requested herein is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## NO PRIOR REQUEST

29.     No prior request for the relief sought in this Motion has been made by SGI to this or any other court.

## CONCLUSION

WHEREFORE, SGI respectfully requests that the Court enter an Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: May 13, 2026                    **THE BENSAMOCHAN LAW FIRM, INC.**

/s/Eric Bensamochan
Eric Bensamochan, Esq. SBN 255482
Proposed Counsel to the Debtors and
Debtors In Possession.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

12                                    **MOTION**

# EXHIBIT "A"

Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740
Email: eric@eblawfirm.us

Proposed Counsel for Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| SUN GIR INCORPORATED, et al.[1] | Chapter 11 |
| Debtor and Debtor-in-Possession. | **Jointly Administered With:**<br>8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |

Affects:

☐ Harshad & Nasir, Incorporated
☐ Senior Classic Leasing, LLC
☐ DFG Restaurants, Incorporated
☐ Second Star Holdings, LLC
☐ Third Star Investments, LLC

☒ Affects All Debtors

**(PROPOSED) ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING (I) THE AGREEMENT WITH CR3 PARTNERS, LLC TO PROVIDE TIM SKILLMAN TO SERVE AS THE DEBTORS' CHIEF RESTRUCTURING OFFICER AND THE TEMPORARY STAFF; AND (II) THE EMPLOYMENT OF MR. SKILLMAN AND THE TEMPORARY STAFF, EFFECTIVE AS OF APRIL 14, 2026**

[No hearing required unless requested per L.B.R. 2014-1(b)]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include Sun Gir, Inc. (2519), Harshad & Nasir, Inc. (6260), Senior Classic Leasing, LLC (3884), DFG Restaurants, Inc. (2121), Second Star Holdings, LLC (0844) and Third Star Investments, LLC (0421). The Debtors' service address is 1 Centerpointe Drive, Suite 400, La Palma, CA 90623

**ORDER**

Upon the motion (the "Motion")[2] of the Debtors for the entry of an order (this "Order"), pursuant to sections 105 and 363 of the Bankruptcy Code, authorizing and approving (i) the CRO Agreement with CR3, effective as of April 14, 2026, a copy of which is attached to the Motion as Exhibit B, pursuant to which CR3 has agreed to provide (a) Tim Skillman to serve as the Debtors' CRO and (b) additional Temporary Staff; and (ii) the employment of Mr. Skillman and the Temporary Staff, effective as of April 14, 2026, all as more fully described in the Motion; and (iii) the assignment of the CRO Agreement to Oliver Wyman, attached to the Motion as Exhibit C, effective as of the closing date of the acquisition, and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interest of the Debtors, their estates, and creditors; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

a. The Motion is GRANTED as set forth herein.

b. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized to employ CR3 Partners, LLC ("CR3"), effective as of April 14, 2026, to provide Tim Skillman to serve as the Debtors' Chief Restructuring Officer ("CRO") as well as other personnel as needed from time to time to support the CRO, pursuant to the terms and

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

---

[2] Capitalized terms used, but not otherwise defined herein, have the meaning given to them in the Motion.

**ORDER**

conditions set forth in the Motion and the CRO Agreement, to assign the CRO Agreement, together with all obligations thereunder, to Oliver Wyman effective as of the closing date of the acquisition, subject to the terms of this Order, which apply notwithstanding anything in the Motion, CRO Agreement, or any exhibit(s) related thereto to the contrary.

c.     CR3 will not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/administrator, or investor/acquirer) in connection with the Chapter 11 Cases unless authorized by further Court order.

d.     If the Debtors seek to have CR3 personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either (i) adding executive officers, or (ii) materially altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

e.     No principal, employee or independent contractor of CR3 and its affiliates shall serve as a director of any of the Debtors during the pendency of the Chapter 11 Cases.

f.     CR3 will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, CR3 shall file with this Court and serve on the Debtors, the U.S. Trustee, and counsel to the Committee, a report (the "Staffing Report") by the 28th day of each month covering the previous month, which Staffing Reports will provide information on CR3's compensation for such month and the names, job classifications, billing rates, and functional areas of the CR3 Professionals performing the engagement.  The Staffing Reports will further summarize hours worked by activity category (e.g., financial management, operational management, hearings, etc.) and reimbursable expenses by expense category.  Parties in interest in the Chapter 11 Cases shall have the right to object to CR3's compensation and expenses set forth in Staffing Reports within 14 days after CR3 files such reports.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed.  To the extent that no objections are pending as of the 15th day following the filing of a Staffing Report, the

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

3                                    **ORDER**

Debtors shall be authorized to pay CR3 the amounts due for services provided during the applicable period in accordance with the terms and conditions of the CRO Agreement, the Motion, and this Order.

g.      All fees and expenses incurred by CR3 shall be treated as administrative expenses of the Debtors' estates.

h.      The Debtors shall indemnify CR3 under the terms of the CRO Agreement, as modified pursuant to this Order.

i.      CR3 shall not be entitled to indemnification, contribution, or reimbursement pursuant to the CRO Agreement for services other than the services provided under the CRO Agreement unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

j.      Notwithstanding anything to the contrary in the CRO Agreement, the Debtors shall have no obligation to indemnify CR3, or provide contribution or reimbursement to CR3, for any losses, claims, damages, judgments, liabilities or expense that are either: (a) judicially determined (the determination having become final) to have arisen from CR3 gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of CR3's contractual obligations, if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.), 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which CR3 should not receive indemnity, contribution, or reimbursement under the terms of the CRO Agreement as modified by this Order.

k.      For a period of three years after the conclusion of CR3's engagement, neither CR3 nor any of its subsidiaries shall make any investments in the Debtors or the reorganized Debtors, as applicable.

l.      CR3 shall disclose all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

4                                    **ORDER**

adverse to the Debtors, their creditors, or other parties in interest.  This obligation is a continuing obligation.

m.     To the extent this Order is inconsistent with any other documents related to CR3's engagement with respect to the Chapter 11 Cases, this Order shall govern.

n.     The requirements of Bankruptcy Rule 6004(a) are hereby satisfied.

o.     Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

p.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

q.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

**###**

**The Bensamochan Law Firm**
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

5                                    **ORDER**

# EXHIBIT "B"



April 14, 2026

**BY EMAIL**

Harshad Dharod, President
Sun Gir, Incorporated, et al
1 Centerpointe Dr., Suite 400
La Palma, CA 90623

Dear Harshad:

Thank you for retaining CR3 for the purpose of providing a chief restructuring officer ("CRO") and other personnel to support the CRO in the Sun Gir, Inc. and related debtor bankruptcy cases ("the Company").

The attached Engagement Agreement and its Exhibits detail the terms and conditions of our agreement.

We appreciate the opportunity to present this agreement to you and look forward to working together.

If the Engagement Agreement is acceptable please sign and return at your earliest convenience. If you have any questions or comments, please contact me.

Sincerely,

CR3 Partners, LLC

**Engagement Agreement**

**CR3 PARTNERS, LLC**
**and**
**SUN GIR, INCORPORATED AND JOINTLY ADMINISTERED DEBTORS**

The parties to this Engagement Agreement (the "Agreement") are CR3 Partners, LLC ("CR3"), on the one hand, and chapter 11 debtors Sun Gir, Inc., Harshad & Nasir, Inc., Senior Classic Leasing, LLC, DFG Restaurants, Inc., Second Star Holdings, LLC, and Third Star Investments, LLC (together with any successor, the "Company"), on the other hand. This Agreement confirms the Company's retention of CR3 for the purpose of providing a chief restructuring officer and other personnel to support the CRO.

1. **CR3's Services.** From the date hereof until this Agreement is terminated pursuant to paragraph 8 (the "Term"), subject to bankruptcy court approval, CR3 will provide services to the Company as described in the attached Exhibit A ("Work Authorization"), incorporated herein by this reference. The Work Authorization may be amended from time to time with the written approval of CR3 and Company. The services CR3 provides pursuant to this Agreement will be limited to those services that the Company may request within the scope of the Work Authorization. Any additional services that CR3 may agree to provide to the Company will be the subject of a separate agreement between CR3 and the Company. CR3 may without the Company's consent provide advisory services for other persons or entities whose interests may be adverse to the Company's or its affiliates in matters not substantially related to our engagement by the Company.

2. **Compensation**. CR3 will present an invoice to the Company each month for services performed, and expenses incurred, under this Agreement for the preceding month. Each invoice will be due upon presentment to the Company, subject to any fee procedure orders entered in the bankruptcy case.

   CR3 and the Company agree that success fees are customary for similar work. The attached Work Authorization may be amended to include payment of a success fee for performance meeting or exceeding certain parameters, subject to a further application to the bankruptcy court ("Success Fee"). The Success Fee, if earned, will be paid pursuant to the supplemental application if approved by the bankruptcy court.

3. **Expense Reimbursement**. Each month the Company shall reimburse CR3 for all reasonable travel-related expenses incurred in connection with this engagement. CR3 shall provide summaries of expenses for which reimbursement is requested by CR3 with the monthly invoice.

4. **Payments Generally**. No amount payable to any third party, by the Company or any other person or entity in connection with the subject matter of this engagement shall reduce or otherwise affect any amount payable hereunder. CR3 will submit invoices for fees and expenses to the Company, and the Company will pay such invoices promptly following receipt, subject to any bankruptcy court orders regarding professionals.

5. **Indemnification and Related Matters**. The Company and CR3 agree to the provisions of the attached Exhibit B, incorporated herein by this reference, which relates to indemnification and related matters.

6. **Information and Reliance**.  During the Term, the Company will furnish CR3 with such information regarding the business, financial condition and prospects of the Company as CR3 and the CRO reasonably requests, all of which will be accurate and complete in all material respects at the time furnished, other than projections, which will be prepared in good faith and based upon assumptions which, in light of the circumstances under which they are made, are reasonable.  During the Term, the Company will promptly notify CR3 and the CRO if it learns of any material misstatement in, or material omission from, any information previously delivered to CR3 or the CRO. This Agreement expressly provides the CRO with permission to communicate with any of the Company's stakeholders (lenders, accountants, attorneys, etc.) at any time about any information (Confidential or otherwise), at the CRO's sole discretion, and without any further permission from the Company, provided the CRO believes such communication to be in the best interests of the Company and in service of the objectives of the scope of this Agreement. On an ongoing basis during the Term, the Company will inform CR3 and the CRO of any material developments or matters affecting the business, financial condition and prospects of the Company that occur. In performing its services hereunder, CR3 and the CRO shall be entitled to rely without investigation upon the accuracy of all information supplied to it by or on behalf of the Company or its advisors, and CR3 and the CRO shall not in any respect be responsible for independently verifying the accuracy or completeness of any of such information (including by conducting any independent due diligence review).

The Company acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by CR3 or the CRO as the same may be subject to further work, revision and other factors which may result in such drafts being substantially different from any final report or advice issued.

The Company shall retain exclusive rights to ownership of all work output hereunder.  Work output includes reports issued pursuant to any Work Authorization, but excludes, among other things, all working papers of CR3 and any correspondence, memoranda, calculations, notes, etc. that CR3 may have used in the development of the reports above or such working papers or in the performance of any work covered by a Work Authorization.

Upon termination of the engagement, papers and property that you have provided to CR3 will, at your request, be returned to you.  Copies of papers CR3 has created for you, which you may need but no longer have, will be made available to you.  CR3 reserves the right to destroy any items described in this paragraph that CR3 retains.

7. **Governing Law; Venue; Waiver of Jury Trial**.  This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed and construed in accordance with the laws of the State of California (without giving regard to the conflicts of law provisions thereof).  No such claim shall be commenced, prosecuted or continued in any forum other than the court of the United States Bankruptcy Court for the Central District of California, and each of the Company and CR3 hereby submits on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) to the jurisdiction of such courts.  The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) any and all right to argue that this choice of forum provision is or has become unreasonable.  The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) all right to trial by jury in any action, proceeding or

counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of CR3 pursuant to, or the performance by CR3 of the services contemplated by, this Agreement.

8. **Termination**.  This Agreement may be terminated at any time upon 30 days written notice by CR3 or the Company by giving written notice to the other party, which termination will be effective upon the non-terminating party's receipt of such notice.   Upon termination the Company shall pay CR3 all weekly fees and expenses due through the termination date, and any Success Fee which may have been earned, subject to approval of the bankruptcy court.  The provisions of this Section and of Sections 2, 3, 5, 6, 7, 9, 10, 12 and 14 will survive any expiration or termination of this engagement.

9. **Personnel.** Each party hereto agrees that it will not employ personnel or representatives of the other party hereto during the period of work provided for hereunder and for a period of one (1) year after the termination of this Agreement or completion of the project or work contemplated hereunder without the written agreement of the other party. In cases where written permission is granted by CR3, a recruiting fee will be billed for an amount mutually agreed upon and not less than 33% of first year expected annual cash compensation including incentive payments.

10. **Warranties and Representations.**  The undersigned, on behalf of the Company represents and warrants that: (a)  it is fully competent and capable of entering into this Agreement on behalf of the Company and intend that this Agreement be fully binding on them; and (b) the undersigned has the authority to execute this Agreement on behalf of the Company and the Company shall undertake whatever actions are required of it to consummate the terms of this Agreement.

11. **Public Announcements**.  Notwithstanding the confidentially provisions of Section 14, the Company acknowledges and agrees that CR3 may publish an announcement or "tombstone" following the completion of its engagement, whereby CR3 informs the public or such parties that generally describes the nature and extent of CR3's engagement by the Company. If CR3 desires to publish an article that refers to the Debtors by name, CR3 will first seek approval from Company management prior to publication.

12. **Relationship of Parties; No Fiduciary Obligation**.  The Company and CR3 acknowledge and agree that CR3 has been retained under this Agreement as an independent contractor to the Company, that their respective rights and obligations are contractual in nature and that nothing herein is intended to confer any rights or remedies upon any person other than the Company (including the management, board of directors (or similar governing body) and securityholders of the Company) as against CR3.  In addition, CR3 personnel serving as a corporate officer shall be subject to the same fiduciary duties as others serving in such capacity and such fiduciary duty shall only apply to such CR3 personnel serving as a corporate officer. It is understood and agreed that this Agreement and CR3's engagement do not create a fiduciary relationship between (i) CR3, or (ii) any CR3 personnel not serving as a corporate officer and any person (including the Company, its management, its board of directors (or similar governing body) and its security holders), and the Company disclaims any intention to impose any fiduciary or other non-contractual obligations on CR3 or any of its personnel not serving as an officer. Any advice or opinion, whether written or oral, provided by CR3 is intended solely for the benefit and use of the members of the board of directors (or similar governing body) of the Company (in their capacities as such) in considering the matters to which this Agreement relates.  CR3 will not be responsible for and will not be deemed to have provided the Company with any tax, accounting, audit and attest, actuarial, legal or other specialist advice.  CR3 will

*Page 4*
CR3CROEL V20240902

not, as part of any aspect of this engagement, undertake any independent valuation or appraisal of, or provide any formal opinion regarding, any assets, liabilities or the solvency of the Company or any other entity.  This Agreement does not constitute a representation, warranty or agreement that a specific outcome or outcomes will be obtained.

13. **Miscellaneous**.  This Agreement may not be assigned (other than by operation of law) by either party without the prior written consent of the other.  The provisions hereof shall inure to the benefit of and be binding upon the successors, assigns, heirs and personal representatives of the Company, CR3 and any person entitled to indemnity under the terms of Exhibit B.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.  This Agreement, including the Exhibits hereto (which are hereby incorporated by reference in this Agreement), incorporates the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.  This Agreement may be executed in any number of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Copies of this Agreement with facsimile or electronic signatures and copies of this Agreement (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Agreement.

14. **Confidentiality**.  CR3 shall use all confidential information provided to it by or on behalf of the Company in connection with CR3's engagement hereunder (the "Confidential Information") solely for the purpose of providing the services which are the subject of this Agreement, and, except as contemplated in connection with such services and CR3's engagement hereunder, shall keep all Confidential Information confidential; provided, however, that nothing herein shall prevent CR3 or any of its Agents (as defined below) from disclosing any Confidential Information (i) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, or otherwise as required by applicable law, rule or regulation or legal or administrative process, (ii) upon the request or demand of any regulatory authority having jurisdiction over CR3 or any of its Agents, (iii) to CR3's or its affiliates' officers, directors, employees, legal counsel, independent auditors and other experts or agents who need to know such information and are informed of the confidential nature of such information, (iv) to any of its affiliates (any of the persons described in clauses (iii) or (iv) to whom Confidential Information is disclosed, "Agents") or (v) for purposes of establishing a "due diligence" defense.  The term Confidential Information does not include information that (A) is or becomes publicly available other than by reason of disclosure by CR3 in violation of this Section 14; (B) was in the possession of CR3 at the time of its disclosure by or on behalf of the Company; (C) is acquired from a third party that is not, to CR3's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (D) is developed without reference to the Confidential Information.  This Section 14 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of one year and shall then terminate.

*[Signature page follows.]*

Agreed to this __14__ day of April, 2026 by:

**SUN GIR, INCORPORATED AND JOINTLY ADMINISTERED DEBTORS:**

**SUN GIR, INCORPORATED:**                          **CR3 PARTNERS, LLC:**

By:_____              By:_____
Name: Harshad Dharod                               Name:  Dawn M. Ragan
Title:  President                                  Title:  Senior Managing Director/Partner

**HARSHAD & NASIR, INCORPORATED:**

By:_____
Name: Harshad Dharod
Title:  President

**SENIOR CLASSIC LEASING, LLC:**

By:_____
Name: Harshad Dharod
Title:  Manager

**DFG RESTAURANTS, INCORPORATED:**

By:_____
Name: Harshad Dharod
Title:  President

**SECOND STAR HOLDINGS, LLC:**                      **THIRD STAR INVESTMENTS, LLC:**

By:_____              By:_____
Name: Harshad Dharod                               Name: Harshad Dharod
Title:  Manager                                    Title:  Manager

**EXHIBIT A**
**to ENGAGEMENT**
**AGREEMENT**


**CR3 PARTNERS, LLC**
**and**
**SUN GIR, INCORPORATED AND JOINTLY ADMINISTERED DEBTORS**
**WORK AUTHORIZATION**

1. <u>Scope of Work</u>

Provide the Company the services of Tim Skillman as Chief Restructuring Officer ("CRO"), who will report to the Company's President, "President" and be supported by both the CR3 engagement team, other financial advisors retained by the Company, and the Company's personnel, and perform the following services:

a) Provide oversight and support to the Company and the Company's other professionals in connection with execution of the Company's business plan, reorganization plan, any sales process, and the overall administration of activities within the chapter 11 proceeding;

b) Provide oversight and assistance in connection with the preparation of financial reporting and related disclosures required by the bankruptcy court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports, and any other disclosures required by the Company in connection with the bankruptcy process, or in keeping with our professional and ethical responsibilities;

c) Provide oversight and assistance in connection with the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of proposed transactions for which court approval is sought;

d) Participate in meetings and provide assistance to any official committee(s) appointed in the case, the U.S. Trustee, other parties in interest, including contractual counterparties, and professionals hired by the same;

e) Evaluate and make recommendations as needed to maximize the value of the Company's assets;

f) Provide oversight and assistance in connection with the preparation of analysis of creditor claims;

g) Provide oversight and assistance in connection with the evaluation and analysis of avoidance actions, including, fraudulent conveyances and preferential transfers, and in the defense and prosecution of other litigation, if necessary;

h) Provide testimony, and exhibits, in litigation/bankruptcy matters as required;

i) Evaluate the cash flow generation capabilities of the Company for valuation maximization opportunities;

j) Provide oversight and assistance in connection with communications and negotiations with constituents including investors and other critical constituents to the successful restructuring of the Company, as well as to directly communicate with stakeholders where appropriate, and to establish communication protocols;

k) Subject to Company approval, manage professionals engaged by the Company or committees or other stakeholders involved in a chapter 11 or restructuring of the Company, and to directly

communicate with such stakeholders as appropriate;

l) Assist in development of a plan of reorganization and in the preparation of information and analysis necessary for the development of a plan and disclosure statement, and confirmation of a plan in the chapter 11 proceeding; and

m) Perform other tasks as directed by the Company and agreed to by CR3, including all tasks necessary to facilitate the Company's restructuring, or in keeping with our ethical responsibilities, at CR3's sole discretion.

2. Professionals and Rates

CR3 will provide CRO services and consulting services as agreed between CR3 and the President at standard hourly rates described in the paragraph below. Engagement fees plus incurred out-of-pocket expenses will be payable upon weekly invoice.

The following professionals will be primarily responsible for the successful completion of the engagement:

| Professional | Role | Hourly rate |
|---|---|---|
| Tim Skillman | CRO | $950 |
| Dawn Ragan | Conferring and Engagement Partner | $995 |
| Director, Manager and/or Sr. Associate TBD | Data, modeling, and analytics | $450-$725 |

However, during the course of this engagement we may call upon other CR3 professionals who have had previous experience with companies in similar situations, as needed. Hourly rates for these professionals range from:

| | |
|---|---|
| Senior Managing Directors | $995 to $1,295 per hour |
| Managing Directors | $695 to $950 per hour |
| Directors | $595 to $725 per hour |
| Managers and Senior Associates | $450 to $575 per hour |

When traveling to and from the Company sites and other requested meeting locations, ("Client Travel"), CR3 personnel will charge a rate equal to 50% of the standard hourly rate for the Client Travel.

Professional fees can be impacted by the timely availability of data and access to management personnel for discussions/Q&A.

In the normal course of business, CR3 revises its hourly rates to reflect changes in responsibilities, increased experience, geographical differentials, and increased costs of doing business. Changes in applicable hourly rates for this engagement will be noted on the invoices, for the time period in which the revised rates became effective.

Notwithstanding the hourly rates noted above, CR3 will agree to a blended hourly rate cap not to exceed $700/hour.

3. Success Fee

A success fee is not currently contemplated in this engagement.  However, should circumstances or scope change, CR3 reserves the right to request a success fee for additional services or outstanding success.  Any such request would be subject to an amendment and supplemental application.

4. Other Conditions

The engagement is expected to begin immediately after CR3, and the Company jointly execute this Agreement.

a) Simultaneously with the execution of this Agreement, the Company shall provide CR3 with evidence that the Company's President has properly authorized the CRO as an officer of the Company.

b) The Company does not currently carry Directors and Officers ("D&O") Liability and Employment Practices Liability ("EPL") Insurance.  If the Company prospectively adds D&O and/or EPL liability coverage,  the Company shall cause the issuer of its insurance policy(s) to provide the CRO and CR3 with an endorsement (i) showing the CRO as an additional insured with regard to the D&O liability insurance,  any fiduciary liability insurance and EPL insurance and (ii) providing that thirty (30) days' notice will be given to the CRO and CR3 prior to any cancellation of, material reduction or change in the coverage provided by or other material modification to such policy.  A certificate of issuance evidencing such coverage shall be furnished promptly to the CRO and CR3 at its request. Additionally, not as a condition precedent to the effectiveness of the Agreement, but as an agreement and covenant to the Agreement, if the Company shall have added D&O and/or EPL liability insurance, then the Company shall purchase a "tail" on such D&O and EPL insurance policy upon the request of CR3 at the conclusion of the Engagement.

c) The Company represents and warrants to CR3 that its bylaws or Operating Agreement provide for indemnification by the Company of its officers in the manner provided therein. The Company covenants and agrees not to amend or modify such bylaws or Operating Agreement insofar as they provide indemnification to the CRO without CR3's prior written consent.

d) If the Company has past-due balances of any D&O liabilities (including but not limited to sales taxes, payroll taxes etc.), the Company will either (i) pay those arrearages before this Agreement is entered into and confirm they have been paid, or (ii) will present to CR3 a plan to pay down these arrearages in full within 30 days of CR3's engagement and report against that plan to demonstrate the arrearages are being paid.  It is further understood that CR3 will not incur any liability for said arrearages, and that the Company will not incur additional past-due D&O liabilities while CR3 is engaged hereunder.

e) If CR3 is engaged in a chapter 11 to provide a CRO, this engagement does not preclude CR3 from serving as a consulting or testifying expert if circumstances warrant after the conclusion of CR3's engagement.

f)  CR3 reserves the right in any bankruptcy proceeding to request the Company's/Debtor's counsel to file pleadings in connection with its retention and periodic fee statements, applications for payment, or other required filings, or to utilize its own counsel to file such pleadings.

**EXHIBIT B**
**to**
**ENGAGEMENT AGREEMENT**

**CR3 PARTNERS, LLC**
**and**
**SUN GIR, INCORPORATED AND JOINTLY ADMINISTERED DEBTORS**

**INDEMNIFICATION AND RELATED MATTERS**

The Company agrees to indemnify and hold harmless each of CR3, its affiliates and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members and each of their respective successors and assigns (each, an "Indemnified Person") against and from all losses, claims, damages, liabilities or expenses, joint or several, and all actions, claims, proceedings and investigations brought or threatened by or on behalf of any person (including Company Claims (as defined below)) arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Indemnification Claims"), and to promptly reimburse each Indemnified Person for all reasonable legal and other expenses as incurred by such Indemnified Person in connection with investigating, preparing to defend or defending any such Indemnification Claims (including expenses of CR3 personnel required to testify or otherwise assist in any litigation), whether or not such Indemnified Person is named as a party thereto; provided, however, that the Company shall not be liable for Indemnification Claims to the extent that such claims are finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Company's securityholders or creditors arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Company Claims") except to the extent that such liability is finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct, and (b) in no event will any Indemnified Person have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  To the extent permitted by applicable law, CR3's liability with respect to Company Claims shall be limited to the amount of any fees actually received by CR3 pursuant to this Agreement.  THE INDEMNIFICATION PROVISIONS PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE SOLELY OR IN PART FROM THE ACTIVE, PASSIVE OR CONCURRENT NEGLIGENCE, OR OTHER FAULT OF INDEMNIFIED PARTIES (OTHER THAN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT), AND THE PARTIES ACKNOWLEDGE THAT THIS PARAGRAPH IS CONSPICUOUS.

In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the Company agrees to make contributions to any such Indemnification Claims paid or payable (or proposed to be paid) in such proportion as is appropriate to reflect the relative economic benefits received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to

this Agreement.  The "relative economic benefits" received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, shall be deemed to be in the same proportion as is appropriate to reflect the relative economic benefits and the relative fault of the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, as well as other equitable considerations; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to this Agreement.

Promptly after receipt by an Indemnified Person under this Agreement of notice of the commencement of any action, such Indemnified Person shall, if a claim in respect thereof is to be made against the Company under these indemnification provisions, notify the Company in writing of the commencement thereof, but the omission so to notify the Company shall not relieve it from any liability which it may have to any Indemnified Person otherwise than under this Agreement unless the Company has been materially prejudiced by the failure to provide such notice.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Person in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Person is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under this Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Person hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Person is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Person, provide such Indemnified Person with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Person, at no cost to such Indemnified Person; provided however, that if such counsel or counsel to the Indemnified Person shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Person and the Company such counsel is unable to represent both the Indemnified Person and the Company, then the Indemnified Person shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Person from using separate counsel of its own choice at its own expense.  The Company further agrees that, without the prior written consent of CR3 (not to be unreasonably withheld, conditioned or delayed), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened action, claim, proceeding or investigation with respect to which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such action, claim, proceeding or investigation) unless such settlement, compromise or judgment includes an unconditional release of all Indemnified Persons from all liability resulting from such action, claim, proceeding or investigation.

The foregoing rights shall be in addition to any other rights any Indemnified Person may have, and shall not limit any other rights that any Indemnified Person may have at law or otherwise.  These indemnification provisions will (i) apply to CR3's engagement pursuant to this Agreement, (ii) any activities or actions of CR3 relating to such engagement occurring prior to the date of this Agreement, and any subsequent modification of or amendment of this Agreement, and (iii) shall survive any termination of the engagement or this Agreement.

# EXHIBIT "C"

May 11, 2026

**BY EMAIL**

Sun Gir, Inc.
1 Centerpointe Dr. Ste. 400
La Palma, CA 90623
Attention: Harshad Dharod

**Re:    Request for Consent to Assignment of Engagement Agreement**

Ladies and Gentlemen:

Reference is made to that certain Engagement Agreement (the "Agreement") dated as of April 14, 2026, by and among Sun Gir, Inc., Harshad & Nasir, Inc., Senior Classic Leasing, LLC, DFG Restaurants, Inc., Second Star Holdings, LLC, and Third Star Investments, LLC, on the one hand, and CR3 Partners, LLC ("CR3 Partners"), on the other hand.

On April 30, 2026, CR3 Partners entered into an agreement to sell and transfer substantially all of its assets to Oliver Wyman, LLC ("Oliver Wyman"). The agreement with Oliver Wyman includes the assignment of the Agreement to Oliver Wyman (the "Assignment"). In accordance with the provisions of the Agreement, CR3 Partners hereby requests your consent and approval, conditioned on the closing of the agreement with Oliver Wyman, to the Assignment, and a waiver of any other notice period or other requirements under the Agreement to effect the Assignment. The closing of the agreement with Oliver Wyman is anticipated to take place on June 1, 2026.

Your signature below constitutes such consent, and your agreement and acknowledgment that the Assignment will not constitute a breach or default of, or give rise to a right of termination, acceleration or modification under, the Agreement. Subject to the Assignment, the Agreement will remain in full force and effect in accordance with its terms following the closing of the agreement with Oliver Wyman.

Please sign in the space indicated below and email an executed copy of this letter to me at dawn.ragan@cr3partners.com and to Eileen Frino at eileen.frino@cr3partners.com. Given the time-sensitive nature of the transaction, CR3 Partners would appreciate receiving your response at your earliest convenience, but by no later than May 15, 2026.

Please feel free to contact me at the number below or Eileen at (973) 294-0480 with any questions that you may have. Thank you.

Sincerely,

Dawn Ragan
dawn.ragan@cr3partners.com
(917) 376-2981

**ACCEPTED AND AGREED:**

SUN GIR, INCORPORATED AND JOINTLY ADMINISTERED DEBTORS:

SUN GIR, INCORPORATED:

By: _____

Name: _____Harshad Dharod_____

Title: _____President_____

Date: _____5/13/26_____

HARSHAD & NASIR, INCORPORATED:

By: _____

Name: _____Harshad Dharod_____

Title: _____President_____

Date: _____5/13/26_____

SENIOR CLASSIC LEASING, LLC:

By: _____

Name: _____Harshad Dharod_____

Title: _____Manager_____

Date: _____5/13/26_____

DFG RESTAURANTS, INCORPORATED:

By: _____

Name: _____Harshad Dharod_____

Title: _____President_____

Date: _____5/13/26_____

SECOND STAR HOLDINGS, LLC:

By: _____

Name: _____Harshad Dharod_____

Title: _____Manager_____

Date: _____5/13/26_____

THIRD STAR INVESTMENTS, LLC:

By: _____

Name: _____Harshad Dharod_____

Title: _____Manager_____

Date: _____5/13/26_____

## DECLARATION OF TIM SKILLMAN

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Tim Skillman, under penalty of perjury, declares as follows:

1.    I am a Partner in the firm of CR3 Partners, LLC ("CR3 Partners" or "CR3"), which has a corporate office at 13355 Noel Road, Suite 2005, Dallas, Texas 75240. CR3 Partners is a restructuring advisory firm with numerous offices throughout the United States.

2.    I submit this declaration (the "Declaration") in support of the Debtors' Motion for Entry of an Order, Pursuant to Sections 105 and 363 of the Bankruptcy Code, Authorizing and Approving (I) The Agreement with CR3 Partners, LLC to Provide Tim Skillman to Serve as the Debtor's Chief Restructuring Officer and to Provide Temporary Staff; and (II) the Employment of Tim Skillman and the Temporary Staff Effective as of April 14, 2026.

3.    The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of CR3 Partners or its affiliates.

### CR3 Partners' Qualifications

4.    CR3 is a leading advisory firm that delivers a broad range of interrelated strategic, operational and financial advisory services. Specifically, CR3's services include, without limitation, assessments of an organization's financial and operational condition, performance management and improvement, interim and crisis management, restructuring and turnaround consulting, merger and acquisition services, and advisory and guidance through the bankruptcy process. These extensive operation and transactional services help companies and their stakeholders, at any point in the business cycle, develop and implement creative operational and financial solutions to achieve a more stable and responsive operating environment, support future growth, maximize value, and increase productivity. CR3 has significant qualifications and

29831521.3                                                     2

experience in these matters and an excellent reputation for providing high quality, specialized management and restructuring advisory services to debtors, creditors, and equity sponsors in complex chapter 11 cases and other restructurings, both in and out of court and including serving as chief restructuring officer ("CRO"). For instance:

   a.   CR3 has advised debtors across multiple industries, including quick service and other restaurant types;

   b.   CR3 has provided CROs, CEOs and CFOs of multiple companies;

   c.   CR3 has participated in 363 sales, as well as restructuring plans;

   d.   CR3 has advised secured creditors, debtor-in-possession lenders and creditors' committees; and

   e.   CR3 has played a key role in resolving stakeholder conflicts and brokering litigation settlements.

I, Tim Skillman, will lead all of the day-to-day aspects of this assignment and will call upon the CR3 team for discrete actions in the exercise of my duties.

   5.   I have over 25 years of professional experience. Additionally, I earned a Bachelors degree and a Masters of Business Administration from the University of Michigan.

***Professional Services and Compensation***

   6.   Consistent with the terms of the CRO Agreement, in consideration for the compensation contemplated therein, CR3 Partners' anticipated services include the following:

   a.   Provide oversight and support to the Company and the Company's other professionals in connection with execution of the Company's business plan, reorganization plan, any sales process, and the overall administration of activities within the chapter 11 proceeding;

   b.   Provide oversight and assistance in connection with the preparation of financial reporting and related disclosures required by the bankruptcy court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports, and any other disclosures required by the Company in connection with the bankruptcy process, or in keeping with our professional and ethical responsibilities;

c.     Provide oversight and assistance in connection with the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of proposed transactions for which court approval is sought;

d.     Participate in meetings and provide assistance to any official committee(s) appointed in the case, the U.S. Trustee, other parties in interest, including contractual counterparties, and professionals hired by the same;

e.     Evaluate and make recommendations as needed to maximize the value of the Company's assets;

f.     Provide oversight and assistance in connection with the preparation of analysis of creditor claims;

g.     Provide oversight and assistance in connection with the evaluation and analysis of avoidance actions, including, fraudulent conveyances and preferential transfers, and in the defense and prosecution of other litigation, if necessary;

h.     Provide testimony, and exhibits, in litigation/bankruptcy matters as required;

i.     Evaluate the cash flow generation capabilities of the Company for valuation maximization opportunities;

j.     Provide oversight and assistance in connection with communications and negotiations with constituents including investors and other critical constituents to the successful restructuring of the Company, as well as to directly communicate with stakeholders where appropriate, and to establish communication protocols;

k.     Subject to Company approval, manage professionals engaged by the Company or committees or other stakeholders involved in a chapter 11 or restructuring of the Company, and to directly communicate with such stakeholders as appropriate;

l.     Assist in development of a plan of reorganization and in the preparation of information and analysis necessary for the development of a plan and disclosure statement, and confirmation of a plan in the chapter 11 proceeding; and

m.     Perform other tasks as directed by the Company and agreed to by CR3, including all tasks necessary to facilitate the Company's restructuring, or in keeping with our ethical responsibilities, at CR3's sole discretion.

7.     CR3 Partners will provide services at the following rates:

| Professionals | Hourly Rate |
|---|---|

29831521.3

| Tim Skillman | $950 |
|---|---|
| Partners | $795 – 1295 |
| Directors and Managers | $450 - $795 |
| Senior Associates | $375 - $450 |

*Tim Skillman will serve as CRO for these Debtors at an hourly rate of $950. All fees are subject to an agreed $700/hour rate cap.

8.    As of April 14, 2026, the Debtors do not owe CR3 any fees for services performed or expenses incurred under the CRO Agreement.

9.    CR3 charges fees on an hourly basis which are at or below market. The fees and expense reimbursement provisions described above are consistent with, or lower than, normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined.

*Acquisition of CR3 by Oliver Wyman*

10.    CR3 Partners recently announced it was being acquired by Oliver Wyman, LLC, which acquisition is anticipated to close on June 1, 2026. Oliver Wyman will be acquiring all of the assets of CR3, which includes, among other things, its engagement agreements, receivables, and personnel. CR3 and Oliver Wyman have conferred and reviewed the list of potential parties identified in these cases to ensure no conflicts existed. No transition issues are anticipated between CR3, Oliver Wyman and the Debtors to the best of my knowledge.

*Disinterestedness*

11.    To the best of my knowledge, information and belief, CR3, and Oliver Wyman, are a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

29831521.3

5

12.    Specifically, to check and clear potential conflicts of interest in these Chapter 11 Cases, CR3 and Oliver Wyman reviewed its client relationships to determine whether it had any relationships with the parties identified to CR3 by the Debtors and their advisors (collectively, the "Potential Parties in Interest"). The list of Potential Parties in Interest is set forth on the attached Schedule 1. Based on that search, CR3 represents that, to the best of its knowledge, neither CR3, Oliver Wyman, nor any of its professional personnel have any relationship with the Debtors or the Potential Parties in Interest that would impair CR3's ability to perform services for the Debtors. To the best of my knowledge and except as set forth herein, neither CR3 nor Oliver Wyman has any connections with the Debtors or the Potential Parties in Interest. Connections that CR3 has identified include:

(a) A CR3 professional provided limited financial advisory services to an entity that acquired a note and assets in an unrelated restaurant chapter 11 case in Texas during 2021, where a principal(s) of the entity is a relative of one of the Debtors' principals;

(b) A CR3 professional briefly served as a CRO in an unrelated restaurant chapter 11 case in Delaware during 2023 where the relative of a Debtors' principal was a principal in an entity that acquired a note and the Delaware debtor's assets.

13.    Further, as part of its diverse practice, CR3 appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent potential claimants and Potential Parties in Interest in the Chapter 11 Cases. CR3 has performed in the past, and may perform in the future, advisory consulting services in unrelated matters for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. CR3 has performed in the past, and may perform in the future, in unrelated matters advisory services for various utilities and insurance parties that provide services to the Debtors. Based on our current knowledge of the professionals involved, and to the best of my knowledge,

29831521.3                                             6

none of these relationships create interests materially adverse to the Debtors in matters upon which CR3 is to be employed, and none are in connection with these Chapter 11 Cases.

14. To the best of my knowledge, no employee of CR3 or Oliver Wyman is a relative of, or has been connected with, the U.S. Trustee in this district or his or her employees.

15. If the Debtors or CR3 are made aware of any new material facts or relationships, CR3 will provide the Court with supplemental disclosures detailing, among other things, any new potential conflicts between the Debtors, CR3 and Oliver Wyman, or other significant parties in interest.

16. CR3 Partners has received no promises regarding compensation in these Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. CR3 Partners has no agreement with any nonaffiliated entity to share any compensation earned in these Chapter 11 Cases.

Executed on: May 13, 2026

By: _____

Tim Skillman, Partner
CR3 Partners, LLC

29831521.3

7

<u>Schedule 1</u>

Parties in Interest

**Chapter 11 Debtors**
Sun Gir, Inc.
Harshad & Nasir, Inc.
Senior Classic Leasing, LLC
DFG Restaurants, Inc.
Second Star Holdings, LLC
Third Star Investments, LLC

**Current Officers or Directors, and Former Officers or Directors Who Served in Past Five Years**
Harshad Dharod
Ben Zandi
Alex Kalinsky

**5% or More Equity Holders**
Dharod Family Trust, Harshad Dharod Trustee
Greg Funkouser (8% Equity Holder for Second Star Holdings LLC and Third Star Investments LLC)

**Bankruptcy Professionals**
The Bensamochan Law Firm Inc.
McDermott Will & Emery

**BANKS/UCC-1 LIENHOLDERS**
Northern Trust Company

**20 LARGEST UNSECURED CREDITORS**
None listed

**COUNTERPARTIES TO MATERIAL CONTRACTS**
Carl's Junior Restaurants
McLane Foodservice Inc.

**KEY VENDORS**
Freund Bakery

**BANKRUPTCY JUDGES AND STAFF**
Scott Clarkson, Bankruptcy Judge

**U.S. TRUSTEE'S OFFICE**
Kenneth Misken

29831521.3

| In re:<br><br>Sun Gir Incorporated<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:26-bk-11056 |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**A true and correct copy of the foregoing document entitled (***specify***): DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING (I) THE AGREEMENT WITH CR3 PARTNERS, LLC TO PROVIDE TIM SKILLMAN TO SERVE AS THE DEBTORS' CHIEF RESTRUCTURING OFFICER AND (II) TO PROVIDE TEMPORARY STAFF EFFECTIVE AS OF APRIL 14, 2026; DECLARATION OF TIM SKILLMAN IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  May 13, 2026 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
 Eric Bensamochan Eric@eblawfirm.us
 United States Trustee ustpregion16.sa.ecf@usdoj.gov
 Kenneth Misken DOJ-UST Kenneth.M.Misken@usdoj.gov
 William Schumacher wschumacher@winthrop.com
 Atle T. Saterbak asaterbak@winthrop.com
 Andrew J. Steil asteil@winthrop.com
 Eric D Goldberg eric.goldberg@dlapiper.com
 Dustin P Branch branchd@ballardspahr.com
 Nahal Zarnighian zarnighiann@ballardspahr.com
 Michael John Agoglia  michael.agoglia@alston.com
 Jacob A. Johnson jacob.Johnson@alston.com
 Dustin P. Branch branchd@ballardspahr.com
 Neama Cory Barari nbarari@caskeyholzman.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On  May 13, 2026  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth St., Ste. 5130
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 13, 2026 | Jennifer Svonkin | /s/Jennifer Svonkin |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br>Sun Gir Incorporated<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 8:26-bk-11056 |
| --- | --- |

Freund: Sherry.W@Freundbakery.com

Sectran Security Inc spulido@sectransecurity.com

Flue Steam Inc. summer@fluesteam.com

John Youens-Crowe LLP john.youens@crowe.com

Covina Properties LLC bettina@packagemore.com

The Wasserstrom Company reneepennington@wasserstrom.com

Hewlett-Packard Financial Services Co
P.O Box 402582
Atlanta GA 30384-2582

Securities & Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, California 90071-9591

LA Dept of Water & Power
PO Box 30808
Los Angeles, CA 90030-0808

Southern California Edison
P.O. BOX 300
Rosemead, CA 91772-0002

Los Angeles County Tax Collector
P.O Box 54018
Los Angeles, CA 90054-0018

Orchid Bay LLC c/o Columbia Bank
110.S. Fairfax Avenue
Los Angeles, CA 90036

Crosspoint Realty Services, Inc
P.O. Box 889288
Los Angeles, CA 90088

Xenial Inc
PO Box 930157
Atlanta, GA 31193-0157

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

Label Matrix for local noticing
0973-8
Case 8:26-bk-11056-SC
Central District of California
Santa Ana
Wed May 13 08:59:25 PDT 2026

McLane Foodservice, Inc.
c/o Alston & Bird LLP
Attn: Jacob Johnson
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3467

Sun Gir Incorporated
1 Centerpointe Dr., Suite 400
La Palma, CA 90623-2530

The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

Watt Laverne, LLC
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

Carl's Jr. Restaurants LLC
c/o DLA Piper LLP
1201 W Peachtree St., Ste 2800
Atlanta, GA 30309-3450

Carl's Jr. Restaurants LLC
c/o Eric Goldberg, Esq.
2000 Avenue of the Stars, Ste 400 N Towe
Los Angeles, CA 90067-4735

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

The Wasserstrom Company
4500 E Broad St
Columbus, OH 43213-1360

US Securities & Exchange Commission
444 S Flower St., # 900
Los Angeles, CA 90071-2934

United States Trustee
411 W Fourth Street
Santa Ana, CA 92701-4504

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Watt Laverne, LLC
c/o Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Eric Bensamochan
The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064-3371

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Carl's Jr. Restaurants, LLC

(d)The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

(u)Nydia Del Socorro Lazo

End of Label Matrix
Mailable recipients    14
Bypassed recipients     3
Total                  17