Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740
Mail:  erci@eblawfirm.us

Proposed Counsel for Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>SUN GIR INCORPORATED, et al.[1]<br><br>                  Debtor and Debtor-in-Possession. | Case No. 8:26-bk-11056-SC<br><br>Chapter 11<br><br>**Jointly Administered With:**<br><br>8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |
| Affects:<br><br>☐ Harshad & Nasir, Incorporated<br>☐ Senior Classic Leasing, LLC<br>☐ DFG Restaurants, Incorporated<br>☐ Second Star Holdings, LLC<br>☐ Third Star Investments, LLC<br><br>☒ Affects All Debtors | **DEBTORS' NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 327 AND 328 OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF NATIONAL FRANCHISE SALES, INC. AS BROKER AND SALES ADVISOR FOR THE DEBTORS EFFECTIVE AS OF MAY 12, 2026; DECLARATION OF MICHAEL J. INGRAM IN SUPPORT THEREOF**<br><br>[No hearing required unless requested per L.B.R. 2014-1(b)] |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include Sun Gir, Inc. (2519), Harshad & Nasir, Inc. (6260), Senior Classic Leasing, LLC (3884), DFG Restaurants, Inc. (2121), Second Star Holdings, LLC (0844) and Third Star Investments, LLC (0421).  The Debtors' service address is 1 Centerpointe Drive, Suite 400, La Palma, CA 90623

## MOTION

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, IF KNOWN, AND OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Sun Gir Incorporated and the above-captioned debtors and debtors in possession (collectively, "SGI" or the "Debtors") have filed this Motion seeking authority to employ and retain National Franchise Sales, Inc. ("NFS") as broker for the Debtors in connection with the marketing and sale of certain restaurant locations and related assets effective as of May 12, 2026.

**PLEASE TAKE FURTHER NOTICE THAT** no hearing will be conducted on this Motion unless a written response is filed with the Clerk of the United States Bankruptcy Court, 411 West Fourth Street, Santa Ana, California 92701, and served upon counsel for the Debtors before the close of business on May 28, 2026, which is at least fourteen (14) days from the date of service of this Motion.

**PLEASE TAKE FURTHER NOTICE** THAT if a timely response is filed, the Court may set a hearing on the Motion and notice of such hearing will be provided only to the objecting party.

**PLEASE TAKE FURTHER NOTICE** THAT if no timely response is filed, the Court may grant the relief requested herein without further notice or hearing.

Dated: May 14, 2026

THE BENSAMOCHAN LAW FIRM, INC.

/s/Eric Bensamochan
Eric Bensamochan, Esq. SBN 255482
Proposed Counsel to the Debtors and
Debtors In Possession

2                                    MOTION

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

Sun Gir Incorporated and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases, hereby move this Court for entry of an order authorizing and approving the employment and retention of National Franchise Sales, Inc. ("NFS") as broker for the Debtors effective as of **May 12, 2026**, and respectfully state as follows:

### **RELIEF REQUESTED**

1.      SGI respectfully seeks entry of an order, substantially in the form attached hereto as **Exhibit "A"** (the "Proposed Order"), authorizing and approving the employment and retention of National Franchise Sales, Inc. ("NFS"), effective as of May 12, 2026, pursuant to sections 327 and 328 of the Bankruptcy Code and pursuant to the terms of that certain Engagement Agreement attached as **Exhibit "1"** to the Declaration of Michael J. Ingram in Support Thereof (the "Engagement Agreement").

2.      Pursuant to the Engagement Agreement, NFS will assist the Debtors in connection with the marketing and sale of certain Carl's Jr. franchised restaurant locations and related assets, including identifying prospective purchasers, coordinating diligence, assisting with negotiations, supporting the Debtors in connection with proposed sale transactions, and assisting with sale procedures, auction matters, and related transaction activities.

3.      In support of this Motion, the Debtors submit concurrently herewith the Declaration of Michael J. Ingram in Support Thereof, together with the proposed sale process timeline attached hereto as **Exhibit "B."**

### **JURISDICTION AND VENUE**

4.      The United States Bankruptcy Court for the Central District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter concerns administration of the Debtors' bankruptcy estates and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**MOTION**

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

6.     The statutory predicates for the relief requested herein are sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules 2014-1(b) and 9013-1(o).

## BACKGROUND

### A.     General Background

7.     On April 2, 2026 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

8.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.     The Debtors operate numerous Carl's Jr. franchised restaurant locations throughout California.

10.    In an effort to maximize value for the benefit of their estates and creditors, the Debtors determined that it is necessary and appropriate to retain an experienced franchise brokerage and advisory firm with substantial experience in distressed restaurant and franchise transactions.

## NFS'S QUALIFICATIONS

11.    NFS is a franchise brokerage and advisory firm with substantial experience in franchise mergers and acquisitions, refranchising, distressed asset recovery, and bankruptcy-related restaurant sales.

12.    As set forth in the Declaration of Michael J. Ingram submitted concurrently herewith (the "Ingram Declaration"), NFS has represented franchisees, debtors, trustees, and secured creditors in numerous restructuring and sale transactions involving national restaurant brands.

13.    As further reflected in the NFS profile and marketing materials attached to the Ingram Declaration as **Exhibit "2,"** NFS and its professionals possess extensive

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**MOTION**

experience in franchise brokerage, distressed asset recovery, bankruptcy-related restaurant sales, refranchising transactions, and auction-related sale processes involving nationally recognized restaurant brands.

14.    The Debtors believe that NFS is well qualified to provide the services required in these chapter 11 cases and that retention of NFS is in the best interests of the Debtors, their estates, and creditors.

15.    In connection with the proposed sale process, NFS has also prepared a proposed marketing and sale timeline attached hereto as **Exhibit "B,"** which contemplates the orderly marketing, bidding, auction, and sale process for the Debtors' restaurant locations and related assets..

## **SCOPE OF SERVICES**[2]

16.    Consistent with the terms of the Engagement Agreement, and in consideration for the compensation contemplated therein, NFS's anticipated services include, without limitation, the following:

a. Providing brokerage, marketing, and advisory services in connection with one or more transactions involving the proposed sale of certain Carl's Jr. franchised restaurant locations and related assets operated by the Debtors;

b. Assisting the Debtors in evaluating, structuring, negotiating, and facilitating proposed sale transactions and related agreements;

c. Developing and implementing marketing procedures designed to maximize value for the Debtors' estates and creditors;

d. Identifying, soliciting, screening, and communicating with prospective purchasers and other parties interested in acquiring the Debtors' restaurant locations or related assets;

---

[2] The Proposed Order shall control in the event of any inconsistency with the terms of this Motion or the Engagement Agreement. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Engagement Agreement.

**MOTION**

<div style="text-align: left; font-weight: bold;">The Bensamochan Law Firm<br>2566 Overland Ave., Suite 650<br>Los Angeles, CA 90064</div>

e. Coordinating and facilitating due diligence requests and communications between the Debtors and prospective purchasers;

f. Creating, maintaining, and administering an electronic data room for use by qualified prospective purchasers and their representatives;

g. Assisting the Debtors in connection with auction procedures, bidding procedures, sale procedures, stalking horse negotiations, bid processes, and related transaction matters, if applicable;

h. Assisting the Debtors and their professionals in connection with the preparation of analyses, marketing materials, and information relating to proposed sale transactions;

i. Providing testimony, declarations, or other evidentiary support in connection with Court approval of proposed sale transactions, if requested; and

j. Performing such other brokerage, marketing, advisory, and transaction-related services as may be requested by the Debtors in connection with these chapter 11 cases and agreed to by NFS.

17. In connection with the services described above, NFS will coordinate and communicate, as appropriate, with the Debtors, the Debtors' management, and the Debtors' retained professionals regarding marketing efforts, prospective transactions, due diligence matters, and sale-related activities. NFS will also provide updates regarding the status of marketing efforts, purchaser interest, negotiations, and proposed transactions in order to facilitate an orderly and efficient sale process and to maximize value for the Debtors' estates.

18. Additionally, NFS will work cooperatively with the Debtors' retained professionals to ensure that services are performed efficiently and without unnecessary duplication of efforts in connection with these chapter 11 cases and any proposed sale transactions.

## COMPENSATION

19. Consistent with the terms of the Engagement Agreement, and subject to approval by this Court, the Debtors have agreed to compensate NFS in connection with

6                                                    **MOTION**

the sale of a Debtor's Carl's Jr. franchised restaurant location or substantially all of the assets of a restaurant operated by a Debtor in an amount equal to the greater of: (a) $10,000 per restaurant location sold; or (b) four percent (4%) of the aggregate consideration paid in connection with a transaction.

20.     Upon approval of the Engagement Agreement by this Court, the Debtors shall pay NFS a marketing fee in the amount of $40,000 for the development of marketing materials and advertising relating to the proposed sale process. The $40,000 marketing fee shall be credited by NFS against any final commission earned by NFS in connection with a transaction.

21.     In addition to the foregoing compensation, the Debtors shall reimburse NFS for all reasonable and documented out-of-pocket expenses incurred in connection with the services provided pursuant to the Engagement Agreement.

22.     The Debtors submit that the compensation structure set forth in the Engagement Agreement is reasonable, appropriate, and consistent with compensation arrangements customarily approved in similar chapter 11 cases involving brokerage, marketing, asset recovery, and franchise sale advisory services.

23.     The Debtors further request approval of the compensation terms pursuant to section 328 of the Bankruptcy Code and seek authorization for payment of such compensation without the necessity of further fee applications except as otherwise required by the Bankruptcy Code, Bankruptcy Rules, or further order of this Court.

24.     The Debtors further submit that retention of NFS on the terms set forth herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and is necessary to maximize the value of the Debtors' restaurant locations and related assets.

**BASIS FOR RELIEF**

7

**MOTION**

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

25.     Section 327(a) of the Bankruptcy Code authorizes a debtor in possession, with Court approval, to employ professional persons that do not hold or represent interests adverse to the estate and that are disinterested persons.

26.     Section 328(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals on reasonable terms and conditions of employment, including on a fixed, percentage, or contingent fee basis.

27.     As set forth in the Ingram Declaration submitted concurrently herewith, NFS is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and does not hold or represent any interest adverse to the Debtors or their estates with respect to the matters upon which NFS is to be employed.

28.     Further, as reflected in the NFS profile and marketing materials attached to the Ingram Declaration as **Exhibit "2,"** NFS possesses substantial experience in franchise-related transactions, distressed asset recovery matters, bankruptcy-related restaurant sales, refranchising transactions, auction-related sale processes, and restaurant restructuring and sale transactions involving nationally recognized restaurant brands.

29.     The Debtors believe that retention of NFS is necessary and appropriate to assist the Debtors in maximizing value for the benefit of creditors and other parties in interest and to facilitate an orderly and efficient marketing and sale process for the Debtors' restaurant locations and related assets.

30.     The Debtors further submit that the terms and conditions of the Engagement Agreement, including the proposed compensation structure and marketing fee, are reasonable and appropriate under the circumstances and consistent with compensation arrangements customarily approved in similar chapter 11 cases involving brokerage, marketing, asset recovery, and franchise sale advisory services.

31.     The Debtors further submit that approval of the compensation structure pursuant to section 328 of the Bankruptcy Code, including approval without the necessity

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

8                                    **MOTION**

of further fee applications except as otherwise required by the Bankruptcy Code or further order of this Court, is appropriate and in the best interests of the Debtors' estates.

## NO PRIOR REQUEST

32.   No prior request for the relief sought in this Motion has been made by SGI or the Debtors to this or any other court.

## CONCLUSION

WHEREFORE, SGI respectfully requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit "A,"** authorizing and approving the employment and retention of National Franchise Sales, Inc. as broker for the Debtors effective as of May 12, 2026, pursuant to sections 327 and 328 of the Bankruptcy Code and pursuant to the terms of the Engagement Agreement, approving the compensation structure set forth therein, and granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 14, 2026                          **THE BENSAMOCHAN LAW FIRM, INC.**

/s/Eric Bensamochan
Eric Bensamochan, Esq. SBN 255482
Proposed Counsel to the Debtors and
Debtors In Possession.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

9                                    **MOTION**

# EXHIBIT "A"

Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740

Proposed Counsel for Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| SUN GIR INCORPORATED, et al.[1] | Chapter 11 |
| Debtor and Debtor-in-Possession. | **Jointly Administered Wit**h:<br><br>8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |

Affects:

☐ Harshad & Nasir, Incorporated
☐ Senior Classic Leasing, LLC
☐ DFG Restaurants, Incorporated
☐ Second Star Holdings, LLC
☐ Third Star Investments, LLC

☒ Affects All Debtors

**(PORPOSED) ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF NATIONAL FRANCHISE SALES, INC. AS BROKER AND SALES ADVISOR FOR THE DEBTORS EFFECTIVE AS OF MAY 12, 2026**

[No hearing required unless requested per L.B.R. 2014-1(b)]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include Sun Gir, Inc. (2519), Harshad & Nasir, Inc. (6260), Senior Classic Leasing, LLC (3884), DFG Restaurants, Inc. (2121), Second Star Holdings, LLC (0844) and Third Star Investments, LLC (0421).  The Debtors' service address is 1 Centerpointe Drive, Suite 400, La Palma, CA 90623

**ORDER**

Upon the Motion (the "Motion") of Sun Gir Incorporated and the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an order authorizing and approving the employment and retention of National Franchise Sales, Inc. ("NFS") as broker and sales advisor for the Debtors effective as of May 12, 2026, pursuant to sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code"); and the Court having reviewed the Motion, the Declaration of Michael J. Ingram in Support Thereof, the Engagement Agreement, and all pleadings related thereto; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and sufficient notice having been provided; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is **GRANTED**.

2.  The Debtors are authorized and approved to employ and retain National Franchise Sales, Inc. as broker and sales advisor for the Debtors effective as of May 12, 2026, pursuant to the terms and conditions set forth in the Engagement Agreement.

3.  NFS is authorized to provide the services described in the Motion and the Engagement Agreement.

4.  The compensation provisions set forth in the Engagement Agreement are approved pursuant to section 328 of the Bankruptcy Code, including, without limitation: (a) compensation to NFS in connection with the sale of a Debtor's Carl's Jr. franchised restaurant location or substantially all of the assets of a restaurant operated by a Debtor in an amount equal to the greater of: (i) $10,000 per restaurant location sold; or (ii) four percent (4%) of the aggregate consideration paid in connection with

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

2                                        ORDER

a transaction; (b) payment of the $40,000 marketing fee described in the Engagement Agreement, which shall be credited against any final commission earned by NFS; and (c) reimbursement of all reasonable and documented out-of-pocket expenses incurred by NFS in connection with the services provided pursuant to the Engagement Agreement.

5. The Debtors are authorized to compensate NFS pursuant to the terms of the Engagement Agreement without the necessity of filing interim fee applications, subject to the provisions of section 328 of the Bankruptcy Code and the jurisdiction of this Court.

6. To the extent there is any inconsistency between the terms of this Order, the Motion, or the Engagement Agreement, the terms of this Order shall govern and control.

7. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

**###**

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

3

**ORDER**

# EXHIBIT "B"

## TIMELINE - CARL'S JR.  BANKRUPTCY SALE

| Date | NFS/Client Event | Court Event |
| --- | --- | --- |
| April 2, 2026 | | Initial Filing |
| April 16, 2026 | CR3 engagement disclosed Tim Skillman designated CRO | CRO designated |
| April 22, 2026 | **Becky initial DD request** | DD Requested |
| May 7, 2026 | Harshad and Ben meet at NFS HQ's | |
| May 12, 2026 | **Engagement Agreement Signed** | |
| May 12, 2026 | **Application to Employ NFS submitted to Court** | **Application to Employ** |
| May 14, 2026 | Stores to be offered for sale identified assuming we have enouigh information to do so. | |
| May 19, 2026 | **CIM AND MARKETING MATERIAL COMPLETE** | |
| May 22, 2026 | **NFS EDR Stocked & Open** | **If all received from Debtor by May 20th** |
| May ?, 2026 | **Bidding Procedures / Sale Procedures** (File Bidding procedures the sale procedures attach to Marketing Begins internal and external sites and ourside sources | **Need to be submitted to court for approval Need DD to plan accordingly.** |
| 5/12-19/2026 | Cash Collateral Projected to allow for a sale process. | |
| May ?, 2026 | Court Hearing | **APPROVAL OF BIDDING PROCEDURES** lease rejection motion + stay relief hearing |
| June 3, 2026 | Court Hearing | |
| July 13 to 26-2026 | Site Inspections | |
| July 24, 2026 | **Stalking Horse Bid Deadline 12 Noon PDT** | |
| July 29, 2026 | Stalking Horse Bidder Annouced | |
| July 31, 2026 | Stalking Horse Bidder increase deposit due deadline | |
| 8/7 or 10 /2026 | **Live Auction  or final bid deadline** | |
| August 12, 2026 | Annoucement of winning bidders and to increase deposits | |
| 8/?/2026 | **Sale Hearing** | **Sale Hearing** |

Docusign Envelope ID: A632631A-73BA-4D6B-922C-E16B4EF8DB2D

## DECLARATION OF MICHAEL J. INGRAM

I, Michael J. Ingram, declare and state:

1.      I am the Vice President of National Franchise Sales, Inc. (the "Firm") and am authorized to make this declaration on behalf of the Firm. I have personal knowledge of the facts set forth herein, and, if called upon to testify, I could and would do so competently and truthfully.

2.      I make this declaration in support of the Application of Debtors and Debtors-in-Possession for Authority to Employ National Franchise Sales, Inc. as Debtor's Broker (the "Application"). I have reviewed the Application and, to the best of my knowledge, the factual representations contained therein regarding the Firm are materially true and correct.

3.      The Debtors have requested that the Firm represent them as their broker in their Chapter 11 cases in connection with the marketing and sale of restaurants of the Debtors. The Debtors seeks to employ the Firm as their broker, effective as of May 12, 2026, in accordance with the terms contained in the Engagement Letter (the "Engagement Letter"), entered into by and among the Debtors and the Firm. A true and complete copy of the Engagement Letter is attached as Exhibit "1" hereto and is incorporated herein by this reference.

4.      The Firm is an industry leader in franchise business brokerage. The Firm has been in business since 1978 and has facilitated numerous transactions for franchisees and franchisors to acquire franchise businesses or to sell their existing businesses, from sales of a single-unit franchise to multi-unit sales involving over 100 units. The Firm's offices are staffed with over 20 franchise industry professionals. The professionals of the Firm have a tremendous amount of restaurant industry experience with a particular emphasis on selling franchise restaurants. The Firm maintains, an extensive database of pre-screened qualified buyers for single-unit purchases and buyers seeking multi-unit acquisitions and has substantial experience regarding and knowledge of all aspects of marketing and selling franchise businesses.

Docusign Envelope ID: A632631A-73BA-4D6B-922C-E16B4EF8DB2D

5.      The Firm has expertise in the asset recovery of non-performing franchise businesses in bankruptcy, foreclosure or default.  Professionals at the Firm understand the franchise restaurant bankruptcy process and the unique requirements, timelines, expectations and issues associated therewith.  The Firm has represented debtors, trustees and secured buyers in bankruptcy cases and the Firm's franchise restaurant bankruptcy experience includes involvement in cases regarding numerous brands such as Burger King, Taco Bell, Jack in the Box, Wingstop, Denny's and many more.

6.      I Michael J. Ingram and the Firm's Asset Recovery Team Leader and a Principal of NFS, and I will be the professional at the Firm who will be primarily responsible for providing the sales agent services anticipated herein.  My professional biography is included in the Firm's profile attached as Exhibit "2" hereto and incorporated herein by this reference.  The Firm's profile includes background information regarding the Firm and a description of a sampling of the Firm's previous representations.  I myself and the other members and staff of the Firm, are well equipped to represent the Debtors in their cases.

7.      The Debtors and the Firm have agreed, subject to the Court's approval, to the terms of the Firm's employment in these cases.  These terms are set forth in the Engagement Letter.

8.      The Debtors have requested that the Firm render to the Debtors the following types of professional services:

a.      Providing financial advice and assistance in connection with one or a series of transactions (the "Transactions") for the sale of restaurants of the Debtors or all or substantially all of the assets of a restaurant operated by a Debtor and directing and overseeing the marketing and sale process for the sale of restaurants of the Debtors;

b.      Assisting the Debtors in considering and analyzing such Transactions and in negotiating the financial aspects thereof;

c.  If requested by the Debtors, providing written or oral testimony before the Court regarding the marketing process in which the Firm has engaged and the proposed terms and conditions of the Transactions;

d.  Creating and maintaining an electronic data room for use by any persons authorized by the Debtors through NFS to access the confidential information concerning the restaurants marketed by the Debtors and otherwise assisting potential buyers with regard to performing diligence with respect to a Transaction; and

e.  Providing to the Debtors whatever other services that the Debtors may reasonably require of the Firm in connection with the marketing and sale of restaurants of the Debtors.

9.  None of the services that the Firm will render in connection with the Debtors' cases are expected to be duplicative of the services rendered by any of the other professionals of the Debtors employed in the Debtors' cases.

10.  As set forth in more detail in the Engagement Letter, the following are the material terms of the Firm's compensation (the "Fees"):

a.  Subject to the approval of the Court, the Debtors agree to pay to the Firm, as compensation for its services in connection with the sale of a Debtor's Carl's Jr. franchised restaurant or all or substantially all of the assets of a Debtor's restaurant, the greater of:  (i) a commission of $10,000 per restaurant location sold by the Debtor; or (ii) four percent (4%) of the aggregate consideration (defined in paragraph 3 & 4 of the Engagement Letter) to be paid in the Transaction; and

b.  Regardless of the completion of a sale, the Debtors will reimburse the Firm for its reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided to the Debtors.

11.  Other than the marketing fee that will be paid upon court approval, the Debtors did not pay to the Firm a retainer.

Docusign Envelope ID: A632631A-73BA-4D6B-922C-E16B4EF8DB2D

12.     I believe that the Firm's proposed fee arrangement with the Debtors is reasonable compensation for the actual and necessary services that the Firm will render to the Debtors and is commensurate with market.

13.     In an effort to minimize administrative expenses in these cases, by the Application, the Debtors seek from the Court final approval of the Firm's proposed Fees, without the need for the Firm to file a fee application in order to obtain allowance of the Firm's Fees. The Firm will not be maintaining time sheets or billing records in connection with the Firm's representation of the Debtors since the Firm is not billing the Debtors on an hourly basis for its services.

14.     I recognize that any additional fees or costs will require Court approval and the Firm will seek such approval pursuant to the requirements of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.  To the extent that the Firm's compensation is not approved pursuant to the Application (i.e., without the need for filing a fee application), the Firm will apply to this Court for compensation and reimbursement for fees incurred and costs advanced in these cases.  I understand and agree, and the Firm understands and agrees, that the proposed compensation arrangement is subject to the provisions of Section 328 of the Bankruptcy Code, which authorizes this Court to allow compensation different from what is provided herein if the fee arrangement provided for herein appears, in retrospect, to have been improvident in light of developments unanticipated at the outset of the case.

15.     To the best of my knowledge, neither the Firm, nor any of the professionals comprising or employed by the Firm, has any connection with the Debtors, the Debtors' creditors, or with any other party-in-interest in the Debtors' cases, or their respective attorneys or accountants, except only for the following:

a.     The Firm has acted as broker to the Debtors prior to the Petition Date. The Firm has acted as broker for the Debtors in connection with the sale of the Debtors' restaurants in the past.

Docusign Envelope ID: A632631A-73BA-4D6B-922C-E16B4EF8DB2D

b.      The Firm has received no compensation in connection with the sale of any of the Debtors' current restaurants.

c.      The Firm has represented and is representing other Carl's Jr. franchisees.

d.      As stated hereinabove, the Firm maintains a database of pre-screened qualified buyers for franchise businesses.  The Firm has represented certain of such entities.  Potential buyers for the Debtors' restaurants could include persons or entities represented previously by the Firm.

16.     To the best of my knowledge, neither the Firm nor any of its professionals:

a.      is a creditor, an equity security holder, or an insider of a Debtor as of the Petition Date;

b.      is or was an investment banker for any outstanding security of the Debtors, or was within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors;

c.      is or was, within two years before the Petition Date, a director, officer or employee of the Debtor; or

d.      has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in a Debtor or for any other reason.

17.     To the best of my knowledge, neither the Firm nor any professionals who are members of the Firm possess or assert an economic interest that would tend to lessen the value of the Debtors' estates or that would create an actual or potential dispute against the Debtors' estates or has a predisposition that will create a bias against the estates.

18.     The Firm has performed a conflicts search regarding each of the primary secured claimants in these cases and regarding each of the largest general unsecured creditors

in the Debtors' cases. The Firm has worked with CKE (Franchisor) for many years and has been involved in other cases wherein McLane was a creditor. To the best of my knowledge, the Firm has never represented any of the creditors in these cases or has had any relevant connections with the creditors in these cases.

19. To the best of my knowledge, none of the professionals comprising or employed by the Firm is related to any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or to any person employed by the United States Trustee.

20. Based upon the foregoing, I believe that the Firm has no conflict of interest representing the Debtors in their Chapter 11 cases, and that the Firm holds no adverse interests with respect to the Debtors' cases.

21. The Firm has not agreed to share with any person or entity any compensation received by the Firm in the Debtors' cases, except as among the members or agents of the Firm

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED this 12th day of May 2026, at National Harbor, Maryland.

DocuSigned by:

*Michael Ingram*

67878A299B6C44F...

Michael J. Ingram

# EXHIBIT "1"



**National Franchise Sales**

M&A |Advisory Services

1601 Dove Street, Suite 150 | Newport Beach, CA 92660 ● 949.428.0480
www.nationalfranchisesales.com

May 12, 2026

Harshad Dharod
Sun Gir Incorporated
1 Centerpointe Drive
La Palma, CA 90623

**Re: Engagement Agreement**

This letter will confirm that National Franchise Sales, Inc. ("NFS"), has been engaged, as of the date above, to act as a Franchise Broker ("Broker") by Harshad Dharod ("CEO") on behalf Sun Gir Incorporated, Harshad & Nasir Incorporated, Senior Classic Leasing, LLC, DFG Restaurants, Incorporated, Second Star Holdings, LLC & Third Star Investments, LLC ("Company"), in connection with Bankruptcy Petition #8:26-bk-11056-SC in connection with the proposed sale or sales (collectively, "Transactions") of certain assets of the Company.

1. In its capacity as Broker, NFS will provide the Company with advice and assistance in connection with potential Transactions, which will include assisting the Company in considering and analyzing such Transactions and in negotiating the financial aspects thereof. If requested by the Company, NFS will provide written or oral testimony before the United States Bankruptcy Court for the Central District of California (Santa Ana) (the "Bankruptcy Court"), which is presiding over the Company's Chapter 11 case, regarding the marketing process in which NFS has been engaged and the proposed terms and conditions of the Transactions. NFS will create and maintain an electronic data room for use by any persons authorized by the Company to access confidential information concerning the franchised restaurant businesses of the Company.

2. The term "Transactions" means one or a series of transactions in which NFS is involved whereby, directly or indirectly, all or any portion of the Carl's Jr franchised restaurant businesses of the Company (the "Business"), or the assets (or any right to all or any substantial portion of the revenues or income) of the Business, including, without limitation, the Company's leasehold interests in connection with the Business, are transferred to, acquired by, or combined with any person or one or more persons formed by or affiliated with such person (the "Purchaser").

3. The Company shall timely seek an order of the Bankruptcy Court authorizing the Company to employ NFS as a professional entity pursuant to sections 327 and 328 of the United States Bankruptcy Code (the "Bankruptcy Code"), subject to the reasonableness standard of review provided in section 330(a) of the Bankruptcy Code,

pursuant to and consistent with the terms of this agreement. Subject to the approval of the Bankruptcy Court, the Company agrees to pay NFS, as compensation for its services in connection with the sale of the Business, the greater of: (a) a commission of $10,000 per restaurant location operated by the Company which is sold or transferred to a Purchaser; or (b) Four percent (4%) of the Aggregate Consideration to be paid in each Transaction. Notwithstanding the above, should Aggregate Consideration paid to Company be less than $13,000,000, then NFS shall receive 4% of the Aggregate Consideration.

Upon approval of this Engagement Agreement by the Bankruptcy Court, the Company shall pay a marketing fee of $40,000 for the development of requisite marketing materials and for various advertising of the offerings. This $40,000 marketing fee shall be credited by NFS against the final commission to be paid to NFS.

In event that the Buyer is Abdul Hamideh/AJTX Management or its affiliate, NFS shall split the commission paid by Company with Citizens Bank such that the total commission paid by Company does not exceed 4% in aggregate to both NFS and Citizens Bank, only in regard to the Carl's Jr. restaurants this prospective Buyer purchases. Company has advised NFS that its existing commission agreement with Citizens Bank is for Citizens Bank to receive 2% of Transaction sales price.

In addition, regardless of the completion of a sale in all or in part, subject to approval by the Bankruptcy Court, the Company shall reimburse NFS for its reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided hereunder, not to exceed $10,000. However, in the event a live auction occurs, this maximum will not exceed $35,000. NFS must secure pre-approval from Company for any single expense in excess of $500.

4.  The term "Aggregate Consideration" shall mean the total amount of cash and the fair market value (on the date of payment) of all other consideration paid or payable (including amounts paid into escrow) to the Company's estate in connection with a Transaction, including amounts paid or payable in respect of convertible securities, warrants, stock appreciation rights, options or similar rights, but excluding any amounts paid by a Purchaser for food and inventory. If the Transactions involve a combination or series of Transactions, the aggregate consideration shall be determined as if all of the Business were proposed to be acquired as of the same time.

5.  NFS shall provide a timeline/milestone schedule to Company of the sale process such that the sale can be completed no later than August 12, 2026. Company and NFS understand that the consummation of sale(s) is subject to court approval and accordingly, the completion of the sale(s) may be delayed. NFS will use its best efforts to complete the NFS portion of the sale(s) process by August 12, 2026 with Company and NFS understanding that some timelines are outside the control of NFS. NFS and Company acknowledge that time is of the essence.

6.  Unless otherwise specified in this letter agreement, compensation payable to NFS hereunder shall be paid by the Company to NFS directly upon the later of (a) the consummation of a Transaction and (b) entry of a final order by the Bankruptcy Court approving the payment of such compensation to NFS. Any compensation attributable to that part of the aggregate consideration which is contingent upon the occurrence of some future event shall be estimated for purposes of the fee calculation at an expected

value reasonably acceptable to the Company and to NFS at the time of and shall be paid by the Company to NFS in accordance with, the previous sentence of this paragraph.

7.  It is specifically understood that NFS has not made, and will not make, any physical inspection of the properties or assets of the Company or any potential Purchaser and with respect to any financial forecasts that may be furnished to or discussed with NFS by the Company or any potential Purchaser, NFS will assume that they have been reasonably prepared and reflect the best then currently available estimates and judgments of the Company or such potential Purchaser's management as to the expected future financial performance of the Company or such potential Purchaser. The Company will notify NFS promptly of any material change in any information (all such information, the "Information"), previously made available to NFS by the Company or any potential Purchaser that becomes known to the Companies.

8.  The Company will use its reasonable best efforts to furnish, or cause to be furnished, to NFS such Information as NFS believes appropriate to its engagement hereunder.

9.  The Company agrees that all advice given by NFS in connection with its engagement hereunder is for the benefit of and use by the Company in considering the Transaction and that no such advice shall be used for any other purpose or be disclosed, reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to NFS be made by or on behalf of the Company, in each case without NFS' prior written consent, which consent shall not be unreasonably withheld; provided, however, that all of the foregoing provisions of this paragraph are subject to and qualified by the Company's obligations under the Bankruptcy Code and by any other use or disclosure of NFS' advice required by the Bankruptcy Court or any other court of competent jurisdiction in connection with the Companies' bankruptcy cases.

10. The Company agrees that NFS has been retained to act solely as Broker to the Company, and not as an advisor to or agent of any other person, and that, except as otherwise provided by the Bankruptcy Code, the Company's engagement of NFS is not intended to confer rights upon any person not a party hereto (including stockholders, employees or creditors of the Company) as against NFS or its affiliates, or their directors, officers, employees or agents.  The Company further agrees that under no circumstances shall the execution of this letter agreement or any act of NFS hereunder commit or be deemed a commitment by NFS (or any affiliate) to provide or arrange any bank financing or other debt or equity financing for any transaction or to purchase any security in connection therewith.  It is specifically understood that the Company will not base its decisions regarding whether and how to pursue any Transaction solely on NFS' advice, but will also consider the advice of the Company's legal, tax and other business advisors and such other factors as they consider appropriate.  NFS, as an independent contractor under this letter agreement, shall not assume the responsibilities of a fiduciary to the Company in connection with the performance of NFS services hereunder, and any duties arising out of its engagement shall be owed solely to NFS.

11. NFS' engagement hereunder may be terminated at any time by either NFS or the Company, it being understood that upon termination, this letter agreement shall have no further force or effect, except that any termination of NFS' engagement hereunder for any reason by NFS shall not affect the Company's obligation to pay to NFS fees accruing prior to such termination to the extent provided for herein.  In the event of a termination by the Company, the Company shall pay to NFS its out-of-pocket fees to

the extent provided for herein with respect to any Transaction.  In addition, provisions relating to the status of NFS as an independent contractor, the limitation on to whom NFS shall owe any duties, governing law, choice of forum, successors and assigns, and the waiver of the right to trial by jury shall survive any termination of this letter agreement.

12.   This letter agreement and any rights, duties or obligations hereunder may not be waived, amended, modified or assigned, in any way, in whole or in part, without the prior written consent of, and shall inure to the benefit of and be binding upon the successors, assigns and personal representatives of, each of the parties hereto.

13.   In case any provision of this letter agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this letter agreement shall not in any way be affected or impaired thereby.

14.   This letter agreement and any claim or dispute of any kind or nature whatsoever arising out of, or relating to, this letter agreement or engagement hereunder, directly or indirectly (including any claim concerning advice provided pursuant to this letter agreement), shall be governed by and construed in accordance with the laws of the State of California, without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the Bankruptcy Court or United States District Court having jurisdiction over the Company's bankruptcy case, and each of the parties hereby submits to the jurisdiction of such courts.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement, subject to the Bankruptcy Court's approval thereof.

Very truly yours,

*National Franchise Sales, Inc.*

By: _____
      Jerome J. Thissen

Accepted and agreed to as of the date first written above:

By: _____
      Harshad Dharod
      Sun Gir Incorporated & affiliated entities noted above
      1 Centerpointe Drive
      La Palma, CA 90623

4 of 4

# EXHIBIT "2"

**National Franchise Sales**

# ASSET RECOVERY

## BRINGING MARKET VALUE TO DISTRESSED FRANCHISE ASSETS



Scan for more information

📞 (949) 428-0480

 nfs@nationalfranchisesales.com

ABOUT
COMPANY

# National Franchise Sales: Leading the Way in M&A, Brokerage, Asset Recovery, and Refranchising

National Franchise Sales (NFS) has been a trusted leader in franchise Mergers & Acquisitions (M&A), brokerage, asset recovery, and refranchising for decades, delivering tailored solutions that help franchise owners, franchisors and private equity maximize their investments and navigate complex transitions.

**Mergers & Acquisitions (M&A)**

- Expert Guidance: NFS manages complex M&A transactions in the franchise mid-market sector, ensuring seamless execution for buyers and sellers.

- Comprehensive Support: Services include market analysis, valuations, due diligence, contract negotiations, strategic advice extensive buyer vetting, and complete transaction processing.

- Industry-Wide Success: NFS specializes in managing transactions within multiple franchise restaurant sectors, offering expertise in the intricacies of franchisor-franchisee relationships and market trends

**Asset Recovery**

- Distressed Business Solutions: NFS specializes in asset recovery for struggling or bankrupt franchise businesses, helping secure maximum value for stakeholders.

- Bankruptcy and Turnaround: They provide support in complex bankruptcy cases, offering expertise in administrating live and sealed bid auctions.

- Protecting Value: NFS focuses on minimizing loss while optimizing outcomes for all parties involved in distressed asset recovery.

# SPECIALTY
# SERVICES

**Refranchising**

- Growth Acceleration: NFS helps franchisors transition company-owned stores to franchisee-owned, unlocking capital for marketing, expansion and streamlining operations.

- Matching Quality Operators: NFS connects franchisors with experienced, high-caliber franchisees and prospective franchisees who align with the brand's values and goals.

- Seamless Transition: They facilitate all steps of the transaction process from buyer vetting, due diligence, escrow and changeover.

**Strategic Planning:** NFS offers long-term advisory services for portfolio optimization, growth strategy, and exit planning.

**Tailored Insights:** Their team conducts in-depth market analysis, operational reviews, and financial modeling to help clients make informed, strategic decisions.

**Client-Centered Solutions:** Whether expanding, exiting, or restructuring, NFS provides actionable advice designed to align with their clients' business objectives.





# WHY
# NFS

NFS sets the standard in franchise M&A, brokerage, refranchising, and asset recovery, delivering unmatched expertise to empower clients in reaching their strategic goals and maximizing the value of their franchise investments.

- **Proven Track Record:** NFS has successfully managed M&A, refranchising, and asset recovery for numerous high-profile franchise brands.

- **Client-First Approach**: NFS tailors each engagement to the specific needs of its clients, ensuring successful outcomes and long-term value.

- **Brand Specific Teams:** Within each brand, specific NFS representatives manage transactions by having cultivated strong relationships with corporate and franchisee contacts through numerous past M&A deals. This enables them to speak authoritatively about the qualifications and identify potential franchisees or private equity buyers who meet the required standards.

- **Deep Industry Expertise:** With a team of over 25 industry professionals, and decades of experience, NFS understands the intricacies of franchising, making them a trusted partner for transactions of all sizes.



> National Franchise Sales did the most fantastic job!
>
> I was very proud to be a part of the whole program and I have no doubt that participants were totally impressed with the entire live auction and results
>
> **BEVERLY MCFARLAND**
> Chapter 11 Trustee



> I served as bankruptcy counsel to the Fatburger restaurant chain and thoroughly enjoyed working with NFS.
>
> I found their team to be incredibly hard working, devoted and talented and they deserve all of the credit for the extraordinary results that were achieved at the auction sale of the restaurants under very difficult circumstances
>
> **RON BENDER**
> Levene Neale Bender Yoo & Brill LLP



> Taking this opportunity, we at CNB want to thank all of you for staging the auction and renegotiated the leases up to the last minute, so efficiently. Your efforts are to be commemorated....
>
> **LINI LI**
> City National Bank

# MICHAEL INGRAM

## Asset Recovery Specialist




National Franchise Sales

Michael Ingram obtained his B.S. in Business at San Diego State University and was a successful multi-unit franchisee of several brands, prior to joining National Franchise Sales in 1997.

Michael's experience in refranchising has helped several Franchisors free up capital, generate cash flow, reduce overhead and turn under-performing units into successful franchised units.

## CONTACT :

949.428.0482

mi@nationalfranchisesales.com

www.nationalfranchisesales.com/assetrecovery

## NOTEWORTHY ENGAGEMENTS

 **$7M Recovered**

Engaged by the Trustee following the resignation of the Receiver, to devise a Value Optimization plan aimed at enhancing the relationship/recovery model beyond the anticipations of the Trustee and creditors. The multimillion-dollar recovery realized from these Taco Bell units facilitated a measure of recovery for unsecured creditors.

 **100+ Units**

Endorsed by the secured creditor, delivered Asset Recovery and Sales Advisory services to this 100+ unit bi-coastal Burger King Franchisee, culminating in the successful sale of all units in alignment with the Franchisor's stipulations for substantial capital outcomes.

 **Creditor fully Recovered**

Successfully managed bankruptcy sales for EPL X & EPL Y franchisees in Los Angeles and Central California, enhancing value through Adaptive Sale Process and lease improvements. NFS's strategic communications and live auction approach led to a $4.8 million recovery, meeting DIP's estimates and securing full creditor recovery.

## MEMBER







# MICHAEL ARROWSMITH

## Asset Recovery Specialist



Michael Arrowsmith is a seasoned leader with more than 25 years of experience in franchise sales, development, and business acquisition. From spearheading innovative initiatives, to playing a key role in the major M&A transactions at the firm, and sharing valuable industry insights at marquee events like the Restaurant Finance and Development Conference, Michael has established himself as a trusted and influential voice in the franchise community.

## CONTACT :

949.428.0491

ma@nationalfranchisesales.com

www.nationalfranchisesales.com/assetrecovery

## NOTEWORTHY ENGAGEMENTS

 $39M Recovered

Michael Arrowsmith served as the auctioneer for a Jack in the Box auction of over 60 units, overseeing a seamless auction process that included over 40 qualified candidates approved by Jack in the Box. His efforts contributed the process of achieving a remarkable recovery of $39 million

 $12M Recovered

Endorsed by the Franchisor (Denny's) and to secured creditors for the provision of sales and advisory services to a multi–state, 40+ unit franchisee and its creditors. Executed a nationwide marketing strategy, culminating in a recovery exceeding $12 million.

 Creditor fully Recovered

Successfully managed bankruptcy sales for EPL X & EPL Y franchisees in Los Angeles and Central California, enhancing value through Adaptive Sale Process and lease improvements. NFS's strategic communications and live auction approach led to a $4.8 million recovery, meeting DIP's estimates and securing full creditor recovery.

## MEMBER

  

# ALANA MCGINNIS

## Asset Recovery
## Project Coordinator



Since 2013 Alana McGinnis has been tracking, initiating, and supporting NFS engagement opportunities in bankruptcy, receivership, and foreclosure. McGinnis is responsible for planning, procurement and execution of asset recovery projects. She also oversees the development and maintenance of various NFS initiatives.

McGinnis is a member of the California Receivers' Forum, American Bankruptcy Institute, and the Turnaround Management Association.

### CONTACT :

949.428.0497

am@nationalfranchisesales.com

www.nationalfranchisesales.com/assetrecovery



## NOTEWORTHY ENGAGEMENTS

 **Papa Washington, LLC and PJ Sound, LLC ('PJW')**

20-unit Papa John's franchisee in the Puget Sound area of WA was placed in receivership by the Franchisor.

The Receiver secured a $3,000,000 Stalking Horse bid. Shortly thereafter National Franchise Sales ("NFS") was engaged to sell the restaurants through a court approved Receivership Sale. NFS designed a customized sale process to meet the strict timeline and the constraints required by the Franchisor.

NFS provided an Electronic Data Room for the Due Diligence materials and widely marketed the opportunity. 500 interested parties came forward. Twelve buyer groups were fully vetted and received preliminary approval by the franchisor and were permitted to participate in the NFS conducted live Auction, culminating with a final sales price of $6,000,000.

**Metro Management**

A four unit Burger King Franchisee with units operating in the Los Angeles area, Metro Management Systems was forced into receivership after failure to make proper payments to the secured lender.

NFS conducted the buyer-bidder search and the vetting process for a live auction and supplied an Electronic Data Room with Due Diligence material.

One of the largest Burger King Franchisees emerged as buyer and came to a settlement with the secured creditor & seller.

Engagement Highlights:
- Re-negotiated leases and term
- Negotiated and satisfied Landlord Claims
- Paid in full to the secure lender

## MEMBER

  



# National Franchise Sales

# LET'S WORK
# TOGETHER

Scan
for more
information

(949) 428-0480

nfs@nationalfranchisesales.com

| In re:<br>Sun Gir Incorporated | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 8:26-bk-11056 |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**A true and correct copy of the foregoing document entitled (***specify***): DEBTORS' NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 327 AND 328 OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF NATIONAL FRANCHISE SALES, INC. AS BROKER AND SALES ADVISOR FOR THE DEBTORS EFFECTIVE AS OF MAY 12, 2026; DECLARATION OF MICHAEL J. INGRAM IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  May 14, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Eric Bensamochan Eric@eblawfirm.us
United States Trustee ustpregion16.sa.ecf@usdoj.gov
Kenneth Misken DOJ-UST Kenneth.M.Misken@usdoj.gov
William Schumacher wschumacher@winthrop.com
Atle T. Saterbak asaterbak@winthrop.com
Andrew J. Steil asteil@winthrop.com
Eric D Goldberg eric.goldberg@dlapiper.com
Dustin P Branch branchd@ballardspahr.com
Nahal Zarnighian zarnighiann@ballardspahr.com
Michael John Agoglia  michael.agoglia@alston.com
Jacob A. Johnson jacob.Johnson@alston.com
Dustin P. Branch branchd@ballardspahr.com
Neama Cory Barari nbarari@caskeyholzman.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On May 14, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth St., Ste. 5130
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 14, 2026 | Jennifer Svonkin | /s/Jennifer Svonkin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2012*                                                                                          **9013-3.1.PROOF.SERVICE**

| In re:<br>Sun Gir Incorporated | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:26-bk-11056 |

Freund: Sherry.W@Freundbakery.com

Sectran Security Inc spulido@sectransecurity.com

Flue Steam Inc. summer@fluesteam.com

John Youens-Crowe LLP john.youens@crowe.com

Covina Properties LLC bettina@packagemore.com

The Wasserstrom Company reneepennington@wasserstrom.com

Hewlett-Packard Financial Services Co
P.O Box 402582
Atlanta GA 30384-2582

Securities & Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, California 90071-9591

LA Dept of Water & Power
PO Box 30808
Los Angeles, CA 90030-0808

Southern California Edison
P.O. BOX 300
Rosemead, CA 91772-0002

Los Angeles County Tax Collector
P.O Box 54018
Los Angeles, CA 90054-0018

Orchid Bay LLC c/o Columbia Bank
110.S. Fairfax Avenue
Los Angeles, CA 90036

Crosspoint Realty Services, Inc
P.O. Box 889288
Los Angeles, CA 90088

Xenial Inc
PO Box 930157
Atlanta, GA 31193-0157

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                     **F 9013-3.1**

Label Matrix for local noticing
0973-8
Case 8:26-bk-11056-SC
Central District of California
Santa Ana
Thu May 14 17:28:12 PDT 2026

McLane Foodservice, Inc.
c/o Alston & Bird LLP
Attn: Jacob Johnson
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3467

Sun Gir Incorporated
1 Centerpointe Dr., Suite 400
La Palma, CA 90623-2530

The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

Watt Laverne, LLC
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

Carl's Jr. Restaurants LLC
c/o DLA Piper LLP
1201 W Peachtree St., Ste 2800
Atlanta, GA 30309-3450

Carl's Jr. Restaurants LLC
c/o Eric Goldberg, Esq.
2000 Avenue of the Stars, Ste 400 N Towe
Los Angeles, CA 90067-4735

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

The Wasserstrom Company
4500 E Broad St
Columbus, OH 43213-1360

US Securities & Exchange Commission
444 S Flower St., # 900
Los Angeles, CA 90071-2934

United States Trustee
411 W Fourth Street
Santa Ana, CA 92701-4504

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Watt Laverne, LLC
c/o Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Eric Bensamochan
The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064-3371

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Carl's Jr. Restaurants, LLC

(d)The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

(u)Nydia Del Socorro Lazo

End of Label Matrix
Mailable recipients    14
Bypassed recipients     3
Total                  17