Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740


Proposed Counsel for Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| | Chapter 11 |
| SUN GIR INCORPORATED, | Jointly Administered With: |
| | 8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC |
| Debtor and Debtor-in-Possession. | 8:26-bk-11061-SC<br>8:26-bk-11062-SC |

Affects:

☐ Harshad & Nasir, Incorporated

☐ Senior Classic Leasing, LLC

☐ DFG Restaurants, Incorporated

☐ Second Star Holdings, LLC

☐ Third Star Investments, LLC

☒ Affects All Debtors

**NOTICE OF MOTION AND MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF A CERTAIN UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY EFFECTIVE AS OF APRIL 2, 2026 (THE "PETITION DATE") PURSUANT TO 11 U.S.C. § 365; AND (II) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF ALEX KALINSKY IN SUPPORT THEREOF**

**Date**: June 10, 2026
**Time**: 1:30 p.m.
**Ctrm**: 5C
    411 West Fourth Street
    Santa Ana, California 92701
    Or Via Zoom.gov

MOTION TO REJECT LEASE

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, IF KNOWN, AND ALL PARTIES IN INTEREST:**

PLEASE TAKE NOTICE THAT on the following date and time and in the indicated courtroom, Movant in the above captioned matter will move this court for an order granting the relief sought as set forth in the Motion accompanying supporting documents served and filed herewith. Said motion is based on the grounds set forth in the attached Motion and accompanying documents.

YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one.

DEADLINE FOR OPPOSITION PAPERS: This motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

## I.     INTRODUCTION

Sun Gir Incorporated, on behalf of itself and its affiliated debtor and debtor-in-possession entities in the above-captioned jointly administered chapter 11 cases (collectively, the "Debtors"), hereby files this *Motion for an Order Authorizing the Debtors to Reject a Certain Unexpired Lease of Nonresidential Real Property Effective as of April 2, 2026 (the "Petition Date") Pursuant to 11 U.S.C. § 365 (the "Motion")*.

In support of this Motion, the Debtors submit the following memorandum of points and authorities and the Declaration of Alex Kalinsky (the "Declaration"). The Debtors operate a chain of fifty-nine (59) Carl's Jr. restaurant locations across California, employing approximately 1,000 employees.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

2

The location subject to this Motion is Store No. 7384 located at 19400 Ventura Blvd, Tarzana, California 91356 (the "Subject Location"), which is operated pursuant to a lease between Platinum Endeavors LLC, as landlord, and Harshad & Nasir Corp, as tenant.

As reflected in **Exhibit 1**, the Subject Location is operating at a sustained loss. For the period from April 1, 2024 through March 31, 2026, the store generated approximately $1,979,534 in revenue, incurred approximately $1,854,156 in operating expenses, and incurred approximately $317,978 in rent and facility costs, resulting in a net operating loss of approximately ($192,600).

Importantly, this figure excludes general and administrative expenses ("G&A") required to support operation of the store, including accounting, legal, Human Resources, and administrative services. The Debtors allocate at least 2.5% of sales for these required support services, which would add approximately $49,488 in additional losses to the bottom line. Including these required operating costs, the Subject Location is materially more unprofitable and represents a continuing financial burden on the estate.

These losses are ongoing and materially impair the Debtors' restructuring efforts. The Subject Location is an unnecessary financial burden on the estate and does not provide sufficient economic benefit to justify continued lease obligations.

In the exercise of their sound business judgment, the Debtors have determined that this certain unexpired lease of nonresidential real property (the "Subject Lease"), identified on **Exhibit 2** attached hereto, is burdensome to the estate and should be rejected.

The Debtors seek authority to reject the Subject Lease effective as of the Petition Date. Retroactive rejection is warranted because the Debtors determined as of the Petition Date that the Subject Lease was economically burdensome, the Subject Location is operating at a sustained negative cash flow, and continued performance under the lease only increases administrative expenses without corresponding benefit to the estate. Given the foregoing, the Debtors filed the instant motion.

This Motion is based upon this Motion, the accompanying memorandum of points and authorities, the Declaration, the pleadings and papers on file in these chapter 11 cases, and such other evidence or argument as may be presented at or before the hearing on this Motion. The

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

Debtors' analysis of the Subject Lease is supported by (i) a summary of the financial performance of the Subject Location attached hereto as **Exhibit 1**, and (ii) copies of the Subject Lease and related agreement attached collectively as **Exhibit 2**.

## II.    STATEMENT OF FACTS

### A.  Background

Sun Gir Incorporated is the lead debtor in a group of six affiliated chapter 11 debtors (collectively, the "Debtors") that operate a chain of fifty-nine (59) Carl's Jr. restaurant locations throughout California, including fifty-two (52) locations in Southern California and seven (7) locations in Northern California. The Debtors employ approximately 1,000 employees across their operations.

On April 2, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession.

The Debtors' financial distress is the result of, among other things, increased operating costs, including labor expenses, declining sales, and competitive pressures within the quick-service restaurant industry. As a result, certain of the Debtors' locations are operating at a negative cash flow and are not economically sustainable.

The subject of the instant motion is Store No. 7384 located at 19400 Ventura Blvd, Tarzana, California 91356, which is operated pursuant to a lease between Platinum Endeavors LLC, as landlord, and Harshad & Nasir Corp, as tenant.

The Debtors' lease obligations for this location are particularly burdensome because the store is operating at a negative cash flow while continuing to incur substantial rent, tax, insurance, and maintenance obligations.

### B.  The Subject Lease

Harshad & Nasir Corp. is party to an unexpired lease of nonresidential real property for the Subject Location.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

4

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

The lease was executed on or around June 2012. The lease imposes ongoing monthly rent and facility obligations currently averaging approximately $13,249.08 per month, including rent, common area maintenance charges, taxes, insurance, and related occupancy costs.

Based on the Debtors' financial review, the Debtors determined that the Subject Lease is burdensome and imposes an ongoing financial loss on the estate without providing sufficient economic benefit.

The financial analysis attached as **Exhibit 1** demonstrates that for the period from April 1, 2024 through March 31, 2026, the Subject Location generated approximately $1,979,534 in revenue, incurred approximately $1,854,156 in operating expenses, and incurred approximately $317,978 in rent and facility costs, resulting in a net operating loss of approximately ($192,600).

This net loss excludes G&A expenses required to operate the store, including accounting, legal, human resources, and administrative support. Applying the Debtors' standard G&A allocation of at least 2.5% of sales adds approximately $49,488 in additional losses, further demonstrating that continued operation of the Subject Location is not economically viable.

The Debtors have determined, in the exercise of their sound business judgment, that rejection of the Subject Lease is necessary to reduce expenses, preserve liquidity, and maximize value for creditors.

Rejection of the Subject Lease will eliminate continuing losses and allow the Debtors to focus operations on more profitable locations as part of their restructuring strategy.

### III.   MEMORANDUM OF POINTS AND AUTHORITIES

**A. Rejection of the Subject Lease Is a Proper Exercise of the Debtors' Business Judgment**

Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Courts in the Ninth Circuit afford substantial deference to a debtor's business judgment in determining whether to reject an unexpired lease. See *In re Chi-Feng Huang*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982) (holding that rejection decisions should be approved unless they are the

product of bad faith or a gross abuse of discretion); *In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006) (same).

Rejection is particularly appropriate where a lease is not economically beneficial to the estate or imposes ongoing financial burdens. See *In re Pacific Shores Dev., LLC*, 461 B.R. 750, 755 (Bankr. S.D. Cal. 2011) (approving rejection where property was not economically viable).

The decision to assume or reject an executory contract or unexpired lease is committed to the sound business judgment of the debtor. See *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007); *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000). Under this standard, a court should approve a debtor's decision to reject this lease so long as the decision represents a reasonable exercise of business judgment.

In applying the business judgment standard, courts generally defer to the debtor's determination unless it is shown that the decision is so manifestly unreasonable that it could not be based on sound business judgment. *Pomona Valley*, 476 F.3d at 670–71.

Here, the Debtors have determined that the Subject Lease is burdensome and no longer beneficial to the estate. The Subject Location at 19400 Ventura Blvd, Tarzana, California 91356 is operating at a sustained loss and contributes negative cash flow to the Debtors' operations.

As reflected in **Exhibit 1**, for the period from April 1, 2024 through March 31, 2026, the Subject Location generated approximately $1,979,534 in revenue, incurred approximately $1,854,156 in operating expenses, and incurred approximately $317,978 in rent and facility costs, resulting in a net operating loss of approximately ($192,600). This figure excludes required general and administrative expenses, including accounting, legal, human resources, and administrative support. Applying the Debtors' standard G&A allocation of at least 2.5% of sales adds approximately $49,488 in additional losses, further demonstrating that continued operation of the Subject Location is economically unsustainable.

Continued assumption of the Subject Lease would require the estate to continue funding losses at a location that is not financially sustainable, thereby diminishing recoveries for creditors and impairing the Debtors' restructuring efforts.

6

Rejection of the Subject Lease will allow the Debtors to reduce ongoing expenses, preserve liquidity, and focus operations on profitable locations that support a successful chapter 11 reorganization.

Accordingly, rejection of the Subject Lease represents a proper exercise of the Debtors' business judgment and should be approved.

**B.  Rejection Should Be Approved Effective as of the Petition Date**

Bankruptcy courts in the Ninth Circuit have the equitable authority to approve rejection of a lease retroactive to a date prior to entry of the order where the equities favor such relief. See *In re At Home Corp.*, 392 F.3d 1064, 1072 (9th Cir. 2004).

In determining whether retroactive rejection is appropriate, courts consider the totality of the circumstances, including whether the debtor promptly sought rejection, whether the lease is burdensome, and whether retroactive relief will avoid unnecessary administrative expenses. *Id*.

Retroactive rejection is especially appropriate where continued lease obligations would unnecessarily increase administrative expenses and unfairly burden the estate to the detriment of creditors. See *At Home*, 392 F.3d at 1072–73.

Here, retroactive rejection to the Petition Date is warranted. The Debtors determined as of the Petition Date that the Subject Lease was economically burdensome and inconsistent with the Debtors' restructuring strategy. The Subject Location is operating at a negative cash flow and imposes continuing obligations for rent, taxes, insurance, and maintenance without generating sufficient value to justify those expenses.

The Debtors filed this Motion as soon as reasonably practicable after completing their operational and financial review of underperforming locations and determining that rejection was necessary.

Allowing rejection only as of the date of entry of an order would improperly saddle the estate with unnecessary postpetition administrative expenses for a burdensome lease that the Debtors had already determined should be rejected as of the Petition Date.

The landlord suffers no unfair prejudice from retroactive rejection because the Debtors' intent to reject is clear, the premises are not necessary for reorganization, and continued lease obligations serve only to diminish estate value.

Under these circumstances, the balance of equities strongly favors approval of rejection of the Subject Lease effective as of April 2, 2026, the Petition Date.

**IV.    CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order:

1. Authorizing the rejection of the unexpired lease of nonresidential real property located at 19400 Ventura Blvd, Tarzana, California 91356, effective as of April 2, 2026, pursuant to 11 U.S.C. § 365; and

2. Granting such other and further relief as the Court deems just and proper.

Dated:  May 15, 2026

/s/Eric Bensamochan
ERIC BENSAMOCHAN
Proposed Counsel for Debtor and
Debtor-in-Possession

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

8

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

## DECLARATION OF ALEX KALINSKY

I, Alex Kalinsky, declare as follows:

1.  I am the General Counsel of Sun Gir, Incorporated, the debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case ("Case"). I am also an officer, manager, or authorized representative of each of the affiliated debtors in these jointly administered cases (collectively, the "Debtors").

2.  I am familiar with the Debtors' day-to-day operations, business affairs, lease obligations, and financial condition.

3.  I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto.

4.  On April 2, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.  The Debtors operate a multi-location quick-service restaurant business consisting of approximately fifty-nine (59) Carl's Jr. franchise locations throughout California. As part of the restructuring efforts, the Debtors evaluated the performance and financial impact of each location and its corresponding lease obligations.

6.  Based on this evaluation, the Debtors determined that the lease identified as **Exhibit 2** to the Motion (the "Subject Lease"), relating to Store No. 7384 located at 19400 Ventura Blvd, Tarzana, California 91356 (the "Subject Location"), is economically burdensome and imposes significant costs on the estates. The Subject Lease is a lease between Platinum Endeavors LLC, as landlord, and Harshad & Nasir Corp, as tenant.

7.  The Subject Location remains operational but is performing at a sustained financial loss and contributes negative cash flow to the Debtors' estates.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

8. As of the Petition Date, the Debtors determined that the Subject Lease should be rejected as part of their restructuring strategy in order to reduce expenses, preserve liquidity, and maximize value for creditors.

9. Based on my review of the Debtors' financial records, the Subject Location is not generating sufficient revenue to cover operating expenses, including rent obligations, taxes, insurance, and maintenance, and is a continuing financial burden on the estates.

10. A summary of the financial performance of the Subject Location is attached hereto as **Exhibit 1**. Based on my review of the Debtors' books and records, for the period from April 1, 2024 through March 31, 2026, the Subject Location generated approximately $1,979,534 in revenue, incurred approximately $1,854,156 in operating expenses, and incurred approximately $317,978 in rent and facility costs, resulting in a net operating loss of approximately ($192,600). This figure excludes G&A expenses necessary to operate the store, including accounting, legal, human resources, and administrative services. Applying the Debtors' standard G&A allocation of at least 2.5% of sales adds approximately $49,488 in additional losses, further increasing the actual economic burden of this location on the estates.

11. Continued assumption of the Subject Lease would require the Debtors to continue funding losses at a location that is not financially sustainable and would impair the Debtors' ability to successfully reorganize.

12. Copies of the Subject Lease, including the underlying lease agreement and related documents, are attached collectively as **Exhibit 2**.

13. The Debtors filed this Motion as soon as reasonably practicable after the Petition Date and after completing their review of underperforming locations and determining that rejection of the Subject Lease was necessary.

14. In my business judgment, rejection of the Subject Lease is in the best interests of the Debtors' estates and their creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 15th day of May, 2026, at La Palma, CA.

_____
Alex Kalinsky

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

11

# EXHIBIT "1"

| Harshad & Nasir | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 4/2024-3/31/26 | 4/1/2024-3/30/2026 Operating Expenses ($) | 4/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 4/1/2024-3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 4/30/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 86,816.90 | 88,620.00 | 25,564.00 | (27,367.10) |
| 5/31/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 93,376.03 | 69,395.73 | 10,623.95 | 13,356.35 |
| 6/30/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 82,315.73 | 67,575.11 | 10,623.94 | 4,116.68 |
| 7/31/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 81,742.89 | 78,235.91 | 10,623.93 | (7,116.95) |
| 8/31/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 81,633.72 | 76,404.45 | 11,445.89 | (6,216.62) |
| 9/30/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 80,406.05 | 89,685.31 | 10,635.12 | (19,914.38) |
| 10/31/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 83,650.71 | 76,800.31 | 10,632.45 | (3,782.05) |
| 11/30/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 88,181.26 | 75,078.45 | 10,632.46 | 2,470.35 |
| 12/31/24 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 86,923.68 | 75,986.67 | 25,867.43 | (14,930.42) |
| 1/31/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 82,713.72 | 78,350.84 | 11,056.36 | (6,693.48) |
| 2/28/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 72,933.95 | 70,586.73 | 10,632.46 | (8,285.24) |
| 3/31/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 83,639.87 | 86,242.76 | 10,632.46 | (13,235.35) |
| 4/30/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 76,537.87 | 69,731.57 | 25,867.42 | (19,061.12) |
| 5/31/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 83,582.99 | 73,695.07 | 10,632.44 | (744.52) |
| 6/30/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 82,678.45 | 74,504.89 | 10,632.44 | (2,458.88) |
| 7/31/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 78,072.74 | 72,392.66 | 10,632.44 | (4,952.36) |
| 8/31/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 79,427.88 | 67,861.34 | 11,439.53 | 127.01 |
| 9/30/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 74,747.97 | 91,208.83 | 10,638.21 | (27,099.07) |
| 10/31/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 82,035.75 | 76,105.32 | 10,640.51 | (4,710.08) |
| 11/30/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 86,857.79 | 77,829.70 | 10,634.06 | (1,605.97) |
| 12/31/25 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 89,265.41 | 81,765.92 | 25,986.40 | (18,486.91) |
| 1/31/26 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 83,225.99 | 75,900.74 | 10,647.51 | (3,322.26) |
| 2/28/26 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 73,605.60 | 72,536.91 | 10,643.30 | (9,574.61) |
| 3/31/26 | 7384 | 19400 Ventura Blvd.,Tarzana, CA 91356 | 85,161.17 | 87,660.64 | 10,613.72 | (13,113.19) |
| **TOTAL** | 7384 | | **1,979,534** | **1,854,156** | **317,978** | **(192,600)** |

# EXHIBIT "2"

# LEASE AGREEMENT

This LEASE AGREEMENT (the "Lease") dated June *20*, 2012 is made by and between <u>Platinum Endeavors LLC</u>, hereinafter referred to as "Landlord" and <u>Harshad & Nasir Corp</u>, hereinafter referred to as "Tenant," who agree as follows:

1.   <u>DEFINITIONS</u>

Unless expressly set forth to the contrary in this Lease, the terms used herein shall have the following meanings:

(a) "Land" means that certain real property situated in 19400 Ventura Blvd, Tarzana, CA 91356 more particularly described or depicted in <u>Exhibit "A"</u> attached hereto.

(b) "Building" means the existing building and other improvements already existing on the Land.

(d) "Demised Premises" means and includes the Land and Building.

2.   <u>DEMISED PREMISES</u>

Upon the terms and subject to the conditions set forth in this Lease, Landlord hereby leases the Demised Premises to Tenant, and Tenant hereby leases the Demised Premises from Landlord.

3.   <u>EFFECTIVE DATE AND TERM: HOLDING OVER</u>

(a) This Lease shall become effective on the date that escrow for the purchase of the Demised Premises by Landlord shall close ("Term Commencement Date"). The Lease shall then be for twenty (20) years from that date (the "Original Term").

(b) If Tenant remains and occupies the Demised Premises following the termination of the Lease, Tenant may do so on a month-to-month basis provided no notice prohibiting such hold over was sent to Tenant by Landlord, in which case Tenant shall vacate the Demised Premises within thirty (30) days of such notice. During the month-to-month holdover tenancy, Tenant's rent shall be 110% of the rent paid during the last month of the Lease. All other Lease provisions shall apply during the month-to-month holdover tenancy.

4.   <u>RENT</u>

(a) Tenant shall pay to Landlord rent (the "Rent") for the use and occupancy of the Demised Premises during the term of this Lease, commencing on the Term Commencement Date, in monthly installments, in advance, on the first day of each calendar month, without notice (except as otherwise expressly set forth in this Lease) as provided below:

2

| Year | Annual Rent |
|---|---|
| 1 to 5 | $100,000 |
| 6 to 10 | $110,000 |
| 11 to 15 | $121,000 |
| 16 to 20 | $133,100 |

(b) If the Term Commencement Date shall fall on a day other than a first day of a calendar month, the monthly installments shall be pro-rated for the months in which the commencement and the expiration of this Lease occur. Rent shall be due and payable on or before the first day of each calendar month during the term of the Lease. Tenant shall make all rental payments to Landlord at Landlord's address for notices as set forth in paragraph 31 below.

5. USE: NO CONTINUOUS OPERATION

(a) The Demised Premises may be used by Tenant for any lawful purpose, including, but not limited to, a 24 hour drive-thru quick service restaurant. Landlord shall not interfere with Tenant's operation of the Demised Premises provided that Tenant is operating the Demised Premises in a lawful manner.

(b) Tenant shall not be required to continuously operate or use the Demised Premises, provided that Tenant is in compliance with all other sections of this Lease and is current on all payments to Landlord.

6. OPTION TO RENEW

(a) Provided that this Lease shall be in full force and effect and that Tenant shall not be in default under any of the terms or conditions hereof, Tenant shall have the option to extend the term of this Lease for two (2) additional consecutive term(s) of five (5) years each, the first 5-year term to commence upon the expiration of the Original Term.

(b) The option(s) shall be exercised by Tenant giving written notice thereof to Landlord at least one hundred eighty (180) days, prior to the expiration of the then current term ("Option Notice").

(c) In the event Tenant exercises its option to extend for an option term, annual Rent shall be adjusted effective at the commencement of the option term as determined pursuant to this subparagraph 6(c).

| Year | Annual Rent |
|---|---|
| 1 to 5 | $146,410 |
| 6 to 10 | $161,051 |



3

(d) In the event that the term of this Lease is extended pursuant to the provisions hereof, all of the terms and provisions of this Lease shall extend to and be applicable during the term so extended, except as specifically set forth in this paragraph 6 to the contrary.

7.  UTILITY CHARGES AND MAINTENANCE OF PREMISES; STRUCTURAL REPAIRS AND MAINTENANCE

This Lease is Triple Net. Relating to the Demised Property, Tenant shall pay all charges relating to regularly occurring maintenance/ordinary wear and tear, utilities and service, including but not limited to water, gas, electricity, trash, sewage, sanitation, heating, air conditioning, electrical, plumbing, water systems, keeping glass/windows/doors in operable and safe condition, and structural repairs (including issues relating to the foundation, walls, and land excavation). Any terms in this Lease that are inconsistent with the terms in this paragraph shall be rejected.

8.  TAXES

(a) Tenant shall pay prior to delinquency all taxes and assessments which may be levied upon or assessed against the Land, the Building and the personal property of Tenant within the Demised Premises; Landlord shall not be required to pay any taxes or assessments whatsoever which may, during the term of this Lease, be or become a lien upon the Land, the Building and/or Tenant's personal property.

(b) If Landlord receives the tax bill(s) covering the Land, the Building and/or the personal property of Tenant from a taxing authority, Landlord shall deliver such tax bill(s) to Tenant at least thirty (30) days prior to the applicable delinquency date for payment of such bill(s), and Landlord hereby agrees to reimburse Tenant for any penalty resulting from Landlord's failure to deliver such tax bill(s) to Tenant within the time limit set forth herein.

(c) The provisions within this subparagraph apply only if land and/or buildings are added to the currently existing Land and/or Building. If the tax bill(s) covering the Land and the Building cover(s) additional land and/or buildings, within fifteen (15) days after Tenant's receipt of a copy of such tax bill(s) and such other information as may be reasonably required by Tenant, Tenant shall promptly pay to Landlord its proportionate share of the taxes on improvements based upon the square footage ratio of the Building to the total square footage of all buildings covered under such tax bill(s) and upon its proportionate share of the taxes on land based upon the total square footage ratio of the Land to the total square footage of all land covered by the tax bill(s). Landlord shall pay the entire amount of such tax bill(s) to the taxing authority prior to delinquency.

(d) Tenant shall have the right to contest, in good faith and by appropriate and timely legal proceedings, the legality, assessed valuation or amount of any tax or assessment which this Lease obligates Tenant to pay. Tenant shall indemnify, defend and hold harmless Landlord from and against any and all costs, losses, fines, penalties, interest and damages arising out of or in connection with Tenant's exercise of the foregoing rights. Landlord shall reasonably cooperate with Tenant in the prosecution of any contest, provided, however, that

4

Landlord shall not be obligated to pay any expenses relating to the contest (including, without limitation, all attorneys' fees, court and other costs).

9.      RIGHT OF FIRST REFUSAL TO PURCHASE

During the term of this Lease, if Landlord desires to offer the Property (defined either as Land or Building separately or as Demised Premises) for sale or if Landlord receives a *bona fide* offer from any third party to purchase the Property, which Landlord desires to accept, Landlord shall, before accepting such offer, notify Tenant in writing of all of the terms and conditions thereof and shall first offer in writing to sell The Property to Tenant upon the same terms and conditions. Upon receipt of any such notice and offer from Landlord, Tenant shall have fifteen (15) business days thereafter within which to accept the offer. If Tenant fails to accept any such offer within said fifteen (15) business day period, or fails to execute definitive purchase and sale documents in the form and content contemplated by the offer within fifteen (15) days thereafter, Landlord shall be free to sell The Property upon substantially the same terms and conditions offered to Tenant without further notice to Tenant. For the purposes of the foregoing, "substantially" shall include, without limitation, a variance of plus or minus ten percent (10%) of the gross consideration to be paid thereunder. If Tenant accepts the offer but thereafter fails to perform its obligations under the relevant agreements, Landlord shall have the right to pursue all available rights and remedies against Tenant. If Landlord, after having made the offer to Tenant as required by this paragraph, fails to sell The Property upon substantially the same terms and conditions offered to Tenant, Landlord shall give Tenant notice in the manner set forth above of any further or different offers accepted by Landlord for the sale of The Property and shall offer to sell the same to Tenant upon the same terms and conditions. It is expressly understood and agreed by and between the parties hereto that Tenant shall have the right of first refusal with respect to each and every offer to sell accepted by Landlord or by any successor Landlord and the then Landlord at the time of the acceptance of such offer to sell shall in each and every instance notify Tenant of such offer in the manner set forth above and Tenant shall have the right to purchase The Property under the terms and conditions of such offer in accordance with the terms and provisions set forth above.

10.      ALTERATIONS

Tenant may, with the consent of Landlord, consent of which shall not be unreasonably withheld, make such further improvements, additions or alterations to the Land and the Building as Tenant may from time to time deem necessary or convenient in connection with its use and occupancy of the Demised Premises, including the right to install and maintain signage in the form and manner appropriate for Tenant's business. Tenant shall pay all costs and expenses in connection therewith.

11.      TENANT'S FIXTURES AND EQUIPMENT

(a)    Landlord acknowledges and agrees that all furniture, fixtures, equipment, machinery, signs, and all other items of personal property which Tenant utilizes to conduct its business on the Demised Premises which may be installed in or upon or incorporated into

5

the Demised Premises at Tenant's cost (whether or not reimbursed by Landlord as a construction cost) (collectively, "Trade Fixtures"), shall not be deemed to become a part of the Demised Premises however attached to or incorporated into the Demised Premises, and whether or not they become a component part of the Demised Premises. The Trade Fixtures are and shall remain the property of Tenant and shall be treated as trade fixtures for the purposes of this Lease. Tenant may remove its Trade Fixtures from the Demised Premises at any time prior to the termination of this Lease and during a period of fifteen (15) days after the termination thereof, at no cost to the Tenant. Tenant, at its own cost and expense, may install, place, reinstall or replace upon the Demised Premises, or remove from the Demised Premises, any such Trade Fixtures. Any replacement Trade Fixtures shall not become the property of Landlord but shall remain Tenant's property the same as the original Trade Fixtures.

(b) Landlord waives any statutory landlord's lien and any attachment for rent on the Trade Fixtures that Landlord may have or may hereafter acquire.

12.   MAINTENANCE AND REPAIRS

Tenant shall, at its own cost and expense, maintain all portions of the Land and the Building, in good condition and repair, ordinary wear and tear excepted. Provided, however, in no event shall Tenant be obligated by the provisions of this paragraph to repair, replace or restore the Land and the Building in a situation covered under the other paragraphs in this Lease entitled "DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS" and "EMINENT DOMAIN" which imposes such duties on another party (including Landlord).

13.   MECHANIC'S LIENS

Tenant shall keep the Land and Landlord's interest in the Demised Premises free of mechanic's and materialmen's liens and other liens of like nature other than liens created or claimed by reason of any work done by or of the request of Landlord or its agents; Tenant shall protect and indemnify, defend and hold harmless Landlord against all such liens or claims which may ripen into such liens on the Land, and/or Landlord's interest in the Demised Premises, and against all attorney's fees, and other costs and expenses growing out of or incurred by reason of or on account of any such claim or lien.

14.   INSURANCE AND INDEMNITY

(a) Commercial General Liability Insurance: Tenant shall, at all times, maintain in full force and effect commercial general liability insurance issued by a fully qualified insurer or insurers, with limits of at least TWO MILLION DOLLARS ($2,000,000.00) combined single limit (bodily injury and property damage).

(b) Fire Insurance: Tenant shall, at its sole cost and expense, keep the Building, trade fixtures, furniture, furnishings, and equipment insured against loss or damage by fire and other hazards to the extent of at least eighty percent (80%) of the replacement value thereof

6

against all casualties included under the so-called fire and extended coverage standard insurance form.

(c) Landlord and its property manager shall be named as additional insureds on Tenant's policies of insurance. All policies that Tenant is required to obtain under this Article shall be issued by companies licensed to do business in California with a general policyholder's rating of not less than "B+ and a financing rating of not less than Class "VII", as rated by the most current available "Bests" Insurance Reports. Concurrently with the execution of this Lease, but in any event on or before the date Tenant is obligated to commence construction of the Premises, Tenant shall furnish Landlord with certificates of insurance evidencing the coverage required pursuant to this Article is in effect. Landlord shall be notified by the carrier in writing thirty (30) days prior to cancellation or non-renewal of such insurance. The limits of the insurance coverage required by Landlord or the unavailability of certain types of coverage shall not limit or release Tenant from any of its obligations under this Lease, except that Tenant shall not be required to provide coverages which are not reasonably available in the marketplace, and the existence of such insurance in no way changes Tenant's obligations to Landlord.

(d) Tenant hereby indemnifies, defends and agrees to hold Landlord and its property manager harmless from and against any and all costs (including, without limitation, attorneys' fees, costs and expenses), loss, damage or expense arising out of death of or injury to persons, or loss of or damage to property in connection with the occupancy of the Demised Premises by Tenant, its contractors, agents and invitees. The foregoing indemnity shall survive the termination of this Lease. Notwithstanding anything contained in this paragraph, in no event shall Tenant or Tenant's insurance carrier(s) be liable to Landlord for any loss, cost, damage or expense arising out of death of or injury to persons, or loss of or damage to property caused by or resulting from the sole negligence of Landlord or of its servants, employees and/or agents.

15.    EMINENT DOMAIN

(a) In the event that the whole of the Demised Premises is taken as a result of the exercise of the power of eminent domain or transferred under the threat of the exercise of such power ("Total Taking"), this Lease shall terminate as of the date possession is taken.

(b) In the event that a material portion of the Demised Premises shall be taken as a result of the exercise of the power of eminent domain or transferred under the threat of the exercise of such power ("Partial Taking"), and the portion not so taken would not, in the sole discretion of Tenant (with notice thereof given to Landlord within fifteen (15) days of the effective date of the Partial Taking, time being of the essence), be adequate for the continued operation of Tenant's business, then this Lease shall be deemed to have terminated as of the date of taking of possession, unless Landlord agrees to make available to Tenant such additional land as may be reasonably necessary to render the Demised Premises adequate for the continued operation of Tenant's business (in which event the provisions of this paragraph shall be of no force or effect), which additional land shall be subject to Tenant approval, which approval shall not be unreasonably withheld. In the event of a Partial Taking which

does not result in termination of this Lease, all obligations of Tenant under this Lease to pay rent and all of the other provisions of this Lease shall remain in full force and effect, except as provided in this subparagraph (b). Within a reasonable time after it is determined by Tenant, pursuant to the foregoing provisions, that the Partial Taking will not terminate this Lease, Tenant shall proceed with reasonable diligence to restore such part of the Land and the Building as is not taken to as near the former condition thereof immediately preceding the taking as the circumstances will permit. Landlord shall reimburse Tenant for Tenant's restoration costs actually paid to third parties (but only to the extent Landlord is reimbursed for such costs by the governmental authority in question) within thirty (30) days after Landlord's receipt of Tenant's written demand and documentation evidencing the cost of restoration. During the restoration, the rent will be abated proportionately with the degree which Tenant's use of the Demised Premises is impaired during the restoration. Upon completion of the restoration, the rent provided in this Lease shall be reduced in the same proportion that the amount of area of the Demised Premises taken bears to the total area of the Demised Premises immediately prior to such taking.

(c) All damages awarded and/or consideration paid for any Total Taking or Partial Taking shall belong to and be the property of Landlord, whether such damages shall be awarded as compensation for diminution in value of the leasehold estate or for the fee title to the Demised Premises; provided, however, that Landlord shall not be entitled to any award made for (i) loss of or damage to Tenant's trade fixtures, furniture, machinery, equipment, exterior and interior signs and any other removable personal property belonging to Tenant, (ii) costs of relocation of Tenant's business, and/or (iii) for damages for cessation or interruption of Tenant's business, to the extent such cessation or interruption damages are exclusive of and separate and apart from damages for diminution in value of the leasehold estate.

(d) If this Lease is terminated as a result of a Total Taking or Partial Taking, all rent shall be paid up to the date that possession is taken by the condemning authority, and Landlord shall make an equitable refund to Tenant of any rent and/or other amounts paid by Tenant which are applicable to any period after that date.

(e) In the event any ordinance, regulation or law prohibits Tenant's continued operation of its business on the Demised Premises, or deprives Tenant of its driveways or curb cuts necessary for the operation of Tenant's business, or in the event any median strip or other barrier, traffic control facility, device or sign shall, after the Effective Date, be constructed, installed and/or established (other than by or with the approval of Tenant), the effect of which would be to prevent vehicular traffic which theretofore could have made a legal turn into and onto the Demised Premises from making such turn in substantially the same manner as theretofore permitted (all or any of which being hereinafter referred to as "Access Inhibitors" and all of which would constitute a material effect on the operation of Tenant's business), then Tenant shall have the option to terminate this Lease by written notice to Landlord within one hundred eighty (180) days after the construction, installation and/or establishment of the Access Inhibitors.

8

## 16.     DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS

If the Demised Premises and/or the Building upon the Demised Premises shall be destroyed or damaged by fire or other casualty or to the extent of thirty percent (30%) or more of the full replacement value, then in either event Tenant may, at Tenant's option, to be evidenced by notice in writing given to Landlord within sixty (60) days after the occurrence of such damage or destruction, elect to terminate this Lease as of the date of the damage or destruction. In such event, Landlord shall be entitled to any proceeds of insurance and right of recovery against insurers on any policies covering such damage or destruction. In such event Tenant shall bear the cost for any deductible due under the policy of insurance from which the proceeds are awarded; provided, however, if the damage occurs within the last three years of the original Lease term or during any extensions or renewals thereof, Tenant shall not be obligated to bear the cost of such deductible. In the event Tenant elects to terminate the Lease pursuant to the provisions of this paragraph, at Landlord's election and at Landlord's sole cost and expense, Tenant shall demolish the improvements and deliver the Demised Premises to Landlord with a rough graded pad. In all other circumstances, upon any damage or destruction involving the Demised Premises and/or the Building, Tenant shall promptly effect the repair and restoration thereof at its sole cost and expense and shall, at the request of Landlord, demolish and remove all debris from the Demised Premises.

## 17.     DEFAULT BY TENANT: REMEDIES: GRACE PERIOD

(a) If at any time Tenant shall fail to remedy any default in the payment of rent due under this Lease within fifteen (15) days after receipt of written notice from Landlord, or fail to remedy any default with respect to any of the other provisions, covenants or conditions of this Lease to be kept or performed by Tenant within a period of thirty (30) days after receipt of written notice, then and in any such event Landlord may, at Landlord's option and without limiting Landlord in the exercise of any other right or remedy Landlord may have on account of such default, and without any further demand or notice, pursue any remedy available to Landlord at law or in equity. If any non-monetary default cannot reasonably be cured within the thirty (30) day period, Tenant shall not be in default under this Lease if Tenant commences to cure the default within the thirty (30) day period and thereafter diligently and in good faith continues to cure the default.

(b) Landlord shall not, upon the exercise of any remedy granted above or otherwise accruing to Landlord upon a breach by Tenant of any covenant or obligation under this Lease, thereby obtain or secure any right, title or interest in any of the Trade Fixtures, furniture, machinery, equipment, interior and exterior signs and any other removable personal property placed upon the Demised Premises by Tenant at its sole cost and expense (unless Tenant fails to promptly remove same and repair all damage resulting from the removal within the time periods set forth in this Lease).

(c) If Tenant fails to perform any of its affirmative duties or obligations, within the time periods set forth in this Lease (or in case of an emergency, without notice), Landlord may, at its option, perform such duty or obligation on Tenant's behalf, including but not limited to the obtaining of reasonably required bonds, insurance policies, or governmental

licenses, permits or approvals. The costs and expenses of any such performance by Landlord shall be due and payable by Tenant upon receipt of invoice therefore. If any check given to Landlord by Tenant shall not be honored by the bank upon which it is drawn, Landlord, at its option, may require all future payments to be made by Tenant to be by cashier's check.

(d) Tenant hereby acknowledges that late payment by Tenant of Rent will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges that may be imposed upon Landlord by any Lender. Accordingly, if any Rent or any other amount shall not be received by Landlord when due, then, without any requirement for notice to Tenant, Tenant shall pay to Landlord a one-time late charge equal to two percent (2%) of each such overdue amount.

Notwithstanding the preceding sentence, Tenant shall be entitled to a ten (10) day grace period before Landlord assesses such a late charge. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Landlord will incur by reason of such late payment. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default or breach with respect to such overdue amount, nor prevent the exercise of any of the other rights and remedies granted hereunder.

18.    EFFECT OF BANKRUPTCY OR OTHER PROCEEDINGS

If any bankruptcy or any insolvency proceeding is instituted by or against Tenant either in the State or Federal Courts, Landlord shall have the option, to be exercised by written notice given to Tenant, to declare this Lease terminated at any time after the expiration of ninety (90) days following the commencement of such proceeding unless the proceeding is dismissed and unless all payments of rent and other payments required by this Lease to be made by Tenant to Landlord are paid promptly during the period of ninety (90) days. Any termination of this Lease shall not operate in any way to prejudice or affect the right of Landlord for recovery of rent or other charges previously accrued, accruing afterwards or to any other damages, nor shall any termination ever be construed as a waiver of or an election not to claim future damages on account of Tenant's breach, but all such damages, including all future rentals, shall be fully recoverable by Landlord.

19.    DEFAULT BY LANDLORD

(a) Landlord shall be in default under this Lease if Landlord fails or refuses to perform any of Landlord's obligations under this Lease if the failure to perform is not cured within thirty (30) days after notice of the default has been given by Tenant to Landlord. If the default cannot reasonably be cured within the thirty (30) day period, Landlord shall not be in default under this Lease if Landlord commences to cure the default within the thirty (30) day period and thereafter diligently and in good faith continues to cure the default.

(b) If the Demised Premises are at any time subject to the lien of any trust deed, mortgage, judgment, assessment, tax or other obligation, whether incurred before or after the execution of this Lease, which Tenant is not bound under this Lease to pay or perform, and if



10

Landlord fails to pay or perform any obligation which Landlord is obligated under this Lease to pay or perform related to such lien, Tenant shall after written notice and the passage of the cure period provided for in the preceding paragraph have the right at any time to pay or perform any such obligation but Tenant shall not be obligated to do so. If Tenant elects to pay or perform any such obligation, Landlord shall, upon demand, reimburse Tenant in the full amount for Tenant's expenses incurred in connection therewith, including reasonable attorney's fees actually paid and interest from the date of payment at the maximum rate allowable by law. In addition to any other remedies available to Tenant at law, at Tenant's election, Tenant may deduct from rents thereafter payable under this Lease or from the purchase price of any sale of the Demised Premises made by Landlord to Tenant all amounts due from Landlord under this paragraph until such amounts have been paid in full.

20.    LANDLORD'S RIGHT TO ENCUMBER

This Lease shall be subordinate to any mortgage or trust deed that may hereafter be placed by Landlord upon Landlord's interest in the Demised Premises and to any and all advances to be made thereupon and to the interest thereon and to all renewals, replacements and extensions thereof, providing and only if the mortgagee named in any such mortgage or the beneficiary of any such trust deed agree in writing in recordable form (and otherwise pursuant to terms and provisions which are commercially reasonable) to recognize this Lease in event of foreclosure of such mortgage or sale under such trust deed so long as Tenant is not in default under this Lease. If the provisions of the preceding sentence are complied with, upon written demand by Landlord Tenant shall execute such instruments, in form and content reasonably acceptable to Tenant, as may be required at any time to subordinate the rights and interests of Tenant under this Lease to the lien of any mortgage or deed of trust.

21.    ESTOPPEL CERTIFICATES

Within ten (10) days after notice from the other party, each party shall execute and deliver to the other party a certificate stating that (i) this Lease is unmodified and in full force and effect, or in full force and effect as modified, and stating the modifications, (ii) any then existing default known to the party giving the certificate as of the date of the certificate, and (iii) such other matters as are typically contained in such a certificate. The declarant giving any certificate pursuant to this paragraph shall be estopped to later deny the truth of any declaration made in the certificate.

22.    COMPLIANCE WITH LAW

(a) Tenant shall at all times during the term of this Lease at its own expense conform to and comply with all laws, ordinances and regulations affecting Tenant's use or occupancy of the Demised Premises, except that Tenant shall have no responsibility, to correct any existing violations or to remedy any violations caused by the action or inaction of Landlord, its agents or employees.

(b) Tenant shall have the right to contest by appropriate legal proceedings, without cost or expense to Landlord, the validity of any law, ordinance, order, rule, regulation or

11

requirements affecting Tenant's use and occupancy of the Demised Premises. If compliance by Tenant may be legally held in abeyance during such contest without subjecting Landlord or Tenant to any liability whatsoever for failure to so comply, Tenant may postpone compliance until the final determination of any such proceedings. Tenant shall indemnify, defend and hold harmless Landlord from and against any and all costs, losses, fines, penalties, interest and damages arising out of or in connection with Tenant's exercise of the foregoing rights.

23.   TERMINATION OF OBLIGATIONS: SURRENDER OF DEMISED PREMISES

(a) In the event that this Lease is terminated prior to the expiration of the term hereof for any reason other than default by Tenant, this Lease shall be of no further force or effect and all rights and obligations of the parties hereto shall cease and terminate concurrently with the effective date of such termination, subject, however, to the provisions of subparagraph (b) below.

(b) Within thirty (30) days after the expiration or any earlier termination of this Lease, Tenant shall surrender the Land to Landlord, together with the Building located thereon in good condition (subject to the provisions set forth in the paragraph of this Lease entitled "DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS"), reasonable wear and tear excepted, and the Building shall be the property of the Landlord (specifically excluding all of Tenant's fixtures, machinery, interior and exterior signs and any other removable personal property placed upon the Demised Premises by Tenant as provided in the paragraph of this Lease entitled "TENANT'S FIXTURES AND EQUIPMENT").

24.   QUIET POSSESSION: NO RELOCATION

(a) Subject to Tenant paying the rent herein provided and performing all the covenants and conditions of this Lease on its part to be performed, Tenant shall and may peaceably and quietly have, hold and enjoy the Demised Premises during the term hereof without any interruption or disruption of its rights by Landlord or Landlord's agents, lenders, or assigns. Landlord may not in any way cover up, obscure or impact the visibility of the Building or any signage that Tenant may have on the Demised Premises. Landlord hereby warrants and represents that Landlord has full right and sufficient title to lease the Demised Premises for the term and upon the terms and conditions set forth herein; Landlord shall indemnify, defend, and hold Tenant harmless from and against any and all loss and damage, including any court costs and/or attorneys' fees, that may be incurred by Tenant on account of any failure of, or defect in, Landlord's title or right to make and execute this Lease.

(b) Landlord shall not relocate the Building from its current location.

25.   ATTORNEY'S FEES

If either party to this Lease institutes any action or proceeding in court to enforce any provision hereof, for damage by reason of an alleged breach of any provision of this Lease, for a declaration of such party's rights or obligations hereunder, or for any other judicial

12

remedy, the prevailing party shall be entitled to receive from the losing party such amount as the court may adjudge to be reasonable attorney's fees for the services rendered the party finally prevailing in any such action or proceeding.

26.    APPLICABLE LAW AND PARTIES BOUND

This Lease shall be construed under the laws of the state of California.  This Lease shall be binding upon and inure to the benefit of, as the case may require, the parties to this Lease and their respective heirs, executors, administrators, successors and assigns.

27.    INTERPRETATION

The words "Landlord" and "Tenant" as used herein, shall include, as the context may permit or require, the parties executing this Lease and their respective heirs, executors, administrators, successors and assigns.

Wherever the context so permits or requires, words of any gender used in this Lease shall be construed to include any other gender, and words in the singular number shall be construed to include the plural.

Unless expressly provided to the contrary, the phrases "during the term of this Lease" and "during the term hereof" shall include such periods during which the term of this Lease is actually extended pursuant to the exercise by Tenant of option(s) to extend the term hereof.

28.    CAPTIONS

The headings and captions contained in this Lease are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope or intent of this Lease nor of any provision herein contained.

29.    SEVERABILITY

In the event that any term, provision, condition or covenant contained in this Lease, or the application thereof to any person or circumstance, shall to any extent, be invalid or unenforceable, or be held to be invalid or unenforceable by any court of competent jurisdiction, the remainder of this Lease, or the application of such term, provision, condition or covenant to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and all such remaining terms, provisions, conditions and covenants in this Lease shall be deemed to be valid and enforceable.

30.    APPROVALS

Whenever in this Lease Landlord's approval or consent is required, such approval or consent shall be in writing, and such approval or consent shall not be unreasonably withheld, delayed or conditioned; if Landlord withholds its consent, Landlord shall describe in writing the reasonable basis for withholding its consent, and the actions to be taken by Tenant in

13

order to obtain consent. The absence of such written disapproval and approval/consent from Landlord within ten (10) days after Landlord's receipt of such request for approval/consent from Tenant shall constitute Landlord's approval/consent.

31.   NOTICES

Wherever in this Lease a party is required or permitted to give or serve a notice, request, demand, consent or approval to or on the other, the communication shall be given or served upon the party to whom it is directed in writing and may be delivered personally, by an overnight courier service with signed proof of receipt, by facsimile transmission or forwarded by certified mail, postage prepaid, return receipt requested addressed as follows:

If to Landlord:
Attn: Dr. Morteza Kerendian
Platinum Endeavors LLC
9301 Wilshire Blvd., Suite 205
Beverly Hills, CA 90210
Fax No. (310) 623-4162

If to Tenant:
Harshad & Nasir Corp
1 Centerpointe Drive, Suite 400
La Palma CA 90623
Attn: Alex Kalinsky
Tel. No. (714) 736-8900
Fax No. (714) 736-8909

Notices delivered as required herein shall be deemed to have been duly given or served (i) on the date personally delivered or delivered by courier service, or (ii) if delivered by mail as provided above, on the third business day after mailing, or (iii) if sent by facsimile, on the date the facsimile is sent if also mailed as required above on that same date. Either party may change its address for notice by written notice given to the other in the manner hereinabove provided.

32.   ENTIRE AGREEMENT

This Lease, together with any Exhibits or Addenda attached hereto, constitutes the entire agreement between Landlord and the Tenant pertaining to the subject matter hereof. This Lease supersedes all prior and contemporaneous agreements and undertakings of the parties in connection herewith, including without limitation any letter of intent or other correspondence between the parties prior to the date hereof.

33.   EXHIBITS

Each of the Exhibits attached hereto are incorporated herein by this reference.

14

## 34.   CKE LEASE ADDENDUM

Landlord hereby acknowledges that Tenant has entered into or will enter into a Franchise Agreement with Carl Karcher Enterprises, Inc. ("CKE") for the purpose of using the Premises as a Carl's Jr. Restaurant.   CKE has set forth certain requirements and conditions in its Franchise Agreement in regards to a Carl's Jr. franchised location that Tenant is obligated to incorporate into this Lease.   The attached CKE Lease Addendum to be executed by both Tenant and Landlord is incorporated into this Lease.

IN WITNESS WHEREOF, the parties have hereunto signed this agreement on the dates stated below.

| LANDLORD<br>PLATINUM ENDEAVORS LLC<br><br>(signature) | TENANT<br>HARSHAD & NASIR CORP<br><br>(signature) |
|---|---|
| Name: Dr. Morteza Kerendian | Name: _Alex Kalnsh_ |
| Title: _President_ | Title: _General Counsel_ |
| Date: _6/20/12_ | Date: _6/20/12_ |

## CARL'S JR. LEASE ADDENDUM

THIS ADDENDUM to the Lease Agreement dated as of _June 20, 2012_ ("Lease") between _Platinum Endeavors_ ("Landlord") and Harshad & Nasir Corp ("Tenant") is entered into as of the effective date of the Lease. _LLC_

### RECITALS:

WHEREAS, pursuant to the Lease, Landlord will lease or has leased to Tenant certain real property as defined in the Lease ("Premises") for the operation of a franchised Carl's Jr. Restaurant or Carl's Jr./Green Burrito Dual Concept Restaurant ("Restaurant");

WHEREAS, Tenant will develop and operate the Restaurant pursuant to a commitment agreement (the "Commitment Agreement") and a franchise agreement (the "Franchise Agreement") (collectively, the "Agreements") with Carl Karcher Enterprises, Inc. ("CKE"), and the Lease is contingent upon Tenant's execution of the Agreements with CKE; and

WHEREAS, The Agreements require, among other things, that the Lease contain certain provisions. Landlord and Tenant therefore desire to modify the Lease to add those required provisions as set forth below, and agree that the terms and provisions of this Lease Addendum are hereby deemed incorporated into and made a part of the Lease.

NOW, THEREFORE, notwithstanding anything to the contrary elsewhere in the Lease, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant agree as follows:

1.     The effectiveness of the Lease is contingent upon Tenant's execution of the Agreements with CKE within 30 days after the date of this Addendum.

2.     Landlord consents to Tenant's use of the proprietary signs, distinctive exterior and interior designs, colors and layouts, and the trademarks prescribed by CKE ("Proprietary Marks"), and upon expiration or the earlier termination of the Lease, consents to permit Tenant, at Tenant's expense, to remove all such items and other trade fixtures, so long as Tenant makes repairs to the Premises caused by such removal.

3.     Landlord and Tenant each agrees to provide CKE (at the same time as sent to the other party) a copy of all amendments, assignments, any notices of default, option and refusal rights notices and any other material documents or correspondence or notices pertaining to the Lease and the Premises, including without limitation, tenant estoppel certificates and subordination agreements. CKE's mailing address, until further notice, for this purpose is Attention: Asset Management, 1325 N. Anaheim Blvd., Anaheim, CA  92801-2409.

4.     Following reasonable notice to Landlord, CKE shall have the right to enter the Premises to make any modifications or alterations necessary to protect the "Carl's Jr. Restaurant System" and the Proprietary Marks and to cure any Tenant default under the Lease within the time periods provided by the Lease, and charge Tenant for all costs incurred in making such modifications or alterations and for curing any such default, all without being guilty of trespass or other tort.

5.     Landlord agrees that Tenant, and not CKE, shall be solely responsible for all obligations, debts and payments under the Lease and that CKE shall have no liability in that regard.

Carl's Jr. Lease Addendum                                                                                    04/10

6.      Notwithstanding anything to the contrary contained in the Lease, Landlord agrees not to amend or otherwise modify the Lease in any manner that would affect any of the requirements set forth herein without CKE's prior written consent.

7.      Tenant may assign the Lease, or any right or rights therein (including without limitation purchase options or rights of first refusal), to CKE or its parent, affiliates or subsidiaries (without Landlord's consent) or its designee (with Landlord's consent which consent shall not be unreasonably withheld) and without payment of any assignment fee or similar charge or increase in any rentals or other charges payable to Landlord.

8.      Landlord consents to Tenant's collateral assignment of the Lease to CKE or its designee, granting CKE the option, but not the obligation, to assume the Lease and/or any or all rights therein.

9.      If Tenant fails to exercise, for any reason, any term renewal or term extension right under the Lease, then CKE may exercise such right, and upon the exercise of such right by CKE, Tenant agrees that the Lease shall be deemed transferred and assigned to CKE, effective upon the commencement of the renewal or extension term, without any further action of the parties, and Landlord consents to such transfer and assignment, and Tenant shall remain obligated under the Lease.  If Tenant fails to exercise, for any reason, any purchase option or right of first refusal or similar right under the Lease, then CKE may exercise such right, and upon the exercise of such right by CKE, Tenant agrees that such right shall be deemed transferred and assigned to CKE without any further action of the parties, and Landlord consents to such transfer and assignment, and Tenant shall remain obligated under the Lease.  Landlord and Tenant acknowledge that CKE's exercise of the foregoing rights is subject to Tenant's right to exercise such rights, and that if Tenant legally exercises such right within the time permitted under the Lease, CKE's exercise of such rights, whether before or after Tenant's exercise, shall be void.

10.     CKE is hereby deemed a third party beneficiary of the Lease and this Addendum solely for the purpose of enforcing any rights granted to or otherwise available to CKE under this Addendum.

11.     The foregoing provisions shall apply during the entire term of the Lease, including any renewal term.  To the extent there is any conflict between the terms set forth in the body of the Lease and the terms set forth in this Lease Addendum, the terms of this Lease Addendum shall control.

12.     This Addendum may be executed in counterparts, and each copy so executed and delivered shall be deemed to be an original.

13.     Each of the persons executing this Addendum on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Addendum and that each person signing on said party's behalf is authorized to do so.

[Remainder of Page Intentionally Blank]

IN WITNESS WHEREOF, the parties have duly executed, sealed and delivered this Addendum as of the day and year first above written.

ATTEST/WITNESS:

By:_____

Print Name:_____

Title:_____

LANDLORD:

| PLATINUM ENDEAVORS LLC

By:_____

Print Name: _Morteza Kereudian_

Title: _Peresedent_

Date: _06/25/12_

ATTEST/WITNESS:

By: _Van_____

Print Name: _Van Tran_

Title: _Sr Accountant  6/25/12_

TENANT:

By: _Alex_____

Print Name: _Alex Kaleel_

Title: _General Counsel_

Date: _6/25/12_

Carl's Jr. Lease Addendum          3          04/10

| In re:<br><br>Sun Gir Incorporated<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:26-bk-11056 |
|---|---|

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2566 Overland Ave., Suite 650, Los Angeles, CA 90064

**A true and correct copy of the foregoing document entitled (*specify*):   NOTICE OF MOTION AND MOTION OF THE DEBTOR AND DEBTOR-INPOSSESSION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF A CERTAIN UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY EFFECTIVE AS OF APRIL 2, 2026 (THE "PETITION DATE") PURSUANT TO 11 U.S.C. § 365; AND (II) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF ALEX KALINSKY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  May 15, 2026 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Eric Bensamochan Eric@eblawfirm.us
United States Trustee ustpregion16.sa.ecf@usdoj.gov
Kenneth Misken DOJ-UST Kenneth.M.Misken@usdoj.gov
William Schumacher wschumacher@winthrop.com
Atle T. Saterbak asaterbak@winthrop.com
Andrew J. Steil asteil@winthrop.com
Eric D Goldberg eric.goldberg@dlapiper.com
Dustin P Branch branchd@ballardspahr.com
Nahal Zarnighian zarnighiann@ballardspahr.com
Michael John Agoglia  michael.agoglia@alston.com
Jacob A. Johnson jacob.Johnson@alston.com
Dustin P. Branch branchd@ballardspahr.com
Neama Cory Barari nbarari@caskeyholzman.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On  May 15, 2026  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth St., Ste. 5130
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 15, 2026 | Paulina Lara | /s/Paulina Lara |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2012*                                                                                    **9013-3.1.PROOF.SERVICE**

| In re:<br>Sun Gir Incorporated | CHAPTER 11 |
| --- | --- |
| Debtor(s). | CASE NUMBER 8:26-bk-11056 |

Freund: Sherry.W@Freundbakery.com

Sectran Security Inc spulido@sectransecurity.com

Flue Steam Inc. summer@fluesteam.com

John Youens-Crowe LLP john.youens@crowe.com

Covina Properties LLC bettina@packagemore.com

The Wasserstrom Company reneepennington@wasserstrom.com

Hewlett-Packard Financial Services Co
P.O Box 402582
Atlanta GA 30384-2582

Securities & Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, California 90071-9591

LA Dept of Water & Power
PO Box 30808
Los Angeles, CA 90030-0808

Southern California Edison
P.O. BOX 300
Rosemead, CA 91772-0002

Los Angeles County Tax Collector
P.O Box 54018
Los Angeles, CA 90054-0018

Orchid Bay LLC c/o Columbia Bank
110.S. Fairfax Avenue
Los Angeles, CA 90036

Crosspoint Realty Services, Inc
P.O. Box 889288
Los Angeles, CA 90088

Xenial Inc
PO Box 930157
Atlanta, GA 31193-0157

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9013-3.1**

Label Matrix for local noticing
0973-8
Case 8:26-bk-11056-SC
Central District of California
Santa Ana
Fri May 15 14:17:57 PDT 2026

McLane Foodservice, Inc.
c/o Alston & Bird LLP
Attn: Jacob Johnson
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3467

Sun Gir Incorporated
1 Centerpointe Dr., Suite 400
La Palma, CA 90623-2530

The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

Watt Laverne, LLC
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

Carl's Jr. Restaurants LLC
c/o DLA Piper LLP
1201 W Peachtree St., Ste 2800
Atlanta, GA 30309-3450

Carl's Jr. Restaurants LLC
c/o Eric Goldberg, Esq.
2000 Avenue of the Stars, Ste 400 N Towe
Los Angeles, CA 90067-4735

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

The Wasserstrom Company
4500 E Broad St
Columbus, OH 43213-1360

US Securities & Exchange Commission
444 S Flower St., # 900
Los Angeles, CA 90071-2934

United States Trustee
411 W Fourth Street
Santa Ana, CA 92701-4504

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Watt Laverne, LLC
c/o Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Eric Bensamochan
The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064-3371

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Carl's Jr. Restaurants, LLC

(d)The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

(u)Nydia Del Socorro Lazo

End of Label Matrix
Mailable recipients    14
Bypassed recipients     3
Total                  17