Eric Bensamochan, Esq. SBN 255482
The Bensamochan Law Firm, Inc.
2566 Overland Ave. Suite 650
Los Angeles, CA. 90064
Telephone: (818) 574-5740

Proposed Counsel for Debtor and
Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:26-bk-11056-SC |
| | Chapter 11 |
| SUN GIR INCORPORATED, | Jointly Administered With: |
| | 8:26-bk-11057-SC<br>8:26-bk-11058-SC<br>8:26-bk-11060-SC<br>8:26-bk-11061-SC<br>8:26-bk-11062-SC |
| Debtor and Debtor-in-Possession. | |
| Affects: | **NOTICE OF MOTION AND OMNIBUS MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF CERTAIN UNEXPIRED SUBLEASES OF NONRESIDENTIAL REAL PROPERTY EFFECTIVE AS OF APRIL 2, 2026 (THE "PETITION DATE") PURSUANT TO 11 U.S.C. § 365; AND (II) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF ALEX KALINSKY IN SUPPORT THEREOF** |
| ☐ Harshad & Nasir, Incorporated | |
| ☐ Senior Classic Leasing, LLC | |
| ☐ DFG Restaurants, Incorporated | |
| ☐ Second Star Holdings, LLC | |
| ☐ Third Star Investments, LLC | |
| | **Date**: June 10, 2026<br>**Time**: 1:30 p.m.<br>**Ctrm**: 5C |
| ☒ Affects All Debtors | 411 West Fourth Street<br>Santa Ana, California 92701<br>Or Via Zoom.gov |

MOTION TO REJECT SUBLEASES

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, IF KNOWN, AND ALL PARTIES IN INTEREST:**

PLEASE TAKE NOTICE THAT on the above-captioned date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an order granting the relief sought as set forth in the Motion accompanying supporting documents served and filed herewith. Said motion is based on the grounds set forth in the attached Motion and accompanying documents.

YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one.

DEADLINE FOR OPPOSITION PAPERS: This motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

## I.    INTRODUCTION

Sun Gir Incorporated, on behalf of itself and its affiliated debtor and debtor-in-possession entities in the above-captioned jointly administered chapter 11 cases (collectively, the "Debtors"), hereby files this *Omnibus Motion for an Order Authorizing the Debtors to Reject Certain Unexpired Subleases of Nonresidential Real Property Effective as of April 2, 2026 (the "Petition Date") Pursuant to 11 U.S.C. § 365 (the "Motion")*, seeking entry of an order authorizing the rejection of certain unexpired subleases of nonresidential real property identified in **Exhibit 2** attached hereto (collectively, the "Subject Leases"), relating to the underperforming restaurant locations identified therein (collectively, the "Subject Locations").

The Subject Locations consist of the following restaurant locations:

Store No.        Address

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

7394        140 E. Foothill Blvd., Pomona, CA 91767

7371        16815 Devonshire St., Granada Hills, CA 91344

7359        18756 Sherman Way, Reseda, CA 91335

866         1000 Farmers Ln., Santa Rosa, CA 95405

7369        141 S. Diamond Bar Blvd, Diamond Bar, CA 91765

7495        485 N. Rosemead Blvd., Pasadena, CA 91107

7380        505 W. Las Tunas Dr., San Gabriel, CA 91776

In support of this Motion, the Debtors submit the following memorandum of points and authorities and the Declaration of Alex Kalinsky (the "Declaration"). The Debtors operate a chain of fifty-nine (59) Carl's Jr. restaurant locations across California, employing approximately 1,000 employees. Following a comprehensive operational and financial review conducted in connection with these chapter 11 cases, the Debtors determined that the Subject Locations associated with the Subject Leases are substantially underperforming, economically burdensome, and detrimental to the Debtors' restructuring efforts.

As reflected in **Exhibit 1**, the Subject Locations are operating at sustained losses. For the period from April 1, 2024 through March 31, 2026, the Subject Locations collectively generated approximately $14,298,042 in revenue, incurred approximately $12,815,935 in operating expenses, and incurred approximately $2,294,230 in rent and facility costs, resulting in a combined net operating loss of approximately ($811,124).

Importantly, these figures exclude general and administrative expenses ("G&A") required to support operation of the Subject Locations, including accounting, legal, Human Resources, and administrative services. The Debtors allocate at least 2.5% of sales for these required support services, which would add approximately $357,452 in additional operating expenses allocable to the Subject Locations. Including these required operating costs, the Subject Locations are materially more unprofitable and represent a continuing financial burden on the estates.

The Debtors determined as of the Petition Date that the Subject Leases were burdensome and not beneficial to the estates. Following the Petition Date, the Debtors continued coordinating

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

3

operational transition issues, employee matters, franchise-related considerations, inventory matters, and store closure logistics relating to the Subject Locations.

In the exercise of their sound business judgment, the Debtors determined that rejection of the Subject Leases is necessary to reduce ongoing administrative expenses, preserve liquidity, and facilitate a successful restructuring.

This Motion is based upon this Motion, the accompanying memorandum of points and authorities, the Declaration, the pleadings and papers on file in these chapter 11 cases, and such other evidence or argument as may be presented at or before the hearing on this Motion. The Debtors' analysis of the Subject Leases is supported by (i) a summary of the financial performance of the Subject Locations attached hereto as **Exhibit 1**, and (ii) copies of the Subject Leases and related agreements attached collectively as **Exhibit 2**.

**II.   STATEMENT OF FACTS**

**A.  Background**

Sun Gir Incorporated is the lead debtor in a group of six affiliated chapter 11 debtors (collectively, the "Debtors") that operate a chain of fifty-nine (59) Carl's Jr. restaurant locations throughout California, including fifty-two (52) locations in Southern California and seven (7) locations in Northern California. The Debtors employ approximately 1,000 employees across their operations.

On April 2, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession.

The Debtors' financial distress is the result of, among other things, increased operating costs, including labor expenses, declining sales, and competitive pressures within the quick-service restaurant industry. As a result, certain of the Debtors' locations are operating at a negative cash flow and are not economically sustainable.

As part of their restructuring efforts, the Debtors conducted an operational and financial review of their store portfolio and determined that the Subject Locations associated with the

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

Subject Leases are operating at substantial losses and impose significant ongoing financial burdens on the estates.

**B.  The Subject Leases**

The Subject Leases identified in **Exhibit 2** relate to underperforming restaurant locations operated by the Debtors throughout California.

As reflected in **Exhibit 1**, the Subject Locations are operating at sustained losses. For the period from April 1, 2024 through March 31, 2026, the Subject Locations collectively generated approximately $14,298,042 in revenue, incurred approximately $12,815,935 in operating expenses, and incurred approximately $2,294,230 in rent and facility costs, resulting in a combined net operating loss of approximately ($811,124).

Importantly, these figures exclude general and administrative expenses ("G&A") required to support operation of the Subject Locations, including accounting, legal, Human Resources, and administrative services. The Debtors allocate at least 2.5% of sales for these required support services, which would add approximately $357,452 in additional operating expenses allocable to the Subject Locations. Including these required operating costs, the Subject Locations are materially more unprofitable and represent a continuing financial burden on the estates.

The Debtors determined that continued operation of the Subject Locations and continued performance under the Subject Leases would unnecessarily deplete estate assets and impair the Debtors' restructuring efforts.

The Debtors further determined that rejection of the Subject Leases is necessary and appropriate to reduce expenses, preserve liquidity, and maximize value for creditors.

**III.    MEMORANDUM OF POINTS AND AUTHORITIES**

**A.  Rejection of the Subject Leases Is a Proper Exercise of the Debtors' Business Judgment**

Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

5

Courts in the Ninth Circuit afford substantial deference to a debtor's business judgment in determining whether to reject an unexpired lease. See *In re Chi-Feng Huang*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982) (holding that rejection decisions should be approved unless they are the product of bad faith or a gross abuse of discretion); *In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006) (same).

Rejection is particularly appropriate where a lease is not economically beneficial to the estate or imposes ongoing financial burdens. See *In re Pacific Shores Dev., LLC*, 461 B.R. 750, 755 (Bankr. S.D. Cal. 2011) (approving rejection where property was not economically viable).

The decision to assume or reject an executory contract or unexpired lease is committed to the sound business judgment of the debtor. See *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007); *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000). Under this standard, a court should approve a debtor's decision to reject these subleases so long as the decision represents a reasonable exercise of business judgment.

In applying the business judgment standard, courts generally defer to the debtor's determination unless it is shown that the decision is so manifestly unreasonable that it could not be based on sound business judgment. *Pomona Valley*, 476 F.3d at 670–71.

Here, the Debtors have determined that the Subject Leases are burdensome and no longer beneficial to the estate.

As reflected in **Exhibit 1**, the Subject Locations are operating at sustained losses. For the period from April 1, 2024 through March 31, 2026, the Subject Locations collectively generated approximately $14,298,042 in revenue, incurred approximately $12,815,935 in operating expenses, and incurred approximately $2,294,230 in rent and facility costs, resulting in a combined net operating loss of approximately ($811,124).

Importantly, these figures exclude general and administrative expenses ("G&A") required to support operation of the Subject Locations, including accounting, legal, Human Resources, and administrative services. The Debtors allocate at least 2.5% of sales for these required support services, which would add approximately $357,452 in additional operating expenses allocable to

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

6

the Subject Locations. Including these required operating costs, the Subject Locations are materially more unprofitable and represent a continuing financial burden on the estates.

Rejection of the Subject Leases will allow the Debtors to reduce ongoing expenses, preserve liquidity, and focus operations on profitable locations that support a successful chapter 11 reorganization.

Accordingly, rejection of the Subject Leases represents a proper exercise of the Debtors' business judgment and should be approved.

**B. Rejection Should Be Approved Effective as of the Petition Date**

Bankruptcy courts in the Ninth Circuit have the equitable authority to approve rejection of a lease retroactive to a date prior to entry of the order where the equities favor such relief. See *In re At Home Corp.*, 392 F.3d 1064, 1072 (9th Cir. 2004).

In determining whether retroactive rejection is appropriate, courts consider the totality of the circumstances, including whether the debtor promptly sought rejection, whether the lease is burdensome, and whether retroactive relief will avoid unnecessary administrative expenses. *Id*.

Retroactive rejection is especially appropriate where continued lease obligations would unnecessarily increase administrative expenses and unfairly burden the estate to the detriment of creditors. See *At Home*, 392 F.3d at 1072–73.

Here, retroactive rejection to the Petition Date is warranted. The Debtors determined as of the Petition Date that the Subject Leases were economically burdensome and inconsistent with the Debtors' restructuring strategy. The Subject Locations are operating at a negative cash flow and imposes continuing obligations for rent, taxes, insurance, and maintenance without generating sufficient value to justify those expenses.

The Debtors filed this Motion as soon as reasonably practicable after completing their operational and financial review of underperforming locations and determining that rejection was necessary.

Allowing rejection only as of the date of entry of an order would improperly saddle the estate with unnecessary postpetition administrative expenses for burdensome subleases that the Debtors had already determined should be rejected as of the Petition Date.

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

The landlords suffer no unfair prejudice from retroactive rejection because the Debtors' intent to reject is clear, the premises are not necessary for reorganization, and continued sublease obligations serve only to diminish estate value.

Under these circumstances, the balance of equities strongly favors approval of rejection of the Subject Leases effective as of April 2, 2026, the Petition Date.

## IV.    **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order:

1. Authorizing the rejection of the Subject Leases identified in **Exhibit 2**, effective as of April 2, 2026, pursuant to 11 U.S.C. § 365; and

2. Granting such other and further relief as the Court deems just and proper.

Dated:  May 20, 2026

*/s/Eric Bensamochan*
ERIC BENSAMOCHAN
Proposed Counsel for Debtor and
Debtor-in-Possession

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

8

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**DECLARATION OF ALEX KALINSKY**

I, Alex Kalinsky, declare as follows:

1. I am the General Counsel of Sun Gir, Incorporated, the debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case ("Case"). I am also an officer, manager, or authorized representative of each of the affiliated debtors in these jointly administered cases (collectively, the "Debtors").

2. I am familiar with the Debtors' day-to-day operations, business affairs, sublease obligations, and financial condition.

3. I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto.

4. On April 2, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors operate a multi-location quick-service restaurant business consisting of approximately fifty-nine (59) Carl's Jr. franchise locations throughout California. As part of the restructuring efforts, the Debtors evaluated the performance and financial impact of each location and its corresponding sublease obligations.

6. The Subject Locations consist of the following restaurant locations:

| Store No. | Address |
| --- | --- |
| 7394 | 140 E. Foothill Blvd., Pomona, CA 91767 |
| 7371 | 16815 Devonshire St., Granada Hills, CA 91344 |
| 7359 | 18756 Sherman Way, Reseda, CA 91335 |
| 866 | 1000 Farmers Ln., Santa Rosa, CA 95405 |
| 7369 | 141 S. Diamond Bar Blvd, Diamond Bar, CA 91765 |
| 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 |
| 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 |

The Bensamochan Law Firm
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

7. Based on this evaluation, the Debtors determined that the subleases identified as **Exhibit 2** to the Motion (the "Subject Leases"), relating to the underperforming restaurant locations identified therein (collectively, the "Subject Locations"), are economically burdensome and imposes significant ongoing costs on the estates.

8. The Subject Locations are operating at sustained financial losses, generate negative cash flow, and impose substantial ongoing occupancy and operational obligations on the Debtors' estates.

9. As of the Petition Date, the Debtors determined that the Subject Leases should be rejected as part of their restructuring strategy in order to reduce expenses, preserve liquidity, and maximize value for creditors.

10. Based on my review of the Debtors' financial records, the Subject Locations are not generating sufficient revenue to cover operating expenses, including rent obligations, taxes, insurance, and maintenance, and are a continuing financial burden on the estates.

11. A summary of the financial performance of the Subject Locations is attached hereto as **Exhibit 1**. Based on my review of the Debtors' books and records, for the period from April 1, 2024 through March 31, 2026, the Subject Locations collectively generated approximately $14,298,042 in revenue, incurred approximately $12,815,935 in operating expenses, and incurred approximately $2,294,230 in rent and facility costs, resulting in a combined net operating loss of approximately ($811,124). Importantly, these figures exclude general and administrative expenses ("G&A") required to support operation of the Subject Locations, including accounting, legal, Human Resources, and administrative services. The Debtors allocate at least 2.5% of sales for these required support services, which would add approximately $357,452 in additional operating expenses allocable to the Subject Locations. Including these required operating costs, the Subject Locations are materially more unprofitable and represent a continuing financial burden on the estates.

12. Continued assumption of the Subject Leases would require the Debtors to continue funding losses at locations that are not financially sustainable and would impair the Debtors' ability to successfully reorganize.

13. Copies of the Subject Leases, including the underlying sublease agreements and related documents, are attached collectively as **Exhibit 2**.

14. The Debtors filed this Motion as soon as reasonably practicable after the Petition Date and after completing their review of underperforming locations and determining that rejection of the Subject Leases was necessary.

15. In my business judgment, rejection of the Subject Leases is in the best interests of the Debtors' estates and their creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 20th day of May, 2026, at La Palma, CA.

_____
Alex Kalinsky

11

# Exhibit 1

| Store No. | Location | Revenue | Operating Expenses | Facility / Occupancy Costs | Net Income (Loss) | Estimated G&A Allocation (2.5%) |
|---|---|---|---|---|---|---|
| 7394 | 140 E. Foothill Blvd., Pomona, CA 91767 | $1,901,588 | $1,822,158 | $369,495 | ($290,065) | $47,540 |
| 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | $2,147,762 | $1,818,128 | $360,449 | ($30,815) | $53,694 |
| 7359 | 18756 Sherman Way, Reseda, CA 91335 | $1,961,351 | $1,761,197 | $199,689 | $465 | $49,034 |
| 866 | 1000 Farmers Ln., Santa Rosa, CA 95405 | $2,437,719 | $2,007,293 | $407,972 | $22,454 | $60,943 |
| 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | $2,080,907 | $1,903,921 | $349,578 | ($172,592) | $52,023 |
| 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | $1,960,319 | $1,791,923 | $391,213 | ($222,818) | $49,008 |
| 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | $1,808,396 | $1,711,315 | $215,834 | ($118,753) | $45,210 |
| **Total** | | **$14,298,042** | **$12,815,935** | **$2,294,230** | **($811,124)** | **$357,452** |

| Senior Classic Leasing LLC | 7394 | 15360 Whittier Blvd. Whittier CA 90603 | 5/2024-3/31/26- Sales | 5/1/2024- 3/30/2026 Operating Expenses ($) | 5/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 5/1/2024- 3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 5/31/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 86819.68 | 79682.18 | 13885.65 | (6748.15) |
| 6/30/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 99048.04 | 73644.12 | 15566.60 | 9837.32 |
| 7/31/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 74868.15 | 71852.63 | 13662.00 | (10646.48) |
| 8/31/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 74507.14 | 69185.97 | 23796.65 | (18475.48) |
| 9/30/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 77933.75 | 86353.75 | 13896.81 | (22316.81) |
| 10/31/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 84969.74 | 75866.41 | 13864.16 | (4760.83) |
| 11/30/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 86245.99 | 74604.97 | 22497.80 | (10856.78) |
| 12/31/24 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 88457.93 | 74647.35 | 13864.16 | (53.58) |
| 1/31/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 85524.30 | 82415.43 | 14318.06 | (11209.19) |
| 2/28/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 81359.39 | 75213.04 | 13894.16 | (7747.81) |
| 3/31/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 89095.91 | 94218.86 | 13894.16 | (19017.11) |
| 4/30/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 84379.85 | 80474.90 | 20727.99 | (16823.04) |
| 5/31/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 90942.33 | 79493.79 | 13894.14 | (2445.60) |
| 6/30/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 82121.51 | 76843.52 | 13894.14 | (8616.15) |
| 7/31/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 83719.73 | 82536.17 | 12700.91 | (11517.35) |
| 8/31/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 80659.72 | 72267.10 | 14442.29 | (6049.67) |
| 9/30/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 75675.26 | 101534.44 | 13899.90 | (39759.08) |
| 10/31/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 81810.20 | 75281.45 | 29248.68 | (22719.93) |
| 11/30/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 79553.22 | 76586.06 | 13895.75 | (10928.59) |
| 12/31/25 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 85769.38 | 78158.12 | 15929.52 | (8318.26) |
| 1/31/26 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 78292.09 | 76890.85 | 14247.72 | (12846.48) |
| 2/28/26 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 71098.62 | 72594.65 | 14243.54 | (15739.57) |
| 3/31/26 | 7394 | 140 E. Foothill, Pomona, CA 91767 | 78735.85 | 91812.05 | 19230.22 | (32306.42) |
| **TOTAL** | 7394 | 140 E. Foothill, Pomona, CA 91767 | **1,901,588** | **1,822,158** | **369,495** | **(290,065)** |

| Senior Classic Leasing LLC | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 5/2024-3/31/26- Sales | 5/1/2024-3/30/2026 Operating Expenses ($) | 5/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 5/1/2024-3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 5/31/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 99391.21 | 75038.00 | 15473.48 | 8879.73 |
| 6/30/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 87144.65 | 66978.87 | 16222.51 | 3943.27 |
| 7/31/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 86503.16 | 78094.63 | 15549.45 | (7140.92) |
| 8/31/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 91393.24 | 70372.19 | 16383.03 | 4638.02 |
| 9/30/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 97360.25 | 93093.84 | 15560.65 | (11294.24) |
| 10/31/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 100848.08 | 85130.52 | 15557.99 | 159.57 |
| 11/30/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 95978.55 | 80947.42 | 15557.99 | (526.86) |
| 12/31/24 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 97168.72 | 77696.17 | 15557.99 | 3914.56 |
| 1/31/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 97822.60 | 80918.67 | 15981.89 | 922.04 |
| 2/28/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 87512.38 | 78445.92 | 15557.99 | (6491.53) |
| 3/31/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 96837.50 | 91679.72 | 15557.99 | (10400.21) |
| 4/30/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 92415.87 | 77173.90 | 15557.99 | (316.02) |
| 5/31/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 96398.34 | 74729.05 | 15557.98 | 6111.31 |
| 6/30/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 89824.75 | 80983.05 | 15520.55 | (6678.85) |
| 7/31/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 89855.74 | 75240.71 | 15557.98 | (942.95) |
| 8/31/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 90584.25 | 74047.77 | 16361.32 | 175.16 |
| 9/30/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 89043.67 | 81921.84 | 15563.74 | (8441.91) |
| 10/31/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 94665.32 | 76405.69 | 15566.04 | 2693.59 |
| 11/30/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 92824.65 | 77046.42 | 15559.59 | 218.64 |
| 12/31/25 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 99470.80 | 81311.42 | 15562.14 | 2597.24 |
| 1/31/26 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 93058.03 | 76429.64 | 15573.04 | 1055.35 |
| 2/28/26 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 86947.77 | 75832.40 | 15568.83 | (4453.46) |
| 3/31/26 | 7371 | 16815 Devonshire St., Granada Hills, CA 91344 | 94712.48 | 88610.24 | 15539.23 | (9436.99) |
| **TOTAL** | **7371** | **16815 Devonshire St., Granada Hills, CA 91344** | **2,147,762** | **1,818,128** | **360,449** | **(30,815)** |

| Senior Classic Leasing LLC | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 5/2024-3/31/26- Sales | 5/1/2024-3/30/2026 Operating Expenses ($) | 5/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 5/1/2024-3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 5/31/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 94244.41 | 69900.74 | 5302.74 | 19040.93 |
| 6/30/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 83049.34 | 64310.77 | 5637.07 | 13101.50 |
| 7/31/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 84315.09 | 81888.19 | 5302.71 | (2875.81) |
| 8/31/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 79348.58 | 66369.32 | 6193.20 | 6786.06 |
| 9/30/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 85828.55 | 86068.14 | 5313.91 | (5553.50) |
| 10/31/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 93224.58 | 78275.57 | 5311.25 | 9637.76 |
| 11/30/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 87882.28 | 75237.50 | 5311.25 | 7333.53 |
| 12/31/24 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 88803.50 | 73875.70 | 5311.25 | 9616.55 |
| 1/31/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 87600.82 | 78399.29 | 5735.15 | 3466.38 |
| 2/28/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 82907.66 | 74024.12 | 43508.28 | (34624.74) |
| 3/31/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 87294.58 | 90405.65 | 5311.25 | (8422.32) |
| 4/30/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 78824.78 | 72477.54 | 5311.25 | 1035.99 |
| 5/31/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 81436.24 | 66759.75 | 5311.24 | 9365.25 |
| 6/30/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 81028.70 | 70344.87 | 5879.35 | 4804.48 |
| 7/31/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 85924.76 | 77173.38 | 5311.24 | 3440.14 |
| 8/31/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 83060.30 | 78196.85 | 6197.44 | (1333.99) |
| 9/30/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 77662.07 | 91710.13 | 5317.00 | (19365.06) |
| 10/31/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 84656.17 | 74929.73 | 5319.30 | 4407.14 |
| 11/30/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 88935.26 | 77358.98 | 5312.85 | 6263.43 |
| 12/31/25 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 90114.38 | 78333.09 | 5315.40 | 6465.89 |
| 1/31/26 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 87431.35 | 77319.67 | 5326.30 | 4785.38 |
| 2/28/26 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 79054.99 | 73360.69 | 41557.06 | (35862.76) |
| 3/31/26 | 7359 | 18756 Sherman Way, Reseda, CA 91335 | 88722.82 | 84477.29 | 5292.49 | (1046.96) |
| **TOTAL** | **7359** | **18756 Sherman Way, Reseda, CA 91335** | **1,961,351** | **1,761,197** | **199,689** | **465** |

| Second Star Holdings | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 5/2024-3/31/26- Sales | 5/1/2024-3/30/2026 Operating Expenses ($) | 5/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 5/1/2024-3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 5/31/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 114742.96 | 83103.85 | 17484.95 | 14154.16 |
| 6/30/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 108315.42 | 83081.05 | 17484.94 | 7749.43 |
| 7/31/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 109292.76 | 82407.57 | 17967.81 | 8917.38 |
| 8/31/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 108670.67 | 83733.42 | 19243.77 | 5693.48 |
| 9/30/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 104302.90 | 99752.84 | 17496.12 | (12946.06) |
| 10/31/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 111936.98 | 86101.33 | 17493.45 | 8342.20 |
| 11/30/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 102693.66 | 96397.77 | 17493.46 | (11197.57) |
| 12/31/24 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 112142.65 | 81382.98 | 17493.42 | 13266.25 |
| 1/31/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 104953.30 | 81430.08 | 17917.38 | 5605.84 |
| 2/28/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 95510.60 | 76136.20 | 17493.46 | 1880.94 |
| 3/31/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 110103.53 | 98526.64 | 17493.46 | (5916.57) |
| 4/30/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 110210.61 | 90039.76 | 17493.46 | 2677.39 |
| 5/31/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 112604.11 | 81497.04 | 17493.44 | 13613.63 |
| 6/30/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 107056.20 | 81991.40 | 17493.44 | 7571.36 |
| 7/31/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 104027.53 | 90111.25 | 18427.16 | (4510.88) |
| 8/31/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 109950.29 | 89761.73 | 19521.15 | 667.41 |
| 9/30/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 100142.44 | 105605.93 | 17499.21 | (22962.70) |
| 10/31/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 107327.14 | 84482.66 | 17501.51 | 5342.97 |
| 11/30/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 99380.81 | 81106.74 | 17495.05 | 779.02 |
| 12/31/25 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 104541.17 | 90681.80 | 17497.61 | (3638.24) |
| 1/31/26 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 100505.79 | 86893.72 | 17508.51 | (3896.44) |
| 2/28/26 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 95131.04 | 79233.96 | 17504.32 | (1607.24) |
| 3/31/26 | 866 | 1000 Farmers Ln., Santa Rosa CA 95405 | 104176.47 | 93833.36 | 17474.71 | (7131.60) |
| **TOTAL** | **866** | **1000 Farmers Ln., Santa Rosa CA 95405** | **2,437,719** | **2,007,293** | **407,972** | **22,454** |

| Senior Classic Leasing LLC | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 5/2024-3/31/26- Sales | 5/1/2024-3/30/2026 Operating Expenses ($) | 5/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 5/1/2024-3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 5/31/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 92508.70 | 77521.66 | 12991.61 | 1995.43 |
| 6/30/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 85868.59 | 69599.72 | 13291.60 | 2977.27 |
| 7/31/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 85165.73 | 78159.19 | 12991.58 | (5985.04) |
| 8/31/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 89303.11 | 73393.62 | 13798.90 | 2110.59 |
| 9/30/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 88790.13 | 91969.12 | 13002.78 | (16181.77) |
| 10/31/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 99894.51 | 80358.22 | 13000.12 | 6536.17 |
| 11/30/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 92465.45 | 76269.45 | 13000.12 | 3195.88 |
| 12/31/24 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 99375.70 | 82440.72 | 13000.12 | 3934.86 |
| 1/31/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 90258.08 | 76759.76 | 18848.04 | (5349.72) |
| 2/28/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 84475.63 | 78219.13 | 18512.14 | (12255.64) |
| 3/31/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 99491.56 | 102797.80 | 21955.04 | (25261.28) |
| 4/30/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 91462.76 | 85121.31 | 20755.66 | (14414.21) |
| 5/31/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 93417.82 | 80284.20 | 20099.64 | (6966.02) |
| 6/30/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 88925.06 | 81624.92 | 19261.64 | (11961.50) |
| 7/31/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 90136.79 | 89329.69 | 18257.44 | (17450.34) |
| 8/31/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 88717.68 | 79781.85 | (21019.06) | 29954.89 |
| 9/30/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 82676.89 | 89111.81 | 18815.41 | (25250.33) |
| 10/31/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 91514.86 | 87367.06 | 18817.71 | (14669.91) |
| 11/30/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 88238.50 | 76859.91 | 17343.26 | (5964.67) |
| 12/31/25 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 99571.84 | 82558.31 | 24108.57 | (7095.04) |
| 1/31/26 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 86581.84 | 82343.13 | 18824.71 | (14586.00) |
| 2/28/26 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 80052.85 | 78201.23 | 13693.54 | (11841.92) |
| 3/31/26 | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 92013.24 | 103849.04 | 16227.44 | (28063.24) |
| TOTAL | 7369 | 141 S. Diamond Bar Blvd., Diamond Bar, CA 91765 | 2,080,907 | 1,903,921 | 349,578 | (172,592) |

| Senior Classic Leasing LLC | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 5/2024-3/31/26-Sales | 5/1/2024-3/30/2026 Operating Expenses ($) | 5/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 5/1/2024-3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 5/31/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 91581.15 | 76934.61 | 18298.63 | (3652.09) |
| 6/30/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 83468.85 | 77867.94 | 18298.62 | (12697.71) |
| 7/31/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 76985.88 | 74486.44 | 19468.33 | (16968.89) |
| 8/31/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 74971.49 | 71837.45 | 19210.06 | (16076.02) |
| 9/30/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 78489.59 | 90892.27 | 18426.80 | (30829.48) |
| 10/31/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 88936.91 | 77962.26 | 18424.13 | (7449.48) |
| 11/30/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 83652.04 | 76313.15 | 18424.14 | (11085.25) |
| 12/31/24 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 90858.47 | 73490.18 | 18424.14 | (1055.85) |
| 1/31/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 92030.24 | 76811.24 | 18848.04 | (3629.04) |
| 2/28/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 84881.92 | 71667.45 | 18424.14 | (5209.67) |
| 3/31/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 92821.43 | 93943.58 | 21867.04 | (22989.19) |
| 4/30/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 87065.24 | 77330.65 | 20483.37 | (10748.78) |
| 5/31/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 90307.69 | 71985.27 | 20099.64 | (1777.22) |
| 6/30/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 87732.70 | 73034.87 | 20099.64 | (5401.81) |
| 7/31/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 83961.38 | 80849.99 | 18257.44 | (15146.05) |
| 8/31/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 82860.64 | 76394.31 | (23671.32) | 30137.65 |
| 9/30/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 79461.83 | 81463.25 | 18815.41 | (20816.83) |
| 10/31/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 90098.76 | 78925.36 | 18817.71 | (7644.31) |
| 11/30/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 87699.33 | 78444.76 | 17343.26 | (8088.69) |
| 12/31/25 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 90744.71 | 74911.43 | 24108.57 | (8275.29) |
| 1/31/26 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 84329.83 | 82295.08 | 18824.71 | (16789.96) |
| 2/28/26 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 75255.65 | 73128.90 | 13693.54 | (11566.79) |
| 3/31/26 | 7495 | 485 N. Rosemead Blvd., Pasadena, CA 91107 | 82123.25 | 80953.02 | 16227.44 | (15057.21) |
| **TOTAL** | **7495** | **485 N. Rosemead Blvd., Pasadena, CA 91107** | **1,960,319** | **1,791,923** | **391,213** | **(222,818)** |

| Senior Classic Leasing LLC | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 5/2024-3/31/26-Sales | 5/1/2024-3/30/2026 Operating Expenses ($) | 5/1/2024-3/31/26 Rent Fx/Cam/PT/PLI/Rent % ($) | 5/1/2024-3/31/26 Net Loss ($) |
|---|---|---|---|---|---|---|
| 5/31/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 79708.84 | 72114.47 | 9200.94 | (1606.57) |
| 6/30/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 69445.04 | 62982.16 | 9610.86 | (3147.98) |
| 7/31/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 76072.61 | 70267.93 | 9200.91 | (3396.23) |
| 8/31/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 73558.78 | 70473.26 | 9935.91 | (6850.39) |
| 9/30/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 73342.51 | 84030.87 | 9212.10 | (19900.46) |
| 10/31/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 82453.80 | 72941.75 | 9209.44 | 302.61 |
| 11/30/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 72472.15 | 70104.39 | 9209.44 | (6841.68) |
| 12/31/24 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 77547.69 | 65767.92 | 9209.44 | 2570.33 |
| 1/31/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 82348.80 | 75680.77 | 9633.34 | (2965.31) |
| 2/28/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 74671.94 | 68050.12 | 9209.44 | (2587.62) |
| 3/31/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 83945.24 | 88062.25 | 9209.44 | (13326.45) |
| 4/30/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 82204.25 | 75995.56 | 9209.44 | (3000.75) |
| 5/31/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 86027.93 | 74556.76 | 9209.43 | 2261.74 |
| 6/30/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 81307.05 | 76853.20 | 10017.99 | (5564.14) |
| 7/31/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 79044.75 | 76772.78 | 9307.43 | (7035.46) |
| 8/31/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 79156.90 | 70939.92 | 10069.49 | (1852.51) |
| 9/30/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 74392.50 | 85001.39 | 9313.19 | (19922.08) |
| 10/31/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 75848.33 | 76261.52 | 9315.49 | (9728.68) |
| 11/30/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 76104.00 | 68824.99 | 9309.04 | (2030.03) |
| 12/31/25 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 82120.55 | 75741.14 | 9311.59 | (2932.18) |
| 1/31/26 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 84174.20 | 72298.41 | 9322.47 | 2553.32 |
| 2/28/26 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 75210.30 | 72649.59 | 9318.29 | (6757.58) |
| 3/31/26 | 7380 | 505 W. Las Tunas Dr., San Gabriel, CA 91776 | 87237.49 | 84943.59 | 9288.68 | (6994.78) |
| **TOTAL** | **7380** | **505 W. Las Tunas Dr., San Gabriel, CA 91776** | **1,808,396** | **1,711,315** | **215,834** | **(118,753)** |

# Exhibit 2

ENtity: SCL

STORE #: 7394

SUBLEASE I

Exp Date: 1/31/2018

CKE # 387
Pomona, CA

## SUBLEASE

THIS SUBLEASE AGREEMENT ("Sublease") dated as of the Sublease Date, is made and entered into by and between Sublessor and Sublessee. Sublessor and Sublessee hereby agree as follows:

1.    **Basic Sublease Information.**

All capitalized words not defined herein shall have the meanings ascribed to them in this Section entitled "Basic Sublease Information." The Basic Sublease Information contained herein is an integral part of the Sublease.

1.1    Sublease Date.    This Sublease shall be effective on DEC 22, 2000 ("Sublease Date").

1.2.    Sublessor.   CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor").

1.3.    Sublessee.   SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

1.4.    Premises.   The premises subleased hereunder is described in attached Exhibit "A" hereto and incorporated herein by reference ("Premises"). Sublessor is possessed of the Premises pursuant to a lease between Sublessor, as the lessee, and Weiss Family Limited Partnership, a California limited partnership, as the lessor ("Prime Landlord") dated August 11, 1997 ("Prime Lease"). The Premises is located at 140 East Foothill Boulevard, Pomona, California 91767. Sublessor has constructed on the Premises certain improvements for use as a "Carl's Jr. Restaurant." The Premises is referred to by Sublessor as Unit No. 387.

1.5    Term.

a.    The primary term of this Sublease will be from Sublease Date to January 31, 2018 ("Primary Term").

b.    One (1) additional consecutive terms of this Sublease will be from February 1, 2018 to January 31, 2023 ("Option Term").

- 1 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

The Primary Term and the Option Term are hereinafter collectively referred to as the "Term."

1.6. <u>Use</u>. Sublessee shall use the Premises only for a "Carl's Jr. Restaurant" pursuant to Paragraph 5.1 of this Sublease.

1.7. <u>Rent</u>. Minimum rent pursuant to Paragraph 6.1 of this Sublease, and subject to adjustment as provided therein, shall be the minimum or fixed rent which Sublessor is required to pay under the Prime Lease ("Minimum Rent"). Commencing on the Sublease Date, the Minimum Rent shall be $65,000.00 per year.

1.8. <u>Rent Commencement Date</u>. Rent shall commence on the Sublease Date ("Rent Commencement Date").

1.9. <u>Taxes</u>. Pursuant to Paragraph 7.3 of this Sublease, Sublessee's liability for Taxes, as hereinafter defined, shall commence on the Rent Commencement Date and shall be paid in twelve (12) equal monthly installments in advance. Sublessee's initial monthly installment of Taxes shall be $776.

1.10 (Intentionally Deleted)

1.11. <u>Notice Address</u>. The addresses for all notices under this Sublease are:

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
One City Boulevard West, Suite 350
Orange, CA 92868-3621
ATTN: Real Estate Asset Management
Telephone no. (714) 940-3441
Facsimile no. (714) 940-3444

With copy to:
General Counsel
CARL KARCHER ENTERPRISES, INC.
401 W. Carl Karcher Way
Anaheim, California 92801
Telephone no. (714) 778-7133
Facsimile no. (714) 520-4485

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
1 Centerpointe Dr., Suite 405
La Palma, CA 90623-1052
Telephone no. (714) 736-8900
Facsimile no. (714) 736-8909

1.12. (Intentionally Deleted)

- 2 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

2.     **Demise of Premises.**

In consideration of the rent and other sums to be paid by Sublessee, and of the other terms, covenants and conditions on Sublessee's part to be kept and performed, Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises and the improvements thereon, except buildings or other improvements owned by Sublessee and located on the Premises.

3.     **Term and Extension of Term.**

The Primary Term of this Sublease shall commence and terminate as stated in Paragraph 1.5.a of the Basic Sublease Information.  Sublessee shall have the right to extend the Primary Term of this Sublease for the Option Term as stated in Paragraph 1.5.b of the Basic Sublease Information, provided Sublessee is not in default of this Sublease on the date Sublessee exercises its option to extend or on the last day of the Primary Term. Sublessee may only exercise the option to extend (commencing February 1, 2018) if Sublessee has extended or then extends the Franchise Agreement and has paid Sublessor, as franchisor, any applicable franchise renewal or extension fee.

Sublessee shall exercise its option to extend, if it so elects, by written notice delivered to Sublessor not less than two hundred ten (210) days prior to the expiration of the Primary Term.  If Sublessee timely exercises its option to extend the Sublease term, Sublessor shall timely exercise its corresponding option to extend the term under the Prime Lease.

4.     **Title and Condition.**

4.1    The Premises is subleased subject to (a) the existing state of title to the Premises as of the Sublease Date; (b) any state of facts which a survey or physical inspection of the Premises might show; and (c) all zoning regulations, restrictions and other laws and regulations now in effect or hereafter adopted by any governmental authority having jurisdiction over the Premises.  The buildings, structures and other improvements comprising a part of the Premises are subleased subject to their condition as of the Sublease Date, and Sublessor does not make any representation or warranty, either express or implied, as to the condition of the Premises or as to the adequacy or suitability of the Premises for the purposes or needs of Sublessee.

- 3 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

4.2   Sublessee warrants and represents to Sublessor that Sublessee has examined the condition of the Premises prior to the execution and delivery of this Sublease and has found the Premises to be satisfactory for all Sublessee's purposes. Sublessee agrees that Sublessor shall have no responsibility or obligation for expenses with respect to the care, maintenance or operation and conduct of business on the Premises regardless of the nature of the expense.

5.   **Use of Premises.**

Sublessor, as franchisor, and Sublessee, as franchisee, have executed concurrently with the execution of this Sublease, a Carl's Jr. Restaurant Franchise Agreement ("Franchise Agreement") for the operation of a Carl's Jr. Restaurant on the Premises. Any event of default by Sublessee under the Franchise Agreement shall be an event of default under this Sublease, subject to any rights of Sublessee under the Franchise Agreement to cure such default.

Sublessee shall use the Premises for a Carl's Jr. Restaurant and for no other purpose without Sublessor's prior written consent. Such use shall be in a lawful, safe, careful and proper manner, and Sublessee shall not commit or permit any waste or allow the continuance of any nuisance. Sublessee shall carefully preserve, protect, control and guard the Premises from damage, shall maintain the Premises in good repair and shall comply with all requirements imposed by governmental authorities and by insurers of the Premises. Sublessee represents, warrants and covenants to Sublessor that Sublessee shall not cause or permit any hazardous substance or toxic waste to be handled, generated, stored, treated, disposed of or released on, in or about the Premises.

6.   **Rent.**

6.1   Sublessee covenants and agrees to pay to Sublessor Minimum Rent in the amount stated in Paragraph 1.7.a of the Basic Sublease Information commencing on the Rent Commencement Date. Except as provided in Paragraph 6.2 below, Sublessee shall pay to Sublessor, at the address set forth in Paragraph 1.11 of the Basic Sublease Information, Minimum Rent in twelve (12) equal monthly installments ("Monthly Installments") in advance on the first day of each month during the Term hereof. Rent shall be prorated for any partial year or partial month.

Minimum Rent shall be adjusted on the dates required by and to amount of the fixed or minimum rent which Sublessor is then required to pay under the Prime Lease.

- 4 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

6.2    (Intentionally Deleted)

6.3    Rent shall be payable in lawful money of the United States to Sublessor at the address stated in Paragraph 1.11 of the Basic Sublease Information or at such other place as Sublessor may designate in writing.

6.4    Sublessee covenants to pay to Sublessor as additional rent ("Additional Rent") all other amounts, liabilities and obligations which Sublessee herein assumes or agrees to pay and interest at the rate of ten percent (10%) per annum (or such lesser amount as may be the maximum amount permitted by law) on all overdue installments of Minimum Rent or other sums from the due date thereof until payment is received by Sublessor. Such Additional Rent shall be due and payable on demand.

7.    **Taxes.**

7.1    Sublessee covenants to pay to Sublessor as Additional Rent all taxes and assessments, including but not limited to, all real property taxes, any substitute property taxes, all general and special assessments, any business rental or rental excise taxes, and any other obligations which are or may become a lien on or levied against the Premises and/or improvements thereon (collectively, "Taxes"). Sublessee shall pay all personal property taxes, and all excise taxes on personal property and the like directly to the taxing authority, promptly when due.

7.2    In the event the taxing authorities change the manner in which Taxes are levied, charged or assessed from the present tax system, Sublessee shall pay such Taxes imposed upon the Premises under any alternative or revised system of taxation.

7.3    Sublessee shall pay estimated Taxes to Sublessor in twelve (12) equal monthly installments on the first day of each calendar month in advance, in an amount estimated by Sublessor based upon the prior year's Taxes, to be readjusted upon receipt of invoices or bills for actual Taxes. The initial monthly installment amount is stated in Paragraph 1.9 of the Basic Sublease Information.

7.4    Sublessor will determine the amount of deficiency or overpayment in Taxes for the prior tax year and any deficiency by Sublessee shall be paid within ten (10) days after demand by Sublessor and any overpayment will be credited to Sublessee. Sublessor will adjust monthly installments accordingly.

- 5 -

CKE # 387
Pomona, CA

8.     **Acceptance of Payments by Sublessor.**

No payment by Sublessee, or acceptance by Sublessor, of a lesser amount than shall be due from Sublessee to Sublessor shall be treated otherwise than as a payment on account.  The acceptance by Sublessor of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check that such lesser amount shall constitute payment in full, shall be given no effect and Sublessor may accept such payment without prejudice to any other rights or remedies which Sublessor may have against Sublessee.  Any payment, however designated, may be accepted by Sublessor and applied against any part of Sublessee's then due Minimum Rent, Additional Rent or other obligations, or Sublessor may apply such payment against any sum then due or may retain such payment (without interest) as a credit against Sublessee's accruing future obligations.

9.     **Utilities.**

Sublessee shall pay promptly when due, directly to the appropriate utility company, charges for all sewer, water, gas, electrical current, telephone and other utilities ("Utilities") used or consumed in or at the Premises.

10.     **Net Sublease.**

It is the express intent of the parties hereto that this Sublease is a "triple-net" sublease agreement.  The parties agree that the Minimum Rent, Additional Rent, Utilities and Taxes referenced above shall be net to Sublessor so that this Sublease shall yield to Sublessor the Minimum Rent, Additional Rent, Utilities and Taxes specified during the term of this Sublease on an absolutely net basis, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the Premises shall be paid by Sublessee without notice or demand, and without set-off, counterclaim, abatement, suspension or deduction.

11.     **(Intentionally Deleted)**

12.     **Insurance on Premises.**

12.1 During the term of this Sublease, Sublessee shall provide and maintain at Sublessee's sole expense:

a.     plate glass, fire and extended coverage insurance in amounts equal to the full replacement cost of the Premises (including any

- 6 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

additions in or changes in the Premises) as such value may be from time to time. Such insurance policies shall contain a one hundred percent (100%) replacement cost endorsement and an endorsement which automatically increases coverage as a guard against inflation for the Term of this Sublease;

b.      general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises and the adjoining streets, sidewalks and passageways, with primary limits of not less than Two Million Dollars ($2,000,000.00) with respect to bodily injury or death to any one person, not less than Four Million Dollars ($4,000,000.00) with respect to injuries to two or more persons arising out of one accident, and not less than Two Million Dollars ($2,000,000.00) with respect to property damage;

c.      worker's compensation insurance or comparable insurance under applicable laws covering all persons employed in connection with any work done on or about the Premises with respect to which claims for death or bodily injury could be asserted against Prime Landlord, Sublessor, Sublessee or the Premises;

d.      such other insurance upon or with respect to the Premises or the operation thereof in such amounts and against such other insurable hazards as are required by the Franchise Agreement; and

e.      in the event and to the extent that the Prime Lease shall require any insurance coverage not hereinbefore described and/or insurance coverage in limits higher than those hereinbefore described, Sublessee at Sublessee's sole cost and expense shall keep and maintain in force during the Term of this Sublease all such insurance (both as to types of coverage and limits) as may be required under the Prime Lease.

12.2  All such insurance shall be written by companies of recognized financial standing, satisfactory to Sublessor and Prime Landlord, and be authorized to do insurance business in the state in which the Premises is located, and such insurance shall name as additional insureds Sublessor and Prime Landlord (as their respective interests may appear). Sublessor shall not be required to prosecute any claim against or to contest any settlement proposed by, any insurer; provided, that Sublessee may, at its expense, prosecute any such claim or contest any such settlement, and in such event Sublessee may bring such prosecution or contest in the name of Sublessee, and Sublessor will join therein at Sublessee's expense and written request upon the receipt by Sublessor of an indemnity from Sublessee in form and substance satisfactory to Sublessor against any and all costs, liabilities and expenses in connection with such prosecution or contest.

- 7 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

12.3 In the event any damage to or destruction of the Premises shall occur, the provisions of the Prime Lease with respect to damage or destruction shall apply, and if the Prime Lease imposes on Sublessor the obligation to repair or restore improvements or alterations, Sublessee shall be responsible for repair or restoration of improvements or alterations with respect to the Premises. If the Prime Lease does not require otherwise, then insurance claims by reason of damage to or destruction of any portion of the Premises, shall be adjusted by Sublessee at the election of Sublessor, but Sublessor shall, at Sublessee's expense, have the right to join with Sublessee in adjusting any such loss. The entire amount of any proceeds paid pursuant to a claim shall be payable to Sublessor. The entire amount of any proceeds paid to Sublessor shall be delivered to Sublessee from time to time as the work of rebuilding, replacing and repairing the damage or destruction progresses and evidence is furnished by Sublessee of such rebuilding, replacement and repair of an amount at least equal to the proceeds to be paid to Sublessee. If any proceeds of such insurance remain after final payment has been made to Sublessee for such rebuilding, replacement and repair, such remaining proceeds shall be retained by Sublessor.

12.4 Every policy required by this Paragraph 12 shall contain an agreement by the insurer that it will not cancel or modify such policy except after sixty (60) days' prior written notice sent by registered mail to Sublessor, and that any loss otherwise payable thereunder shall be payable notwithstanding any change in title or other ownership of the Premises. Sublessee shall submit to Sublessor a binder evidencing all the insurance coverage required hereunder at the time it executes this Sublease and shall submit to Sublessor original insurance policies or certificates of insurance demonstrating Sublessee's full performance of its insurance obligations under this Sublease, together with proof of premium payment, within thirty (30) days following the execution of this Sublease. Thereafter, Sublessee shall submit to Sublessor copies of renewal policies or renewal certificates with proof of premium payment at least twenty (20) days before the expiration of such policies. Sublessor's receipt of information whether or not evidence of coverage shall not affect the respective rights and duties of Sublessor and Sublessee as they are stated herein.

12.5 Each party hereby waives claims against the other for property damage provided such waiver shall not invalidate the waiving party's property insurance; each party shall attempt to obtain from its insurance carrier a waiver of its insurance carrier's right of subrogation. Subtenant hereby waives claims against Prime Landlord and Sublessor for property damage to the Premises or its contents if and to the extent that Sublessor

- 8 -

CKE # 387
Pomona, CA

waives such claims against Prime Landlord under the Prime Lease. Sublessee agrees to obtain, for the benefit of Prime Landlord and Sublessor, such waivers of subrogation rights from its insurer as are required of Sublessor under the Prime Lease.

13.   Indemnification.

Sublessee agrees to pay, and to protect, indemnify and hold harmless Sublessor from and against any and all liabilities, losses, damages, costs, expenses (including, without implied limitation, all attorneys' fees and expenses of Sublessor), causes of action, suits, claims, demands or judgments of any nature whatsoever, arising from (a) any injury to, or the death of, any persons or any damage to property in or on the Premises or upon adjoining sidewalks, streets, or ways, or in any manner growing out of or connected with the use, non-use, condition or occupation of the Premises or any part thereof, or resulting from the condition thereof or of adjoining sidewalks, streets or ways; (b) violation by Sublessee of any term or provision of this Sublease; (c) violation by Sublessee of any term or provision of the Prime Lease; (d) violation by Sublessee of the Franchise Agreement or any other contract or agreement to which Sublessee is a party; and (e) violation by Sublessee of any restriction, statute, law, ordinance or regulation, affecting the Premises or any part thereof or the ownership, occupancy or use thereof. The obligations of Sublessee under this Paragraph 13 relating to events occurring during the Term of this Sublease shall survive the expiration or other termination of this Sublease.

14.   Alterations and/or Remodels.

14.1  To the extent allowed by, and upon satisfaction of all conditions stated in, the Prime Lease and Franchise Agreement, Sublessee shall have the right to make alterations or additions to the Premises with the prior written consent of Sublessor, which consent shall not be unreasonably withheld.

14.2  In the event Sublessee is permitted to make alterations or additions, such additions to and alterations of the buildings, structures or other improvements constituting part of the Premises shall be at Sublessee's sole cost and expense and be made in a good and workmanlike manner. Such additions or alterations shall be expeditiously completed in compliance with all laws, ordinances, orders, rules, regulations and requirements applicable thereto.

14.3  Sublessee shall promptly pay all costs and expenses of each such addition or alteration and shall discharge all liens filed against the

- 9 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

Premises arising out of the same, and pay for all permits and licenses required in connection with any such addition or alteration.

## 15.   Condemnation.

In the event of any condemnation involving the Premises, the provisions of the Prime Lease shall govern as to the party entitled to receive the award payable in connection with such taking.   Prime Landlord, Sublessor and Sublessee shall be entitled to awards payable as their respective interests may appear.   Sublessee shall be entitled to rent abatements to the extent Sublessor is entitled to abatements under the Prime Lease.

## 16.   Prime Lease Provisions.

16.1 Sublessor is the "Tenant" or "Lessee" of the Premises pursuant to the Prime Lease.  Sublessor and Sublessee hereby acknowledge and agree that this Sublease is subject and subordinate to the Prime Lease.  Sublessee acknowledges having received and reviewed the Prime Lease.  Sublessee hereby covenants and agrees that it will observe and perform all of the terms and conditions of the Prime Lease that are imposed upon Sublessor as tenant under the Prime Lease, including but not limited to payment of taxes, common area maintenance charges, insurance premiums, utilities and all other charges and amounts payable by Sublessor under the Prime Lease, such terms and conditions shall be deemed to have been incorporated herein as if set forth in full.  The obligations of and restrictions upon Sublessor as tenant under the Prime Lease shall constitute the obligations of and restrictions upon Sublessee under this Sublease, each as and to the extent applicable to the Premises.  The rights of Prime Landlord under the Prime Lease shall constitute the rights of Sublessor under this Sublease, in addition to the other rights of Sublessor under this Sublease, each as and to the extent applicable to the Premises.  In the event of a conflict between any term, condition or provision of the Prime Lease and this Sublease, or in the event that this Sublease creates additional or greater rights of and remedies to Sublessor over those granted Prime Landlord in the Prime Lease, or imposes additional or greater restrictions on or obligations of Sublessee over those imposed on Sublessor as tenant under the Prime Lease, then the terms, conditions and provisions of this Sublease shall govern in all respects the relationship between Sublessor and Sublessee.

Upon the breach of any of such terms, conditions or covenants of the Prime Lease by Sublessee or upon the failure of Sublessee to pay rent or comply with any of the provisions of this Sublease, Sublessor may exercise any and all rights and remedies granted to Prime Landlord by the Prime

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

Lease, as well as any and all rights and remedies granted to Sublessor by this Sublease. Sublessee's rights under this Sublease shall be the same as Sublessor's rights as tenant under the Prime Lease, except as otherwise provided by this Sublease. However, the parties acknowledge and agree that Sublessee has not been granted or assigned the leasehold estate or rights of Sublessor as tenant under the Prime Lease, or any right to purchase or right of first refusal to purchase the Premises, such estate and rights being specifically reserved by Sublessor, provided that all rights of Sublessor that are reasonably necessary for Sublessee's beneficial use and occupancy of the Premises shall be enforced or made available by Sublessor for such use and occupancy. All notices required or permitted to be given by Sublessee under the Sublease shall be given to both Sublessor and Prime Landlord under the Prime Lease.

16.2 Notwithstanding anything in this Sublease to the contrary, if the Prime Lease imposes any obligation on Prime Landlord or if any obligation of Sublessor under this Sublease is to be performed by Prime Landlord under the Prime Lease and Prime Landlord fails to perform or delays in performance of such obligation, or otherwise defaults in its obligations under the Prime Lease, then Sublessor shall have no liability to Sublessee hereunder as a result of such failure except that Sublessor agrees to use commercially reasonable efforts, upon notice from Sublessee and at Sublessee's expense, to cause Prime Landlord to perform such obligation. Nothing in this Sublease shall or shall be deemed to limit or restrict any right or remedy of Prime Landlord with respect to the Premises or the Prime Lease.

16.3 Notwithstanding anything in this Sublease to the contrary, any termination of the Prime Lease will cause this Sublease to be terminated as of the same time and date that the Prime Lease is terminated.

16.4 If the Prime Lease grants to Prime Landlord any rights of approval or consent or any similar term, provision or right, and if Sublessee requests from Sublessor such approval or consent, then such approval or consent of Sublessor shall not be effective unless and until Prime Landlord gives its approval or consent. Sublessor shall use commercially reasonable efforts to obtain such approval or consent of Prime Landlord, upon request of Sublessee and at Sublessee's expense.

17.   **Assignment and Subletting.**

17.1 Sublessee may transfer its interest in the Premises only through an assignment of this Sublease with Sublessor's prior written consent. Any such assignment hereunder shall only be in connection with an assignment or transfer by Sublessee of Sublessee's rights under the Franchise

- 11 -

CKE # 387
Pomona, CA

Agreement in accordance with the terms and provisions thereof. An assignee of the Franchise Agreement approved by Sublessor as franchisor shall be deemed approved by Sublessor as an assignee of this Sublease. Any such assignment shall also be subject to all terms of this Sublease, all duties and obligations of Sublessee hereunder shall be specifically assumed by such assignee, and shall be in a form approved by Sublessor. The consent by Sublessor to one assignment shall not be deemed to be a consent to any subsequent assignment. Unless released in writing by Sublessor, any assignment shall not relieve Sublessee of liability under this Sublease.

17.2 Neither this Sublease nor the Premises hereby subleased shall be mortgaged by Sublessee, nor shall Sublessee mortgage or pledge the interest of Sublessee in the Premises or the rentals payable thereunder without Sublessor's prior written consent.

18.    **Removal of Sublessee's Property.**

18.1 On or before the last day of this Sublease, Sublessee may remove from the Premises all furniture, trade fixtures, equipment and other movable personal property belonging to Sublessee ("Sublessee's Property"). Any damage to the Premises caused by such removal of Sublessee's Property shall be repaired in accordance with Paragraph 22 of this Sublease; in no event shall Sublessee's Property which has become permanently affixed to the Premises be removed. Notwithstanding the foregoing, Sublessee shall, at the end of the Term, or any termination of the Sublease, or upon the termination of Sublessor's right of possession hereunder, leave any improvements or other property required to be left in and on the Premises under the terms of the Prime Lease.

18.2 At the termination of this Sublease, if Sublessee has not removed Sublessee's Property from the Premises, or if this Sublease is terminated by reason of default by Sublessee, Sublessor may, at its option, either, (a) exercise any rights of Sublessor under the Franchise Agreement to purchase Sublessee's Property, or (b) remove Sublessee's Property from the Premises, the costs and expense for such to be for Sublessee's account, which shall be paid in full by Sublessee immediately upon demand by Sublessor, or, at Sublessor's option, deducted from the Security Deposit, or both to the extent necessary to fully pay said costs and expense.

19.    **Access to Premises.**

Sublessor, its agents, servants and employees may enter the Premises upon reasonable notice to Sublessee, which may be oral, for the purpose of

- 12 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

inspecting the Premises or for the purpose of exercising Sublessor's rights and remedies under this Sublease, the Franchise Agreement or under law.

20. **Default.**

Sublessee shall be in default if Sublessee:

a.   shall fail to pay when due any Minimum Rent, Monthly Installments thereof, Additional Rent, Utilities, Taxes or other payment required hereunder;

b.   breaches any provision of this Sublease;

c.   assigns, mortgages, sublets, or transfers any interest in this Sublease or in the Premises without Sublessor's prior consent;

d.   causes or allows a default to exist under the Prime Lease;

e.   violates any covenant, term or condition of the Franchise Agreement, any lease, sublease, note or other agreement between Sublessee and Sublessor or any of its affiliates;

f.   shall fail to remedy immediately after receipt of notice from Sublessor, any hazardous condition which Sublessee has created or suffered in breach of Sublessee's obligations under this Sublease;

g.   fails to comply with any statute, ordinance, rule or regulation of any governmental body; or

h.   files or has filed against it a petition in bankruptcy, insolvency, or for reorganization or arrangement pursuant to any Federal or state statute.

21. **Remedies.**

In the event of any default hereof by Sublessee which shall not have been cured within five (5) days, in the case of monetary default, after Sublessee receives notice specifying such default, or within fifteen (15) days after Sublessee receives such notice if such default is not for the payment of money, then Sublessor shall have the option to take any or all of the following actions, without further notice or demand of any kind to Sublessee or any other person:

a.   Collect by suit or otherwise each installment of Minimum Rent, Additional Rent or other sum as it becomes due hereunder, or enforce, by

- 13 -

CKE # 387
Pomona, CA

suit or otherwise, any other term or provision hereof on the part of Sublessee required to be kept or performed.

b.      Sublessor may terminate this Sublease upon the delivery of notice thereof to Sublessee and Sublessor shall have the right to immediate possession of the Premises and Sublessee shall peacefully surrender possession of the Premises to Sublessor.  In the event Sublessee holds the Premises beyond the termination of the Term, Sublessor shall have the right to recover Sublessor's cost in recovering possession of the Premises (including, without limitation, attorneys' fees and litigation costs), such amounts as may be permitted under applicable law and any other amounts due and payable to Sublessor hereunder including, without limitation, past-due rent.

c.      Sublessor, without terminating this Sublease, shall have the right to terminate Sublessee's right to possess the Premises and to recover possession thereof and Sublessee shall peacefully surrender the Premises to Sublessor.  Sublessor, at Sublessor's option, may cause the Premises to be prepared for reletting, and may relet the Premises or any part thereof as agent of Sublessee, for a term to expire prior to, at the same time as, or subsequent to the expiration of the Term, at Sublessor's option.  In the event of such reletting, Sublessor shall receive the rents therefor, applying the same first, to the repayment of reasonable expenses as Sublessor may have incurred in connection with said resumption of possession, preparing for reletting and reletting (including, without limitation, remodeling costs, brokerage and attorneys' fees), and, second, to the payment of damages and amounts equal to the Rent and Additional Rent due hereunder and to the cost of performing the other obligations of Sublessee as herein provided. Sublessee, regardless of whether Sublessor has relet the Premises, shall pay to Sublessor damages equal to the Rent and Additional Rent herein agreed to be paid by Sublessee less the proceeds of the reletting, if any, and such rent shall be due and payable by Sublessee on the days on which rent is due hereunder.  No such reentry and reletting of the Subleased Premises by Sublessor shall be construed as an election on its part to terminate this Sublease unless a written notice of such intention be given to Sublessee pursuant to subsection (b) above, or unless the termination thereof be decreed by a court of competent jurisdiction.  Notwithstanding any such reletting without termination, Sublessor may at any time thereafter elect to terminate this Sublease for such previous breach.

d.      Sublessor may perform for Sublessee any of the obligations Sublessee has agreed to perform hereunder if Sublessee has defaulted in the performance of such obligations.  Upon demand, Sublessee shall reimburse Sublessor for Sublessor's cost of performing for Sublessee together with

- 14 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

interest thereon at a rate equal to eighteen percent (18%) per annum, compounded monthly (or such lesser amount as may be the maximum amount permitted by law). Any amounts so expended by Sublessor shall be immediately due and payable and the failure of Sublessee to pay such amounts shall entitle Sublessor to all of the rights and remedies available to it as if Sublessee had defaulted in the payment of rent.

e.    Sublessee shall pay to Sublessor a late charge equal to four percent (4%) of the amount of any installment of Minimum Rent or Additional Rent if such installment becomes more than ten (10) days past due.

f.    Sublessor may exercise any rights allowed Prime Landlord under the Prime Lease.

The remedies given to Sublessor in this Section shall be in addition and supplemental to all other rights or remedies which Sublessor may have under the laws then in force, but subject to the laws of the State of California.

## 22.    Surrender of Possession by Sublessee.

Upon the expiration or earlier termination of this Sublease, or upon termination of Sublessor's right of possession hereunder, at any time and for any reason, Sublessee promptly and peaceably shall surrender to Sublessor the Premises, together with all improvements, fixtures and equipment belonging to Sublessor or Prime Landlord, their agents, servants or employees, in good condition and repair, normal wear and tear excepted, together with any buildings or other improvements owned by Sublessee and located on the Premises which shall thereupon immediately become the property of Sublessor. There shall be no holding over of the Premises by Sublessee.

## 23.    Sublessor's Waiver.

Sublessor's failure at any time or from time to time to require strict compliance by Sublessee with the provisions of this Sublease shall neither waive nor prejudice Sublessor's continued right to insist upon the due and timely performance of this Sublease and to avail itself of all remedies provided by law or by this Sublease.

- 15 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

24. **Governing Law.**

The invalidity or unenforceability of any provision of this Sublease shall not affect or impair any other provision.   If any provision of this Sublease is capable of two constructions, one of which would render the provision invalid and the other of which would make the provision valid, then the provision shall have the meaning which renders it valid.   The laws of the State of California shall govern the validity, performance, and enforcement of this Sublease.   The submission of this document for examination does not constitute an offer to lease or to sublease and becomes effective only upon execution and delivery thereof by Sublessor and Sublessee.

25. **Recording of Sublease.**

This Sublease shall not be recorded, but either party may execute and record a memorandum of sublease.   Each party agrees to sign, upon request of the other, such memorandum, in reasonably acceptable form.

26. **Sublessee as Independent Contractor.**

Sublessee is and shall remain an independent contractor and shall have no authority to act as an agent of Sublessor or power to bind Sublessor in any manner. This Sublease shall not create any relationship of employer-employee, trustee-beneficiary, principal-agent, partnership or joint venture.

27. **Sublessee's Inspection.**

Sublessee warrants and covenants that Sublessee has made all necessary or desirable examinations, inspections and inquiries regarding the Premises and has consulted with such professional advisors as Sublessee deems necessary or desirable to satisfy Sublessee at Sublessee's discretion and on Sublessee's own initiative, that the Premises is acceptable to Sublessee, that this Sublease is lawful in substance and in form, and that Sublessee is financially prepared to assume any and all risks and obligations of any kind that may be involved in becoming Sublessee.   SUBLESSEE HEREBY ACCEPTS THE PREMISES "AS IS, WHERE IS, AND WITH ALL FAULTS" WITH NO REPRESENTATION OR WARRANTY OF SUBLESSOR AS TO THE CONDITION THEREOF.

28. **No Other Assurances.**

Sublessee has entered into this Sublease in reliance upon its provisions and upon the provisions of the Prime Lease, including any amendments, supplements and extensions, and not in reliance upon any alleged

- 16 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

assurances, representations and warranties made by Sublessor, its officers, directors, agents, servants or employees.

29.   **Brokers.**

Each party represents and warrants to the other that it has not directly or indirectly dealt with any broker or agent relative to this Sublease or had its attention called to the Premises by any broker or agent and agrees to indemnify, defend and hold the other party harmless from and against any and all claims for commission arising out of the execution and delivery of this Sublease.

30.   **Notices.**

Where this Sublease requires notices to be given, except where it expressly provides to the contrary, all such notices shall be in writing and shall be deemed given on the date of personal delivery or the lesser of (a) three (3) business days or (b) the period if any for deemed delivery after mailing specified in the Prime Lease after deposit in the United States Mail when mailed by certified mail, postage prepaid, addressed to the party entitled to receive the notice at the address stated in Paragraph 1.11 in the Basic Sublease Information or at such other address as the party to receive the notice last may have designated for such purpose by notice given to the other party.

31.   **Miscellaneous.**

31.1   When the sense so requires, words of any gender used in this Sublease shall be held to include any other gender and words in the singular shall be held to include the plural.  "Sublessee" shall include the heirs, executors, administrators and personal representatives of any individual Sublessee as well as Sublessee's assigns (subject to Sublessor's prior written consent) and the successor of any incorporated Sublessee unless the context precludes such construction.  The captions or headings of particular paragraphs or parts of this Sublease are inserted for convenience only and shall not affect the meaning of this Sublease as a whole, or any paragraph or any part of it.

31.2   No alleged modifications, termination or waiver of this Sublease shall be binding unless it is set out in writing and signed by the party against whom or which it is sought to be enforced.  Any document or writing to be binding on Sublessor, whether this Sublease or any amendment, supplement or extension, must be signed by both Sublessee and Sublessor, the latter acting through its President or a Vice President.

- 17 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

32.   **Sole Understanding of Parties.**

This Sublease, the Franchise Agreement and that certain Asset
Purchase Agreement between Sublessor and Sublessee, dated as of July 19,
2000, and related documents, instruments and agreements, contain the
entire understanding between the parties with respect to their respective
subject matter, the Premises, and all aspects of the relationship between
Sublessee and Sublessor.

**[Signatures Follow on Next Page]**

- 18 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

CKE # 387
Pomona, CA

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first written above.

SUBLESSOR:

**CARL KARCHER ENTERPRISES, INC.**
A California Corporation

By: _____
Colleen Ford McDonough
Director, Real Estate Asset Management

By: _____
Robert A. Wilson
Senior Vice President

SUBLESSEE:

**SENIOR CLASSIC LEASING, LLC**
A California Limited Liability Company

By: _____
Harshad Dharod
Majority Member

- 19 -

E:\CKE\Dharod\Agr\Subleases\#387 Pomona

#387

## EXHIBIT "A"

**Legal Description**

PARCEL 5 AS SHOWN ON PARCEL MAP NO. 24513 IN THE CITY OF POMONA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, BEING A SUBDIVISION OF PARCELS 1, 2 AND 4 THROUGH 18 INCLUSIVE OF PARCEL MAP NO. 6435, IN THE CITY OF POMONA, AS SHOWN ON MAP FILED IN BOOK 71, PAGES 5, 6 AND 7 OF PARCEL MAPS, RECORDS OF SUCH COUNTY.

Assessor's Parcel No: 8367-001-078

7394

# FIRST AMENDMENT TO SUBLEASE

THIS FIRST AMENDMENT TO SUBLEASE ("Amendment") is made and entered into as of the 16th day of March, 2019 (the "Effective Date") by and between CARL'S JR. RESTAURANTS LLC, a Delaware limited liability company, successor-in-interest to CARL KARCHER ENTERPRISES, INC., a California corporation ("Sublessor"), and SENIOR CLASSIC LEASING, LLC, a California limited liability company ("Sublessee").

## RECITALS

A.      Sublessor and Sublessee entered into a certain Sublease dated December 22, 2000 (the "Sublease") concerning certain real property, together with all improvements thereon, commonly known as 140 East Foothill Boulevard, Pomona, California ("Premises");

B.      Sublessor and Sublessee acknowledge and agree that the Term is scheduled to expire on January 31, 2023 without any further options to extend the Term; and

C.      Sublessee and Sublessor desire to amend the Sublease to add one (1) five (5) year option to renew and extend the Sublease upon the terms set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2.  All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this Amendment.

3.  Section 1.5.b. of the Sublease is hereby modified and amended to add one (1) additional consecutive five (5) year Option Term to renew and extend the Term of the Sublease as follows:

February 1, 2023 through and including January 31, 2028

Each Option Term shall be subject to the same terms, covenants, and conditions as set forth in the Sublease, as amended hereby, including without limitation the provisions of Section 3 of the Sublease.

4.  Section 1.7 of the Sublease is hereby amended to include, immediately after the currently existing Section 1.7, the following Paragraphs 1.7.b and 1.7.c:

"b.      Effective February 1, 2023, Sublessee shall pay to Sublessor annually, within fifteen (15) days after the close of each year of the Option Term, the amount, if any,

Pomona, CA
140 East Foothill Boulevard
Unit #1100387
2244868.1

by which eight percent (8%) of Sublessee's Gross Sales during such year exceeds the Minimum Rent paid for such year ("Percentage Rent").

"c.    "Gross Sales" shall mean for all purposes hereof the aggregate of the following:

(1) The total amount of all sales made upon the Premises from the operation of the business conducted on the Premises, and
(2) All other business done upon the Premises which in standard use and accepted accounting practices are gross sales of Sublessee except the following: (a) the sale price of returned merchandise, (b) sales and/or exchanges made to or with other restaurants operated by Sublessee, (c) bulk sales of inventory incidental to the sale of the business of Sublessee, (d) any sales tax or similar tax levied on the sales by Sublessee and paid by customers, (e) coupons, discounts, or credits or allowances on merchandise sold, and (f) incidental sales of furniture, fixtures and equipment."

5. Section 6 of the Sublease is hereby amended to include an additional paragraph, Paragraph 6.5, as follows:

"6.5    As further and additional rent, Sublessee covenants and agrees to pay to Sublessor Percentage Rent as provided in Paragraph 1.7.b of the Basic Sublease Information."

6. Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

7. To the extent, if any, that the terms, covenants or conditions of this Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this Amendment shall control.

8. This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Amendment shall have no force or effect unless and until each party executes and delivers this Amendment to the other party.

9. Each of the persons executing this Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Amendment and that each person signing on said party's behalf is authorized to do so.

10. The parties acknowledge and agree that this Amendment shall be interpreted as if it were drafted jointly by all of the parties, and that neither this Amendment, nor any provision within

Pomona, CA
140 East Foothill Boulevard
Unit #1100387
2244868.1

it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney.  Any exhibits attached hereto are hereby incorporated herein by this reference.

*[Remainder of page intentionally left blank]*

Pomona, CA
140 East Foothill Boulevard
Unit #1100387
2244868.1

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the Effective Date.

SUBLESSOR:

CARL'S JR. RESTAURANTS LLC
a Delaware limited liability company

By: _____
Name:        Kathy Steininger
Title:         Vice President
        Real Estate Asset Management

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC,
a California limited liability company

By: _____
Name:        Alex Kalsy
Title:         General Counsel

*[Signature Page to First Amendment to Sublease Unit #1100387]*

Pomona, CA
140 East Foothill Boulevard
Unit #1100387
2244868.1

ENtity: SCL

STORE#: 7371

SUBLEASE I

Exp Date: 6/30/2011



CKE # 153
Granada Hills, CA

## SUBLEASE

THIS SUBLEASE AGREEMENT ("Sublease") dated as of the Sublease Date, is made and entered into by and between Sublessor and Sublessee. Sublessor and Sublessee hereby agree as follows:

1.    **Basic Sublease Information.**

All capitalized words not defined herein shall have the meanings ascribed to them in this Section entitled "Basic Sublease Information." The Basic Sublease Information contained herein is an integral part of the Sublease.

1.1    <u>Sublease Date</u>.    This    Sublease    shall    be    effective    on DEC 22, 2000 ("Sublease Date").

1.2.    <u>Sublessor</u>.   CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor").

1.3.    <u>Sublessee</u>. SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

1.4.    <u>Premises</u>.   The premises subleased hereunder is described in attached Exhibit "A" hereto and incorporated herein by reference ("Premises").   Sublessor is possessed of the Premises pursuant to a lease between Sublessor, as the lessee, and Pina C. Mackey, Trustee of the Pina C. Mackey Trust Dated August 31, 1990, as to an undivided forty-five percent (45%) interest; Michela C. Avesani, Trustee of the Michela C. Avesani Trust Dated January 6, 1993, as to an undivided forty-five percent (45%) interest; and Steve Joseph Mackey, a single man, as to an undivided ten percent (10%) interest, as the lessor ("Prime Landlord") dated February 27, 1976 as amended May 12, 1995 ("Prime Lease").   The Premises is located at 16815 Devonshire Street, Granada Hills, California 91344.   Sublessor has constructed on the Premises certain improvements for use as a "Carl's Jr. Restaurant."   The Premises is referred to by Sublessor as Unit No. 153.

1.5    <u>Term</u>.

a.    The primary term of this Sublease will be from Sublease Date to June 30, 2006 ("Primary Term").

- 1 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

CKE # 153
Granada Hills, CA

b.      Two (2) additional consecutive terms of this Sublease will be from:

July 1, 2006 to June 30, 2011, and
July 1, 2011 to June 30, 2016

(each referred to as "Option Term" and collectively "Option Terms").

The Primary Term and the Option Term or Option Terms, as the case may be, are hereinafter collectively referred to as the "Term."

1.6.   Use.   Sublessee shall use the Premises only for a "Carl's Jr. / Green Burrito Dual Concept Restaurant" pursuant to Paragraph 5.1 of this Sublease.

1.7.   Rent.

a.      Minimum rent pursuant to Paragraph 6.1 of this Sublease, and subject to adjustment as provided therein, shall be the minimum or fixed rent which Sublessor is required to pay under the Prime Lease ("Minimum Rent").   Commencing on the Sublease Date, the Minimum Rent shall be $100,800.00 per year.

b.      Sublessee shall pay to Sublessor annually, within fifteen (15) days after the close of each "Lease Year" as defined in the Prime Lease, the amount, if any, by which six percent (6%) of Sublessee's gross sales (which is the percentage of annual gross sales now required to be applied under the Prime Lease) during such Lease Year exceeds the Minimum Rent paid for such Lease Year ("Percentage Rent").

c.      "Gross Sales" as used herein, shall mean for all purposes hereof the aggregate of the following:

(1)      The total amount of all sales made upon the Premises from the operation of the business conducted on the Premises, and

(2)      All other business done upon the Premises which in standard use and accepted accounting practices are gross sales of Sublessee except the following:  (a) the sale price of returned merchandise, (b) sales and/or exchanges made to or with other restaurants operated by Sublessee, (c) bulk sales of inventory incidental to the sale of the business of Sublessee, (d) any sales tax or similar tax levied on the sales by Sublessee and paid by

- 2 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

CKE # 153
Granada Hills, CA

customers, (e) coupons, discounts, or credits or allowances on merchandise sold, and (f) incidental sales of furniture, fixtures and equipment.

1.8. <u>Rent Commencement Date</u>.    Rent shall commence on the Sublease Date ("Rent Commencement Date").

1.9. <u>Taxes</u>. Pursuant to Paragraph 7.3 of this Sublease, Sublessee's liability for Taxes, as hereinafter defined, shall commence on the Rent Commencement Date and shall be paid in twelve (12) equal monthly installments in advance. Sublessee's initial monthly installment of Taxes shall be $583.

1.10   (Intentionally Deleted)

1.11. <u>Notice Address</u>.    The addresses for all notices under this Sublease are:

SUBLESSOR:                          SUBLESSEE:

CARL KARCHER ENTERPRISES, INC.      SENIOR CLASSIC LEASING, LLC
One City Boulevard West,  Suite 350 1 Centerpointe Dr., Suite 405
Orange, CA  92868-3621              La Palma, CA 90623-1052
ATTN: Real Estate Asset Management  Telephone no. (714) 736-8900
Telephone no. (714) 940-3441        Facsimile no. (714) 736-8909
Facsimile no. (714) 940-3444

With copy to:
General Counsel
CARL KARCHER ENTERPRISES, INC.
401 W. Carl Karcher Way
Anaheim, California 92801
Telephone no. (714) 778-7133
Facsimile no.  (714) 520-4485

1.12. <u>Landlord Consent</u>. If the Prime Lease requires that the consent of Prime Landlord be obtained prior to the effectiveness of this Sublease, then, notwithstanding anything to the contrary contained in this Sublease, this Sublease and the obligations of Sublessor under this Sublease shall be subject to receipt by Sublessor of Prime Landlord's written consent and approval of the terms and conditions hereof substantially in the form of attached Exhibit "B." Sublessee agrees to provide Sublessor with any and all information required by Prime Landlord with respect to the business and financial condition of Sublessee in order for Prime Landlord to consent to this Sublease, and Sublessee hereby authorizes Sublessor to disclose to Prime

- 3 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

CKE # 153
Granada Hills, CA

Landlord any such information which may have been delivered to Sublessor. If required by the Prime Lease, Sublessor will reimburse Prime Landlord for reasonable expenses, including attorney's fees, incurred by Prime Landlord to review of any request for consent to this Sublease.

2.      **Demise of Premises.**

In consideration of the rent and other sums to be paid by Sublessee, and of the other terms, covenants and conditions on Sublessee's part to be kept and performed, Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises and the improvements thereon.

3.      **Term and Extensions of Term.**

The Primary Term of this Sublease shall commence and terminate as stated in Paragraph 1.5.a of the Basic Sublease Information. Sublessee shall have the right to extend the Primary Term of this Sublease for the Option Terms as stated in Paragraph 1.5.b of the Basic Sublease Information, provided Sublessee is not in default of this Sublease on the date Sublessee exercises its option to extend or on the last day of the Primary Term or respective additional term.

Sublessee shall exercise such options to extend, if it so elects, by written notice delivered to Sublessor not less than two hundred ten (210) days prior to the expiration of the Primary Term or additional term. If Sublessee timely exercises an option to extend the respective Sublease term, Sublessor shall timely exercise its corresponding option to extend the term under the Prime Lease.

4.      **Title and Condition.**

4.1      The Premises is subleased subject to (a) the existing state of title to the Premises as of the Sublease Date; (b) any state of facts which a survey or physical inspection of the Premises might show; and (c) all zoning regulations, restrictions and other laws and regulations now in effect or hereafter adopted by any governmental authority having jurisdiction over the Premises. The buildings, structures and other improvements comprising a part of the Premises are subleased subject to their condition as of the Sublease Date, and Sublessor does not make any representation or warranty, either express or implied, as to the condition of the Premises or as to the adequacy or suitability of the Premises for the purposes or needs of Sublessee.

- 4 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

CKE # 153
Granada Hills, CA

4.2    Sublessee warrants and represents to Sublessor that Sublessee has examined the condition of the Premises prior to the execution and delivery of this Sublease and has found the Premises to be satisfactory for all Sublessee's purposes. Sublessee agrees that Sublessor shall have no responsibility or obligation for expenses with respect to the care, maintenance or operation and conduct of business on the Premises regardless of the nature of the expense.

5.    **Use of Premises.**

Sublessor, as franchisor, and Sublessee, as franchisee, have executed concurrently with the execution of this Sublease, a Carl's Jr. / Green Burrito Dual Concept Restaurant Franchise Agreement ("Franchise Agreement") for the operation of a Carl's Jr. / Green Burrito Dual Concept Restaurant on the Premises.  Any event of default by Sublessee under the Franchise Agreement shall be an event of default under this Sublease, subject to any rights of Sublessee under the Franchise Agreement to cure such default.

Sublessee shall use the Premises for a Carl's Jr. / Green Burrito Dual Concept Restaurant and for no other purpose without Sublessor's prior written consent.   Such use shall be in a lawful, safe, careful and proper manner, and Sublessee shall not commit or permit any waste or allow the continuance of any nuisance.  Sublessee shall carefully preserve, protect, control and guard the Premises from damage, shall maintain the Premises in good repair and shall comply with all requirements imposed by governmental authorities and by insurers of the Premises.  Sublessee represents, warrants and covenants to Sublessor that Sublessee shall not cause or permit any hazardous substance or toxic waste to be handled, generated, stored, treated, disposed of or released on, in or about the Premises.

6.    **Rent and Percentage Rent.**

6.1    Sublessee covenants and agrees to pay to Sublessor Minimum Rent in the amount stated in Paragraph 1.7.a of the Basic Sublease Information commencing on the Rent Commencement Date.   Except as provided in Paragraph 6.2 below, Sublessee shall pay to Sublessor, at the address set forth in Paragraph 1.11 of the Basic Sublease Information, Minimum Rent in twelve (12) equal monthly installments ("Monthly Installments") in advance on the first day of each month during the Term hereof.  Rent shall be prorated for any partial year or partial month.

Minimum Rent shall be adjusted on the dates required by and to amount of the fixed or minimum rent which Sublessor is then required to pay under the Prime Lease.

- 5 -

CKE # 153
Granada Hills, CA

6.2   As further and additional rent, Sublessee covenants and agrees to pay to Sublessor during the Term hereof Percentage Rent as provided in Paragraph 1.7.b of the Basic Sublease Information.   Notwithstanding anything herein to the contrary, Sublessee shall fully and completely comply with all percentage rent provisions of the Prime Lease, except that Sublessee's statement of gross sales shall be provided to Sublessor within fifteen (15) days after the close of each Lease Year or calendar year as required by the Prime Lease.

6.3   Rent shall be payable in lawful money of the United States to Sublessor at the address stated in Paragraph 1.11 of the Basic Sublease Information or at such other place as Sublessor may designate in writing.

6.4   Sublessee covenants to pay to Sublessor as additional rent ("Additional Rent") all other amounts, liabilities and obligations which Sublessee herein assumes or agrees to pay and interest at the rate of ten percent (10%) per annum (or such lesser amount as may be the maximum amount permitted by law) on all overdue installments of Minimum Rent, Percentage Rent or other sums from the due date thereof until payment is received by Sublessor.   Such Additional Rent shall be due and payable on demand.

7.   Taxes.

7.1   Sublessee covenants to pay to Sublessor as Additional Rent all taxes and assessments, including but not limited to, all real property taxes, any substitute property taxes, all general and special assessments, any business rental or rental excise taxes, and any other obligations which are or may become a lien on or levied against the Premises and/or improvements thereon (collectively, "Taxes"). Sublessee shall pay all personal property taxes, and all excise taxes on personal property and the like directly to the taxing authority, promptly when due.

7.2   In the event the taxing authorities change the manner in which Taxes are levied, charged or assessed from the present tax system, Sublessee shall pay such Taxes imposed upon the Premises under any alternative or revised system of taxation.

7.3   Sublessee shall pay estimated Taxes to Sublessor in twelve (12) equal monthly installments on the first day of each calendar month in advance, in an amount estimated by Sublessor based upon the prior year's Taxes, to be readjusted upon receipt of invoices or bills for actual Taxes.

- 6 -

CKE # 153
Granada Hills, CA

The initial monthly installment amount is stated in Paragraph 1.9 of the Basic Sublease Information.

7.4   Sublessor will determine the amount of deficiency or overpayment in Taxes for the prior tax year and any deficiency by Sublessee shall be paid within ten (10) days after demand by Sublessor and any overpayment will be credited to Sublessee.   Sublessor will adjust monthly installments accordingly.

## 8.   Acceptance of Payments by Sublessor.

No payment by Sublessee, or acceptance by Sublessor, of a lesser amount than shall be due from Sublessee to Sublessor shall be treated otherwise than as a payment on account.  The acceptance by Sublessor of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check that such lesser amount shall constitute payment in full, shall be given no effect and Sublessor may accept such payment without prejudice to any other rights or remedies which Sublessor may have against Sublessee.  Any payment, however designated, may be accepted by Sublessor and applied against any part of Sublessee's then due Minimum Rent, Percentage Rent, Additional Rent or other obligations, or Sublessor may apply such payment against any sum then due or may retain such payment (without interest) as a credit against Sublessee's accruing future obligations.

## 9.   Utilities.

Sublessee shall pay promptly when due, directly to the appropriate utility company, charges for all sewer, water, gas, electrical current, telephone and other utilities ("Utilities") used or consumed in or at the Premises.

## 10.   Net Sublease.

It is the express intent of the parties hereto that this Sublease is a "triple-net" sublease agreement.  The parties agree that the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes referenced above shall be net to Sublessor so that this Sublease shall yield to Sublessor the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes specified during the term of this Sublease on an absolutely net basis, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the Premises shall be paid by Sublessee without notice or demand, and without set-off, counterclaim, abatement, suspension or deduction.

- 7 -

11.    (Intentionally Deleted)

12.    Insurance on Premises.

12.1 During the term of this Sublease, Sublessee shall provide and maintain at Sublessee's sole expense:

a.    plate glass, fire and extended coverage insurance in amounts equal to the full replacement cost of the Premises (including any additions in or changes in the Premises) as such value may be from time to time. Such insurance policies shall contain a one hundred percent (100%) replacement cost endorsement and an endorsement which automatically increases coverage as a guard against inflation for the Term of this Sublease;

b.    general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises and the adjoining streets, sidewalks and passageways, with primary limits of not less than Two Million Dollars ($2,000,000.00) with respect to bodily injury or death to any one person, not less than Four Million Dollars ($4,000,000.00) with respect to injuries to two or more persons arising out of one accident, and not less than Two Million Dollars ($2,000,000.00) with respect to property damage;

c.    worker's compensation insurance or comparable insurance under applicable laws covering all persons employed in connection with any work done on or about the Premises with respect to which claims for death or bodily injury could be asserted against Prime Landlord, Sublessor, Sublessee or the Premises;

d.    such other insurance upon or with respect to the Premises or the operation thereof in such amounts and against such other insurable hazards as are required by the Franchise Agreement; and

e.    in the event and to the extent that the Prime Lease shall require any insurance coverage not hereinbefore described and/or insurance coverage in limits higher than those hereinbefore described, Sublessee at Sublessee's sole cost and expense shall keep and maintain in force during the Term of this Sublease all such insurance (both as to types of coverage and limits) as may be required under the Prime Lease.

12.2 All such insurance shall be written by companies of recognized financial standing, satisfactory to Sublessor and Prime Landlord, and be authorized to do insurance business in the state in which the Premises is

- 8 -



CKE # 153
Granada Hills, CA

located, and such insurance shall name as additional insureds Sublessor and Prime Landlord (as their respective interests may appear). Sublessor shall not be required to prosecute any claim against or to contest any settlement proposed by, any insurer; provided, that Sublessee may, at its expense, prosecute any such claim or contest any such settlement, and in such event Sublessee may bring such prosecution or contest in the name of Sublessee, and Sublessor will join therein at Sublessee's expense and written request upon the receipt by Sublessor of an indemnity from Sublessee in form and substance satisfactory to Sublessor against any and all costs, liabilities and expenses in connection with such prosecution or contest.

12.3  In the event any damage to or destruction of the Premises shall occur, the provisions of the Prime Lease with respect to damage or destruction shall apply, and if the Prime Lease imposes on Sublessor the obligation to repair or restore improvements or alterations, Sublessee shall be responsible for repair or restoration of improvements or alterations with respect to the Premises. If the Prime Lease does not require otherwise, then insurance claims by reason of damage to or destruction of any portion of the Premises, shall be adjusted by Sublessee at the election of Sublessor, but Sublessor shall, at Sublessee's expense, have the right to join with Sublessee in adjusting any such loss. The entire amount of any proceeds paid pursuant to a claim shall be payable to Sublessor. The entire amount of any proceeds paid to Sublessor shall be delivered to Sublessee from time to time as the work of rebuilding, replacing and repairing the damage or destruction progresses and evidence is furnished by Sublessee of such rebuilding, replacement and repair of an amount at least equal to the proceeds to be paid to Sublessee. If any proceeds of such insurance remain after final payment has been made to Sublessee for such rebuilding, replacement and repair, such remaining proceeds shall be retained by Sublessor.

12.4  Every policy required by this Paragraph 12 shall contain an agreement by the insurer that it will not cancel or modify such policy except after sixty (60) days' prior written notice sent by registered mail to Sublessor, and that any loss otherwise payable thereunder shall be payable notwithstanding any change in title or other ownership of the Premises. Sublessee shall submit to Sublessor a binder evidencing all the insurance coverage required hereunder at the time it executes this Sublease and shall submit to Sublessor original insurance policies or certificates of insurance demonstrating Sublessee's full performance of its insurance obligations under this Sublease, together with proof of premium payment, within thirty (30) days following the execution of this Sublease. Thereafter, Sublessee shall submit to Sublessor copies of renewal policies or renewal certificates with proof of premium payment at least twenty (20) days before the expiration of

- 9 -

CKE # 153
Granada Hills, CA

such policies.  Sublessor's receipt of information whether or not evidence of coverage shall not affect the respective rights and duties of Sublessor and Sublessee as they are stated herein.

12.5  Each party hereby waives claims against the other for property damage provided such waiver shall not invalidate the waiving party's property insurance; each party shall attempt to obtain from its insurance carrier a waiver of its insurance carrier's right of subrogation.  Subtenant hereby waives claims against Prime Landlord and Sublessor for property damage to the Premises or its contents if and to the extent that Sublessor waives such claims against Prime Landlord under the Prime Lease.  Sublessee agrees to obtain, for the benefit of Prime Landlord and Sublessor, such waivers of subrogation rights from its insurer as are required of Sublessor under the Prime Lease.

13.    Indemnification.

Sublessee agrees to pay, and to protect, indemnify and hold harmless Sublessor from and against any and all liabilities, losses, damages, costs, expenses (including, without implied limitation, all attorneys' fees and expenses of Sublessor), causes of action, suits, claims, demands or judgments of any nature whatsoever, arising from (a) any injury to, or the death of, any persons or any damage to property in or on the Premises or upon adjoining sidewalks, streets, or ways, or in any manner growing out of or connected with the use, non-use, condition or occupation of the Premises or any part thereof, or resulting from the condition thereof or of adjoining sidewalks, streets or ways; (b) violation by Sublessee of any term or provision of this Sublease; (c) violation by Sublessee of any term or provision of the Prime Lease; (d) violation by Sublessee of the Franchise Agreement or any other contract or agreement to which Sublessee is a party; and (e) violation by Sublessee of any restriction, statute, law, ordinance or regulation, affecting the Premises or any part thereof or the ownership, occupancy or use thereof. The obligations of Sublessee under this Paragraph 13 relating to events occurring during the Term of this Sublease shall survive the expiration or other termination of this Sublease.

14.    Alterations and/or Remodels.

14.1  To the extent allowed by, and upon satisfaction of all conditions stated in, the Prime Lease and Franchise Agreement, Sublessee shall have the right to make alterations or additions to the Premises with the prior written consent of Sublessor, which consent shall not be unreasonably withheld.

- 10 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

CKE # 153
Granada Hills, CA

14.2 In the event Sublessee is permitted to make alterations or additions, such additions to and alterations of the buildings, structures or other improvements constituting part of the Premises shall be at Sublessee's sole cost and expense and be made in a good and workmanlike manner. Such additions or alterations shall be expeditiously completed in compliance with all laws, ordinances, orders, rules, regulations and requirements applicable thereto.

14.3 Sublessee shall promptly pay all costs and expenses of each such addition or alteration and shall discharge all liens filed against the Premises arising out of the same, and pay for all permits and licenses required in connection with any such addition or alteration.

15.   **Condemnation.**

In the event of any condemnation involving the Premises, the provisions of the Prime Lease shall govern as to the party entitled to receive the award payable in connection with such taking.   Prime Landlord, Sublessor and Sublessee shall be entitled to awards payable as their respective interests may appear.   Sublessee shall be entitled to rent abatements to the extent Sublessor is entitled to abatements under the Prime Lease.

16.   **Prime Lease Provisions.**

16.1 Sublessor is the "Tenant" or "Lessee" of the Premises pursuant to the Prime Lease.  Sublessor and Sublessee hereby acknowledge and agree that this Sublease is subject and subordinate to the Prime Lease.  Sublessee acknowledges having received and reviewed the Prime Lease.  Sublessee hereby covenants and agrees that it will observe and perform all of the terms and conditions of the Prime Lease that are imposed upon Sublessor as tenant under the Prime Lease, including but not limited to payment of taxes, common area maintenance charges, insurance premiums, utilities and all other charges and amounts payable by Sublessor under the Prime Lease, such terms and conditions shall be deemed to have been incorporated herein as if set forth in full.  The obligations of and restrictions upon Sublessor as tenant under the Prime Lease shall constitute the obligations of and restrictions upon Sublessee under this Sublease, each as and to the extent applicable to the Premises.  The rights of Prime Landlord under the Prime Lease shall constitute the rights of Sublessor under this Sublease, in addition to the other rights of Sublessor under this Sublease, each as and to the extent applicable to the Premises.  In the event of a conflict between any term, condition or provision of the Prime Lease and this Sublease, or in the event that this Sublease creates additional or greater rights of and remedies

- 11 -

CKE # 153
Granada Hills, CA

to Sublessor over those granted Prime Landlord in the Prime Lease, or imposes additional or greater restrictions on or obligations of Sublessee over those imposed on Sublessor as tenant under the Prime Lease, then the terms, conditions and provisions of this Sublease shall govern in all respects the relationship between Sublessor and Sublessee.

Upon the breach of any of such terms, conditions or covenants of the Prime Lease by Sublessee or upon the failure of Sublessee to pay rent or comply with any of the provisions of this Sublease, Sublessor may exercise any and all rights and remedies granted to Prime Landlord by the Prime Lease, as well as any and all rights and remedies granted to Sublessor by this Sublease. Sublessee's rights under this Sublease shall be the same as Sublessor's rights as tenant under the Prime Lease, except as otherwise provided by this Sublease. However, the parties acknowledge and agree that Sublessee has not been granted or assigned the leasehold estate or rights of Sublessor as tenant under the Prime Lease, or any right to purchase or right of first refusal to purchase the Premises, such estate and rights being specifically reserved by Sublessor, provided that all rights of Sublessor that are reasonably necessary for Sublessee's beneficial use and occupancy of the Premises shall be enforced or made available by Sublessor for such use and occupancy. All notices required or permitted to be given by Sublessee under the Sublease shall be given to both Sublessor and Prime Landlord under the Prime Lease.

16.2 Notwithstanding anything in this Sublease to the contrary, if the Prime Lease imposes any obligation on Prime Landlord or if any obligation of Sublessor under this Sublease is to be performed by Prime Landlord under the Prime Lease and Prime Landlord fails to perform or delays in performance of such obligation, or otherwise defaults in its obligations under the Prime Lease, then Sublessor shall have no liability to Sublessee hereunder as a result of such failure except that Sublessor agrees to use commercially reasonable efforts, upon notice from Sublessee and at Sublessee's expense, to cause Prime Landlord to perform such obligation. Nothing in this Sublease shall or shall be deemed to limit or restrict any right or remedy of Prime Landlord with respect to the Premises or the Prime Lease.

16.3 Notwithstanding anything in this Sublease to the contrary, any termination of the Prime Lease will cause this Sublease to be terminated as of the same time and date that the Prime Lease is terminated.

16.4 If the Prime Lease grants to Prime Landlord any rights of approval or consent or any similar term, provision or right, and if Sublessee requests from Sublessor such approval or consent, then such approval or consent of Sublessor shall not be effective unless and until Prime Landlord

- 12 -

CKE # 153
Granada Hills, CA

gives its approval or consent. Sublessor shall use commercially reasonable efforts to obtain such approval or consent of Prime Landlord, upon request of Sublessee and at Sublessee's expense.

## 17.   Assignment and Subletting.

17.1 Sublessee may transfer its interest in the Premises only through an assignment of this Sublease with Sublessor's prior written consent. Any such assignment hereunder shall only be in connection with an assignment or transfer by Sublessee of Sublessee's rights under the Franchise Agreement in accordance with the terms and provisions thereof. An assignee of the Franchise Agreement approved by Sublessor as franchisor shall be deemed approved by Sublessor as an assignee of this Sublease. Any such assignment shall also be subject to all terms of this Sublease, all duties and obligations of Sublessee hereunder shall be specifically assumed by such assignee, and shall be in a form approved by Sublessor. The consent by Sublessor to one assignment shall not be deemed to be a consent to any subsequent assignment. Unless released in writing by Sublessor, any assignment shall not relieve Sublessee of liability under this Sublease.

17.2 Neither this Sublease nor the Premises hereby subleased shall be mortgaged by Sublessee, nor shall Sublessee mortgage or pledge the interest of Sublessee in the Premises or the rentals payable thereunder without Sublessor's prior written consent.

## 18.   Removal of Sublessee's Property.

18.1 On or before the last day of this Sublease, Sublessee may remove from the Premises all furniture, trade fixtures, equipment and other movable personal property belonging to Sublessee ("Sublessee's Property"). Any damage to the Premises caused by such removal of Sublessee's Property shall be repaired in accordance with Paragraph 22 of this Sublease; in no event shall Sublessee's Property which has become permanently affixed to the Premises be removed. Notwithstanding the foregoing, Sublessee shall, at the end of the Term, or any termination of the Sublease, or upon the termination of Sublessor's right of possession hereunder, leave any improvements or other property required to be left in and on the Premises under the terms of the Prime Lease.

18.2 At the termination of this Sublease, if Sublessee has not removed Sublessee's Property from the Premises, or if this Sublease is terminated by reason of default by Sublessee, Sublessor may, at its option, either, (a) exercise any rights of Sublessor under the Franchise Agreement to purchase Sublessee's Property, or (b) remove Sublessee's Property from the

- 13 -

CKE # 153
Granada Hills, CA

Premises, the costs and expense for such to be for Sublessee's account, which shall be paid in full by Sublessee immediately upon demand by Sublessor, or, at Sublessor's option, deducted from the Security Deposit, or both to the extent necessary to fully pay said costs and expense.

19.   **Access to Premises.**

Sublessor, its agents, servants and employees may enter the Premises upon reasonable notice to Sublessee, which may be oral, for the purpose of inspecting the Premises or for the purpose of exercising Sublessor's rights and remedies under this Sublease, the Franchise Agreement or under law.

20.   **Default.**

Sublessee shall be in default if Sublessee:

a.      shall fail to pay when due any Minimum Rent, Monthly Installments thereof, Percentage Rent, Additional Rent, Utilities, Taxes or other payment required hereunder;

b.      breaches any provision of this Sublease;

c.      assigns, mortgages, sublets, or transfers any interest in this Sublease or in the Premises without Sublessor's prior consent;

d.      causes or allows a default to exist under the Prime Lease;

e.      violates any covenant, term or condition of the Franchise Agreement, any lease, sublease, note or other agreement between Sublessee and Sublessor or any of its affiliates;

f.      shall fail to remedy immediately after receipt of notice from Sublessor, any hazardous condition which Sublessee has created or suffered in breach of Sublessee's obligations under this Sublease;

g.      fails to comply with any statute, ordinance, rule or regulation of any governmental body; or

h.      files or has filed against it a petition in bankruptcy, insolvency, or for reorganization or arrangement pursuant to any Federal or state statute.

- 14 -

## 21.   Remedies.

In the event of any default hereof by Sublessee which shall not have been cured within five (5) days, in the case of monetary default, after Sublessee receives notice specifying such default, or within fifteen (15) days after Sublessee receives such notice if such default is not for the payment of money, then Sublessor shall have the option to take any or all of the following actions, without further notice or demand of any kind to Sublessee or any other person:

a.   Collect by suit or otherwise each installment of Minimum Rent, Percentage Rent, Additional Rent or other sum as it becomes due hereunder, or enforce, by suit or otherwise, any other term or provision hereof on the part of Sublessee required to be kept or performed.

b.   Sublessor may terminate this Sublease upon the delivery of notice thereof to Sublessee and Sublessor shall have the right to immediate possession of the Premises and Sublessee shall peacefully surrender possession of the Premises to Sublessor. In the event Sublessee holds the Premises beyond the termination of the Term, Sublessor shall have the right to recover Sublessor's cost in recovering possession of the Premises (including, without limitation, attorneys' fees and litigation costs), such amounts as may be permitted under applicable law and any other amounts due and payable to Sublessor hereunder including, without limitation, past-due rent.

c.   Sublessor, without terminating this Sublease, shall have the right to terminate Sublessee's right to possess the Premises and to recover possession thereof and Sublessee shall peacefully surrender the Premises to Sublessor. Sublessor, at Sublessor's option, may cause the Premises to be prepared for reletting, and may relet the Premises or any part thereof as agent of Sublessee, for a term to expire prior to, at the same time as, or subsequent to the expiration of the Term, at Sublessor's option. In the event of such reletting, Sublessor shall receive the rents therefor, applying the same first, to the repayment of reasonable expenses as Sublessor may have incurred in connection with said resumption of possession, preparing for reletting and reletting (including, without limitation, remodeling costs, brokerage and attorneys' fees), and, second, to the payment of damages and amounts equal to the Rent and Additional Rent due hereunder and to the cost of performing the other obligations of Sublessee as herein provided. Sublessee, regardless of whether Sublessor has relet the Premises, shall pay to Sublessor damages equal to the Rent and Additional Rent herein agreed to be paid by Sublessee less the proceeds of the reletting, if any, and such rent shall be due and payable by Sublessee on the days on which rent is due

- 15 -

hereunder. No such reentry and reletting of the Subleased Premises by Sublessor shall be construed as an election on its part to terminate this Sublease unless a written notice of such intention be given to Sublessee pursuant to subsection (b) above, or unless the termination thereof be decreed by a court of competent jurisdiction. Notwithstanding any such reletting without termination, Sublessor may at any time thereafter elect to terminate this Sublease for such previous breach.

d.      Sublessor may perform for Sublessee any of the obligations Sublessee has agreed to perform hereunder if Sublessee has defaulted in the performance of such obligations. Upon demand, Sublessee shall reimburse Sublessor for Sublessor's cost of performing for Sublessee together with interest thereon at a rate equal to eighteen percent (18%) per annum, compounded monthly (or such lesser amount as may be the maximum amount permitted by law). Any amounts so expended by Sublessor shall be immediately due and payable and the failure of Sublessee to pay such amounts shall entitle Sublessor to all of the rights and remedies available to it as if Sublessee had defaulted in the payment of rent.

e.      Sublessee shall pay to Sublessor a late charge equal to four percent (4%) of the amount of any installment of Minimum Rent, Percentage Rent or Additional Rent if such installment becomes more than ten (10) days past due.

f.      Sublessor may exercise any rights allowed Prime Landlord under the Prime Lease.

The remedies given to Sublessor in this Section shall be in addition and supplemental to all other rights or remedies which Sublessor may have under the laws then in force, but subject to the laws of the State of California.

22.    **Surrender of Possession by Sublessee.**

Upon the expiration or earlier termination of this Sublease, or upon termination of Sublessor's right of possession hereunder, at any time and for any reason, Sublessee promptly and peaceably shall surrender to Sublessor the Premises, together with all improvements, fixtures and equipment belonging to Sublessor or Prime Landlord, their agents, servants or employees, in good condition and repair, normal wear and tear excepted. There shall be no holding over of the Premises by Sublessee.

- 16 -

CKE # 153
Granada Hills, CA

23.    **Sublessor's Waiver.**

Sublessor's failure at any time or from time to time to require strict compliance by Sublessee with the provisions of this Sublease shall neither waive nor prejudice Sublessor's continued right to insist upon the due and timely performance of this Sublease and to avail itself of all remedies provided by law or by this Sublease.

24.    **Governing Law.**

The invalidity or unenforceability of any provision of this Sublease shall not affect or impair any other provision.  If any provision of this Sublease is capable of two constructions, one of which would render the provision invalid and the other of which would make the provision valid, then the provision shall have the meaning which renders it valid.  The laws of the State of California shall govern the validity, performance, and enforcement of this Sublease.  The submission of this document for examination does not constitute an offer to lease or to sublease and becomes effective only upon execution and delivery thereof by Sublessor and Sublessee.

25.    **Recording of Sublease.**

This Sublease shall not be recorded, but either party may execute and record a memorandum of sublease.  Each party agrees to sign, upon request of the other, such memorandum, in reasonably acceptable form.

26.    **Sublessee as Independent Contractor.**

Sublessee is and shall remain an independent contractor and shall have no authority to act as an agent of Sublessor or power to bind Sublessor in any manner. This Sublease shall not create any relationship of employer-employee, trustee-beneficiary, principal-agent, partnership or joint venture.

27.    **Sublessee's Inspection.**

Sublessee warrants and covenants that Sublessee has made all necessary or desirable examinations, inspections and inquiries regarding the Premises and has consulted with such professional advisors as Sublessee deems necessary or desirable to satisfy Sublessee at Sublessee's discretion and on Sublessee's own initiative, that the Premises is acceptable to Sublessee, that this Sublease is lawful in substance and in form, and that Sublessee is financially prepared to assume any and all risks and obligations of any kind that may be involved in becoming Sublessee.  SUBLESSEE HEREBY ACCEPTS THE PREMISES "AS IS, WHERE IS, AND WITH ALL

- 17 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

CKE # 153
Granada Hills, CA

FAULTS" WITH NO REPRESENTATION OR WARRANTY OF SUBLESSOR AS TO THE CONDITION THEREOF.

28.    **No Other Assurances.**

Sublessee has entered into this Sublease in reliance upon its provisions and upon the provisions of the Prime Lease, including any amendments, supplements and extensions, and not in reliance upon any alleged assurances, representations and warranties made by Sublessor, its officers, directors, agents, servants or employees.

29.    **Brokers.**

Each party represents and warrants to the other that it has not directly or indirectly dealt with any broker or agent relative to this Sublease or had its attention called to the Premises by any broker or agent and agrees to indemnify, defend and hold the other party harmless from and against any and all claims for commission arising out of the execution and delivery of this Sublease.

30.    **Notices.**

Where this Sublease requires notices to be given, except where it expressly provides to the contrary, all such notices shall be in writing and shall be deemed given on the date of personal delivery or the lesser of (a) three (3) business days or (b) the period if any for deemed delivery after mailing specified in the Prime Lease after deposit in the United States Mail when mailed by certified mail, postage prepaid, addressed to the party entitled to receive the notice at the address stated in Paragraph 1.11 in the Basic Sublease Information or at such other address as the party to receive the notice last may have designated for such purpose by notice given to the other party.

31.    **Miscellaneous.**

31.1  When the sense so requires, words of any gender used in this Sublease shall be held to include any other gender and words in the singular shall be held to include the plural.  "Sublessee" shall include the heirs, executors, administrators and personal representatives of any individual Sublessee as well as Sublessee's assigns (subject to Sublessor's prior written consent) and the successor of any incorporated Sublessee unless the context precludes such construction.  The captions or headings of particular paragraphs or parts of this Sublease are inserted for convenience only and

- 18 -

CKE # 153
Granada Hills, CA

shall not affect the meaning of this Sublease as a whole, or any paragraph or any part of it.

31.2 No alleged modifications, termination or waiver of this Sublease shall be binding unless it is set out in writing and signed by the party against whom or which it is sought to be enforced. Any document or writing to be binding on Sublessor, whether this Sublease or any amendment, supplement or extension, must be signed by both Sublessee and Sublessor, the latter acting through its President or a Vice President.

32. **Sole Understanding of Parties.**

This Sublease, the Franchise Agreement and that certain Asset Purchase Agreement between Sublessor and Sublessee, dated as of July 19, 2000, and related documents, instruments and agreements, contain the entire understanding between the parties with respect to their respective subject matter, the Premises, and all aspects of the relationship between Sublessee and Sublessor.

**[Signatures Follow on Next Page]**

- 19 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

CKE # 153
Granada Hills, CA

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first written above.

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
A California Corporation

By: _____
Colleen Ford McDonough
Director, Real Estate Asset Management

By: _____
Robert A. Wilson
Senior Vice President

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
A California Limited Liability Company

By: _____
Harshad Dharod
Majority Member

- 20 -

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

#153

**EXHIBIT "A"**

**Legal Description**

LOTS 31, 32 AND 33 OF TRACT NO. 22065, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 602, PAGES 73 AND 74 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER.

EXCEPTING FROM LOT 31 ALL MINERAL RIGHTS IN THAT PORTION OF SAID LAND LYING BELOW A PLANE 500 FEET BENEATH THE SURFACE OF SAID LAND INCLUDING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES BUT WITH NO RIGHT TO ENTER UPON THE SURFACE OF SAID LAND, AS RESERVED AND GRANTED BY DEED RECORDED IN BOOK 51412, PAGE 85, OFFICIAL RECORDS AND IN BOOK 51654, PAGE 446, OFFICIAL RECORDS.

Assessor's Parcel No: 2684-007-021

CKE # 153
Granada Hills, CA

## EXHIBIT "B"

### Consent to Sublease

The undersigned, PINA C. MACKEY, TRUSTEE of the Pina C. Mackey Trust Dated August 31, 1990, as to an undivided forty-five percent (45%) interest; MICHELA C. AVESANI, TRUSTEE of the Michela C. Avesani Trust Dated January 6, 1993, as to an undivided forty-five percent (45%) interest; and STEVE JOSEPH MACKEY, a single man, as to an undivided ten percent (10%) interest, the landlord ("Prime Landlord") under the lease dated February 27, 1976 as amended May 12, 1995 ("Prime Lease") hereby consent and agree to the subletting of the premises described in the Prime Lease ("Premises") by the tenant under the Prime Lease ("Sublessor") to Senior Classic Leasing, LLC, a California limited liability company, (Sublessee"), and consent to the Sublease Agreement ("Sublease"), provided however, that Sublessor shall remain liable as tenant under the Prime Lease. The undersigned representative certifies by signing below that this Consent to Sublease is binding on the Prime Landlord.

Dated: _____, 2000

**PINA C. MACKEY TRUST**
Dated August 31, 1990

By: _____
    Pina C. Mackey, Trustee

**MICHELA C. AVESANI TRUST**
Dated January 6, 1993

By: _____
    Michela C. Avesani, Trustee

_____
**Steve Joseph Mackey**

E:\CKE\Dharod\Agr\Subleases\#153 Granada Hills

Carl's Jr. #7371<br>Granada Hills, CA

## FIRST AMENDMENT TO SUBLEASE

THIS FIRST AMENDMENT TO SUBLEASE ("First Amendment") is made and entered into as of the _____19th_____ day of _____June_____ 2013 (the "Effective Date") by and between **CARL'S JR. RESTAURANTS LLC**, a Delaware limited liability company, as successor in interest to **CARL KARCHER ENTERPRISES, INC.**, a California corporation, ("Sublessor") and **SENIOR CLASSIC LEASING, LLC**, a California limited liability company, ("Sublessee").

## RECITALS

A.      Sublessor, through its predecessor in interest,  and Sublessee entered into a written Sublease dated December 22, 2000 ("Sublease") whereby Sublessor is subleasing to Sublessee, and Sublessee is subleasing from Sublessor, that certain real property, together with all buildings, structures and improvements thereon and appurtenances thereto, commonly known as 16815 Devonshire Street, Granada Hills, California 91344 ("Premises");

B.      The Term of the Sublease expires on June 30, 2016 pursuant to Section 1.5 of the Sublease, and the Sublessee has no further options to extend the Term of the Sublease;

C.      Sections 1.7(a) and 6.1 of the Sublease provide for certain Minimum Rent payable by Sublessee to Sublessor during the Term, all as more particularly set forth such Sections;

D.      Sublessee and Sublessor now desire to amend the Sublease to extend the Term of the Sublease, to provide for three (3) additional options to extend and renew the Term of the Sublease, to provide for Minimum Rent payable by Sublessee to Sublessor during certain periods of the Term of the Sublease, to provide for a Management Fee, as well as other matters as set forth below;

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2.      All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this First Amendment.

C:\Users\jacqui\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\3LKITX05\7371-1stSubleaseAmendment04- 4-23-13.docx

April 23, 2013

Carl's Jr. #7371
Granada Hills, CA

3.      Section 1.5(a) of the Sublease is hereby modified and amended to provide that the Term of the Sublease shall be extended for a period of ten (10) years and shall now expire on June 30, 2026 ("Extended Term").

4.      Section 1.5.b. of the Sublease is hereby modified and amended to provide that, in addition to the two (2) options to extend and renew the Sublease previously granted herein and exercised by Sublessee, Sublessor hereby grants to Sublessee three (3) additional options to extend and renew the Sublease for a period of five (5) years each, such that Sublessee now has remaining options to extend and renew the Sublease for the following periods:

First Additional Option Period      July 1, 2026 through June 30, 2031;
Second Additional Period            July 1, 2031 through June 30, 2036; and,
Third Additional Option Period      July 1, 2036 through June 30, 2041

5.      Sublessee hereby acknowledges pursuant to Section 1.7(a) of the Sublease that the Minimum or Fixed Rent that Sublessor is now required to pay under the Prime Lease and that Sublessee must pay to Sublessor as Minimum Rent hereunder in the same amount are as of the Effective Date of this Amendment, the following amounts during the following periods of time:

| Period: | Annual Minimum Rental: | Monthly Minimum Rental: |
|---|---|---|
| From Effective Date of 1st Amendment to 6/30/2016 | $121,968.00 | $10,164.00 |
| From 07/01/2016 to 06/30/2021 | $146,361.60 | $12,196.80 |
| From 07/01/2021 to 06/30/2026 | See below | See below |
| From 07/01/2026 to 06/30/2031* | See below | See below |
| From 07/01/2031 to 06/31/2036* | See below | See below |
| From 07/01/2036 to 06/30/2041* | See below | See below |

* In the event that the Additional Option to extend the Sublease is duly exercised by Sublessee

Effective upon July 1, 2021, and upon every fifth anniversary of such date, including during each Option Period, if any, (singularly, "Adjustment Date," collectively, "Adjustment Dates"), the Minimum Rental in effect immediately preceding each Adjustment Date shall be increased by the percentage increase in the CPI (as hereinafter defined) measured from the Last CPI Publication Date to the new CPI Publication Date. The "Last CPI Publication Date" shall be the immediately prior Adjustment Date (or July 1, 2016 in the case of the adjustment for the first Adjustment Date). The "New CPI Publication Date" shall be the date four (4) months prior to the current Adjustment Date. Notwithstanding any provision herein to the contrary, in no event shall any CPI Adjustment be greater than twenty (20%) per Adjustment Date and in no event shall the Minimum Rental in effect on any Adjustment Date be less than one hundred and ten percent (110%) of the Minimum Rental in effect for the period

- 2 -

April 23, 2013

immediately preceding the applicable Adjustment Date. The "CPI" is the Consumer Price Index Price Index - ALL URBAN CONSUMERS – LOS ANGELES/LONG BEACH AREA – ALL ITEMS (1982-84=100), as published by the United States Department of Labor, Bureau of Labor Statistics, or its successor index; provided that if the format or components of the CPI are materially changed after the execution hereof, Sublessor shall substitute an index which is published by the Bureau of Labor Statistics or similar agency and which has been determined by independent third party sources to be comparable to the CPI in effect on the date of this Fourth Amendment and Sublessor shall notify Sublessee of the substituted index. If the CPI as of any New CPI Publication Date is not available on an Adjustment Date, Sublessee shall continue to pay the same amount of Minimum Rental payable prior to such Adjustment Date until the CPI is available. As soon as the calculation thereof is made, Sublessee shall pay to Sublessor the amount of the underpayment of the Minimum Rental for the month(s) that may have elapsed.

6.      Commencing July 1, 2016 and continuing thereafter during the balance of the Term of the Sublease, including any extension (option) periods, Sublessee shall pay to Sublessor a Management Fee at the rate of Two Thousand Five Hundred Dollars ($2,500.00) per year, payable in installments of Two Hundred Eight and 33/100 Dollars ($208.33) per month. The Management Fee shall be payable by Sublessee to Sublessor along with Sublessee's payment of Monthly Minimum Rent and shall be payable as Additional Rent.

7.      Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

8.      To the extent, if any, that the terms, covenants or conditions of this First Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this First Amendment shall control.

9.      This First Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This First Amendment shall have no force or effect unless and until each party executes and delivers this First Amendment to the other party.

10.     Each of the persons executing this First Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this First Amendment and that each person signing on said party's behalf is authorized to do so.

11.     The parties acknowledge and agree that this First Amendment shall be interpreted as if it was drafted jointly by all of the parties, and that neither this First Amendment, nor any provision within it, shall be construed against any party or its

C:\Users\jacqui\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\3LKITX05\7371-1stSubleaseAmendment04-4-23-13.docx

April 23, 2013

Carl's Jr. #7371
Granada Hills, CA

attorney because it was drafted in full or in part by any party or its attorney.  Any exhibits attached hereto are hereby incorporated herein by this reference.

12.    This First Amendment along with any exhibits and attachments or other documents affixed hereto, or referred to herein, constitutes the entire and exclusive agreement between Sublessor and Sublessee with respect to the subject matter of this First Amendment.    Sublessor and Sublessee hereby agree that all prior or contemporaneous oral or written understandings, agreements or negotiations relative to the subject matter of this First Amendment which were acceptable to both parties have been merged into this First Amendment and are included herein.

IN  WITNESS  WHEREOF,  the  parties  hereto  have  executed  this  First Amendment effective as of the date first above written.

Date: _____6/19/2013_____, 2013        SUBLESSOR:

CARL'S JR. RESTAURANTS LLC
A Delaware Limited Liability Company

By: _____
        Colleen Ford-McDonough
Title:____Colleen F. McDonough_____
        Vice President., Real Estate Mgmt.

Date: _____6/17_____, 2013        SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
A California Limited Liability Company

By: _____

_____(Print Name)

_____(Title)

- 4 -

ENtity: SCL

STORE#: 7359

Exp Date: 12/31/2016

SUBLEASE I



L E A D   S H E E T

00 2031056



RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

DEC   29   2000

AT 8 A.M.

SPACE ABOVE THIS LINE FOR RECORDERS USE



TITLE(S) REC'D FEB 0 9 2001



**FEE**                                                     **D.T.T.**

FEE $16          E

DAF $2

C-20        4

**CODE
20**

**CODE
19**

**CODE
9___**

Assessor's Identification Number (AIN)
To Be Completed By Examiner OR Title Company In Black Ink          Number of Parcels Shown





**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE INSURANCE CO.

CKE # 058
Reseda, CA

00  2031056

**Recording Requested By
And When Recorded Mail To:**

Senior Classic Leasing, LLC
1 Centerpointe Drive, Suite 405
La Palma, CA 90623
Attention: Harshad Dharod

97241306

THIS SPACE FOR RECORDER'S USE ONLY

## MEMORANDUM OF SUBLEASE

THIS MEMORANDUM OF SUBLEASE is made as of _Dec 22_, 2000 by and between CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor") and SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

Donald Ensch, Trustee of the Ensch Brothers 1985 Trust Created June 8, 1985, as lessor, and Sublessor, as lessee, entered into that certain Lease dated April 10, 1978 as amended, if at all, with respect to the real property commonly known as 18756 Sherman Way, Reseda, California 91335 and more particularly described in Exhibit "A" attached hereto and by this reference incorporated herein ("Premises").

Sublessor has subleased to Sublessee, and Sublessee has subleased from Sublessor, the Premises, pursuant to the terms of that certain Sublease dated as of _Dec 22_, 2000 ("Sublease").

The primary term of the Sublease ("Primary Term") shall commence on _Dec 22_, 2000 and shall expire on December 31, 2016 unless sooner terminated.

Pursuant to the Sublease, Sublessee may extend the Primary Term for one (1) successive period of five (5) years, upon certain terms and conditions set forth in the Sublease.

This instrument is a Memorandum of the Sublease and is solely for recording purposes and shall not be construed to alter, modify or supplement the Sublease.

- 1 -

E:\CKE\Dharod\Agr\Memo of Subleases\#058

CKE # 058
Reseda, CA

IN WITNESS WHEREOF, this Memorandum of Sublease has been duly executed by the parties as of the day and year first above written.

**SUBLESSOR:**

CARL KARCHER ENTERPRISES, INC.
A California Corporation

By: _____
Colleen Ford McDonough
Director, Real Estate Asset Management

By: _____
Robert A. Wilson
Senior Vice President

**SUBLESSEE:**

SENIOR CLASSIC LEASING, LLC
A California Limited Liability Company

By: _____
Harshad Dharod
Majority Member

**Acknowledgments Follow on Next Page]**

E:\CKE\Dharod\Agr\Memo of Subleases\#058            - 2 -            00 2031056

CKE # 058
Reseda, CA

## ACKNOWLEDGMENTS

STATE OF CALIFORNIA          )
                            ) ss.
COUNTY OF ORANGE            )

On *December 19*, 2000 before me, *Karen Slaney*, a Notary Public in and for said State, personally appeared COLLEEN FORD McDONOUGH and ROBERT A. WILSON [✓] personally known to me, ~~or [  ] proved to me on the basis of satisfactory evidence~~, to be the persons whose names are subscribed to the within instrument and they acknowledged to me that they executed the same in their authorized capacities as Director, Real Estate Asset Management, and Senior Vice President, respectively, of Carl Karcher Enterprises, Inc., and that by their signatures on the instrument, Carl Karcher Enterprises, Inc., executed the instrument.

WITNESS my hand and official seal.

KAREN SLANEY
Commission # 1191338
Notary Public - California
Orange County
My Comm. Expires Jul 26, 2003

*Karen Slaney*
Notary Public
My Commission Expires: *July 26, 2003*

STATE OF CALIFORNIA          )
                            ) ss.
COUNTY OF *Orange*          )

On *NOV 28 2000*, 2000 before me, *Bradley Barth*, a Notary Public in and for said State, personally appeared HARSHAD DHAROD [✓] personally known to me, or [  ] proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument and he acknowledged to me that he executed the same in his authorized capacity as Majority Member of Senior Classic Leasing, LLC, and that by his signature on the instrument, Senior Classic Leasing, LLC, executed the instrument.

WITNESS my hand and official seal.

Notary Public
My Commission Expires: *6/27/04*

BRADLEY BARTH
COMM. # 1266960
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 27, 2004

E:\CKE\Dharod\Agr\Memo of Subleases\#058

- 3 -

00 2031056

# EXHIBIT "A"

**Legal Description**

LOTS 6 AND 7, TRACT 9397, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 129 PAGES 12, 13 AND 14 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel No: 2126-003-024

00 2031056

CKE # 058
Reseda, CA

## SUBLEASE

THIS SUBLEASE AGREEMENT ("Sublease") dated as of the Sublease Date, is made and entered into by and between Sublessor and Sublessee. Sublessor and Sublessee hereby agree as follows:

1.    **Basic Sublease Information.**

All capitalized words not defined herein shall have the meanings ascribed to them in this Section entitled "Basic Sublease Information." The Basic Sublease Information contained herein is an integral part of the Sublease.

1.1   Sublease Date.    This Sublease shall be effective on _DEC 22_, 2000 ("Sublease Date").

1.2.   Sublessor. CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor").

1.3.   Sublessee. SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

1.4.   Premises.   The premises subleased hereunder is described in attached Exhibit "A" hereto and incorporated herein by reference ("Premises").   Sublessor is possessed of the Premises pursuant to a lease between Sublessor, as the lessee, and Donald Ensch, Trustee of the Ensch Brothers 1985 Trust Created June 8, 1985, as the successor lessor ("Prime Landlord") dated April 10, 1978 as amended March 5, 1987, May 24, 1989, November 18, 1990 and November 29, 1991 ("Prime Lease").   The Premises is located at 18756 Sherman Way, Reseda, California 91335.   Sublessor has constructed on the Premises certain improvements for use as a "Carl's Jr. Restaurant."   The Premises is referred to by Sublessor as Unit No. 058.

1.5   Term.

a.    The primary term of this Sublease will be from Sublease Date to December 31, 2016 ("Primary Term").

b.    One (1) additional consecutive term of this Sublease will be from January 1, 2017 to December 31, 2021 ("Option Term").

- 1 -

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

The Primary Term and the Option Term are hereinafter collectively referred to as the "Term."

1.6. <u>Use</u>.  Sublessee shall use the Premises only for a "Carl's Jr. Restaurant" pursuant to Paragraph 5.1 of this Sublease.

1.7. <u>Rent</u>.

a.      Minimum rent pursuant to Paragraph 6.1 of this Sublease, and subject to adjustment as provided therein, shall be the minimum or fixed rent which Sublessor is required to pay under the Prime Lease ("Minimum Rent").   Commencing on the Sublease Date, the Minimum Rent shall be $44,545.44 per year.

b.      Sublessee shall pay to Sublessor annually, within fifteen (15) days after the close of each "Lease Year" as defined in the Prime Lease, the amount, if any, by which five percent (5%) of Sublessee's gross sales (which is the percentage of annual gross sales now required to be applied under the Prime Lease) during such Lease Year exceeds the Minimum Rent paid for such Lease Year ("Percentage Rent").

c.      "Gross Sales" as used herein, shall mean for all purposes hereof the aggregate of the following:

(1)      The total amount of all sales made upon the Premises from the operation of the business conducted on the Premises, and

(2)      All other business done upon the Premises which in standard use and accepted accounting practices are gross sales of Sublessee except the following:  (a) the sale price of returned merchandise, (b) sales and/or exchanges made to or with other restaurants operated by Sublessee, (c) bulk sales of inventory incidental to the sale of the business of Sublessee, (d) any sales tax or similar tax levied on the sales by Sublessee and paid by customers, (e) coupons, discounts, or credits or allowances on merchandise sold, and (f) incidental sales of furniture, fixtures and equipment.

1.8. <u>Rent Commencement Date</u>.   Rent shall commence on the Sublease Date ("Rent Commencement Date").

1.9. <u>Taxes</u>. Pursuant to Paragraph 7.3 of this Sublease, Sublessee's liability for Taxes, as hereinafter defined, shall commence on the Rent Commencement Date and shall be paid in twelve (12) equal monthly installments in advance.  Sublessee's initial monthly installment of Taxes shall be $291.

- 2 -

CKE # 058
Reseda, CA

1.10    (Intentionally Deleted)

1.11. <u>Notice Address</u>.    The addresses for all notices under this Sublease are:

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
One City Boulevard West,  Suite 350
Orange, CA  92868-3621
ATTN: Real Estate Asset Management
Telephone no. (714) 940-3441
Facsimile no. (714) 940-3444

With copy to:
General Counsel
CARL KARCHER ENTERPRISES, INC.
401 W. Carl Karcher Way
Anaheim, California 92801
Telephone no. (714) 778-7133
Facsimile no.  (714) 520-4485

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
1 Centerpointe Dr., Suite 405
La Palma, CA 90623-1052
Telephone no. (714) 736-8900
Facsimile no. (714) 736-8909

1.12. <u>Landlord Consent</u>.  If the Prime Lease requires that the consent of Prime Landlord be obtained prior to the effectiveness of this Sublease, then, notwithstanding anything to the contrary contained in this Sublease, this Sublease and the obligations of Sublessor under this Sublease shall be subject to receipt by Sublessor of Prime Landlord's written consent and approval of the terms and conditions hereof substantially in the form of attached Exhibit "B."  Sublessee agrees to provide Sublessor with any and all information required by Prime Landlord with respect to the business and financial condition of Sublessee in order for Prime Landlord to consent to this Sublease, and Sublessee hereby authorizes Sublessor to disclose to Prime Landlord any such information which may have been delivered to Sublessor. If required by the Prime Lease, Sublessor will reimburse Prime Landlord for reasonable expenses, including attorney's fees, incurred by Prime Landlord to review of any request for consent to this Sublease.

2.    **Demise of Premises.**

In consideration of the rent and other sums to be paid by Sublessee, and of the other terms, covenants and conditions on Sublessee's part to be kept and performed, Sublessor hereby subleases to Sublessee, and

- 3 -

Sublessee hereby subleases from Sublessor, the Premises and the improvements thereon.

**3.     Term and Extension of Term.**

The Primary Term of this Sublease shall commence and terminate as stated in Paragraph 1.5.a of the Basic Sublease Information.  Sublessee shall have the right to extend the Primary Term of this Sublease for the Option Term as stated in Paragraph 1.5.b of the Basic Sublease Information, provided Sublessee is not in default of this Sublease on the date Sublessee exercises its option to extend or on the last day of the Primary Term. Sublessee may only exercise the option to extend (commencing January 1, 2017) if Sublessee has extended or then extends the Franchise Agreement and has paid Sublessor, as franchisor, any applicable franchise renewal or extension fee.

Sublessee shall exercise the option to extend, if it so elects, by written notice delivered to Sublessor not less than two hundred ten (210) days prior to the expiration of the Primary Term.   If Sublessee timely exercises the option to extend the Sublease term, Sublessor shall timely exercise its corresponding option to extend the term under the Prime Lease.

**4.     Title and Condition.**

4.1    The Premises is subleased subject to (a) the existing state of title to the Premises as of the Sublease Date; (b) any state of facts which a survey or physical inspection of the Premises might show; and (c) all zoning regulations, restrictions and other laws and regulations now in effect or hereafter adopted by any governmental authority having jurisdiction over the Premises.   The buildings, structures and other improvements comprising a part of the Premises are subleased subject to their condition as of the Sublease Date, and Sublessor does not make any representation or warranty, either express or implied, as to the condition of the Premises or as to the adequacy or suitability of the Premises for the purposes or needs of Sublessee.

4.2    Sublessee warrants and represents to Sublessor that Sublessee has examined the condition of the Premises prior to the execution and delivery of this Sublease and has found the Premises to be satisfactory for all Sublessee's purposes. Sublessee agrees that Sublessor shall have no responsibility or obligation for expenses with respect to the care, maintenance or operation and conduct of business on the Premises regardless of the nature of the expense.

- 4 -

CKE # 058
Reseda, CA

## 5.    Use of Premises.

Sublessor, as franchisor, and Sublessee, as franchisee, have executed concurrently with the execution of this Sublease, a Carl's Jr. Restaurant Franchise Agreement ("Franchise Agreement") for the operation of a Carl's Jr. Restaurant on the Premises. Any event of default by Sublessee under the Franchise Agreement shall be an event of default under this Sublease, subject to any rights of Sublessee under the Franchise Agreement to cure such default.

Sublessee shall use the Premises for a Carl's Jr. Restaurant and for no other purpose without Sublessor's prior written consent. Such use shall be in a lawful, safe, careful and proper manner, and Sublessee shall not commit or permit any waste or allow the continuance of any nuisance. Sublessee shall carefully preserve, protect, control and guard the Premises from damage, shall maintain the Premises in good repair and shall comply with all requirements imposed by governmental authorities and by insurers of the Premises. Sublessee represents, warrants and covenants to Sublessor that Sublessee shall not cause or permit any hazardous substance or toxic waste to be handled, generated, stored, treated, disposed of or released on, in or about the Premises.

## 6.    Rent and Percentage Rent.

6.1    Sublessee covenants and agrees to pay to Sublessor Minimum Rent in the amount stated in Paragraph 1.7.a of the Basic Sublease Information commencing on the Rent Commencement Date. Except as provided in Paragraph 6.2 below, Sublessee shall pay to Sublessor, at the address set forth in Paragraph 1.11 of the Basic Sublease Information, Minimum Rent in twelve (12) equal monthly installments ("Monthly Installments") in advance on the first day of each month during the Term hereof. Rent shall be prorated for any partial year or partial month.

Minimum Rent shall be adjusted on the dates required by and to amount of the fixed or minimum rent which Sublessor is then required to pay under the Prime Lease.

6.2    As further and additional rent, Sublessee covenants and agrees to pay to Sublessor during the Term hereof Percentage Rent as provided in Paragraph 1.7.b of the Basic Sublease Information. Notwithstanding anything herein to the contrary, Sublessee shall fully and completely comply with all percentage rent provisions of the Prime Lease, except that Sublessee's statement of gross sales shall be provided to Sublessor within

- 5 -

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

fifteen (15) days after the close of each Lease Year or calendar year as required by the Prime Lease.

6.3    Rent shall be payable in lawful money of the United States to Sublessor at the address stated in Paragraph 1.11 of the Basic Sublease Information or at such other place as Sublessor may designate in writing.

6.4    Sublessee covenants to pay to Sublessor as additional rent ("Additional Rent") all other amounts, liabilities and obligations which Sublessee herein assumes or agrees to pay and interest at the rate of ten percent (10%) per annum (or such lesser amount as may be the maximum amount permitted by law) on all overdue installments of Minimum Rent, Percentage Rent or other sums from the due date thereof until payment is received by Sublessor.   Such Additional Rent shall be due and payable on demand.

7.    **Taxes.**

7.1    Sublessee covenants to pay to Sublessor as Additional Rent all taxes and assessments, including but not limited to, all real property taxes, any substitute property taxes, all general and special assessments, any business rental or rental excise taxes, and any other obligations which are or may become a lien on or levied against the Premises and/or improvements thereon (collectively, "Taxes"). Sublessee shall pay all personal property taxes, and all excise taxes on personal property and the like directly to the taxing authority, promptly when due.

7.2    In the event the taxing authorities change the manner in which Taxes are levied, charged or assessed from the present tax system, Sublessee shall pay such Taxes imposed upon the Premises under any alternative or revised system of taxation.

7.3    Sublessee shall pay estimated Taxes to Sublessor in twelve (12) equal monthly installments on the first day of each calendar month in advance, in an amount estimated by Sublessor based upon the prior year's Taxes, to be readjusted upon receipt of invoices or bills for actual Taxes. The initial monthly installment amount is stated in Paragraph 1.9 of the Basic Sublease Information.

7.4    Sublessor will determine the amount of deficiency or overpayment in Taxes for the prior tax year and any deficiency by Sublessee shall be paid within ten (10) days after demand by Sublessor and any overpayment will be credited to Sublessee.   Sublessor will adjust monthly installments accordingly.

- 6 -

8.    **Acceptance of Payments by Sublessor.**

No payment by Sublessee, or acceptance by Sublessor, of a lesser amount than shall be due from Sublessee to Sublessor shall be treated otherwise than as a payment on account.  The acceptance by Sublessor of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check that such lesser amount shall constitute payment in full, shall be given no effect and Sublessor may accept such payment without prejudice to any other rights or remedies which Sublessor may have against Sublessee.  Any payment, however designated, may be accepted by Sublessor and applied against any part of Sublessee's then due Minimum Rent, Percentage Rent, Additional Rent or other obligations, or Sublessor may apply such payment against any sum then due or may retain such payment (without interest) as a credit against Sublessee's accruing future obligations.

9.    **Utilities.**

Sublessee shall pay promptly when due, directly to the appropriate utility company, charges for all sewer, water, gas, electrical current, telephone and other utilities ("Utilities") used or consumed in or at the Premises.

10.    **Net Sublease.**

It is the express intent of the parties hereto that this Sublease is a "triple-net" sublease agreement.  The parties agree that the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes referenced above shall be net to Sublessor so that this Sublease shall yield to Sublessor the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes specified during the term of this Sublease on an absolutely net basis, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the Premises shall be paid by Sublessee without notice or demand, and without set-off, counterclaim, abatement, suspension or deduction.

11.    **(Intentionally Deleted)**

12.    **Insurance on Premises.**

12.1 During the term of this Sublease, Sublessee shall provide and maintain at Sublessee's sole expense:

- 7 -

CKE # 058
Reseda, CA

a. plate glass, fire and extended coverage insurance in amounts equal to the full replacement cost of the Premises (including any additions in or changes in the Premises) as such value may be from time to time. Such insurance policies shall contain a one hundred percent (100%) replacement cost endorsement and an endorsement which automatically increases coverage as a guard against inflation for the Term of this Sublease;

b. general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises and the adjoining streets, sidewalks and passageways, with primary limits of not less than Two Million Dollars ($2,000,000.00) with respect to bodily injury or death to any one person, not less than Four Million Dollars ($4,000,000.00) with respect to injuries to two or more persons arising out of one accident, and not less than Two Million Dollars ($2,000,000.00) with respect to property damage;

c. worker's compensation insurance or comparable insurance under applicable laws covering all persons employed in connection with any work done on or about the Premises with respect to which claims for death or bodily injury could be asserted against Prime Landlord, Sublessor, Sublessee or the Premises;

d. such other insurance upon or with respect to the Premises or the operation thereof in such amounts and against such other insurable hazards as are required by the Franchise Agreement; and

e. in the event and to the extent that the Prime Lease shall require any insurance coverage not hereinbefore described and/or insurance coverage in limits higher than those hereinbefore described, Sublessee at Sublessee's sole cost and expense shall keep and maintain in force during the Term of this Sublease all such insurance (both as to types of coverage and limits) as may be required under the Prime Lease.

12.2 All such insurance shall be written by companies of recognized financial standing, satisfactory to Sublessor and Prime Landlord, and be authorized to do insurance business in the state in which the Premises is located, and such insurance shall name as additional insureds Sublessor and Prime Landlord (as their respective interests may appear). Sublessor shall not be required to prosecute any claim against or to contest any settlement proposed by, any insurer; provided, that Sublessee may, at its expense, prosecute any such claim or contest any such settlement, and in such event Sublessee may bring such prosecution or contest in the name of Sublessee, and Sublessor will join therein at Sublessee's expense and written request upon the receipt by Sublessor of an indemnity from Sublessee in form and

- 8 -

substance satisfactory to Sublessor against any and all costs, liabilities and expenses in connection with such prosecution or contest.

12.3 In the event any damage to or destruction of the Premises shall occur, the provisions of the Prime Lease with respect to damage or destruction shall apply, and if the Prime Lease imposes on Sublessor the obligation to repair or restore improvements or alterations, Sublessee shall be responsible for repair or restoration of improvements or alterations with respect to the Premises. If the Prime Lease does not require otherwise, then insurance claims by reason of damage to or destruction of any portion of the Premises, shall be adjusted by Sublessee at the election of Sublessor, but Sublessor shall, at Sublessee's expense, have the right to join with Sublessee in adjusting any such loss. The entire amount of any proceeds paid pursuant to a claim shall be payable to Sublessor. The entire amount of any proceeds paid to Sublessor shall be delivered to Sublessee from time to time as the work of rebuilding, replacing and repairing the damage or destruction progresses and evidence is furnished by Sublessee of such rebuilding, replacement and repair of an amount at least equal to the proceeds to be paid to Sublessee. If any proceeds of such insurance remain after final payment has been made to Sublessee for such rebuilding, replacement and repair, such remaining proceeds shall be retained by Sublessor.

12.4 Every policy required by this Paragraph 12 shall contain an agreement by the insurer that it will not cancel or modify such policy except after sixty (60) days' prior written notice sent by registered mail to Sublessor, and that any loss otherwise payable thereunder shall be payable notwithstanding any change in title or other ownership of the Premises. Sublessee shall submit to Sublessor a binder evidencing all the insurance coverage required hereunder at the time it executes this Sublease and shall submit to Sublessor original insurance policies or certificates of insurance demonstrating Sublessee's full performance of its insurance obligations under this Sublease, together with proof of premium payment, within thirty (30) days following the execution of this Sublease. Thereafter, Sublessee shall submit to Sublessor copies of renewal policies or renewal certificates with proof of premium payment at least twenty (20) days before the expiration of such policies. Sublessor's receipt of information whether or not evidence of coverage shall not affect the respective rights and duties of Sublessor and Sublessee as they are stated herein.

12.5 Each party hereby waives claims against the other for property damage provided such waiver shall not invalidate the waiving party's property insurance; each party shall attempt to obtain from its insurance carrier a waiver of its insurance carrier's right of subrogation. Subtenant

- 9 -

hereby waives claims against Prime Landlord and Sublessor for property damage to the Premises or its contents if and to the extent that Sublessor waives such claims against Prime Landlord under the Prime Lease. Sublessee agrees to obtain, for the benefit of Prime Landlord and Sublessor, such waivers of subrogation rights from its insurer as are required of Sublessor under the Prime Lease.

## 13.    Indemnification.

Sublessee agrees to pay, and to protect, indemnify and hold harmless Sublessor from and against any and all liabilities, losses, damages, costs, expenses (including, without implied limitation, all attorneys' fees and expenses of Sublessor), causes of action, suits, claims, demands or judgments of any nature whatsoever, arising from (a) any injury to, or the death of, any persons or any damage to property in or on the Premises or upon adjoining sidewalks, streets, or ways, or in any manner growing out of or connected with the use, non-use, condition or occupation of the Premises or any part thereof, or resulting from the condition thereof or of adjoining sidewalks, streets or ways; (b) violation by Sublessee of any term or provision of this Sublease; (c) violation by Sublessee of any term or provision of the Prime Lease; (d) violation by Sublessee of the Franchise Agreement or any other contract or agreement to which Sublessee is a party; and (e) violation by Sublessee of any restriction, statute, law, ordinance or regulation, affecting the Premises or any part thereof or the ownership, occupancy or use thereof. The obligations of Sublessee under this Paragraph 13 relating to events occurring during the Term of this Sublease shall survive the expiration or other termination of this Sublease.

## 14.    Alterations and/or Remodels.

14.1  To the extent allowed by, and upon satisfaction of all conditions stated in, the Prime Lease and Franchise Agreement, Sublessee shall have the right to make alterations or additions to the Premises with the prior written consent of Sublessor, which consent shall not be unreasonably withheld.

14.2  In the event Sublessee is permitted to make alterations or additions, such additions to and alterations of the buildings, structures or other improvements constituting part of the Premises shall be at Sublessee's sole cost and expense and be made in a good and workmanlike manner. Such additions or alterations shall be expeditiously completed in compliance with all laws, ordinances, orders, rules, regulations and requirements applicable thereto.

- 10 -

CKE # 058
Reseda, CA

14.3 Sublessee shall promptly pay all costs and expenses of each such addition or alteration and shall discharge all liens filed against the Premises arising out of the same, and pay for all permits and licenses required in connection with any such addition or alteration.

## 15.   Condemnation.

In the event of any condemnation involving the Premises, the provisions of the Prime Lease shall govern as to the party entitled to receive the award payable in connection with such taking.   Prime Landlord, Sublessor and Sublessee shall be entitled to awards payable as their respective interests may appear.   Sublessee shall be entitled to rent abatements to the extent Sublessor is entitled to abatements under the Prime Lease.

## 16.   Prime Lease Provisions.

16.1 Sublessor is the "Tenant" or "Lessee" of the Premises pursuant to the Prime Lease.  Sublessor and Sublessee hereby acknowledge and agree that this Sublease is subject and subordinate to the Prime Lease.  Sublessee acknowledges having received and reviewed the Prime Lease.  Sublessee hereby covenants and agrees that it will observe and perform all of the terms and conditions of the Prime Lease that are imposed upon Sublessor as tenant under the Prime Lease, including but not limited to payment of taxes, common area maintenance charges, insurance premiums, utilities and all other charges and amounts payable by Sublessor under the Prime Lease, such terms and conditions shall be deemed to have been incorporated herein as if set forth in full.  The obligations of and restrictions upon Sublessor as tenant under the Prime Lease shall constitute the obligations of and restrictions upon Sublessee under this Sublease, each as and to the extent applicable to the Premises.  The rights of Prime Landlord under the Prime Lease shall constitute the rights of Sublessor under this Sublease, in addition to the other rights of Sublessor under this Sublease, each as and to the extent applicable to the Premises.  In the event of a conflict between any term, condition or provision of the Prime Lease and this Sublease, or in the event that this Sublease creates additional or greater rights of and remedies to Sublessor over those granted Prime Landlord in the Prime Lease, or imposes additional or greater restrictions on or obligations of Sublessee over those imposed on Sublessor as tenant under the Prime Lease, then the terms, conditions and provisions of this Sublease shall govern in all respects the relationship between Sublessor and Sublessee.

Upon the breach of any of such terms, conditions or covenants of the Prime Lease by Sublessee or upon the failure of Sublessee to pay rent or

- 11 -

CKE # 058
Reseda, CA

comply with any of the provisions of this Sublease, Sublessor may exercise any and all rights and remedies granted to Prime Landlord by the Prime Lease, as well as any and all rights and remedies granted to Sublessor by this Sublease. Sublessee's rights under this Sublease shall be the same as Sublessor's rights as tenant under the Prime Lease, except as otherwise provided by this Sublease. However, the parties acknowledge and agree that Sublessee has not been granted or assigned the leasehold estate or rights of Sublessor as tenant under the Prime Lease, or any right to purchase or right of first refusal to purchase the Premises, such estate and rights being specifically reserved by Sublessor, provided that all rights of Sublessor that are reasonably necessary for Sublessee's beneficial use and occupancy of the Premises shall be enforced or made available by Sublessor for such use and occupancy. All notices required or permitted to be given by Sublessee under the Sublease shall be given to both Sublessor and Prime Landlord under the Prime Lease.

16.2 Notwithstanding anything in this Sublease to the contrary, if the Prime Lease imposes any obligation on Prime Landlord or if any obligation of Sublessor under this Sublease is to be performed by Prime Landlord under the Prime Lease and Prime Landlord fails to perform or delays in performance of such obligation, or otherwise defaults in its obligations under the Prime Lease, then Sublessor shall have no liability to Sublessee hereunder as a result of such failure except that Sublessor agrees to use commercially reasonable efforts, upon notice from Sublessee and at Sublessee's expense, to cause Prime Landlord to perform such obligation. Nothing in this Sublease shall or shall be deemed to limit or restrict any right or remedy of Prime Landlord with respect to the Premises or the Prime Lease.

16.3 Notwithstanding anything in this Sublease to the contrary, any termination of the Prime Lease will cause this Sublease to be terminated as of the same time and date that the Prime Lease is terminated.

16.4 If the Prime Lease grants to Prime Landlord any rights of approval or consent or any similar term, provision or right, and if Sublessee requests from Sublessor such approval or consent, then such approval or consent of Sublessor shall not be effective unless and until Prime Landlord gives its approval or consent. Sublessor shall use commercially reasonable efforts to obtain such approval or consent of Prime Landlord, upon request of Sublessee and at Sublessee's expense.

17.   **Assignment and Subletting.**

17.1 Sublessee may transfer its interest in the Premises only through an assignment of this Sublease with Sublessor's prior written consent. Any

- 12 -

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

such assignment hereunder shall only be in connection with an assignment or transfer by Sublessee of Sublessee's rights under the Franchise Agreement in accordance with the terms and provisions thereof.   An assignee of the Franchise Agreement approved by Sublessor as franchisor shall be deemed approved by Sublessor as an assignee of this Sublease. Any such assignment shall also be subject to all terms of this Sublease, all duties and obligations of Sublessee hereunder shall be specifically assumed by such assignee, and shall be in a form approved by Sublessor.   The consent by Sublessor to one assignment shall not be deemed to be a consent to any subsequent assignment.   Unless released in writing by Sublessor, any assignment shall not relieve Sublessee of liability under this Sublease.

17.2 Neither this Sublease nor the Premises hereby subleased shall be mortgaged by Sublessee, nor shall Sublessee mortgage or pledge the interest of Sublessee in the Premises or the rentals payable thereunder without Sublessor's prior written consent.

## 18.   Removal of Sublessee's Property.

18.1 On or before the last day of this Sublease, Sublessee may remove from the Premises all furniture, trade fixtures, equipment and other movable personal property belonging to Sublessee ("Sublessee's Property"). Any damage to the Premises caused by such removal of Sublessee's Property shall be repaired in accordance with Paragraph 22 of this Sublease; in no event shall Sublessee's Property which has become permanently affixed to the Premises be removed.   Notwithstanding the foregoing, Sublessee shall, at the end of the Term, or any termination of the Sublease, or upon the termination of Sublessor's right of possession hereunder, leave any improvements or other property required to be left in and on the Premises under the terms of the Prime Lease.

18.2 At the termination of this Sublease, if Sublessee has not removed Sublessee's Property from the Premises, or if this Sublease is terminated by reason of default by Sublessee, Sublessor may, at its option, either, (a) exercise any rights of Sublessor under the Franchise Agreement to purchase Sublessee's Property, or (b) remove Sublessee's Property from the Premises, the costs and expense for such to be for Sublessee's account, which shall be paid in full by Sublessee immediately upon demand by Sublessor, or, at Sublessor's option, deducted from the Security Deposit, or both to the extent necessary to fully pay said costs and expense.

- 13 -

CKE # 058
Reseda, CA

19.    **Access to Premises.**

Sublessor, its agents, servants and employees may enter the Premises upon reasonable notice to Sublessee, which may be oral, for the purpose of inspecting the Premises or for the purpose of exercising Sublessor's rights and remedies under this Sublease, the Franchise Agreement or under law.

20.    **Default.**

Sublessee shall be in default if Sublessee:

a.    shall fail to pay when due any Minimum Rent, Monthly Installments thereof, Percentage Rent, Additional Rent, Utilities, Taxes or other payment required hereunder;

b.    breaches any provision of this Sublease;

c.    assigns, mortgages, sublets, or transfers any interest in this Sublease or in the Premises without Sublessor's prior consent;

d.    causes or allows a default to exist under the Prime Lease;

e.    violates any covenant, term or condition of the Franchise Agreement, any lease, sublease, note or other agreement between Sublessee and Sublessor or any of its affiliates;

f.    shall fail to remedy immediately after receipt of notice from Sublessor, any hazardous condition which Sublessee has created or suffered in breach of Sublessee's obligations under this Sublease;

g.    fails to comply with any statute, ordinance, rule or regulation of any governmental body; or

h.    files or has filed against it a petition in bankruptcy, insolvency, or for reorganization or arrangement pursuant to any Federal or state statute.

21.    **Remedies.**

In the event of any default hereof by Sublessee which shall not have been cured within five (5) days, in the case of monetary default, after Sublessee receives notice specifying such default, or within fifteen (15) days after Sublessee receives such notice if such default is not for the payment of money, then Sublessor shall have the option to take any or all of the

- 14 -

following actions, without further notice or demand of any kind to Sublessee or any other person:

a.     Collect by suit or otherwise each installment of Minimum Rent, Percentage Rent, Additional Rent or other sum as it becomes due hereunder, or enforce, by suit or otherwise, any other term or provision hereof on the part of Sublessee required to be kept or performed.

b.     Sublessor may terminate this Sublease upon the delivery of notice thereof to Sublessee and Sublessor shall have the right to immediate possession of the Premises and Sublessee shall peacefully surrender possession of the Premises to Sublessor.  In the event Sublessee holds the Premises beyond the termination of the Term, Sublessor shall have the right to recover Sublessor's cost in recovering possession of the Premises (including, without limitation, attorneys' fees and litigation costs), such amounts as may be permitted under applicable law and any other amounts due and payable to Sublessor hereunder including, without limitation, past-due rent.

c.     Sublessor, without terminating this Sublease, shall have the right to terminate Sublessee's right to possess the Premises and to recover possession thereof and Sublessee shall peacefully surrender the Premises to Sublessor.  Sublessor, at Sublessor's option, may cause the Premises to be prepared for reletting, and may relet the Premises or any part thereof as agent of Sublessee, for a term to expire prior to, at the same time as, or subsequent to the expiration of the Term, at Sublessor's option.  In the event of such reletting, Sublessor shall receive the rents therefor, applying the same first, to the repayment of reasonable expenses as Sublessor may have incurred in connection with said resumption of possession, preparing for reletting and reletting (including, without limitation, remodeling costs, brokerage and attorneys' fees), and, second, to the payment of damages and amounts equal to the Rent and Additional Rent due hereunder and to the cost of performing the other obligations of Sublessee as herein provided.  Sublessee, regardless of whether Sublessor has relet the Premises, shall pay to Sublessor damages equal to the Rent and Additional Rent herein agreed to be paid by Sublessee less the proceeds of the reletting, if any, and such rent shall be due and payable by Sublessee on the days on which rent is due hereunder.  No such reentry and reletting of the Subleased Premises by Sublessor shall be construed as an election on its part to terminate this Sublease unless a written notice of such intention be given to Sublessee pursuant to subsection (b) above, or unless the termination thereof be decreed by a court of competent jurisdiction.  Notwithstanding any such reletting without termination, Sublessor may at any time thereafter elect to terminate this Sublease for such previous breach.

- 15 -

CKE # 058
Reseda, CA

d.      Sublessor may perform for Sublessee any of the obligations Sublessee has agreed to perform hereunder if Sublessee has defaulted in the performance of such obligations.  Upon demand, Sublessee shall reimburse Sublessor for Sublessor's cost of performing for Sublessee together with interest thereon at a rate equal to eighteen percent (18%) per annum, compounded monthly (or such lesser amount as may be the maximum amount permitted by law).  Any amounts so expended by Sublessor shall be immediately due and payable and the failure of Sublessee to pay such amounts shall entitle Sublessor to all of the rights and remedies available to it as if Sublessee had defaulted in the payment of rent.

e.      Sublessee shall pay to Sublessor a late charge equal to four percent (4%) of the amount of any installment of Minimum Rent, Percentage Rent or Additional Rent if such installment becomes more than ten (10) days past due.

f.      Sublessor may exercise any rights allowed Prime Landlord under the Prime Lease.

The remedies given to Sublessor in this Section shall be in addition and supplemental to all other rights or remedies which Sublessor may have under the laws then in force, but subject to the laws of the State of California.

22.    **Surrender of Possession by Sublessee.**

Upon the expiration or earlier termination of this Sublease, or upon termination of Sublessor's right of possession hereunder, at any time and for any reason, Sublessee promptly and peaceably shall surrender to Sublessor the Premises, together with all improvements, fixtures and equipment belonging to Sublessor or Prime Landlord, their agents, servants or employees, in good condition and repair, normal wear and tear excepted. There shall be no holding over of the Premises by Sublessee.

23.    **Sublessor's Waiver.**

Sublessor's failure at any time or from time to time to require strict compliance by Sublessee with the provisions of this Sublease shall neither waive nor prejudice Sublessor's continued right to insist upon the due and timely performance of this Sublease and to avail itself of all remedies provided by law or by this Sublease.

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

CKE # 058
Reseda, CA

24.    **Governing Law.**

The invalidity or unenforceability of any provision of this Sublease shall not affect or impair any other provision.  If any provision of this Sublease is capable of two constructions, one of which would render the provision invalid and the other of which would make the provision valid, then the provision shall have the meaning which renders it valid.  The laws of the State of California shall govern the validity, performance, and enforcement of this Sublease.  The submission of this document for examination does not constitute an offer to lease or to sublease and becomes effective only upon execution and delivery thereof by Sublessor and Sublessee.

25.    **Recording of Sublease.**

This Sublease shall not be recorded, but either party may execute and record a memorandum of sublease.  Each party agrees to sign, upon request of the other, such memorandum, in reasonably acceptable form.

26.    **Sublessee as Independent Contractor.**

Sublessee is and shall remain an independent contractor and shall have no authority to act as an agent of Sublessor or power to bind Sublessor in any manner. This Sublease shall not create any relationship of employer-employee, trustee-beneficiary, principal-agent, partnership or joint venture.

27.    **Sublessee's Inspection.**

Sublessee warrants and covenants that Sublessee has made all necessary or desirable examinations, inspections and inquiries regarding the Premises and has consulted with such professional advisors as Sublessee deems necessary or desirable to satisfy Sublessee at Sublessee's discretion and on Sublessee's own initiative, that the Premises is acceptable to Sublessee, that this Sublease is lawful in substance and in form, and that Sublessee is financially prepared to assume any and all risks and obligations of any kind that may be involved in becoming Sublessee.  SUBLESSEE HEREBY ACCEPTS THE PREMISES "AS IS, WHERE IS, AND WITH ALL FAULTS" WITH NO REPRESENTATION OR WARRANTY OF SUBLESSOR AS TO THE CONDITION THEREOF.

28.    **No Other Assurances.**

Sublessee has entered into this Sublease in reliance upon its provisions and upon the provisions of the Prime Lease, including any amendments, supplements and extensions, and not in reliance upon any alleged

- 17 -

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

CKE # 058
Reseda, CA

assurances, representations and warranties made by Sublessor, its officers, directors, agents, servants or employees.

**29. Brokers.**

Each party represents and warrants to the other that it has not directly or indirectly dealt with any broker or agent relative to this Sublease or had its attention called to the Premises by any broker or agent and agrees to indemnify, defend and hold the other party harmless from and against any and all claims for commission arising out of the execution and delivery of this Sublease.

**30. Notices.**

Where this Sublease requires notices to be given, except where it expressly provides to the contrary, all such notices shall be in writing and shall be deemed given on the date of personal delivery or the lesser of (a) three (3) business days or (b) the period if any for deemed delivery after mailing specified in the Prime Lease after deposit in the United States Mail when mailed by certified mail, postage prepaid, addressed to the party entitled to receive the notice at the address stated in Paragraph 1.11 in the Basic Sublease Information or at such other address as the party to receive the notice last may have designated for such purpose by notice given to the other party.

**31. Miscellaneous.**

31.1  When the sense so requires, words of any gender used in this Sublease shall be held to include any other gender and words in the singular shall be held to include the plural.  "Sublessee" shall include the heirs, executors, administrators and personal representatives of any individual Sublessee as well as Sublessee's assigns (subject to Sublessor's prior written consent) and the successor of any incorporated Sublessee unless the context precludes such construction.  The captions or headings of particular paragraphs or parts of this Sublease are inserted for convenience only and shall not affect the meaning of this Sublease as a whole, or any paragraph or any part of it.

31.2  No alleged modifications, termination or waiver of this Sublease shall be binding unless it is set out in writing and signed by the party against whom or which it is sought to be enforced.  Any document or writing to be binding on Sublessor, whether this Sublease or any amendment, supplement or extension, must be signed by both Sublessee and Sublessor, the latter acting through its President or a Vice President.

- 18 -

32. **Sole Understanding of Parties.**

This Sublease, the Franchise Agreement and that certain Asset Purchase Agreement between Sublessor and Sublessee, dated as of July 19, 2000, and related documents, instruments and agreements, contain the entire understanding between the parties with respect to their respective subject matter, the Premises, and all aspects of the relationship between Sublessee and Sublessor.

**[Signatures Follow on Next Page]**

- 19 -

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

CKE # 058
Reseda, CA

        IN WITNESS WHEREOF, the parties have executed this Sublease as of
the day and year first written above.

                    SUBLESSOR:

                    **CARL KARCHER ENTERPRISES, INC.**
                    A California Corporation

                    By: _____
                            Colleen Ford McDonough
                            Director, Real Estate Asset Management

                    By: _____
                            Robert A. Wilson
                            Senior Vice President

                    SUBLESSEE:

                    **SENIOR CLASSIC LEASING, LLC**
                    A California Limited Liability Company

                    By: _____
                            Harshad Dharod
                            Majority Member

- 20 -

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

#058

## EXHIBIT "A"

### Legal Description

LOTS 6 AND 7, TRACT 9397, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED
IN BOOK 129 PAGES 12, 13 AND 14 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

Assessor's Parcel No: 2126-003-024

CKE # 058
Reseda, CA

## EXHIBIT "B"

### Consent to Sublease

The undersigned, DONALD ENSCH, TRUSTEE of the Ensch Brothers 1985 Trust Created June 8, 1985, the landlord ("Prime Landlord") under the lease dated April 10, 1978 as amended March 5, 1987, May 24, 1989, November 18, 1990 and November 29, 1991 ("Prime Lease") hereby consent and agree to the subletting of the premises described in the Prime Lease ("Premises") by the tenant under the Prime Lease ("Sublessor") to Senior Classic Leasing, LLC, a California limited liability company, ("Sublessee"), and consent to the Sublease Agreement ("Sublease"), provided however, that Sublessor shall remain liable as tenant under the Prime Lease.  The undersigned representative certifies by signing below that this Consent to Sublease is binding on the Prime Landlord.

Dated: _____, 2000

ENSCH BROTHERES 1985 TRUST
Created June 8, 1985

By: _____
    Donald Ensch, Trustee

E:\CKE\Dharod\Agr\Subleases\#058 Reseda

CKE # 058
Reseda, CA

**Recording Requested By**
**And When Recorded Mail To:**

Senior Classic Leasing, LLC
1 Centerpointe Drive, Suite 405
La Palma, CA 90623
Attention: Harshad Dharod

---

THIS SPACE FOR RECORDER'S USE ONLY

## MEMORANDUM OF SUBLEASE

THIS MEMORANDUM OF SUBLEASE is made as of _Dec 22_, 2000 by and between CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor") and SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

Donald Ensch, Trustee of the Ensch Brothers 1985 Trust Created June 8, 1985, as lessor, and Sublessor, as lessee, entered into that certain Lease dated April 10, 1978 as amended, if at all, with respect to the real property commonly known as 18756 Sherman Way, Reseda, California 91335 and more particularly described in Exhibit "A" attached hereto and by this reference incorporated herein ("Premises").

Sublessor has subleased to Sublessee, and Sublessee has subleased from Sublessor, the Premises, pursuant to the terms of that certain Sublease dated as of _Dec 22_, 2000 ("Sublease").

The primary term of the Sublease ("Primary Term") shall commence on _Dec 22_, 2000 and shall expire on December 31, 2016 unless sooner terminated.

Pursuant to the Sublease, Sublessee may extend the Primary Term for one (1) successive period of five (5) years, upon certain terms and conditions set forth in the Sublease.

This instrument is a Memorandum of the Sublease and is solely for recording purposes and shall not be construed to alter, modify or supplement the Sublease.

- 1 -

E:\CKE\Dharod\Agr\Memo of Subleases\#058

CKE # 058
Reseda, CA

IN WITNESS WHEREOF, this Memorandum of Sublease has been duly executed by the parties as of the day and year first above written.

**SUBLESSOR:**

CARL KARCHER ENTERPRISES, INC.
A California Corporation

By: _____
Colleen Ford McDonough
Director, Real Estate Asset Management

By: _____
Robert A. Wilson
Senior Vice President

**SUBLESSEE:**

SENIOR CLASSIC LEASING, LLC
A California Limited Liability Company

By: _____
Harshad Dharod
Majority Member

**Acknowledgments Follow on Next Page]**

- 2 -

E:\CKE\Dharod\Agr\Memo of Subleases\#058

CKE # 058
Reseda, CA

**ACKNOWLEDGMENTS**

STATE OF CALIFORNIA       )
                          ) ss.
COUNTY OF ORANGE          )

On _December 19_, 2000 before me, _Karen Slaney_, a Notary Public in and for said State, personally appeared COLLEEN FORD McDONOUGH and ROBERT A. WILSON [✓] personally known to me, ~~or [ ] proved to me on the basis of satisfactory evidence~~, to be the persons whose names are subscribed to the within instrument and they acknowledged to me that they executed the same in their authorized capacities as Director, Real Estate Asset Management, and Senior Vice President, respectively, of Carl Karcher Enterprises, Inc., and that by their signatures on the instrument, Carl Karcher Enterprises, Inc., executed the instrument.

WITNESS my hand and official seal.

KAREN SLANEY
Commission # 1191333
Notary Public - California
Orange County
Comm. Exp. Jul 26, 200_

_Karen Slaney_
Notary Public
My Commission Expires: _July 26, 2002_

STATE OF CALIFORNIA       )
                          ) ss.
COUNTY OF _Orange_        )

On _NOV 28 2000_, 2000 before me, _Bradley Barth_, a Notary Public in and for said State, personally appeared HARSHAD DHAROD [✓] personally known to me, or [ ] proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument and he acknowledged to me that he executed the same in his authorized capacity as Majority Member of Senior Classic Leasing, LLC, and that by his signature on the instrument, Senior Classic Leasing, LLC, executed the instrument.

WITNESS my hand and official seal.

BRADLEY BARTH
COMM. # 1266850
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 27, 2004

_Bradley Barth_
Notary Public
My Commission Expires: _6/27/04_

- 3 -

E:\CKE\Dharod\Agr\Memo of Subleases\#058

# ♯ 050

# EXHIBIT "A"

## Legal Description

LOTS 6 AND 7, TRACT 9397, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 129 PAGES 12, 13 AND 14 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel No: 2126-003-024

CKE# 58

## BILL OF SALE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, CARL KARCHER ENTERPRISES, INC., a California corporation ("Seller"), hereby sells, conveys and delivers to SENIOR CLASSIC LEASING, LLC, a California limited liability company ("Buyer"), all signs, sign poles, machinery, trade fixtures, furniture, fixtures and equipment owned by Seller and currently located in and on the Premises generally described as 18756 Sherman Way, Reseda, California, and as further described on attached Schedule 1, incorporated herein by reference ("Assets"), together with any manufacturer's or contractor's warranties now in effect.

BUYER ACCEPTS THE ASSETS IN "AS-IS" CONDITION. SELLER DISCLAIMS ANY AND ALL WARRANTIES CONCERNING THE ASSETS, STATUTORY, EXPRESS AND IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND ANY OTHER WARRANTY OF QUALITY IN RESPECT OF THE ASSETS, AND THERE ARE NO OTHER WARRANTIES, STATUTORY, EXPRESS OR IMPLIED THAT EXTEND BEYOND THE WARRANTIES CONTAINED IN THIS BILL OF SALE.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be signed on its behalf by its duly authorized officer on ___Dec 2 2___, 2000.

SELLER

**CARL KARCHER ENTERPRISES, INC.,**
a California corporation

By:  Robert A. Wilson
     Senior Vice President

\\CKEANAFNP01\HOMEDIRS\SCALAHAN\WORDDOC\Dharode\Bills of Sale.doc

Case 8:26-bk-11056-SC    Doc 159    Filed 05/20/26    Entered 05/20/26 11:06:49    Desc
Main Document    Page 107 of 243

Report ID:    C_AM001.sqr
Bus. Unit:    010 -- Carl Karcher Enterprises, Inc.
Book:         CORPORATE -- Corporate
Dept:         1100058-Carl's Jr #58

Carl Karcher Enterprises, Inc.
ASSET LIST BY DEPARTMENT ID
AS OF 05/22/2000

Page No.  1
Run Date 06/23/2000
Run Time 11:23:16

| Asset Id | Description | Parent Id | Asset Life | Rem Life | In Service Date | Cost Balance | Period Depr. | YTD Depr | LTD Depr | Net book Value |
|---|---|---|---|---|---|---|---|---|---|---|
| 00053950 | ATM | | 104 | 98 | 11/30/1999 | 534.00 | 5.13 | 30.80 | 30.80 | 503.20 |
| 00030356 | Alarm System | | 65 | 12 | 05/20/1996 | 1,550.00 | 23.84 | 95.38 | 1,263.84 | 286.16 |
| 00017630 | Atm System | | 39 | 0 | 07/17/1990 | 1,218.28 | 0.00 | 0.00 | 1,218.28 | 0.00 |
| 00006986 | B/Potato Steamers | | 104 | 0 | 02/01/1986 | 952.12 | 0.00 | 0.00 | 952.12 | 0.00 |
| 00015723 | Breakfast Timer | | 39 | 0 | 01/30/1990 | 920.00 | 0.00 | 0.00 | 920.00 | 0.00 |
| 00018596 | Broiler   1135252 | | 130 | 14 | 06/20/1991 | 12,488.43 | 96.06 | 384.26 | 11,143.52 | 1,344.91 |
| 00020962 | Cam Eq   1715-024 | | 39 | 0 | 12/10/1991 | 2,038.28 | 0.00 | 0.00 | 2,038.28 | 0.00 |
| 00028713 | Cash Conveyor | | 65 | 0 | 07/08/1991 | 6,668.00 | 0.00 | 0.00 | 6,668.00 | 0.00 |
| 01  192 | Chairs       28 | | 104 | 74 | 01/29/1998 | 1,319.63 | 12.69 | 50.76 | 380.66 | 938.97 |
| 00015540 | Co2 Tank Ece89J301 | | 104 | 0 | 01/30/1990 | 2,022.44 | 0.00 | 0.00 | 2,022.44 | 0.00 |
| 00021713 | Cooler Wi-Comprsr | | 65 | 0 | 01/02/1993 | 994.95 | 0.00 | 0.00 | 994.95 | 0.00 |
| 00000340 | Counter Food | | 130 | 0 | 03/28/1970 | 7,338.70 | 0.00 | 0.00 | 7,338.70 | 0.00 |
| 00000341 | Counter Front | | 130 | 0 | 03/28/1970 | 4,602.47 | 0.00 | 0.00 | 4,602.47 | 0.00 |
| 00027782 | Crispy Chicken Eq | | 65 | 4 | 09/12/1995 | 1,542.84 | 23.73 | 94.94 | 1,447.89 | 94.95 |
| 00018546 | D/Disp D/I 392578 | | 65 | 0 | 04/03/1991 | 3,105.30 | 0.00 | 0.00 | 3,105.30 | 0.00 |
| 00016286 | D/Station Pnl Brd | | 104 | 0 | 08/29/1990 | 1,918.62 | 0.00 | 0.00 | 1,918.62 | 0.00 |
| 00044099 | D/Station Pnl Brd | | 65 | 34 | 01/14/1998 | 1,990.86 | 30.63 | 122.52 | 949.49 | 1,041.37 |
| 00016382 | Debit Card System | | 39 | 0 | 10/09/1990 | 1,511.61 | 0.00 | 0.00 | 1,511.61 | 0.00 |
| 00044093 | Display Case | | 91 | 56 | 09/20/1997 | 4,270.25 | 46.92 | 187.70 | 1,642.40 | 2,627.85 |
| 00000342 | Disposal 11B-476030 | | 130 | 0 | 03/28/1970 | 284.95 | 0.00 | 0.00 | 284.95 | 0.00 |
| 00018869 | Dr Thru Pkg | | 65 | 0 | 06/12/1991 | 4,400.17 | 0.00 | 0.00 | 4,400.17 | 0.00 |
| 00041789 | Drink Disp  45542 | 114645 | 65 | 35 | 01/29/1998 | 2,017.53 | 31.03 | 124.15 | 931.17 | 1,086.36 |
| 00041790 | Drink Disp  45542 | 114645 | 65 | 35 | 01/29/1998 | 1,523.43 | 23.44 | 93.75 | 703.13 | 820.30 |
| 00041791 | Drink Disp  45563 | 114646 | 65 | 35 | 01/29/1998 | 2,017.53 | 31.03 | 124.15 | 931.17 | 1,086.36 |
| 00041792 | Drink Disp  45563 | 114646 | 65 | 35 | 01/29/1998 | 1,523.44 | 23.44 | 93.75 | 703.13 | 820.31 |
| 00016089 | Drink Station | 78709 | 104 | 0 | 08/24/1990 | 4,212.37 | 0.00 | 0.00 | 4,212.37 | 0.00 |
| 00016090 | Drink Station-Addl | 78709 | 104 | 0 | 08/24/1990 | 725.00 | 0.00 | 0.00 | 725.00 | 0.00 |
| 00019189 | Eq Pkg   177-058 | | 39 | 0 | 09/10/1991 | 6,450.09 | 0.00 | 0.00 | 6,450.09 | 0.00 |
| 00044101 | Eq Pkg  1700-1058 | | 39 | 14 | 06/16/1998 | 2,420.86 | 62.08 | 248.30 | 1,551.84 | 869.02 |
| 00022443 | Eqpmnt Pkg 174-58 | | 39 | 0 | 06/20/1989 | 1,036.68 | 0.00 | 0.00 | 1,036.68 | 0.00 |
| 0   132 | Fast Track Timer | | 65 | 0 | 12/06/1994 | 2,439.02 | 0.00 | 0.00 | 2,439.02 | 0.00 |
| 00014412 | Fire System | | 130 | 0 | 08/22/1988 | 2,600.00 | 0.00 | 0.00 | 2,600.00 | 0.00 |
| 00044097 | Freezer Wi | | 130 | 100 | 01/29/1998 | 4,518.25 | 34.75 | 139.02 | 1,042.67 | 3,475.58 |
| 00019191 | Freezer-M/Bin | | 130 | 11 | 04/10/1991 | 1,045.64 | 8.05 | 32.18 | 957.17 | 88.47 |
| 00002825 | Freezer-W/I Door | | 130 | 0 | 05/17/1980 | 954.00 | 0.00 | 0.00 | 954.00 | 0.00 |
| 00001301 | Frez Conv Paint | | 91 | 0 | 06/19/1976 | 135.63 | 0.00 | 0.00 | 135.63 | 0.00 |
| 00037329 | Fry Dump Station | | 65 | 27 | 06/17/1997 | 3,663.82 | 56.37 | 225.47 | 2,141.93 | 1,521.89 |
| 00007243 | Fryer | | 104 | 0 | 11/04/1986 | 7,030.28 | 0.00 | 0.00 | 7,030.28 | 0.00 |
| 00003186 | Griddle Hood | | 130 | 0 | 11/01/1980 | 2,971.00 | 0.00 | 0.00 | 2,971.00 | 0.00 |
| 00003075 | Griddle Sn190980C | | 91 | 0 | 12/27/1980 | 1,016.55 | 0.00 | 0.00 | 1,016.55 | 0.00 |
| 00000343 | Hoods Exhaust | | 130 | 0 | 03/28/1970 | 3,242.04 | 0.00 | 0.00 | 3,242.04 | 0.00 |
| 00044096 | Ice Bin       79992 | | 65 | 35 | 02/05/1998 | 1,234.41 | 19.00 | 75.97 | 569.73 | 664.68 |
| 00020849 | Ice Bin       B02765 | | 65 | 0 | 07/15/1992 | 1,134.13 | 0.00 | 0.00 | 1,134.13 | 0.00 |
| 00020848 | Ice Mach   B23013 | | 65 | 0 | 07/15/1992 | 4,324.60 | 0.00 | 0.00 | 4,324.60 | 0.00 |
| 00044095 | Ice Mach   G10556H | | 65 | 35 | 02/05/1998 | 5,464.55 | 84.07 | 336.28 | 2,522.10 | 2,942.45 |

Report ID:      C_AM001.sqr
Bus. Unit:      010 -- Carl Karcher Enterprises, Inc.
Book:           CORPORATE -- Corporate
Dept:           1100058-Carl's Jr #58

Carl Karcher Enterprises, Inc.
ASSET LIST BY DEPARTMENT ID
AS OF 05/22/2000

Page No.  2
Run Date 06/23/2000
Run Time 11:23:16

| Asset Id | Description | Parent Id | Asset Life | Rem Life | In Service Date | Cost Balance | Period Depr. | YTD Depr | LTD Depr | Net book Value |
|---|---|---|---|---|---|---|---|---|---|---|
| 00019190 | Intercom System | | 65 | 0 | 07/25/1991 | 1,726.59 | 0.00 | 0.00 | 1,726.59 | 0.00 |
| 00044098 | Kit Eq-Rmdl | | 130 | 101 | 02/25/1998 | 6,884.83 | 52.96 | 211.84 | 1,535.84 | 5,348.99 |
| 00018995 | Kitchen Equipment | | 130 | 13 | 06/06/1991 | 13,281.83 | 102.16 | 408.67 | 11,953.64 | 1,328.19 |
| 00006318 | Lighting Prgm 84-19 | | 195 | 4 | 08/10/1985 | 1,580.68 | 8.04 | 32.18 | 1,548.49 | 32.19 |
| 00028015 | Lighting Retrofit | | 39 | 0 | 04/25/1995 | 1,175.16 | 0.00 | 0.00 | 1,175.16 | 0.00 |
| 00005124 | Microwave | | 52 | 0 | 07/14/1984 | 882.62 | 0.00 | 0.00 | 882.62 | 0.00 |
| 00005872 | Oven Program  84-14 | | 52 | 0 | 12/29/1984 | 2,337.12 | 0.00 | 0.00 | 2,337.12 | 0.00 |
| 00025319 | Queuing Line Pkg | | 65 | 22 | 02/04/1997 | 784.92 | 12.07 | 48.30 | 519.25 | 265.67 |
| 0    334 | R/Beef Program | | 130 | 1 | 06/19/1990 | 1,971.64 | 15.16 | 60.66 | 1,956.47 | 15.17 |
| 00044094 | Refrigeration Pkg | | 130 | 100 | 02/03/1998 | 4,658.16 | 35.84 | 143.33 | 1,074.97 | 3,583.19 |
| 00010704 | Salad Bar | | 91 | 0 | 08/30/1988 | 6,880.47 | 0.00 | 0.00 | 6,880.47 | 0.00 |
| 00010500 | Seating Pkg | 65538 | 130 | 0 | 08/16/1988 | 6,977.62 | 0.00 | 0.00 | 6,977.62 | 0.00 |
| 00010501 | Seating-Rmdl | 65538 | 65 | 0 | 05/23/1991 | 1,086.48 | 0.00 | 0.00 | 1,086.48 | 0.00 |
| 00044100 | Seating-Rmdl | | 130 | 100 | 02/05/1998 | 12,375.86 | 95.19 | 380.79 | 2,855.97 | 9,519.89 |
| 00028833 | Security System | | 65 | 8 | 01/08/1996 | 7,535.85 | 115.93 | 463.74 | 6,608.36 | 927.49 |
| 00020725 | Shake Mach 051783 | | 65 | 0 | 06/19/1992 | 7,641.91 | 0.00 | 0.00 | 7,641.91 | 0.00 |
| 00000481 | Shelving | | 130 | 0 | 12/31/1977 | 838.36 | 0.00 | 0.00 | 838.36 | 0.00 |
| 00000344 | Shelving Walk-In | | 130 | 0 | 03/28/1970 | 838.70 | 0.00 | 0.00 | 838.70 | 0.00 |
| 00000345 | Sink Utility | | 130 | 0 | 03/28/1970 | 2,121.07 | 0.00 | 0.00 | 2,121.07 | 0.00 |
| 00000346 | Stand Service | | 130 | 0 | 01/26/1974 | 586.86 | 0.00 | 0.00 | 586.86 | 0.00 |
| 00049813 | TOASTER PROJ | | 65 | 56 | 09/07/1999 | 1,091.29 | 16.78 | 67.15 | 151.10 | 940.19 |
| 00005222 | Toaster Program | | 65 | 0 | 10/06/1984 | 918.64 | 0.00 | 0.00 | 918.64 | 0.00 |
| 00008980 | Video System | | 65 | 0 | 12/01/1987 | 1,103.24 | 0.00 | 0.00 | 1,103.24 | 0.00 |
| 00018696 | Vittleveyor | 87121 | 65 | 0 | 06/11/1991 | 35,406.45 | 0.00 | 0.00 | 35,406.45 | 0.00 |
| 00018697 | Vittleveyor-Addl | 87121 | 65 | 0 | 06/11/1991 | 3,884.30 | 0.00 | 0.00 | 3,884.30 | 0.00 |
| 00018698 | Vittleveyor-Rblt | 87121 | 65 | 9 | 01/31/1996 | 6,489.55 | 99.84 | 399.36 | 5,591.00 | 898.55 |
| 00042997 | Water Heater | | 65 | 36 | 03/18/1998 | 1,553.80 | 23.91 | 95.62 | 693.24 | 860.56 |
| Total Cat: EQUP | | | | # of Assets: 72 | | 257,986.75 | 1,190.14 | 4,771.02 | 214,053.84 | 43,932.91 |
| 0    134 | Air Cond  96-0551 | | 130 | 69 | 09/22/1995 | 8,860.00 | 68.16 | 272.62 | 4,157.39 | 4,702.61 |
| 00010089 | Air Conditioner | | 130 | 0 | 04/29/1988 | 26,422.30 | 0.00 | 0.00 | 26,422.30 | 0.00 |
| 00044102 | Awnings | | 65 | 35 | 02/05/1998 | 2,002.98 | 30.82 | 123.26 | 924.46 | 1,078.52 |
| 00020402 | Cam    1715-014 | | 39 | 0 | 12/10/1991 | 1,545.00 | 0.00 | 0.00 | 1,545.00 | 0.00 |
| 00001183 | Frez Conv  Frez Box | | 91 | 0 | 02/28/1976 | 320.00 | 0.00 | 0.00 | 320.00 | 0.00 |
| 00045756 | Genera Lite Retro | | 39 | 20 | 12/01/1998 | 1,132.56 | 29.04 | 116.16 | 551.76 | 580.80 |
| 00007153 | Parking Lot Lights | | 39 | 0 | 07/15/1986 | 2,495.46 | 0.00 | 0.00 | 2,495.46 | 0.00 |
| 00014823 | Plumbing | | 65 | 0 | 03/11/1990 | 3,771.02 | 0.00 | 0.00 | 3,771.02 | 0.00 |
| 00007327 | R/Mdel-Fryer  171-5 | | 39 | 0 | 12/02/1986 | 5,026.93 | 0.00 | 0.00 | 5,026.93 | 0.00 |
| 00012441 | R/Mdl-Image 174-58 | 71117 | 247 | 94 | 08/09/1988 | 33,697.90 | 136.43 | 545.72 | 20,873.60 | 12,824.30 |
| 00014560 | Rmdl-F/Pole 171-628 | | 39 | 0 | 01/02/1990 | 5,246.81 | 0.00 | 0.00 | 5,246.81 | 0.00 |
| 00016206 | Rmdl-Hndcap 171-675 | | 39 | 0 | 07/18/1990 | 1,780.24 | 0.00 | 0.00 | 1,780.24 | 0.00 |
| 00044073 | Rmdl-Im2000 1700-101 | 16723 | 130 | 105 | 06/16/1998 | 78,283.91 | 602.19 | 2,408.74 | 15,054.60 | 63,229.31 |
| 00017045 | Rmdl-Misc 171-058 | | 221 | 95 | 09/11/1990 | 5,566.85 | 25.19 | 100.76 | 3,173.86 | 2,392.99 |
| 00014411 | Rmdl-P/Lot 175-058 | | 39 | 0 | 09/27/1988 | 12,820.00 | 0.00 | 0.00 | 12,820.00 | 0.00 |

Case 8:26-bk-11056-SC   Doc 159   Filed 05/20/26   Entered 05/20/26 11:06:49   Desc Main Document   Page 109 of 243

Report ID:      C_AM001.sqr
Bus. Unit:      010 -- Carl Karcher Enterprises, Inc.
Book:           CORPORATE -- Corporate
Dept:           1100058-Carl's Jr #58

Carl Karcher Enterprises, Inc.
ASSET LIST BY DEPARTMENT ID
AS OF 05/22/2000

Page No.  3
Run Date 06/23/2000
Run Time 11:23:31

| Asset Id | Description | Parent Id | Asset Life | Rem Life | In Service Date | Cost Balance | Period Depr. | YTD Depr | LTD Depr | Net book Value |
|---|---|---|---|---|---|---|---|---|---|---|
| 00014409 | Rmdl-P/Lot-Roof 17575637 | 247 | 95 | 09/06/1988 | 15,730.85 | 63.69 | 254.75 | 9,680.52 | 6,050.33 |
| 00044103 | Rmdl-Paintg 1700-10 8 | 65 | 35 | 02/06/1998 | 6,450.00 | 99.23 | 396.92 | 2,976.92 | 3,473.08 |
| 00045562 | Roof | 91 | 71 | 11/06/1998 | 31,085.00 | 341.60 | 1,366.38 | 6,831.87 | 24,253.13 |
| 00009915 | Safe | 130 | 0 | 03/22/1988 | 1,135.63 | 0.00 | 0.00 | 1,135.63 | 0.00 |
| Total Cat: LEFIX | | | # of Assets: | 19 | | 243,373.44 | 1,396.35 | 5,585.31 | 124,788.37 | 118,585.07 |
| 00044090 | Carpet | 39 | 2 | 08/06/1997 | 920.28 | 23.60 | 94.39 | 873.09 | 47.19 |
| 00 91 | Roll-A-Shades  24 | 65 | 35 | 02/11/1998 | 3,827.64 | 58.88 | 235.54 | 1,766.60 | 2,061.04 |
| Total Cat: LEIMP | | | # of Assets: | 2 | | 4,747.92 | 82.48 | 329.93 | 2,639.69 | 2,108.23 |
| 00052563 | DEL 450 #625EV | 39 | 30 | 09/27/1999 | 1,494.43 | 38.32 | 153.28 | 344.87 | 1,149.56 |
| 00022258 | Software Module | 39 | 0 | 04/28/1993 | 461.50 | 0.00 | 0.00 | 461.50 | 0.00 |
| 00022875 | Utility Software | 39 | 0 | 03/26/1993 | 242.06 | 0.00 | 0.00 | 242.06 | 0.00 |
| Total Cat: OFEQP | | | # of Assets: | 3 | | 2,197.99 | 38.32 | 153.28 | 1,048.43 | 1,149.56 |
| 00014434 | Dts-1 W/Arrow L&R 2 | 104 | 0 | 01/31/1990 | 1,787.64 | 0.00 | 0.00 | 1,787.64 | 0.00 |
| 00019021 | Dts-Star        4 | 104 | 0 | 07/10/1991 | 3,141.42 | 0.00 | 0.00 | 3,141.42 | 0.00 |
| 00016229 | Hmbrgr Neon | 104 | 0 | 08/22/1990 | 1,128.90 | 0.00 | 0.00 | 1,128.90 | 0.00 |
| 00024078 | Imb | 104 | 24 | 03/29/1994 | 3,227.37 | 31.03 | 124.13 | 2,482.59 | 744.78 |
| 00026047 | Imb-Addl | 13 | 0 | 01/31/1995 | 557.51 | 0.00 | 0.00 | 557.51 | 0.00 |
| 00024419 | Mb | 104 | 24 | 03/29/1994 | 4,712.91 | 45.32 | 181.27 | 3,625.32 | 1,087.59 |
| 00044104 | Pcl 24" | 104 | 75 | 02/27/1998 | 2,595.69 | 24.95 | 99.83 | 723.79 | 1,871.90 |
| 00044144 | Pcl 24"-Face/Neon | 104 | 75 | 02/27/1998 | 1,522.24 | 14.64 | 58.55 | 424.47 | 1,097.77 |
| 00014377 | Pole Covers | 104 | 0 | 12/29/1989 | 885.50 | 0.00 | 0.00 | 885.50 | 0.00 |
| 00019020 | Ps Faces        2 | 104 | 0 | 07/12/1991 | 5,501.38 | 0.00 | 0.00 | 5,501.38 | 0.00 |
| 00014376 | Ps-6A Pole Sign | 104 | 0 | 12/29/1989 | 13,622.38 | 0.00 | 0.00 | 13,622.38 | 0.00 |
| 00044145 | Ps-Paint/Relamp | 104 | 75 | 02/27/1998 | 828.64 | 7.97 | 31.87 | 231.06 | 597.58 |
| 0 78 | Roof Structures 2 | 104 | 0 | 12/29/1989 | 403.11 | 0.00 | 0.00 | 403.11 | 0.00 |
| 00003295 | Sign Remodel | 104 | 0 | 01/31/1981 | 713.00 | 0.00 | 0.00 | 713.00 | 0.00 |
| 00044143 | Star 42" | 104 | 75 | 02/27/1998 | 976.73 | 9.40 | 37.57 | 272.36 | 704.37 |
| Total Cat: SIGNS | | | # of Assets: | 15 | | 41,604.42 | 133.31 | 533.22 | 35,500.43 | 6,103.99 |
| Total Dept:1100058-Carl's Jr #58 | | | # of Assets: | 111 | | 549,910.52 | 2,840.60 | 11,372.76 | 378,030.76 | 171,879.76 |
| Total Book:CORPORATE | | | # of Assets: | 111 | | 549,910.52 | 2,840.60 | 11,372.76 | 378,030.76 | 171,879.76 |
| Total BU:  010-Carl Karcher Enterprises, Inc. | | | # of Assets: | 111 | | 549,910.52 | 2,840.60 | 11,372.76 | 378,030.76 | 171,879.76 |

End of Report

866

## TABLE OF CONTENTS

| CHAPTER | | Page |
|---|---|---|
| 1 | Lease of Premises; Title and Condition | 1 |
| 2 | Use | 2 |
| 3 | Term | 2 |
| 4 | Rent | 2 |
| 5 | Net Lease | 4 |
| 6 | Taxes and Assessments; Compliance With Law | 5 |
| 7 | Liens | 6 |
| 8 | Indemnification | 6 |
| 9 | Maintenance and Repair | 7 |
| 10 | Alterations and Additions | 7 |
| 11 | Insurance | 8 |
| 12 | Condemnation | 10 |
| 13 | Casualty | 11 |
| 14 | Assignment and Subletting | 12 |
| 15 | Permitted Contests | 13 |
| 16 | Conditional Limitations; Default Provisions | 13 |
| 17 | Additional Rights of Lessor | 18 |
| 18 | Notices, Demands and Other Instruments | 18 |
| 19 | Estoppel Certificates | 19 |
| 20 | No Merger | 19 |
| 21 | Subordination | 19 |
| 22 | Surrender | 20 |
| 23 | Merger, Consolidation, Sales of Assets | 20 |
| 24 | Separability; Binding Effect | 20 |
| 25 | Governing Law | 21 |
| 26 | Headings and Table of Contents | 21 |
| 27 | Exhibit | 21 |

CKE
OCT 2 9 1990

5823f:8/28/90                    -22-

SUBLEASE AGREEMENT    9-25-90    #866

THIS SUBLEASE AGREEMENT is entered into on ___9-19___,
1990 ("Lease") between CARL KARCHER ENTERPRISES, INC., a California
corporation (together with any corporation succeeding thereto by
consolidation, merger or acquisition of its assets substantially as
an entirety, called "Lessor"), having an address at 1200 North
Harbor Boulevard, Anaheim, California, 92803, and ROBERT W. WISELY
AND MARY JO WISELY, (together with any corporation succeeding
thereto by consolidation, merger or acquisition of its assets
substantially as an entirety, called "Lessee"), having as a
principal office address 27402 Valderas, Mission Viejo,
California 92691.

1    Lease of Premises: Title and Condition.

In consideration of the rents and covenants herein stipulated
to be paid and performed by Lessee and upon the terms and conditions
herein specified, Lessor hereby leases to Lessee, and Lessee hereby
leases from Lessor (i) the parcel of land described in Exhibit A
hereto (the Land Parcel), (ii) all buildings and other improvements
(including, without limitation, the attachments and other affixed
property, but excluding any trade fixtures owned by Lessee or a
third party) now or hereafter located on the Land Parcel (the
Improvements), and (iii) the easements, rights and appurtenances
relating to the Land Parcel and the Improvements (the Land Parcel,
Improvements and such other rights are herein collectively called
the Property). The Property is leased to Lessee in its present
condition without representation or warranty by Lessor and subject
to the rights of the parties in possession, to the existing state of
title and to all applicable legal requirements now or hereafter in
effect. Lessee has examined the condition of the Property and title
to the Property and has found all of the same satisfactory for all
purposes. Lessor as Franchisor and Lessee as Franchisee shall
execute concurrently with the execution of this Lease, a Carl's Jr.
Restaurant Franchise Agreement (Franchise Agreement) for the
operation of a Carl's Jr. Restaurant (Restaurant) on the Property.
The Franchise Agreement shall continue during the term of this
Lease. Except as expressly otherwise provided herein, this Lease
and each and every term and condition hereof is expressly subject to
the terms and conditions of that certain Lease Agreement of the
Property, dated as of August 2, 1985 (Master Lease), and any
amendments thereto, between Lakeside Leasing Inc., a California
corporation, as Lessor (Master Lessor), and Lessor.

It is understood and agreed that, to the extent not
inconsistent with the terms of this Lease, Lessee assumes all
obligations of Lessor under the Master Lease and the provisions of
the Master Lease shall be supplemental and in addition to the terms
hereof. Notwithstanding the foregoing, nothing herein shall be
deemed to assign or delegate any right of Lessor under the Master

CKE
OCT 2 9 1990

5823f:8/28/90                    -1-

Lease to increase its interest, including by way of example and not limited to any right of Lessor to purchase the Premises, of first refusal to purchase the Premises, to extend the Master Lease term or to acquire other property of which the Premises may be part.

2      Use.

Lessee may use the Property for a Carl's Jr. Restaurant. So long as no default has occurred and is continuing hereunder, Lessor warrants peaceful and quiet enjoyment of the Property by Lessee against acts of Lessor or anyone claiming through Lessor.

3      Term.

The Property is leased for a term which shall commence on the date Lessee takes possession and shall terminate one day prior to the expiration of the primary term of the Master Lease, unless and until this Lease shall be sooner terminated pursuant to any conditional limitation herein set forth. Lessor and Lessee will execute a Commencement Date Memorandum setting forth the actual date of possession and commencement of the term herein.

4      Rent.

4.1

a.   Lessee shall pay to Lessor, without notice or demand, during the term hereof, in lawful money of the United States as rent for the Property an amount equal to the following percentage of annual Gross Sales as defined in Section 4.2:

| | |
|---|---|
| Up to $799,999 | 9.0% |
| $800,000 to $899,999 | 10.0% |
| $900,000 to $999,999 | 11.0% |
| $1,000,000 to $1,099,999 | 12.0% |
| $1,100,000 and above | 12.5% |

b.   Lessee shall report to Lessor, on a monthly basis, the Gross Sales for the Restaurant for the preceding month. The Gross Sales reported shall then be multiplied by the appropriate rent percentage figure using twelve (12) times the Gross Sales for such month to determine the annual gross sales level appearing in the table set forth in Section 4.1.a., the product of which shall be Lessee's estimated monthly rent. The actual percentage rent due for each calendar year shall be computed as set forth in Section 4.3. Lessee shall forward, by the fifth (5th) day of each month, its estimated monthly rent together with the Gross Sales reporting referred to herein.

The rent shall be payable at Lessor's address as set forth above, or at such other address or to such other person as Lessor from time to time may designate.

CKE

OCT 2 9 1990

5823f:8/28/90                      -2-

4.2   As used herein, the term "Gross Sales" means:  those sales made upon the Property for all items sold to customers in the operation of Lessee's business, such sales to include the entire amount of the price charged, whether wholly or partially in cash or on credit and no deduction shall be allowed for uncollected or uncollectable credit accounts.  Gross Sales for each calendar year (or portion thereof) during the term of this Lease shall be determined, in the first instance, by Lessee and certified by an authorized officer thereof to be true and complete.

4.3   Within Thirty (30) days after the end of each calendar year, Lessee shall notify Lessor of the Gross Sales of Lessee during said calendar year and there shall be determined the amounts paid to the Lessor as estimated monthly rent, during said calendar year.  The percentage set forth in Section 4.1 herein shall be applied to the Gross Sales to determine the actual percentage rental.  If the percentage rental exceeds the estimated monthly rent the Lessee shall forthwith pay to Lessor the percentage rental for the preceding calendar year.  The percentage rental for the first calendar year, which ends December 31, following the date of commencement of this Lease shall be prorated, based upon the monthly average for the portion of the year involved.

4.4   All amounts which Lessee is required to pay pursuant to this Lease, other than Minimum Rent, together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof, shall constitute Additional Rent.  If Lessee shall fail to pay any such Additional Rent when the same shall become due, Lessor shall have all rights, powers and remedies available to Lessor with respect to nonpayment of Minimum Rent and shall, except as expressly provided herein, have the right to pay the same on behalf of Lessee.  Lessee shall pay to Lessor interest at the maximum lawful rate permitted to be charged by a Lessor against a defaulting Lessee, on all overdue Minimum Rent from the due date thereof until paid, and on all overdue Additional Rent paid by Lessor on behalf of Lessee from the date of payment by Lessor until repaid by Lessee. Lessee shall perform all of its obligations under this Lease at its sole cost and expense and shall pay all Minimum Rent and Additional Rent when due, without notice or demand.

4.5   The acceptance by the Lessor of payments of percentage rent shall be without prejudice to the Lessor's right to an examination of the Lessee's books and records of its gross receipts and inventories of merchandise at the leased premises in order to verify the amount of annual gross receipts received by Lessee in and from the leased premises.

At its option, Lessor or its counsel may cause, at any reasonable time upon five (5) days' prior written notice to Lessee but not more than one (1) time in any twelve (12) month period, a complete audit to be made of Lessee's records relating to the leased premises for the period covered by any statement issued by the Lessee as set forth herein.  If an audit shall disclose a liability for rent to the extent of two percent (2%) or more in excess of the rentals theretofore computed and paid by Lessee for such period,

CKE

OCT 2 9 1990

5823f:8/28/90                    -3-

Lessee shall promptly pay to Lessor the cost of the audit in addition to the deficiency, which deficiency shall be payable in any event. Should such audit disclose an overpayment of rent by Lessee, Lessor will promptly reimburse Lessee upon notification of such overpayment.

5    Net Lease.

5.1    This Lease is a net lease and any present or future law to the contrary notwithstanding, shall not terminate except as provided in Paragraphs 12.2, 13.3 and 16.2 herein, nor shall Lessee be entitled to any abatement or reduction (except as expressly provided in this Lease), setoff, counterclaim, defense or deduction with respect to any Minimum Rent, Additional Rent or other sum payable hereunder, nor shall the obligations of Lessee hereunder be affected by reason of: any damage to or destruction of the Property or of any part thereof; any taking of the Property or any part thereof by condemnation or otherwise; any prohibition, limitation, restriction or prevention of Lessee's use, occupancy or enjoyment of the Property or any part thereof, or any interference with such use, occupancy or enjoyment by any person; any eviction by paramount title or otherwise; any default by Lessor hereunder or under any other agreement; the impossibility of performance by Lessor, Lessee or both; any action of any governmental authority; or any other cause whether similar or dissimilar to the foregoing. The parties intend that the obligations of Lessee hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations shall have been modified or terminated pursuant to an express provision of this Lease.

5.2    Lessee shall remain obligated under this Lease in accordance with its terms and shall not take any action to terminate, rescind or void this Lease, notwithstanding any bankruptcy, insolvency, reorganization, liquidation, dissolution or other proceeding affecting Lessor or any assignee of Lessor, any action with respect to this Lease which may be taken by any trustee, receiver or liquidator or by any court. Except as provided herein, Lessee waives all rights to terminate or surrender this Lease, or to any abatement or deferment of Minimum Rent, Additional Rent or other sums payable hereunder.

5.3    In addition to the other affirmative covenants set forth herein, Lessee, until the expiration of the term of the Lease, will:

a.    Maintenance of Books and Records. At all times keep and cause its subsidiaries to keep proper books of records and account in which full, true and correct entries will be made of their transactions in accordance with generally accepted accounting principles applied on a consistent basis throughout the periods involved.

b.    Inspection of Books and Records. At any time after an Event of Default hereunder permit and cause each of its subsidiaries to permit Lessor and Lessor's representatives to inspect their books and records and to make extracts therefrom and to inspect their properties and operations.

CKE

OCT 2 9 1990

5823f:8/28/90                        -4-

c.  **Corporate Existence**. Maintain its corporate existence in good standing (except that it may merge or consolidate as provided in the following sentence) and comply with all applicable laws and regulations of the United States and any state or states thereof, any political subdivision thereof and of any governmental body having authority over the jurisdiction of the Lessee or the Leased Premises.

6      **Taxes and Assessments: Compliance With Law**.

6.1  Lessee shall pay:  (i) all taxes, assessments, levies, fees, water and sewer rents, charges, licenses, permit fees and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time prior to or during the Term imposed or levied upon or assessed against (A) the Property, (B) any Minimum Rent, Additional Rent or other sum payable hereunder or (C) this Lease, the leasehold estate hereby created or which arises in respect of the operation, possession or use of the Property; (ii) all gross receipts or Minimum Rent, Additional Rent or other sum payable hereunder; (iii) all sales, use and similar taxes at any time levied, assessed or payable on account of the acquisition, leasing or use of the Property; and (iv) all charges for utilities serving the Property. Lessee shall not be required to pay any franchise, estate, inheritance, transfer, income, capital gains or similar tax of Lessor (other than any tax referred to in clause (ii) above) unless such tax is imposed, levied or assessed in substitution for, in whole or in part, any other tax, assessment, charge or levy which Lessee is required to pay pursuant to this Paragraph 6.1. Lessee will furnish to Lessor, promptly after demand therefor, proof of payment of all items referred to above which are payable by Lessee. If any such assessment may legally be paid in installments, Lessee may pay such assessment in installments; in such event, Lessee shall be liable only for installments which become due and payable during the term hereof and that portion of the installment immediately following the expiration of this Lease allocable to the period of time preceding the expiration of this Lease.

6.2  Lessee shall comply with and cause the Property to comply with (i) all law, ordinances and regulations, and other governmental rules, order and determinations now or hereafter enacted, made or issued, whether or not presently contemplated (collectively Legal Requirements) applicable to the Property or the use thereof, and (ii) all contracts (including insurance policies), agreements, covenants, conditions and restrictions applicable to the Property or the ownership, occupancy or use thereof, including but not limited to all such Legal Requirements, contracts, agreements and restrictions which require structural, unforeseen or extraordinary changes.

CKE

OCT 2 9 1990

5823f:8/28/90                          -5-

7      Liens.

Lessee will promptly remove and discharge any charge, lien, security interest or encumbrance upon the Property or any Minimum Rent, Additional Rent or other sum payable hereunder which arises for any reason, including all liens which arise out of the use, occupancy, construction, repair or rebuilding of the Property or any part thereof or by reason of labor or materials furnished or claimed to have been furnished to Lessee or for the Property, but not including any mortgage, deed of trust, charge, lien, security interest or encumbrances created by Lessor without the consent of Lessee. Nothing contained in this Lease shall be construed as constituting the consent or request of Lessor, express or implied, to or for the performance by any contractor, laborer, materialman, or vendor of any alteration, addition, repair or demolition of or to the Property or any part thereof. Notice is hereby given that Lessor will not be liable for any labor, services or materials furnished or to be furnished to Lessee, or to anyone holding the Property or any part thereof through or under Lessee, and that no mechanic's or other liens for any such labor, services or materials shall attach to or affect the interest of Lessor in and to the Property.

8      Indemnification.

Lessee shall defend all actions against Lessor and any officer, director, shareholder or partner of Lessor with respect to, and shall pay, protect, indemnify and save harmless Lessor and any officer, director, shareholder or partner of Lessor from and against any and all liabilities, losses, damages, costs, expenses, (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature (a) to which Lessor and any officer, director, shareholder or partner of Lessor is subject because of Lessor's estate in the Property or (b) arising from (i) injury to or death of any person, or damage to or loss of property on the Property on adjoining sidewalks, streets or ways, or connected with the use, condition or occupancy of any thereof, (ii) violation of this Lease by Lessee, (iii) any act or omission of Lessee or its agents, contractors, licensees, sublessees or invites, and (iv) any contest referred to in Paragraph 15. Nothing herein shall be construed as indemnifying Lessor or any officer, director, shareholder or partner of Lessor against its own grossly negligent or willful acts, unless such acts are deemed acts of such party by operation of law imputed from Lessee and provided that omissions shall not constitute such negligent or willful acts. In the event any action, suit or proceeding is brought against Lessor or any successor or assign by reason of any such occurrence, Lessee will, upon Lessor's or such successor or assign's request (and at Lessee's expense), resist and defend such action, suit or proceeding, or cause the same to be resisted and defended by counsel designated by Lessee and approved by Lessor.

5823f:8/28/90                      -6-

CKE
OCT 2 9 1990

9     Maintenance and Repair.

Lessee acknowledges that it has received the Property in
"AS-IS" condition based solely on its own investigation of t
Property, without any representations or warranties by Lessor wit
respect thereto. Lessee, at its own expense, will maintain all
parts of the Property in good repair and condition, and will take
all action and will make all structural and non-structural, foreseen
and unforeseen and ordinary and extraordinary changes and repairs
required pursuant to the Master Lease and Franchise Agreement.
Lessor shall not be required to maintain, repair or rebuild all or
any part of the Property. Lessee waives the right to require Lessor
to maintain, repair or rebuild all or any part of the Property, or
to make repairs at the expense of Lessor pursuant to any legal
requirement, contract, agreement, covenant, condition or restriction
set forth herein, at any time in effect. Lessee will, at all
reasonable times, permit Lessor and its representatives to inspect
the Property.

10    Alterations and Additions.

Lessee may, at its expense, make additions to and alterations
of the Improvements located on the Land Parcel, and construct
additional improvements subject to Lessor's prior written approval
as provided for and in consistence with the Franchise Agreement and
to any prior approval of Master Lessor required by the Master Lease,
and provided that (i) the market value of the Property shall not be
decreased thereby, (ii) such work shall be expeditiously completed
in a good and workmanlike manner under the supervision of a licensed
architect or engineer in accordance with plans and specifications
and cost estimates prepared by such architect or engineer and in
compliance with all applicable legal requirements and the
requirements of all insurance policies required to be maintained by
Lessee hereunder, and (iii) none of the Improvements shall be
demolished unless Lessee shall have first furnished Lessor with such
surety bonds or other security acceptable to Lessor as shall be
necessary to assure rebuilding of the Improvements. All work done
in connection with each such addition or alteration shall comply
with the orders, rules and regulations of the National Board of Fire
Underwriters or any other body hereafter constituted exercising
similar functions. All such additions and alterations shall be and
remain part of the realty and property of Lessor, shall be deemed
part of the Property and shall be subject to this Lease. Lessee may
place upon the Property any inventory related to the use thereon
which does not create an insurance risk, trade fixtures, machinery
or equipment belonging to Lessee or third parties and may remove the
same at any time during the term of this Lease, provided that Lessee
shall repair any damage to the Property caused by such removal.

CKE
OCT 2 9 1990

11    Insurance.

11.1    Lessee will maintain insurance on the Property of the
following character:

(i)     Insurance against loss by fire, lightning and
other such risks as from time to time are
included under "extended coverage" policies, in
amounts sufficient to prevent Lessor or Lessee
from becoming a co-insurer of any loss but in
any event in amounts not less than One Hundred
percent (100%) of the actual replacement value
of the Improvements.

(ii)    Comprehensive general liability insurance
against claims for bodily injury, death or
property damage occurring on, in or about the
Property and adjoining streets and sidewalks, in
the amount of One Million and No/100 Dollars
($1,000,000) combined for death, bodily injury
and property damage. Notwithstanding the above
and not more frequently than each three (3)
years, if, in the opinion of Lessor's insurance
broker, the amount of liability and property
damage insurance coverage at any time is not
adequate, Lessee shall increase the insurance
coverage as required by Lessor's insurance
broker.

(iii)   Workers' compensation insurance to the extent
required by the law of the state in which the
Property is located and to the extent necessary
to protect Lessor against workers' compensation
claims.

(iv)    At any time when the Improvements are being
constructed, altered or replaced, builder's risk
insurance (in completed value nonreporting form)
in an amount not less than the actual
replacement value of such Improvements,
exclusive of foundations and excavations.

(v)     Such other insurance, in such amounts and
against such risks, as is commonly obtained in
the case of property similar to the Property and
located in the state in which the Property is
located, or is required by Beneficiary. Such
insurance shall be written by companies of
nationally recognized financial standing legally
qualified to issue such insurance and reasonably
acceptable to Beneficiary, and shall name Lessor
and Master Lessor as additional insureds and
include Lessee as its interest may appear.

CKE

OCT 2 9 1990

5823f:8/28/90                    -8-

11.2    Every such policy (other than general liability and workers' compensation policies) shall bear a mortgagee endorsement in favor of the beneficiary (Beneficiary) under any deeds of trust or similar security instruments creating first liens on the Property; and any proceeds with respect to a loss under any such policy shall be payable to Beneficiary to be held and applied pursuant to Paragraph 13. Every policy referred to in Paragraph 11.1 shall provide that it will not be cancelled or amended except after 30 days' written notice to Lessor and Beneficiary and that (to the extent such provision is obtainable) it shall not be invalidated by any act or negligence of Lessor or Lessee, nor by occupancy or use of the Property for purposes more hazardous than permitted by such policy, nor by change in title to or ownership of the Property. It is understood and agreed that every policy referred to in Paragraph 11.1 may be a blanket policy covering other locations operated by Lessee, its affiliates or subsidiaries provided that such blanket policies otherwise comply with the provisions of this Paragraph 11 and provided further that such policies shall provide for a reserved amount thereunder with respect to the Property as to assure the amount of insurance required by the provisions of Paragraph 11.1 will be available notwithstanding any losses with respect to other property covered by such blanket policies.

11.3    Lessee shall deliver to Lessor, Master Lessor and Beneficiary originals of the applicable insurance policies or original certificates of insurance under blanket policies, satisfactory to Lessor and Beneficiary, evidencing the existence of all insurance which is required to be maintained by Lessee hereunder (exclusive of insurance required pursuant to clause (iv) of Section 11.1.), such delivery to be made (i) at the time of execution and delivery hereof and (ii) at least 10 days prior to the expiration of any such insurance evidencing renewal of replacement coverage. Lessee shall not obtain or carry separate insurance concurrent in form or contributing in the event of loss with that required by this Paragraph 11 unless Lessor and Master Lessor are named insured therein with loss payable as provided herein and unless a mortgagee endorsement in favor of Beneficiary appears on such policy. Lessee shall immediately notify Lessor whenever any such separate insurance is obtained and shall deliver to Lessor and Beneficiary the policies or certificates evidencing same.

11.4    Should Lessee fail to effect, maintain or renew any insurance provided for in this Section, or to pay the premium therefor, or to deliver to Lessor any of such certificates, then and in any of said events, Lessor, at its option, but without obligation to do so, may procure such insurance, upon five (5) days' prior written notice, unless the policies would be sooner cancelled or would terminate (in which case no notice shall be required), and any sums expended by it to procure such insurance shall be Additional Rent hereunder and shall be repaid by Lessee within five (5) days following the date of written notice from Lessor that such expenditure is to be made by Lessor.

CKE

OCT 2 9 1990

5823f:8/28/90                    -9-

12      Condemnation.

12.1    Lessee hereby irrevocably assigns to Lessor any award or compensation payment to which Lessee may become entitled by reason of Lessee's interest in the Property if the use, occupancy or title of the Property or any part thereof is taken, requisitioned or sold in, by or on account of any actual or threatened eminent domain proceeding or other action by any person having the power of eminent domain. Lessee shall cooperate with Lessor in any such proceeding or action, to pursue any claim allowed a tenant or subtenant of the Property for any award or compensation on account of any such taking, requisition or sale, and Lessor shall collect any such award or compensation. All amounts paid in connection with any such taking, requisition or sale of the Property or any part thereof shall be applied pursuant to this Paragraph 12, and all such amounts paid or payable in connection therewith (minus the expense of collecting such amounts) are herein called the Net Condemnation Proceeds. Lessee shall pay all reasonable costs and expenses (including any legal fees of Beneficiary) in connection with each such proceeding, action, negotiation and prosecution for which costs and expenses Lessee shall be reimbursed out of any award or compensation received. Lessor shall be entitled to participate in any such proceeding, action, negotiation or prosecution.

12.2    In the event an occurrence of the character referred to in Paragraph 12.1. shall either permit Lessor to elect to terminate the Master Lease pursuant to its terms or otherwise affect all or a substantial portion of the Property and shall render the Property or Improvements unsuitable or uneconomic for continued use and occupancy in Lessee's business during the Term , then Lessor may at least 30 days prior to the date of taking, deliver to Lessee notice of its intention to terminate this Lease on the date of taking (the Termination Date). This Lease shall thereafter terminate on the Termination Date, except with respect to obligations and liabilities of Lessee hereunder, actual or contingent, which have arisen on or prior to the Termination Date, upon payment by Lessee of the Minimum Rent, Additional Rent and other sums then due and payable hereunder to and including the Termination Date, and the Net Condemnation Proceeds shall belong to Lessor.

12.3    If, after an occurrence of the character referred to in Paragraph 12.1., Lessor does not give notice of its intention to terminate this Lease as provided in Paragraph 12.2., then this Lease shall continue in full force and effect and Lessee shall, at its expense, rebuild, replace or repair any damage to the Property caused by such event in conformity with the requirements of Paragraph 10 so as to restore the Property (as nearly as practicable) to the condition and market value thereof immediately prior to such occurrence. Prior to any such rebuilding, Lessee shall submit to Lessor an estimate of the maximum costs of such rebuilding (the Restoration Cost). The Restoration Cost shall be paid first out of Lessee's own funds to the extent that the Restoration Cost exceeds the Net Condemnation Proceeds allocated to loss of Improvements and severance in the judgement or settlement fixing the award. After such expenditure, and so long as no default

CKE

OCT 2 9 1990

5823f:8/28/90                    -10-

has happened and is continuing under this lease, Lessee shall be entitled to receive such allocated portion of Net Condemnation Proceeds, but only against certificates by an authorized officer of Lessee delivered to Lessor from time to time as such work of rebuilding, replacement and repair progresses, each such certificate describing the work for which Lessee is requesting payment and the cost incurred by Lessee in connection therewith and stating that Lessee has not theretofore received payment for such work. Any Net Condemnation Proceeds remaining after final payment shall be the sole property of the Lessor. In the event of any temporary requisition, this Lease shall remain in full effect (including with respect to the Property) and Lessee shall be entitled to receive the Net Condemnation Proceeds allocable to such temporary requisition; except that such portion of the Net Condemnation Proceeds allocable to the period after the expiration or termination of the term of this Lease shall be paid to Lessor. If the cost of any repairs required to be made by Lessee pursuant to this Paragraph 12.3. shall exceed the amount of such Net Condemnation Proceeds, the deficiency shall be paid by Lessee.

12.4    Notwithstanding the foregoing, Lessee, at its cost and expense, shall be entitled to separately claim, in any condemnation proceeding, any damages payable for moveable trade fixtures paid for and installed by Lessee (or any persons claiming under Lessee) without any contribution or reimbursement therefor by Lessor, and for Lessee's loss of business, and for Lessee's relocation costs; provided Lessor's award is not reduced or otherwise adversely affected thereby.

13    Casualty.

13.1    Lessee hereby irrevocably assigns to Lessor any compensation or insurance proceeds to which Lessee may become entitled by reason of Lessee's interest in the Property if the Property or any part thereof is damaged or destroyed by fire or other casualty. If the Property or any part thereof shall be damaged or destroyed by fire or other casualty, Lessee shall promptly notify Lessor thereof. Lessee shall negotiate, prosecute and adjust any claim for any compensation or insurance payment on account of any such damage or destruction; and Lessor shall collect any such compensation or insurance payment. All amounts paid in connection with any such damage or destruction, shall be applied pursuant to this Paragraph 13, and all such amounts paid or payable in connection therewith (minus the expenses of collecting such amounts) are herein called the Net Casualty Proceeds. Lessee shall pay all reasonable costs and expenses in connection with each such negotiation, prosecution and adjustment for which costs and expenses Lessee shall be reimbursed out of any compensation or insurance payment received. Lessor shall be entitled to participate in any such negotiation, prosecution and adjustment.

13.2    After an occurrence of the character referred to in Paragraph 13.1., this Lease shall continue in full effect, and Lessee shall, at its expense, rebuild, replace or repair any damage to the Property caused by such event in conformity with the

CKE

OCT 2 9 1990

5823f:8/28/90                    -11-

requirements of Paragraph 10 so as to restore the Property (as nearly as practicable) to the condition and market value thereof immediately prior to such occurrence. Any such repair shall be completed within six (6) months after the occurrence of such damage or destruction, subject to such delays as may be reasonably attributable to governmental restrictions or failure to obtain materials or labor, or other causes, whether similar or dissimilar, beyond the control of Lessee. Prior to any such rebuilding, Lessee shall submit to Lessor an estimate of the maximum cost of such rebuilding (the Casualty Restoration Cost). The Casualty Restoration Cost shall be paid first out of Lessee's own funds to the extent that the Casualty Restoration Cost exceeds the Net Casualty Proceeds payable in connection with such occurrence. After such expenditure, and so long as no default has happened and is continuing under this Lease, Lessee shall be entitled to receive the Net Casualty Proceeds, but only against certificates of an authorized officer of Lessee delivered to Lessor from time to time as such work of rebuilding, replacement and repair progresses, each such certificate describing the work for which Lessee is requesting payment and the cost incurred by Lessee in connection therewith and stating that Lessee has not theretofore received payment for such work. Any Net Casualty Proceeds remaining after final payment has been made shall be the sole property of Lessor. If the cost of any repairs required to be made by Lessee pursuant to this Paragraph 13.2 shall exceed the amount of such Net Casualty Proceeds, the deficiency shall be paid by Lessee.

13.3   In the event of a casualty the result of which Lessor may elect to terminate the Master Lease pursuant to its terms or if the Property shall otherwise be substantially damaged or destroyed in any single casualty then Lessor may, at Lessor's sole discretion, not later than thirty (30) days after the occurrence of such damage or destruction, deliver to Lessee notice of its intention to terminate this Lease on the next monthly rent payment date (the Termination Date) which occurs not more than ninety (90) days after the delivery of such notice and then this Lease shall thereafter terminate on the Termination Date, except with respect to obligations and liabilities of Lessee under this Lease, actual or contingent, which have arisen on or prior to the Termination Date.

14    Assignment and Subletting.

14.1  Lessee may not assign or sublease all or any part of the Property, without Lessor's prior written consent. Any such assignment or subletting hereunder shall be done only in connection with an assignment or transfer by Lessee of Lessee's rights under the Franchise Agreement in accordance with all of the terms and provisions thereof. Any such assignment or sublease shall also be subject to all terms of this Lease. The consent by Lessor to one assignment or subletting shall not be deemed to be a consent to any subsequent assignment or subletting. Any Assignment or Sublease shall not relieve Lessee of liability under this Lease.

CKE

OCT 2 9 1990

5823f:8/28/90                         -12-

14.2   In the event any such approved Sublease provides for payment of rent in excess of the Minimum Rent payable hereunder, Lessor shall receive all such excess rent, upon receipt thereof by Lessee; and Lessor shall receive all such valuable consideration paid to Lessee for the value of the leasehold estate, upon receipt thereof by Lessee. Neither this Lease, any part hereof, nor any term hereby demised shall be mortgaged or hypothecated by Lessee, nor shall Lessee mortgage, pledge or hypothecate its interest in any sublease of the Property or the rentals payable thereunder. Any rentals under any such sublease are hereby assigned to Lessor, effective only during the continuance of an event of default hereunder. Any such mortgage, pledge, or hypothecation and any sublease or assignment made otherwise than as permitted by this Paragraph 14, shall be void. Lessee shall, within ten (10) days after the execution of any such sublease or assignment, deliver a conformed copy thereof to Lessor.

15   Permitted Contests.

Lessee shall not be required, nor shall Lessor have the right, to pay, discharge or remove any tax, assessment, levy, fee, rent (except Minimum Rent and Additional Rent), charge, lien or encumbrance, or to comply with any legal requirement applicable to the Property or any part thereof or the use thereof, as long as Lessee shall contest the existence, amount or validity thereof by appropriate proceedings promptly commenced and diligently prosecuted which shall prevent collection of or other realization upon such tax, assessment, levy, fee, rent, charge, lien or encumbrance so contested, and which also shall prevent sale, forfeiture or loss of the Property or any part thereof or any Minimum Rent or any Additional Rent or any other sums payable under this Lease to satisfy the same, and which shall not affect the payment of any Minimum Rent or any Additional Rent or any other sums payable under this Lease; provided that such contest shall not subject Lessor or Beneficiary to the risk of any liability. Lessee shall give such reasonable security as may be demanded by Lessor or Beneficiary to insure ultimate payment of such tax, assessment, levy, fee, rent, charge, lien, or encumbrance and compliance with legal requirements and to prevent any sale, forfeiture or loss of the Property or any part thereof or any Minimum Rent and any Additional Rent or any other sums payable under this Lease by reason of such nonpayment or noncompliance.

16   Conditional Limitations: Default Provisions.

16.1   Any of the following occurrences or acts shall constitute an event of default by Lessee under this Lease:   (i) if Lessee shall (1) fail to pay any Minimum Rent, Additional Rent or other sum required to be paid by Lessee hereunder when and as the same shall become due and payable and such failure shall continue for ten days after receipt of notice of such failure, or (2) fail to observe or perform any other provision or agreement hereof and such failure shall continue for 30 days after the earlier of the acquiring by any officer, director, employee, agent or representative of Lessee of actual knowledge thereof (and if such actual knowledge is provided

CKE

OCT 2 9 1990

5823f:8/28/90                                    -13-

by Lessor or Beneficiary, such must be provided in writing) or receipt of notice of such failure (provided, that in the case of any such default which cannot be cured by the payment of money and cannot with diligence be cured within such 30 day period, if Lessee shall commence promptly to cure the same and thereafter prosecute the curing thereof with diligence, the time within which such default may be cured shall be extended for such period as is necessary to complete the curing thereof with diligence, but in no event shall such extended period of time be more than 60 days from the end of such 30 day period without the prior written consent of Lessor); or (ii) if any representation or warranty of Lessee set forth herein, or in any certificate delivered in connection with the execution hereof, or in any certificate, notice, demand or request delivered to Lessor hereunder shall be inaccurate, incomplete or misleading in any material respect, as of the time when the same shall have been made; or (iii) if Lessee shall file a petition commencing a voluntary case under any Chapter of Title 11 of the United States Code (the Bankruptcy Code), or for liquidation, reorganization or for an arrangement pursuant to any other federal or state bankruptcy law or any similar federal or state law, or shall become insolvent, or shall make an assignment for the benefit of creditors, or shall fail to pay its debts generally as they become due, or shall admit in writing its inability to pay its debts generally as they become due, or if a petition commencing an involuntary case under any chapter of the Bankruptcy Code or an answer proposing the adjudication of Lessee as a debtor or a bankrupt or proposing its liquidation or reorganization pursuant to the Bankruptcy Code, any other federal or state bankruptcy law or any similar federal or state law shall be filed in any court and Lessee shall consent to or acquiesce in the filing thereof or such petition or answer shall not be discharged or denied within 60 days after the filing thereof; or (iv) if a custodian, receiver, trustee or liquidator of Lessee or of all or substantially all of the assets of Lessee or the Property or Lessee's estate therein shall be appointed in any proceeding brought by Lessee, or if any such custodian, receiver, trustee or liquidator shall be appointed in any proceeding brought against Lessee and shall not be discharged within 60 days after such appointment, or if Lessee shall consent to or acquiesce in such appointment; or (v) if the Property shall be vacated by Lessee and left unattended or without maintenance; or (vi) if final judgment for the payment of money in excess of $500,000 shall be rendered against Lessee and Lessee shall not discharge the same or cause it to be discharged within 15 days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgement was granted, based or entered, and secure a stay of execution pending such appeal; or (vii) Lessee shall cease to operate (except temporarily for remodeling repair or labor stoppages) the Property as a Carl's Jr. Restaurant, except as otherwise permitted pursuant to this Lease; or (viii) if Lessee shall be in default of any Carl's Jr. Restaurant Franchise Agreement or any other lease or sublease entered into by the parties.

5823f:8/28/90

-14-

CKE

OCT 2 9 1990

16.2    If an event of default shall have happened and be continuing, Lessor shall have the right to give Lessee notice of Lessor's termination of the term of this Lease on a date, specified in such notice, which shall be at least five (5) days after the date such notice was given. Upon the giving of such notice and provided that such event of default shall be continuing, the term of this Lease and the estate hereby granted shall expire and terminate on such date as fully and completely and with the same effect as if such date were the date herein fixed for the expiration of the term of this Lease, and all rights of Lessee hereunder shall expire and terminate, but Lessee shall remain liable as hereinafter provided.

16.3    If an event of default shall have happened and be continuing, Lessor shall have the immediate right, whether or not the term of this Lease shall have been terminated pursuant to Paragraph 16.2, to re-enter and repossess the Property by summary proceedings, ejectment or any other legal action (or in any manner Lessor determines to be necessary or desirable) and shall have the immediate right to remove all persons and property therefrom. Lessor shall be under no liability by reason of any such re-entry, repossession or removal. No such re-entry, repossession or removal shall be construed as an election by Lessor to terminate the term of this Lease unless a notice of such termination is given to Lessee pursuant to Paragraph 16.2, or unless such termination is decreed by a court or other governmental entity of competent jurisdiction.

16.4    At any time or from time to time, after the re-entry or repossession of the Property pursuant to Paragraph 16.3, whether or not the term of this Lease shall have been terminated pursuant to Paragraph 16.2, Lessor may (but shall be under no obligation to) relet the Property for the account of Lessee, in the name of Lessee or Lessor or otherwise, without notice to Lessee, for such term or terms and on such conditions and for such uses as Lessor, in its absolute discretion, may determine. Lessor may collect and receive any rents payable by reason of such reletting. Lessor shall not be liable for any failure to relet the Property or for any failure to collect any rent due upon any such reletting; and no efforts by Lessor to relet the Property or otherwise mitigate damages from any default hereunder shall constitute a waiver of any right of Lessor to recover damages of any nature under this Paragraph 16.

16.5    No expiration or termination of the term of this Lease pursuant to Paragraph 16.2, by operation of law or otherwise, and no re-entry or repossession of the Property pursuant to Paragraph 16.3 or otherwise, and no reletting of the Property pursuant to Paragraph 16.4 or otherwise, shall relieve Lessee of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, re-entry, repossession or reletting.

16.6    If an event of default shall occur, whether or not Lessee shall have abandoned the Property, this Lease shall continue in full force and effect unless Lessor shall terminate Lessee's right to possession of the Property pursuant to Paragraph 16.2 or unless this Lease shall have terminated by operation of law. Lessor may enforce all of its rights and remedies hereunder prior to such termination

CKE

OCT 2 9 1990

5823f:8/28/90                    -15-

including the right to recover all Minimum Rent, Additional Rent and other sums payable under this Lease by Lessee as such amounts become due. In no event prior to such termination shall Lessor's maintenance or preservation of the Property, the exercise of Lessor's rights under any agreement between Lessee and Lessor, or the appointment of a receiver upon the initiative of Lessor (which shall be at Lessee's expense) to protect Lessor's interest under this Lease be deemed to constitute a termination of Lessee's right to possession of the Property or a termination of this Lease. Until this Lease shall have been terminated by Lessor as provided in Paragraph 16.2 or by operation of law, Lessor may take any and all actions provided for herein or permitted by law without terminating this Lease, and this Lease shall continue in full force and effect.

16.7   Notwithstanding Paragraph 16.6, in the event of any expiration or termination of the term of this Lease or re-entry or repossession of the Property by reason of the occurrence of an event of default, Lessee will pay to Lessor all Minimum Rent, Additional Rent and other sums required to be paid by Lessee to and including the date of such expiration, termination, re-entry or repossession; and, thereafter, Lessee shall, until the end of what would have been the term of this Lease in the absence of such expiration, termination, re-entry or repossession, and whether or not the Property shall have been relet, be liable to Lessor for, and shall pay to Lessor, as liquidated and agreed current damages: (i) all Minimum Rent, Additional Rent and other sums which would be payable under this Lease by Lessee in the absence of such expiration, termination, re-entry or repossession, less (ii) the net proceeds, if any, of any reletting effected for the account of Lessee pursuant to Paragraph 16.4, after deducting from such proceeds all Lessor's expenses in connection with such default and reletting (including, but not limited to all repossession costs, brokerage commissions, reasonable attorneys' fees and expenses, employees' expenses, alteration costs and expenses of preparation for such reletting and operating the Property). Lessee will pay such current damages on the days on which Minimum Rent would be payable under this Lease in the absence of such expiration, termination, re-entry or repossession, and Lessor shall be entitled to recover the same from Lessee on each such day.

16.8   At any time after any such expiration or termination of the term of this Lease or re-entry or repossession of the Property by the occurrence of an event of default, whether or not Lessor shall have collected any current damages pursuant to Paragraph 16.7, Lessor shall be entitled to recover from Lessee, and Lessee will pay to Lessor on demand, as and for liquidated and agreed final damages for Lessee's default and in lieu of all current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages), an amount equal to the sum of the following:

(i)   The worth at the time of award of any unpaid Minimum Rent, Additional Rent and other sums payable by Lessee under this Lease which had been earned at the time of such termination;

CKE

OCT 2 9 1990

5823f:8/28/90                           -16-

(ii)     The worth at the time of award of the amount by
which the unpaid Minimum Rent, Additional Rent
and other sums payable by Lessee under this
Lease which, had this Lease not been terminated,
would have been earned after termination until
the time of award shall exceed the amount of
such rental loss that Lessee shall prove could
have been reasonably avoided;

(iii)    The worth at the time of award of the amount by
which the unpaid Minimum Rent, Additional Rent
and other sums payable by Lessee under this
Lease which, had this Lease not been terminated,
would have been earned during the balance of the
term of this Lease after the time of award shall
exceed the amount of such rental loss that
Lessee shall prove could have been reasonably
avoided;

(iv)     Any other amount necessary to compensate Lessor
for all detriment proximately caused by Lessee's
failure to perform its obligations under this
Lease or which in the ordinary course of things
would be likely to result therefrom, including
but not limited to any costs or expenses
incurred by Lessor in (x) re-taking possession
of the Property, including reasonable attorney's
fees incurred in connection therewith, (y)
maintaining or preserving the Property after
such default, and (z) preparing the Property for
reletting to a new tenant, including repairs or
alterations to the Property and

(v)      At Lessor's election, such other amounts in
addition to or in lieu of the foregoing as may
be permitted as damages from time to time by the
laws of the state in which the Property is
located.

The "worth at the time of award" referred to in clauses (i) and
(ii) above shall be calculated to include overdue interest at the
rate of 15%; the "worth at the time of award" referred to in clause
(iii) above shall be calculated by discounting to then present value
each amount of rent or other sum at the discount rate of the Federal
Reserve Bank of San Francisco at the time of award plus one percent
(1%); and the "time of the award" shall mean the date of payment by
Lessee or the date of the determination of damages by a court or
other tribunal of competent jurisdiction, as the case may be. If
any statute or rule of law shall validly limit the amount of
liquidated damages to less than the amount agreed to herein, Lessor
shall be entitled to the maximum amount allowable under such statute
or rule of law.

CKE

OCT 2 9 1990

5823f:8/28/90                    -17-

16.9     Lessee will be in "Chronic Default" under this Lease if Lessee commits a default (either a monetary or non-monetary default) during any 365-day period in which any of the following combinations of default has already occurred (even though said defaults may have been timely cured):

(i)    Two monetary defaults; or
(ii)   Three non-monetary defaults; or
(iii)  One monetary default and two non-monetary defaults; or
(iv)   One monetary default and one failure to timely report Gross Sales.

17     Additional Rights of Lessor.

17.1     No right or remedy hereunder shall be exclusive of any other right or remedy, but shall be cumulative and in addition to any other right or remedy hereunder or now or hereafter existing. Failure to insist upon the strict performance of any provision hereof or to exercise any option, right, power or remedy contained herein shall not constitute a waiver or relinquishment thereof for the future. Receipt by Lessor of any Minimum Rent, Additional Rent or other sum payable hereunder with knowledge of the breach of any provision hereof shall not constitute waiver of such breach, and no waiver by Lessor of any provision hereof shall be deemed to have been made unless made in writing. Lessor shall be entitled to injunctive relief in case of the violation, or attempted or threatened violation, of any of the provisions hereof or to a decree compelling performance of any of the provisions hereof, or to any other remedy allowed to Lessor by law.

17.2     Lessee hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have to redeem the Property or to have a continuance of this Lease after termination of Lessee's right of occupancy by order or judgment of any court or by any legal process or writ, or under the terms of this Lease, or after the termination of the term of this Lease as herein provided, and (ii) the benefits of any law which exempts property from liability for debt or for distress for rent.

17.3     If Lessee shall be in default in the performance of any of its obligations hereunder, Lessee shall pay to Lessor, on demand, all expenses incurred by Lessor as a result thereof, including reasonable attorney's fees and expenses. If Lessor shall be made a party to any litigation commenced against Lessee and Lessee shall fail to provide Lessor with counsel approved by Lessor and pay the expenses thereof, Lessee shall pay all costs and reasonable attorneys' fees and expenses incurred by Lessor in connection with such litigation.

18     Notices, Demands and Other Instruments.

All notices, offers, consents and other instruments given pursuant to this Lease shall be in writing and shall be validly given when hand delivered or mailed by prepaid courier or certified

CKE

OCT 2 9 1990

5823f:8/28/90                          -18-

mail return receipt requested or by messenger or courier service guaranteeing overnight delivery postage prepaid to the party to be notified, (a) if to Lessor, addressed to Lessor at its address set forth above and (b) if to Lessee, addressed to Lessee at its address set forth above. Notices shall be effective upon receipt or upon refusal to accept delivery. Lessor and Lessee each may from time to time specify, by giving written notice to the other party, (i) any other address as its address for purposes of this Lease and (ii) any other person or entity that is to receive copies of notices, offers, consents and other instrument hereunder.

With the exception of Section 16 which shall remain unaffected hereby, if any provision of the Master Lease permits Master Lessor a period of time for notice not at least seven (7) days longer than the minimum period of time for notice Lessor has hereunder to provide the same or corresponding notice to Lessee, Lessor shall be permitted an additional seven (7) days from receipt of Master Lessor's notice to provide such corresponding notice to Lessee. In the event, however, such additional time would result in less than five (5) days prior notice of the specified event or condition to Lessee, Lessor may use any reasonable means available, including telegram or telephonic facsimile, to provide if possible such five (5) days prior notice.

19    Estoppel Certificates.

Lessee will, from time to time, upon 10 days' prior request by Lessor, execute, acknowledge and deliver to Lessor a certificate signed by an authorized officer of Lessee stating that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, and setting forth such modifications) and the dates to which Minimum Rent, Additional Rent and other sums payable hereunder have been paid, and either stating that to the knowledge of the signer of such certificate no default exists hereunder or specifying each such default of which the signer has knowledge. Any such certificate may be relied upon by any actual or prospective mortgagee or purchaser of the Property.

20    No Merger.

There shall be no merger of this Lease or of the leasehold estate hereby created with any other estate in the Property by reason of the fact that the same person acquires or holds, directly or indirectly, this Lease or the leasehold estate hereby created or any interest herein or in such leasehold estate as well as any other estate in the Property or any interest in such estate.

21    Subordination.

Lessor and Master Lessor shall have the right to subject and subordinate this Lease at all times to the lien of any mortgage or mortgages now or hereafter placed on the Lessor's or Master Lessor's interest in the Property, if requested by any such mortgage holder. Lessee agrees to execute and deliver to any master lessor or mortgage holder any and all required documentation to facilitate

CKE

OCT 2 9 1990

5823f:8/28/90                    -19-

such subordination, provided, however, any such mortgage holder shall, in writing (a) recognize the validity and continuance of this Lease without disturbance in the event of a foreclosure of Lessor's or Master Lessor's interest as long as the Lessee shall not be in default under the terms hereof, and (b) agree to notify the Lessee within a reasonable time prior to the commencement of any mortgage foreclosure proceedings or default of any master lease of the nature and extent of all defaults under such mortgage or master lease, and Lessee shall then remain bound by this Lease to its regular termination.

22    Surrender.

Upon the expiration or termination of the Term, Lessee shall surrender the Property to Lessor in the condition in which the Property was originally received from Lessor, except as repaired, rebuilt, restored, altered or added to as permitted or required hereby and except for ordinary wear and tear. Lessee shall remove from the Property on or prior to such expiration or termination all property situated thereon which is not owned by Lessor, and shall repair any damage caused by such removal. Property not so removed shall become property of Lessor, and Lessor may cause such property to be removed from the Property and disposed of, but the cost of any such removal and disposition and of repairing any damage caused by such removal shall be borne by Lessee. Lessor or its agent may at any time within 180 days prior to the expiration of the Term enter upon the Property to show the Property to prospective purchasers or Tenants.

23    Merger, Consolidation, Sales of Assets.

Lessee covenants that it will not merge or consolidate with one or more other corporations in which Lessee shall not be the surviving entity or sell or otherwise dispose of all or substantially all the assets of Lessee unless the surviving entity or transferee of assets, as the case may be, shall deliver to Lessor an acknowledged instrument in recordable form assuming all obligations, covenants and responsibilities of Lessee hereunder.

24    Separability; Binding Effect.

Each provision hereof shall be separate and independent and the breach of any such provision by Lessor shall not discharge or relieve Lessee from its obligations to perform each and every covenant to be performed by Lessee hereunder. If any provision hereof or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remaining provisions hereof, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and enforceable to the extent permitted by law. All provisions contained in this Lease shall be binding upon, inure to the benefit of, and be enforceable by, the respective

CKE

OCT 2 9 1990

5823f:8/28/90                        -20-

successors and assigns of Lessor and Lessee to the same extent as if each such successor and assign were named as a party hereto. This Lease may not be changed, modified or discharged except by a writing signed by Lessor and Lessee.

25   Governing Law.

     This Lease shall be governed by and interpreted in accordance with the laws of the state in which the Property is located.

26   Headings and Table of Contents.

     The headings of various paragraphs herein and hereto and the Table of Contents have been inserted for convenient reference only and shall not to any extent have the effect of modifying or amending the express terms and provisions of this Lease.

27   Exhibit.

     The following Exhibit A, referred to in this Lease, which exhibit is attached hereto is incorporated by reference and made a part of this Lease.

     IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed as of the date first above written.

                              LESSOR

                              CARL KARCHER ENTERPRISES, INC.,
                              a California corporation

                              By: _____
                                   RICHARD C. CELIO
                                   Vice President/Corporate Counsel

                              By: _____
                                   Thomas C. Pine, Vice President,
                                   Real Estate Finance

                              LESSEE

                              _____
                              Robert W. Wisely

                              _____
                              Mary Jo Wisely

                                                  CKE
                                            OCT 2 9 1990

5823f:8/28/90                 -21-

#475

## EXHIBIT "A"

Lying within the Rancho Cabeza De Santa Rosa and being a portion of the lands conveyed to Lakeside Leasing, Inc., a California Corporation by instrument recorded June 6, 1984 as Document No. 84038087, Sonoma County Records, and all the lands conveyed to Lakeside Leasing, Inc., a California Corporation by instrument recorded June 6, 1984 as Document No. 84038086, Sonoma County Records, and being more particularly described as follows:

Beginning at a point on the Easterly line of Farmers Lane, a city street, as described in that certain Deed to the City of Santa Rosa recorded August 6, 1963 under Recorder's Serial No. H-49700, from which City of Santa Rosa Control Monument No. G109A bears S. 14° 36' 33" W., 117.78 feet, and delineated on that Record of Survey Map recorded in Book 306 of Maps, Page 45, Sonoma County Records; thence along the Easterly line of Farmers Lane, N. 6° 48' 12" W., 186.32 feet; thence on a tangent curve to the right, with a radius of 15.00 feet, through an angle of 78° 24' 24", for an arc length of 20.53 feet; thence along the Southerly line of Patio Court, N. 71° 36' 12" E., 205.79 feet to a point from which the Northeast corner of the lands described in Document No. 84038087, above referenced, bears S. 71° 36' 12" W., 121.00 feet; thence leaving the Southerly line of Patio Court, S. 18° 23' 48" E., 174 feet, more or less, to a point on the Northerly line of Lot 5, Block 1, Montgomery Village Subdivision No. 13, as shown upon that certain map recorded in Book 69 of Maps, Page 17, Sonoma County Records; thence along the Northerly line of said Lot 5, N. 61° 09' 45" W., 69 feet, more or less to the most Northerly corner thereof; thence S. 64° 00' 05" W., 115.19 feet; thence S. 41° 51' 17" W., 113.24 feet to the point of beginning.

A.P. No. 13-110-32 and a portion of A. P. No. 13-110-31

Exhibit "A", page 1 of 2

INITIAL

CKE
OCT 2 9 1990



CKE
OCT 2 9 1990

CKE #866
Santa Rosa, CA

# FIRST AMENDMENT
## TO SUBLEASE

THIS FIRST AMENDMENT TO SUBLEASE ("First Amendment") is made and entered into as of the _____ day of January 2006 by and between **CARL KARCHER ENTERPRISES, INC.**, a California corporation, ("Sublessor") and **R.W.W., INC.**, a California corporation, ("Sublessee").

## RECITALS

A.      Sublessor and Sublessee (through its predecessors in interest, ROBERT W. WISELY and MARY JO WISELY) have entered into a written Sublease Agreement dated September 25, 1990 ("Sublease") whereby Sublessor is subleasing to Sublessee, and Sublessee is subleasing from Sublessor, that certain real property, together with all buildings, structures and improvements thereon and appurtenances thereto, commonly known as 1000 Farmers Lane, Santa Rosa, California 95405;

B.      The current term ("Current Term") of the Sublease shall expire on July 30, 2006 pursuant to Section 3 of the Sublease;

C.      The Sublease does not grant to Sublessee any options to extend the Term of the Sublease;

D.      Sublessee and Sublessor now desire to amend the Sublease to provide for an extension of the Current Term, and to provide for rent payable by Sublessee to Sublessor during the extended Term;

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as thought set forth in full.

2.      Section 3 of the Sublease is hereby modified and amended to provide that the Current Term of the Sublease is extended and renewed for the

- 1 -

CKE #866
Santa Rosa, CA

period from July 31, 2006 through and including July 30, 2011 ("Extended Term").

3.      Section 4 of the Sublease is hereby amended and modified to provide that commencing August 1, 2006, in lieu of the Rent as set forth in that Section 4, Sublessee shall pay to Sublessor, without notice or demand, during the Extended Term, Rent in an amount equal to the amount of "Rental" (*i.e.*, Minimum Rental and Percentage Rental) required to be paid by Sublessor to the "Master Lessor" under the Rider to Section 3, contained, in the Addendum to the "Master Lease" (as the terms "Master Lessor" and "Master Lease" are defined in Section 1 of the Sublease), as amended pursuant to the Amendment to the Master Lease dated February 20, 1987.

4.      Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, heirs, executors, administrators, successors and assigns.

**[Signatures Follow on Next Page]**

- 2 -

E:\CKE\SantaRosa\agr\FirstSubleaseAmendment01.doc

01/16/06

CKE #866
Santa Rosa, CA

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment effective as of the date first above written.

Date: January ___, 2006          **SUBLESSOR:**

**CARL KARCHER ENTERPRISES, INC.**
A California corporation

By: _Colleen F McDonough_
Colleen Ford McDonough
Vice President, Real Estate Management

Date: January 25, 2006          **SUBLESSEE:**

**R.W.W., INC.**
A California Corporation

By: _Robert W Wisely_
Robert W. Wisely
President

- 3 -

E:\CKE\SantaRosa\agr\FirstSubleaseAmendment01.doc

01/16/06

## SECOND AMENDMENT
## TO SUBLEASE

THIS SECOND AMENDMENT TO SUBLEASE ("Second Amendment") is made and entered into as of the ___6ᵀᴴ___ day of __June_____, 2008 by and between **CARL KARCHER ENTERPRISES, INC.**, a California corporation, ("Sublessor") and **R.W.W., INC.**, a California corporation, ("Sublessee"), successor-in-interest to ROBERT W. WISELY and MARY JO WISELY.

## RECITALS

A.    By a Land and Building Lease dated August 2, 1985 as thereafter amended ("Master Lease"), LAKESIDE LEASING, INC., ("Master Lessor") leased to Sublessor certain real property together with all buildings, structures and improvements thereon and appurtenances thereto, commonly known as 1000 Farmers Lane, Santa Rosa, California 95405 ("Premises");

B.    By a Sublease dated September 25, 1990 as thereafter amended by a First Amendment to Sublease dated on or about January 25, 2006 (collectively, "Sublease") Sublessor subleased the Premises to Sublessee, and Sublessee subleased the Premises from Sublessor;

C.    Pursuant to Section 3 of the Sublease, the current Term of the Sublease shall expire on July 30, 2011, and the Sublease does not grant to Sublessee any options to extend the Term of the Sublease;

D.    Under Section 25 of the Master Lease, a copy of which Master Lease Sublessee acknowledges having received, Sublessor has been granted options to extend and renew the Master Lease for two (2) five-year terms and one (1) fifty-four (54) month term, on terms and conditions therein set forth, and Sublessor has exercised the first option for a five-year term; thus, there remain options for one (1) five-year term and one (1) fifty-four (54) month term,

E.    Sublessee and Sublessor now desire to amend the Sublease to provide for the granting of two (2) options to extend the Term of the Sublease, one (1) option for a five-year term and one (1) option for a fifty-four (54) month term, and to provide for rent payable by Sublessee to Sublessor during the option periods in an amount equal to the amount of rent payable by Sublessor to Master Lessor under the Master Lease;

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

- 1 -

F:\CKE\SantaRosa\#866\agr\2ndSubleaseAmendment01

04/11/08

CKE #866
Santa Rosa, CA

1.      Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as thought set forth in full.

2.      Terms and phrases defined in the Sublease shall have the same meanings when used herein unless noted otherwise to the contrary.

3.      Sublessor hereby grants to Sublessee two (2) options to extend and renew the Term of the Sublease ("Option(s) to Extend"), the first for the period from July 31, 2011 through and including July 30, 2016 ("First Option Period"), and, provided Sublessee has duly exercised its option for the First Option Period, the second for the period from July 31, 2016 though and including January 30, 2021 ("Second Option Period"). Sublessee shall have no other right to extend the Term beyond January 30, 2021. Sublessee's right to exercise each Option to Extend for each Option Period is subject to satisfaction of the following conditions precedent:

a.      Each Option to Extend shall be exercised, if at all, by written notice to Sublessor not later than thirty (30) days prior to the last day that Sublessor may exercise its corresponding option to extend the term of the Master Lease, stating that Sublessee elects irrevocably to extend the Term of the Sublease;

b.      This Sublease shall be in effect at the time notice of exercise of an Option to extend is given and on the last day of the Term of this Sublease prior to its extension;

c.      Sublessee shall not be in default under any provision of the Sublease at the time notice of exercise of the Option is given nor shall a default exist as of the last day of the Term of the Sublease prior to its extension;

d.      The notice of exercise of the Option to extend shall be delivered in strict compliance with the requirements and limitations set forth herein;

e.      Sublessee is open and operating its business in the Premises on a full-time basis as of the date that notice of exercise of the Option is given and throughout the period thereafter through and including the last day of the Term of the Sublease prior to its extension; and

f.      Sublessee is not in default beyond applicable cure periods under any franchise agreements Sublessee may have with Sublessor or any of its affiliates ("Franchise Agreements") at the time notice of exercise of the Option is given or on the last day of the Term of the Sublease prior to its extension.

The Options to Extend the Term of this Sublease provided herein shall immediately and automatically terminate and shall be of no further force or effect in the event that the Sublease and/or the Franchise Agreements is/are terminated in accordance with the terms and provisions of the Sublease and/or Franchise Agreements.

4.      On July 31, 2011 the provisions of Section 4 of the Sublease shall be deleted in their entirely, and in lieu thereof Section 4 shall be deemed to provide that commencing July 31, 2011 as minimum rental for the Premises during the balance of the

- 2 -

CKE #866
Santa Rosa, CA

Term, Sublessee covenants and agrees to pay to Sublessor, from time to time as or before the same becomes due and payable under the Master Lease, and subject to all of the terms, covenants and conditions of the Master Lease, an amount equal to all rents, fees, charges, expenses and costs that Sublessor is obligated to pay under the Master Lease, including, but not limited to, Sublessor's proportionate share of real property taxes, utilities, insurance and operating expenses which Sublessor is obligated to pay in accordance with the terms of the Master Lease, if any. In addition to the minimum rental hereinabove set forth, Sublessee shall pay to Sublessor all additional overage or percentage rent in the same amount and in the same manner and time and calculated on the same basis as such additional overage or percentage rent is due from Sublessor as tenant pursuant to the terms and provisions of the Master Lease. Rent for any period during the Term hereof that is for less than one (1) month shall be a prorated portion of the monthly installment. Rent shall be payable without notice or demand and without any deduction, offset or abatement, in lawful money of the United States to Sublessor.

5.      Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, heirs, executors, administrators, successors and assigns.

**[Signatures Follow on Next Page]**

- 3 -

F:CKE\SantaRosa\#866\agr\2ndSubleaseAmendment01

04/11/08

CKE #866
Santa Rosa, CA

IN WITNESS WHEREOF, the parties hereto have executed this Second Amendment effective as of the date first above written.

Date: _____, 2008     **SUBLESSOR:**

                                **CARL KARCHER ENTERPRISES, INC.**
                                A California corporation

                                By: _____
                                    Colleen Ford-McDonough
                                    Vice President, Real Estate Management

Date: _5 - 2 2___, 2008         **SUBLESSEE:**

                                **R.W.W., INC.**
                                A California Corporation

                                By: _____
                                    Robert W. Wisely
                                    President

- 4 -

F:CKE\SantaRosa\#866\agr\2ndSubleaseAmendment01

04/11/08

CKE #866
Santa Rosa, CA

## THIRD AMENDMENT TO SUBLEASE

THIS THIRD AMENDMENT TO SUBLEASE ("Third Amendment") is made and entered into as of the ___7th___ day of ___June___, 2016 by and between **CARL'S JR. RESTAURANTS LLC,** a Delaware limited liability company, successor-in-interest to CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor") and **SECOND STAR HOLDINGS LLC,** a California limited liability company, successor-in-interest to ROBERT W. WISELY and MARY JO WISELY, ("Sublessee").

## RECITALS

A.    By a Land and Building Lease dated August 2, 1985 as thereafter amended ("Master Lease"), LAKESIDE LEASING, INC., ("Master Lessor") leased to Sublessor certain real property together with all buildings, structures and improvements thereon and appurtenances thereto, commonly known as 1000 Farmers Lane, Santa Rosa, California 95405 ("Premises");

B.    By a Sublease dated September 25, 1990 as thereafter amended by a First Amendment to Sublease dated on or about January 25, 2006 and a Second Amendment to Sublease dated June 6, 2008 (collectively, "Sublease") Sublessor subleased the Premises to Sublessee, and Sublessee subleased the Premises from Sublessor;

C.    Having exercised its first option to extend the Term of the Sublease, the current Term of the Sublease shall expire on July 30, 2016. The Sublease grants to Sublessee one (1) additional option to extend the Term of the Sublease for the period from July 31, 2016 through January 30, 2021 ("Second Option");

D.    Sublessee and Sublessor now desire to amend the Sublease to provide for one (1) additional option to extend the Term of the Sublease, and to provide for rent payable by Sublessee to Sublessor during certain periods during the Term of the Sublease, to provide for an Administrative Fee, to provide for a remodeling of the Premises and other matters as set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as thought set forth in full.

2.    The capitalized Terms and phrases defined in the Sublease shall have the same meanings when used herein unless noted otherwise to the contrary.

3.      Sublessee hereby exercises its Second Option to extend and renew the Term of the Sublease for the period from July 31, 2016 through January 30, 2021 ("Second Option Period") upon all of the terms and conditions of the Sublease except as set forth in this Third Amendment and Sublessor hereby accepts the exercise by Sublessee of Sublessee's option to extend and renew the Term of the Sublease for the Second Option Period.

4.      Section 3 of the Sublease is hereby modified and amended to provide that the Term of the Sublease is extended and renewed following the Second Option Period for an additional five (5) years and six (6) months and shall now expire on July 31, 2026 ("Extended Term").

5.      Sublessor hereby grants to Sublessee one (1) additional option to extend and renew the Sublease for a period of five (5) years exercisable upon the same terms and conditions as provided in Section 3 of the First Amendment to Sublease, such that Sublessee now has a remaining option to extend and renew the Sublease for the following period:

"Third Option Period"      August 1, 2026 through July 30, 2031.

6.      Sublessee shall continue to pay the same amount of Minimum Rental and Percentage Rent that is due and payable by Sublessor as Lessee under the Master Lease. Sublessee hereby acknowledges that pursuant to the First Amendment to the Master Lease, the Minimum Rent for the following periods of time are in the following amounts.

| Period | Annual Minimum Rental | Monthly Minimum Rental |
|---|---|---|
| From 08/01/2016 through 01/31/2021 | $175,560.00 | $14,630.00 |
| From 02/01/2021 through 07/31/2026 | $189,600.00 | $15,800.00 |
| From 08/01/2026 through 07/31/2031* | $208,560.00 | $17,380.0o |

* In the event the Option to extend the Sublease is duly exercised by Sublessee

7.      Commencing February 1, 2021 and continuing thereafter during the balance of the Term of the Sublease, including any extension (option) periods, Sublessee shall pay to Sublessor an Administrative Fee at the rate of Two Thousand Five Hundred Dollars ($2,500.00) per year, payable in installments of Two Hundred Eight and 33/100 Dollars ($208.33) per month. The Administrative Fee shall be payable by Sublessee to Sublessor along with Sublessee's payment of Monthly Minimum Rent and shall be payable as Additional Rent.

8.      Section 10 of the Sublease is hereby modified and amended to provide that Sublessee shall implement and commence a remodel of the Premises under the *Classic Star Design Remodel* program as further detailed in Exhibit "A" attached to this Third Amendment (the "Remodel") and shall complete a portion of the Remodel consisting of new interior and exterior paint, as well as installing new tile in the dining room and restrooms no later than December 31, 2017. The balance of the Remodel work to be completed pursuant to the then current Carl's Jr. standards on or before December 31, 2026. To the extent required under the terms and provisions of the Master Lease, Sublessee shall obtain all necessary consents from the Master Lessor to such remodeling work prior to commencing the Remodel project.

C:\Users\rturrietta\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\YRZOK31W\3rdSubleaseAmendment02.docx
April 15, 2016

CKE #866
Santa Rosa, CA

Sublessee hereby agrees to give the Master Lessor and Sublessor not less than thirty (30) days prior written notice stating the date that such Remodel work shall commence on the Premises.

All such Remodel work shall be performed in accordance with the requirements of and pursuant to the terms of the Master Lease, the Sublease and all applicable laws and governmental requirements (including without limitation all permitting and building requirements of the local governmental agency with jurisdiction over the same) and at Sublessee's sole cost and expense.

9.      Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

10.     To the extent, if any, that the terms, covenants or conditions of this Third Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this Third Amendment shall control.

11.     This Third Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Third Amendment shall have no force or effect unless and until each party executes and delivers this Third Amendment to the other party.

12.     Each of the persons executing this Third Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Third Amendment and that each person signing on said party's behalf is authorized to do so.

13.     The parties acknowledge and agree that this Third Amendment shall be interpreted as if it was drafted jointly by all of the parties, and that neither this Third Amendment, nor any provision within it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney. Any exhibits attached hereto are hereby incorporated herein by this reference.

14.     This Third Amendment along with any exhibits and attachments or other documents affixed hereto, or referred to herein, constitutes the entire and exclusive agreement between Sublessor and Sublessee with respect to the subject matter of this Third Amendment. Sublessor and Sublessee hereby agree that all prior or contemporaneous oral or written understandings, agreements or negotiations relative to the subject matter of this Third Amendment which were acceptable to both parties have been merged into this Third Amendment and are included herein.

CKE #866
Santa Rosa, CA

**IN WITNESS WHEREOF,** the parties hereto have executed this Third Amendment effective as of the date first above written.

Date: _____June 7_____, 2016     SUBLESSOR:

CARL'S JR. RESTAURANT LLC
A Delaware Limited Liability Company

By: _____
Kathy Steininger
Vice President
Real Estate Asset Management

Date: _4/22_____, 2016     SUBLESSEE:

SECOND STAR HOLDINGS LLC
A California Limited Liability Company

By: _____
Title: _____General Counsel_____

- 4 -

CKE #866
Santa Rosa, CA

EXHIBIT "A"

CLASSIC STAR DESIGN REMODEL

(see attached)

C:\Users\rturrietta\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\YRZOK31W\3rdSubleaseAmendment02.docx
April 15, 2016

# MEMORANDUM

To:        CKE Franchisees
From:      E. Michael Murphy
Date:      March 21, 2016
Subject:   Contemporary Star Design Remodels
CC:        Franchise Operations, Legal, Construction

---

We are excited to announce that we have developed the next generation of restaurant design for Carl's Jr. and Hardee's Restaurants for remodels and new construction. The new restaurant design, "*Contemporary Star*", is a more upscale, contemporary design that we believe appeals to a broad range of our customers from Boomers to Millennials.

At Carl's Jr., we measured customer reaction to the new Contemporary Star design in the Los Angeles DMA and found that, among the customers who noticed the new look, the vast majority (93%) considered the new look an improvement over the Classic Star restaurant design. The new interior rated very well with our customers on key elements of "overall liking" and "fit for Carl's Jr." Customers rated the following phrases as the highest when describing the interior design elements:

*"Comfortable & Contemporary"*        *"Fun & Inviting"*        *"Youthful"*

*"Clean & Colorful"*        *"Well Lit"*

At Hardee's, we conducted a comparative survey with customers visiting Classic Star restaurants and Contemporary Star restaurants in the Nashville, DMA. Survey participants were asked about 32 specific attributes regarding the design and décor for the restaurants. Customers visiting a restaurant with the Contemporary Star design rated all 32 attributes higher than customers visiting a restaurant with the Classic Star design, and for most attributes the difference was significant. The attributes measured included such features as lighting design and fixtures, overall color scheme, and comfort and roominess of booths. Customers at the restaurant with the Classic Star design were more likely to agree with statements such as "*the store is like a typical fast food restaurant's interior.*" Conversely, customers at the restaurant with the Contemporary Star design were much more likely to agree with the statements:

*"has design features which set it apart from other fast food restaurants"*

*"is more like a casual dining restaurant than fast food"*

Perhaps most interesting, survey participants were asked about 15 overall attributes regarding their experience, not necessarily specific to the design. Customers at the restaurant with the Contemporary Star design rated their experience higher than customers at the restaurant with the Classic Star design on all 15 attributes, including overall appearance of food, friendliness/courtesy of employees, store ambiance, speed of service, cleanliness and overall value.

In addition to the excellent design ratings by our customers, company-operated restaurants that have completed the interior and exterior painting elements of the Contemporary Star design have experienced sales improvements of 2% to 4% and, restaurants that added the optional exterior elements had sales improvements of 4% to 8%. To date, we have remodeled or rebuilt 40 company-operated restaurants to

the Contemporary Star design. Over the next 4 years, we intend to have the majority of our remaining company-operated restaurants remodeled or rebuilt to the Contemporary Star design, except in limited circumstances, as described below. When this remodel cycle is complete, 80% to 90% of all company-operated restaurants will have the Contemporary Star design.

Although the Classic Star design was a great design, it was developed almost ten years ago. The Classic Star design rollout began in 2008 and earlier versions of the design were available and being implemented in 2007. Unless an extension was given due to lease issues or other unique circumstances, Carl's Jr. Restaurants were required to be remodeled to Classic Star by December 2011 and Hardee's Restaurants were required to be remodeled to Classic Star by December 2012. Thus, remodels occurring early in that cycle are now eight or nine years old, and remodels completed toward the end of the deadline are approximately five years old. Since then, McDonald's, Wendy's and other competitors have rolled out more upscale restaurant designs. Frankly, the Classic Star restaurants are becoming dated and, like the survey indicated, now look like typical fast food restaurants. We have built our brands on quality and innovation and, in order to be competitive, we simply cannot be perceived as just another typical fast food restaurant.

The franchise agreements provide that CKE can require major remodeling to modernize the image of the System as often as every five years. As noted above, it has been closer to 10 years since we initiated the Classic Star design rollout. If we are to remain competitive in our industry, we must keep our restaurants in line with today's contemporary tastes by moving to the next generation of reimaging. Accordingly, CKE will now require new construction restaurants to be built, and existing restaurants to be remodeled, using the Contemporary Star design.

For existing restaurants, as with past remodeling programs, we have set deadlines based upon the number of restaurants that you operate, as follows:

(1)    If you operate one restaurant, that restaurant must be fully remodeled by *December 31, 2016.*

(2)    If you operate two restaurants, one restaurant must be fully remodeled by *December 31, 2016* and the second restaurant must be fully remodeled by *December 31, 2017.*

(3)    If you operate three restaurants, at least one restaurant must be fully remodeled by December 31, 2016, at least two restaurants must be fully remodeled by *December 31, 2017*, and all restaurants must be fully remodeled by *December 31, 2018.*

(4)    If you operate four or more restaurants, at least 25% of the restaurants must be fully remodeled by *December 31, 2016*, an additional 25% (or an aggregate of 50%) of the restaurants must be fully remodeled by *December 31, 2017*, an additional 25% (or an aggregate of 75%) of the restaurants must be fully remodeled by *December 31, 2018*, and all of the restaurants must be fully remodeled by *December 31, 2019.*

We will provide specifics on the Contemporary Star design to all franchisees. All restaurant exteriors must be painted to the Contemporary Star design colors, but other elements of the Contemporary Star *exterior* enhancements are optional.

2

In our discussions with the IHFA and the SFA certain questions have arisen. We hope that we have addressed all of those questions below, but if you have additional questions, please reach out to us:

**Question:** I constructed a new restaurant using the Classic Star design within the last five calendar years. Am I required to remodel this restaurant to the Contemporary Star design?

**Answer: CKE will require any new restaurant constructed in accordance with the Classic Star design more than seven calendar years ago to be remodeled to the Contemporary Star design. You will be required to remodel this restaurant when it reaches that seven year mark. This does not modify the provisions of the Franchise Agreement that permits us to require major remodeling every five years.**

**Question:** Will digital menu boards be required as part of the Contemporary Star Remodel?

**Answer: Yes, digital menu boards are now required in all new construction and are included in the scope for a Contemporary Star Remodel. We believe that digital boards are consistent with the contemporary design, and will replace manual menu boards as the standard in quick serve restaurants. Our sole approved supplier for digital menu boards is Sicom.**

**Question:** Can I have input on the selection of the wall murals?

**Answer: Yes. You will be asked to review the wall murals but we do have to follow certain rules about using images that are copyrighted or that might be offensive in some way. Using local icons or points of interest could be a part of your input with the seating vendors. Final approval will be made by CKE in its sole discretion.**

**Question:** Is the small dropped ceiling soffit located in the center of the dining an option?

**Answer: Yes the dropped soffit is an option but the black tile encompassed in that area is required.**

**Question:** If I receive permission to do the Classic Star Refresh and I didn't install specified tile in the restrooms during the Classic Star remodel, will I be required to install the tile during the Refresh?

**Answer: Yes, in a Classic Star Refresh, you would be required to install the specified tile in the restrooms.**

**Question:** Can the White Subway style tile with the black accent that was used in the Classic Star Remodel in the restrooms remain if I do the Contemporary Star Remodel?

**Answer: Yes, but only if it is in excellent condition with no graffiti, including screw holes or cracks or other damage and the damage can be repaired successfully. The approval to leave the tile will be given by the CKE Construction Manager upon his/her inspection.**

**Question:** If FRP (Fiberglass Reinforced Plastic) was used in the restrooms can it stay?

**Answer: FRP (Fiberglass Reinforced Plastic) cannot be used in the restrooms. It must be removed and replaced with the Contemporary Star Remodel tile.**

3

Question: Can the existing signage be used?

Answer: If the existing signage was updated at the time of the Classic Star Remodel and meets the current trademark standards, it can remain. However, if the existing signage is faded or damaged, the signage must be replaced with new faces to match the current trademark standards.

Question: Will the exterior of the restaurant have to be repainted a new color scheme?

Answer: Yes, the exterior must be painted to the new Contemporary Star Remodel colors. The only exception will be if the restaurant is restricted in some way by ordinance, CC&Rs or other restrictions that do not permit the building to be repainted a new color.

Question: What material will be approved for the mansard roof?

Answer: The standard approved mansard roof material will be standing seam red metal roof, no asphalt, fiberglass, wood or any other material can be used. The only exception is if the existing material is required by ordnances, CC&Rs or other restrictions.

Question: Is the "Tech Table" or "Community Table" required?

Answer: "No, Tech Tables" or "Community Tables" are not required but they are an option. However, depending on the customer demographic, we have found that they are very popular with younger customers and families. This should be considered before the decision not to use them.

Question: I have a short term remaining on my lease and I am not sure if I will renew the lease or relocate the restaurant. Do I have to do a Contemporary Star Remodel?

Answer: In a very limited number of situations, CKE may grant, in its sole discretion, waivers for these circumstances. Whether a waiver is granted will depend on a number of factors including, but not limited to, the remaining term on the lease including options, the restaurant's performance and the restaurant's condition. Even if a waiver is granted, however, you may still be required to take certain steps to improve your restaurant's condition and appearance to an acceptable level. Any waiver will have to be approved in writing by CKE's management and legal team.

Question: I have an underperforming restaurant and can't afford a remodel. Can I get a wavier for hardship consideration?

Answer: Typically such a waiver will not be given absent compelling circumstances. In fact, we have found that a restaurant often underperforms when the building is dated and run down. In determining whether "compelling circumstances" exist, CKE will consider a number of factors including, but not limited to, the restaurant's sales and profits, operations, location and condition. Even if a waiver is granted, however, you may still be required to take certain steps to improve your restaurant's condition and appearance to an acceptable level. Any waiver will have to be approved in writing by CKE's management and legal team.

Question: If I have completed a Classic Star Refresh, or if I purchased a store which had recently undergone a Classic Star Refresh, do I now need to implement the Contemporary Star Remodel?

4

Answer:  Assuming that the Classis Star Refresh met the requirements for a Classic Star Refresh outlined in the 2015 Refresh Manual, you are not required to implement the Contemporary Star until fifth anniversary of the date the Classic Star Refresh was completed.

Question:  Are there situations where I will still be permitted to do a Classic Star Refresh of an existing restaurant?

Answer:  Yes, but this will be the exception.  CKE in, its sole discretion, will determine if the Classic Star Refresh can be utilized at any particular restaurant and, if so, the scope of work that must be performed. CKE will base its decision on a number of factors including the condition of the building, the length of time between remodels, the financial performance of the restaurant and the potential of the trade area.

Question:  If I receive permission to do the Classic Star Refresh, can I use some of the components of the Contemporary Star Remodel?

Answer:  No. The Contemporary Star Remodel has been developed carefully over the past 2 years and the design elements, including colors and finishes, do not transfer from one design to the other design. Moreover, we do not want to lessen the impact of the Contemporary Star Remodel by mixing its elements into an outdated design.

Question:  If I receive permission to do the Classic Star Refresh and I didn't replace the white, painted or tan booths, can I reuse them?

Answer:  No. Painted, white or any other nonstandard booths cannot be reused and must be changed to the Classic Star specified booth.

Question:  If I receive permission to do the Classic Star Refresh and I didn't replace the existing floor tile in the dining room during the last classic Star remodel, will I have to replace the tile as a part of the Classic Star Refresh?

Answer:  Yes, the tile will have to be replaced with approved tile. The specification is in the Contemporary Star Remodel manual.  Keep in mind, however, that the cost of a Classic Star Refresh versus a Contemporary Star Remodel is a factor that we will consider in considering whether to waive the requirement for a Contemporary Star remodel, and a factor you should consider before requesting such a waiver. In other words, if the costs to Refresh and remodel are relatively close, then it makes sense to do the more impactful Contemporary Star Remodel.

*       *       *       *

In company-operated restaurants, on average, the cost for the Contemporary Star remodel has ranged from $125,000 to $150,000 for the interior enhancements and exterior painting, with the cost of the optional exterior enhancements ranging from an additional $85,000 to $103,000.  Your costs may be more than these ranges depending on the current condition of your restaurant and which elements of the Classic Star you implemented when you performed your Classic Star remodel. For example, if you have to replace floor tile in the dining room and restrooms, we expect your cost would increase $25,000 to $45,000 above the average cost range of the Contemporary Star Remodel.   These estimates do not

5

include any work necessary for compliance with the American's With Disabilities Act or completion of deferred maintenance.

### *Next Steps*

- Check StarNet for the Contemporary Star Remodel Manual.

- For franchisees that operate more than one restaurant, start putting together a schedule of which restaurants you want to remodel during 2016.

- Contact your Carl's Jr. or Hardee's Construction Project Manager to begin scheduling your remodel scopes.

This is an exciting time at CKE. We look forward to working with you as you prepare for your next generation of remodels. The scopes for both the Contemporary Star Remodel and the Classic Star Refresh are posted on the StarNet site. Please contact Jack Willingham or Dan Hogan with any questions you may have.

6

ENtity: SCL

STORE#: 7369

SUBLEASE I

Exp Date: 3/31/2012

CKE # 135
Diamond Bar, CA

## SUBLEASE

THIS SUBLEASE AGREEMENT ("Sublease") dated as of the Sublease Date, is made and entered into by and between Sublessor and Sublessee. Sublessor and Sublessee hereby agree as follows:

1.   **Basic Sublease Information.**

All capitalized words not defined herein shall have the meanings ascribed to them in this Section entitled "Basic Sublease Information." The Basic Sublease Information contained herein is an integral part of the Sublease.

1.1   <u>Sublease Date</u>.   This   Sublease   shall   be   effective   on _DEC 22_, 2000 ("Sublease Date").

1.2.   <u>Sublessor</u>.   CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor").

1.3.   <u>Sublessee</u>. SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

1.4.   <u>Premises</u>.   The premises subleased hereunder is described in attached Exhibit "A" hereto and incorporated herein by reference ("Premises").   Sublessor is possessed of the Premises pursuant to a lease between Sublessor, as the lessee, and Robert C. Weil, Trustee of the Weil Family Trust Dated March 2, 1970, as the lessor ("Prime Landlord") dated October 6, 1975 as amended April 1, 1987 ("Prime Lease").   The Premises is located at 141 South Diamond Bar Boulevard, Diamond Bar, California 91765.   Sublessor has constructed on the Premises certain improvements for use as a "Carl's Jr. Restaurant."   The Premises is referred to by Sublessor as Unit No. 135.

1.5   <u>Term</u>.

a.   The primary term of this Sublease will be from Sublease Date to March 31, 2007 ("Primary Term").

b.   Two (2) additional consecutive terms of this Sublease will be from:

- 1 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

April 1, 2007 to March 31, 2012; and
April 1, 2012 to March 31, 2017;

(each referred to as "Option Term" and collectively "Option Terms").

The Primary Term and the Option Term or Option Terms, as the case may be, are hereinafter collectively referred to as the "Term."

1.6. <u>Use</u>. Sublessee shall use the Premises only for a "Carl's Jr. / Green Burrito Dual Concept Restaurant" pursuant to Paragraph 5.1 of this Sublease.

1.7. <u>Rent</u>.

a. Minimum rent pursuant to Paragraph 6.1 of this Sublease, and subject to adjustment as provided therein, shall be the minimum or fixed rent which Sublessor is required to pay under the Prime Lease ("Minimum Rent"). Commencing on the Sublease Date, the Minimum Rent shall be $60,000.00 per year.

b. As generally described in Section C.(b) of the First Amendment to Prime Lease, Sublessee shall pay to Sublessor, in addition to the Minimum Rent, on or before the tenth (10th) day of each calendar month following the month during which "net sales" (as defined in the Prime Lease) are made, a percentage rent ("Percentage Rent") equal to the difference between the Minimum Rent paid by Sublessee under Section 1.7.a. above and Five and Three-quarters Percent (5.75%) of net sales for the preceding month.

1.8. <u>Rent Commencement Date</u>. Rent shall commence on the Sublease Date ("Rent Commencement Date").

1.9. <u>Taxes</u>. Pursuant to Paragraph 7.3 of this Sublease, Sublessee's liability for Taxes, as hereinafter defined, shall commence on the Rent Commencement Date and shall be paid in twelve (12) equal monthly installments in advance. Sublessee's initial monthly installment of Taxes shall be $910.

1.10 (Intentionally Deleted)

- 2 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

1.11. <u>Notice Address</u>.   The addresses for all notices under this Sublease are:

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
One City Boulevard West,  Suite 350
Orange, CA  92868-3621
ATTN: Real Estate Asset Management
Telephone no. (714) 940-3441
Facsimile no. (714) 940-3444

With copy to:
General Counsel
CARL KARCHER ENTERPRISES, INC.
401 W. Carl Karcher Way
Anaheim, California 92801
Telephone no. (714) 778-7133
Facsimile no. (714) 520-4485

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
1 Centerpointe Dr., Suite 405
La Palma, CA 90623-1052
Telephone no. (714) 736-8900
Facsimile no. (714) 736-8909

1.12. <u>Landlord Consent</u>.  If the Prime Lease requires that the consent of Prime Landlord be obtained prior to the effectiveness of this Sublease, then, notwithstanding anything to the contrary contained in this Sublease, this Sublease and the obligations of Sublessor under this Sublease shall be subject to receipt by Sublessor of Prime Landlord's written consent and approval of the terms and conditions hereof substantially in the form of attached Exhibit "B."  Sublessee agrees to provide Sublessor with any and all information required by Prime Landlord with respect to the business and financial condition of Sublessee in order for Prime Landlord to consent to this Sublease, and Sublessee hereby authorizes Sublessor to disclose to Prime Landlord any such information which may have been delivered to Sublessor. If required by the Prime Lease, Sublessor will reimburse Prime Landlord for reasonable expenses, including attorney's fees, incurred by Prime Landlord to review of any request for consent to this Sublease.

2.      **Demise of Premises.**

In consideration of the rent and other sums to be paid by Sublessee, and of the other terms, covenants and conditions on Sublessee's part to be kept and performed, Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises and the improvements thereon.

- 3 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

## 3.   Term and Extensions of Term.

The Primary Term of this Sublease shall commence and terminate as stated in Paragraph 1.5.a of the Basic Sublease Information.  Sublessee shall have the right to extend the Primary Term of this Sublease for the Option Terms as stated in Paragraph 1.5.b of the Basic Sublease Information, provided Sublessee is not in default of this Sublease on the date Sublessee exercises its option to extend or on the last day of the Primary Term or respective additional term.

Sublessee shall exercise such options to extend, if it so elects, by written notice delivered to Sublessor not less than two hundred ten (210) days prior to the expiration of the Primary Term or additional term.  If Sublessee timely exercises an option to extend the respective Sublease term, Sublessor shall timely exercise its corresponding option to extend the term under the Prime Lease.

## 4.   Title and Condition.

4.1   The Premises is subleased subject to (a) the existing state of title to the Premises as of the Sublease Date; (b) any state of facts which a survey or physical inspection of the Premises might show; and (c) all zoning regulations, restrictions and other laws and regulations now in effect or hereafter adopted by any governmental authority having jurisdiction over the Premises.  The buildings, structures and other improvements comprising a part of the Premises are subleased subject to their condition as of the Sublease Date, and Sublessor does not make any representation or warranty, either express or implied, as to the condition of the Premises or as to the adequacy or suitability of the Premises for the purposes or needs of Sublessee.

4.2   Sublessee warrants and represents to Sublessor that Sublessee has examined the condition of the Premises prior to the execution and delivery of this Sublease and has found the Premises to be satisfactory for all Sublessee's purposes. Sublessee agrees that Sublessor shall have no responsibility or obligation for expenses with respect to the care, maintenance or operation and conduct of business on the Premises regardless of the nature of the expense.

## 5.   Use of Premises.

Sublessor, as franchisor, and Sublessee, as franchisee, have executed concurrently with the execution of this Sublease, a Carl's Jr. / Green Burrito Dual Concept Restaurant Franchise Agreement ("Franchise Agreement") for

- 4 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

the operation of a Carl's Jr. / Green Burrito Dual Concept Restaurant on the Premises. Any event of default by Sublessee under the Franchise Agreement shall be an event of default under this Sublease, subject to any rights of Sublessee under the Franchise Agreement to cure such default.

Sublessee shall use the Premises for a Carl's Jr. / Green Burrito Dual Concept Restaurant and for no other purpose without Sublessor's prior written consent. Such use shall be in a lawful, safe, careful and proper manner, and Sublessee shall not commit or permit any waste or allow the continuance of any nuisance. Sublessee shall carefully preserve, protect, control and guard the Premises from damage, shall maintain the Premises in good repair and shall comply with all requirements imposed by governmental authorities and by insurers of the Premises. Sublessee represents, warrants and covenants to Sublessor that Sublessee shall not cause or permit any hazardous substance or toxic waste to be handled, generated, stored, treated, disposed of or released on, in or about the Premises.

6.     **Rent and Percentage Rent.**

6.1     Sublessee covenants and agrees to pay to Sublessor Minimum Rent in the amount stated in Paragraph 1.7.a of the Basic Sublease Information commencing on the Rent Commencement Date. Except as provided in Paragraph 6.2 below, Sublessee shall pay to Sublessor, at the address set forth in Paragraph 1.11 of the Basic Sublease Information, Minimum Rent in twelve (12) equal monthly installments ("Monthly Installments") in advance on the first day of each month during the Term hereof. Rent shall be prorated for any partial year or partial month.

Minimum Rent shall be adjusted on the dates required by and to amount of the fixed or minimum rent which Sublessor is then required to pay under the Prime Lease.

6.2     As further and additional rent, Sublessee covenants and agrees to pay to Sublessor during the Term hereof Percentage Rent as provided in Paragraph 1.7.b of the Basic Sublease Information. Notwithstanding anything herein to the contrary, Sublessee shall fully and completely comply with all percentage rent provisions of the Prime Lease, except that Sublessee's statement of net sales shall be provided to Sublessor within ten (10) days after the close of each month as required by the Prime Lease.

6.3     Rent shall be payable in lawful money of the United States to Sublessor at the address stated in Paragraph 1.11 of the Basic Sublease Information or at such other place as Sublessor may designate in writing.

- 5 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

6.4   Sublessee covenants to pay to Sublessor as additional rent ("Additional Rent") all other amounts, liabilities and obligations which Sublessee herein assumes or agrees to pay and interest at the rate of ten percent (10%) per annum (or such lesser amount as may be the maximum amount permitted by law) on all overdue installments of Minimum Rent, Percentage Rent or other sums from the due date thereof until payment is received by Sublessor.   Such Additional Rent shall be due and payable on demand.

7.   **Taxes.**

7.1   Sublessee covenants to pay to Sublessor as Additional Rent all taxes and assessments, including but not limited to, all real property taxes, any substitute property taxes, all general and special assessments, any business rental or rental excise taxes, and any other obligations which are or may become a lien on or levied against the Premises and/or improvements thereon (collectively, "Taxes"). Sublessee shall pay all personal property taxes, and all excise taxes on personal property and the like directly to the taxing authority, promptly when due.

7.2   In the event the taxing authorities change the manner in which Taxes are levied, charged or assessed from the present tax system, Sublessee shall pay such Taxes imposed upon the Premises under any alternative or revised system of taxation.

7.3   Sublessee shall pay estimated Taxes to Sublessor in twelve (12) equal monthly installments on the first day of each calendar month in advance, in an amount estimated by Sublessor based upon the prior year's Taxes, to be readjusted upon receipt of invoices or bills for actual Taxes. The initial monthly installment amount is stated in Paragraph 1.9 of the Basic Sublease Information.

7.4   Sublessor will determine the amount of deficiency or overpayment in Taxes for the prior tax year and any deficiency by Sublessee shall be paid within ten (10) days after demand by Sublessor and any overpayment will be credited to Sublessee. Sublessor will adjust monthly installments accordingly.

8.   **Acceptance of Payments by Sublessor.**

No payment by Sublessee, or acceptance by Sublessor, of a lesser amount than shall be due from Sublessee to Sublessor shall be treated otherwise than as a payment on account. The acceptance by Sublessor of a check for a lesser amount with an endorsement or statement thereon, or

- 6 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

upon any letter accompanying such check that such lesser amount shall constitute payment in full, shall be given no effect and Sublessor may accept such payment without prejudice to any other rights or remedies which Sublessor may have against Sublessee. Any payment, however designated, may be accepted by Sublessor and applied against any part of Sublessee's then due Minimum Rent, Percentage Rent, Additional Rent or other obligations, or Sublessor may apply such payment against any sum then due or may retain such payment (without interest) as a credit against Sublessee's accruing future obligations.

9. **Utilities.**

Sublessee shall pay promptly when due, directly to the appropriate utility company, charges for all sewer, water, gas, electrical current, telephone and other utilities ("Utilities") used or consumed in or at the Premises.

10. **Net Sublease.**

It is the express intent of the parties hereto that this Sublease is a "triple-net" sublease agreement. The parties agree that the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes referenced above shall be net to Sublessor so that this Sublease shall yield to Sublessor the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes specified during the term of this Sublease on an absolutely net basis, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the Premises shall be paid by Sublessee without notice or demand, and without set-off, counterclaim, abatement, suspension or deduction.

11. **(Intentionally Deleted)**

12. **Insurance on Premises.**

12.1 During the term of this Sublease, Sublessee shall provide and maintain at Sublessee's sole expense:

a.     plate glass, fire and extended coverage insurance in amounts equal to the full replacement cost of the Premises (including any additions in or changes in the Premises) as such value may be from time to time. Such insurance policies shall contain a one hundred percent (100%) replacement cost endorsement and an endorsement which automatically increases coverage as a guard against inflation for the Term of this Sublease;

- 7 -

CKE # 135
Diamond Bar, CA

b. general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises and the adjoining streets, sidewalks and passageways, with primary limits of not less than Two Million Dollars ($2,000,000.00) with respect to bodily injury or death to any one person, not less than Four Million Dollars ($4,000,000.00) with respect to injuries to two or more persons arising out of one accident, and not less than Two Million Dollars ($2,000,000.00) with respect to property damage;

c. worker's compensation insurance or comparable insurance under applicable laws covering all persons employed in connection with any work done on or about the Premises with respect to which claims for death or bodily injury could be asserted against Prime Landlord, Sublessor, Sublessee or the Premises;

d. such other insurance upon or with respect to the Premises or the operation thereof in such amounts and against such other insurable hazards as are required by the Franchise Agreement; and

e. in the event and to the extent that the Prime Lease shall require any insurance coverage not hereinbefore described and/or insurance coverage in limits higher than those hereinbefore described, Sublessee at Sublessee's sole cost and expense shall keep and maintain in force during the Term of this Sublease all such insurance (both as to types of coverage and limits) as may be required under the Prime Lease.

12.2 All such insurance shall be written by companies of recognized financial standing, satisfactory to Sublessor and Prime Landlord, and be authorized to do insurance business in the state in which the Premises is located, and such insurance shall name as additional insureds Sublessor and Prime Landlord (as their respective interests may appear). Sublessor shall not be required to prosecute any claim against or to contest any settlement proposed by, any insurer; provided, that Sublessee may, at its expense, prosecute any such claim or contest any such settlement, and in such event Sublessee may bring such prosecution or contest in the name of Sublessee, and Sublessor will join therein at Sublessee's expense and written request upon the receipt by Sublessor of an indemnity from Sublessee in form and substance satisfactory to Sublessor against any and all costs, liabilities and expenses in connection with such prosecution or contest.

12.3 In the event any damage to or destruction of the Premises shall occur, the provisions of the Prime Lease with respect to damage or destruction shall apply, and if the Prime Lease imposes on Sublessor the obligation to repair or restore improvements or alterations, Sublessee shall be

- 8 -

CKE # 135
Diamond Bar, CA

responsible for repair or restoration of improvements or alterations with respect to the Premises. If the Prime Lease does not require otherwise, then insurance claims by reason of damage to or destruction of any portion of the Premises, shall be adjusted by Sublessee at the election of Sublessor, but Sublessor shall, at Sublessee's expense, have the right to join with Sublessee in adjusting any such loss. The entire amount of any proceeds paid pursuant to a claim shall be payable to Sublessor. The entire amount of any proceeds paid to Sublessor shall be delivered to Sublessee from time to time as the work of rebuilding, replacing and repairing the damage or destruction progresses and evidence is furnished by Sublessee of such rebuilding, replacement and repair of an amount at least equal to the proceeds to be paid to Sublessee. If any proceeds of such insurance remain after final payment has been made to Sublessee for such rebuilding, replacement and repair, such remaining proceeds shall be retained by Sublessor.

12.4 Every policy required by this Paragraph 12 shall contain an agreement by the insurer that it will not cancel or modify such policy except after sixty (60) days' prior written notice sent by registered mail to Sublessor, and that any loss otherwise payable thereunder shall be payable notwithstanding any change in title or other ownership of the Premises. Sublessee shall submit to Sublessor a binder evidencing all the insurance coverage required hereunder at the time it executes this Sublease and shall submit to Sublessor original insurance policies or certificates of insurance demonstrating Sublessee's full performance of its insurance obligations under this Sublease, together with proof of premium payment, within thirty (30) days following the execution of this Sublease. Thereafter, Sublessee shall submit to Sublessor copies of renewal policies or renewal certificates with proof of premium payment at least twenty (20) days before the expiration of such policies. Sublessor's receipt of information whether or not evidence of coverage shall not affect the respective rights and duties of Sublessor and Sublessee as they are stated herein.

12.5 Each party hereby waives claims against the other for property damage provided such waiver shall not invalidate the waiving party's property insurance; each party shall attempt to obtain from its insurance carrier a waiver of its insurance carrier's right of subrogation. Subtenant hereby waives claims against Prime Landlord and Sublessor for property damage to the Premises or its contents if and to the extent that Sublessor waives such claims against Prime Landlord under the Prime Lease. Sublessee agrees to obtain, for the benefit of Prime Landlord and Sublessor, such waivers of subrogation rights from its insurer as are required of Sublessee under the Prime Lease.

- 9 -

CKE # 135
Diamond Bar, CA

13.   **Indemnification.**

Sublessee agrees to pay, and to protect, indemnify and hold harmless Sublessor from and against any and all liabilities, losses, damages, costs, expenses (including, without implied limitation, all attorneys' fees and expenses of Sublessor), causes of action, suits, claims, demands or judgments of any nature whatsoever, arising from (a) any injury to, or the death of, any persons or any damage to property in or on the Premises or upon adjoining sidewalks, streets, or ways, or in any manner growing out of or connected with the use, non-use, condition or occupation of the Premises or any part thereof, or resulting from the condition thereof or of adjoining sidewalks, streets or ways; (b) violation by Sublessee of any term or provision of this Sublease; (c) violation by Sublessee of any term or provision of the Prime Lease; (d) violation by Sublessee of the Franchise Agreement or any other contract or agreement to which Sublessee is a party; and (e) violation by Sublessee of any restriction, statute, law, ordinance or regulation, affecting the Premises or any part thereof or the ownership, occupancy or use thereof. The obligations of Sublessee under this Paragraph 13 relating to events occurring during the Term of this Sublease shall survive the expiration or other termination of this Sublease.

14.   **Alterations and/or Remodels.**

14.1   To the extent allowed by, and upon satisfaction of all conditions stated in, the Prime Lease and Franchise Agreement, Sublessee shall have the right to make alterations or additions to the Premises with the prior written consent of Sublessor, which consent shall not be unreasonably withheld.

14.2   In the event Sublessee is permitted to make alterations or additions, such additions to and alterations of the buildings, structures or other improvements constituting part of the Premises shall be at Sublessee's sole cost and expense and be made in a good and workmanlike manner. Such additions or alterations shall be expeditiously completed in compliance with all laws, ordinances, orders, rules, regulations and requirements applicable thereto.

14.3   Sublessee shall promptly pay all costs and expenses of each such addition or alteration and shall discharge all liens filed against the Premises arising out of the same, and pay for all permits and licenses required in connection with any such addition or alteration.

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

## 15.    Condemnation.

In the event of any condemnation involving the Premises, the provisions of the Prime Lease shall govern as to the party entitled to receive the award payable in connection with such taking.    Prime Landlord, Sublessor and Sublessee shall be entitled to awards payable as their respective interests may appear.    Sublessee shall be entitled to rent abatements to the extent Sublessor is entitled to abatements under the Prime Lease.

## 16.    Prime Lease Provisions.

16.1  Sublessor is the "Tenant" or "Lessee" of the Premises pursuant to the Prime Lease.  Sublessor and Sublessee hereby acknowledge and agree that this Sublease is subject and subordinate to the Prime Lease.  Sublessee acknowledges having received and reviewed the Prime Lease.  Sublessee hereby covenants and agrees that it will observe and perform all of the terms and conditions of the Prime Lease that are imposed upon Sublessor as tenant under the Prime Lease, including but not limited to payment of taxes, common area maintenance charges, insurance premiums, utilities and all other charges and amounts payable by Sublessor under the Prime Lease, such terms and conditions shall be deemed to have been incorporated herein as if set forth in full.  The obligations of and restrictions upon Sublessor as tenant under the Prime Lease shall constitute the obligations of and restrictions upon Sublessee under this Sublease, each as and to the extent applicable to the Premises.  The rights of Prime Landlord under the Prime Lease shall constitute the rights of Sublessor under this Sublease, in addition to the other rights of Sublessor under this Sublease, each as and to the extent applicable to the Premises.  In the event of a conflict between any term, condition or provision of the Prime Lease and this Sublease, or in the event that this Sublease creates additional or greater rights of and remedies to Sublessor over those granted Prime Landlord in the Prime Lease, or imposes additional or greater restrictions on or obligations of Sublessee over those imposed on Sublessor as tenant under the Prime Lease, then the terms, conditions and provisions of this Sublease shall govern in all respects the relationship between Sublessor and Sublessee.

Upon the breach of any of such terms, conditions or covenants of the Prime Lease by Sublessee or upon the failure of Sublessee to pay rent or comply with any of the provisions of this Sublease, Sublessor may exercise any and all rights and remedies granted to Prime Landlord by the Prime Lease, as well as any and all rights and remedies granted to Sublessor by this Sublease. Sublessee's rights under this Sublease shall be the same as Sublessor's rights as tenant under the Prime Lease, except as otherwise

- 11 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

provided by this Sublease.  However, the parties acknowledge and agree that Sublessee has not been granted or assigned the leasehold estate or rights of Sublessor as tenant under the Prime Lease, or any right to purchase or right of first refusal to purchase the Premises, such estate and rights being specifically reserved by Sublessor, provided that all rights of Sublessor that are reasonably necessary for Sublessee's beneficial use and occupancy of the Premises shall be enforced or made available by Sublessor for such use and occupancy.  All notices required or permitted to be given by Sublessee under the Sublease shall be given to both Sublessor and Prime Landlord under the Prime Lease.

16.2  Notwithstanding anything in this Sublease to the contrary, if the Prime Lease imposes any obligation on Prime Landlord or if any obligation of Sublessor under this Sublease is to be performed by Prime Landlord under the Prime Lease and Prime Landlord fails to perform or delays in performance of such obligation, or otherwise defaults in its obligations under the Prime Lease, then Sublessor shall have no liability to Sublessee hereunder as a result of such failure except that Sublessor agrees to use commercially reasonable efforts, upon notice from Sublessee and at Sublessee's expense, to cause Prime Landlord to perform such obligation.  Nothing in this Sublease shall or shall be deemed to limit or restrict any right or remedy of Prime Landlord with respect to the Premises or the Prime Lease.

16.3  Notwithstanding anything in this Sublease to the contrary, any termination of the Prime Lease will cause this Sublease to be terminated as of the same time and date that the Prime Lease is terminated.

16.4  If the Prime Lease grants to Prime Landlord any rights of approval or consent or any similar term, provision or right, and if Sublessee requests from Sublessor such approval or consent, then such approval or consent of Sublessor shall not be effective unless and until Prime Landlord gives its approval or consent. Sublessor shall use commercially reasonable efforts to obtain such approval or consent of Prime Landlord, upon request of Sublessee and at Sublessee's expense.

17.    **Assignment and Subletting.**

17.1  Sublessee may transfer its interest in the Premises only through an assignment of this Sublease with Sublessor's prior written consent. Any such assignment hereunder shall only be in connection with an assignment or transfer by Sublessee of Sublessee's rights under the Franchise Agreement in accordance with the terms and provisions thereof.  An assignee of the Franchise Agreement approved by Sublessor as franchisor shall be deemed approved by Sublessor as an assignee of this Sublease.

- 12 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

Any such assignment shall also be subject to all terms of this Sublease, all duties and obligations of Sublessee hereunder shall be specifically assumed by such assignee, and shall be in a form approved by Sublessor. The consent by Sublessor to one assignment shall not be deemed to be a consent to any subsequent assignment. Unless released in writing by Sublessor, any assignment shall not relieve Sublessee of liability under this Sublease.

17.2 Neither this Sublease nor the Premises hereby subleased shall be mortgaged by Sublessee, nor shall Sublessee mortgage or pledge the interest of Sublessee in the Premises or the rentals payable thereunder without Sublessor's prior written consent.

18. **Removal of Sublessee's Property.**

18.1 On or before the last day of this Sublease, Sublessee may remove from the Premises all furniture, trade fixtures, equipment and other movable personal property belonging to Sublessee ("Sublessee's Property"). Any damage to the Premises caused by such removal of Sublessee's Property shall be repaired in accordance with Paragraph 22 of this Sublease; in no event shall Sublessee's Property which has become permanently affixed to the Premises be removed. Notwithstanding the foregoing, Sublessee shall, at the end of the Term, or any termination of the Sublease, or upon the termination of Sublessor's right of possession hereunder, leave any improvements or other property required to be left in and on the Premises under the terms of the Prime Lease.

18.2 At the termination of this Sublease, if Sublessee has not removed Sublessee's Property from the Premises, or if this Sublease is terminated by reason of default by Sublessee, Sublessor may, at its option, either, (a) exercise any rights of Sublessor under the Franchise Agreement to purchase Sublessee's Property, or (b) remove Sublessee's Property from the Premises, the costs and expense for such to be for Sublessee's account, which shall be paid in full by Sublessee immediately upon demand by Sublessor, or, at Sublessor's option, deducted from the Security Deposit, or both to the extent necessary to fully pay said costs and expense.

19. **Access to Premises.**

Sublessor, its agents, servants and employees may enter the Premises upon reasonable notice to Sublessee, which may be oral, for the purpose of inspecting the Premises or for the purpose of exercising Sublessor's rights and remedies under this Sublease, the Franchise Agreement or under law.

- 13 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

## 20.   Default.

Sublessee shall be in default if Sublessee:

a.     shall fail to pay when due any Minimum Rent, Monthly Installments thereof, Percentage Rent, Additional Rent, Utilities, Taxes or other payment required hereunder;

b.     breaches any provision of this Sublease;

c.     assigns, mortgages, sublets, or transfers any interest in this Sublease or in the Premises without Sublessor's prior consent;

d.     causes or allows a default to exist under the Prime Lease;

e.     violates any covenant, term or condition of the Franchise Agreement, any lease, sublease, note or other agreement between Sublessee and Sublessor or any of its affiliates;

f.     shall fail to remedy immediately after receipt of notice from Sublessor, any hazardous condition which Sublessee has created or suffered in breach of Sublessee's obligations under this Sublease;

g.     fails to comply with any statute, ordinance, rule or regulation of any governmental body; or

h.     files or has filed against it a petition in bankruptcy, insolvency, or for reorganization or arrangement pursuant to any Federal or state statute.

## 21.   Remedies.

In the event of any default hereof by Sublessee which shall not have been cured within five (5) days, in the case of monetary default, after Sublessee receives notice specifying such default, or within fifteen (15) days after Sublessee receives such notice if such default is not for the payment of money, then Sublessor shall have the option to take any or all of the following actions, without further notice or demand of any kind to Sublessee or any other person:

a.     Collect by suit or otherwise each installment of Minimum Rent, Percentage Rent, Additional Rent or other sum as it becomes due hereunder, or enforce, by suit or otherwise, any other term or provision hereof on the part of Sublessee required to be kept or performed.

- 14 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

b.    Sublessor may terminate this Sublease upon the delivery of notice thereof to Sublessee and Sublessor shall have the right to immediate possession of the Premises and Sublessee shall peacefully surrender possession of the Premises to Sublessor.  In the event Sublessee holds the Premises beyond the termination of the Term, Sublessor shall have the right to recover Sublessor's cost in recovering possession of the Premises (including, without limitation, attorneys' fees and litigation costs), such amounts as may be permitted under applicable law and any other amounts due and payable to Sublessor hereunder including, without limitation, past-due rent.

c.    Sublessor, without terminating this Sublease, shall have the right to terminate Sublessee's right to possess the Premises and to recover possession thereof and Sublessee shall peacefully surrender the Premises to Sublessor.  Sublessor, at Sublessor's option, may cause the Premises to be prepared for reletting, and may relet the Premises or any part thereof as agent of Sublessee, for a term to expire prior to, at the same time as, or subsequent to the expiration of the Term, at Sublessor's option.  In the event of such reletting, Sublessor shall receive the rents therefor, applying the same first, to the repayment of reasonable expenses as Sublessor may have incurred in connection with said resumption of possession, preparing for reletting and reletting (including, without limitation, remodeling costs, brokerage and attorneys' fees), and, second, to the payment of damages and amounts equal to the Rent and Additional Rent due hereunder and to the cost of performing the other obligations of Sublessee as herein provided. Sublessee, regardless of whether Sublessor has relet the Premises, shall pay to Sublessor damages equal to the Rent and Additional Rent herein agreed to be paid by Sublessee less the proceeds of the reletting, if any, and such rent shall be due and payable by Sublessee on the days on which rent is due hereunder.  No such reentry and reletting of the Subleased Premises by Sublessor shall be construed as an election on its part to terminate this Sublease unless a written notice of such intention be given to Sublessee pursuant to subsection (b) above, or unless the termination thereof be decreed by a court of competent jurisdiction.  Notwithstanding any such reletting without termination, Sublessor may at any time thereafter elect to terminate this Sublease for such previous breach.

d.    Sublessor may perform for Sublessee any of the obligations Sublessee has agreed to perform hereunder if Sublessee has defaulted in the performance of such obligations.  Upon demand, Sublessee shall reimburse Sublessor for Sublessor's cost of performing for Sublessee together with interest thereon at a rate equal to eighteen percent (18%) per annum, compounded monthly (or such lesser amount as may be the maximum amount permitted by law).  Any amounts so expended by Sublessor shall be

- 15 -

CKE # 135
Diamond Bar, CA

immediately due and payable and the failure of Sublessee to pay such amounts shall entitle Sublessor to all of the rights and remedies available to it as if Sublessee had defaulted in the payment of rent.

e.     Sublessee shall pay to Sublessor a late charge equal to four percent (4%) of the amount of any installment of Minimum Rent, Percentage Rent or Additional Rent if such installment becomes more than ten (10) days past due.

f.     Sublessor may exercise any rights allowed Prime Landlord under the Prime Lease.

The remedies given to Sublessor in this Section shall be in addition and supplemental to all other rights or remedies which Sublessor may have under the laws then in force, but subject to the laws of the State of California.

## 22.   Surrender of Possession by Sublessee.

Upon the expiration or earlier termination of this Sublease, or upon termination of Sublessor's right of possession hereunder, at any time and for any reason, Sublessee promptly and peaceably shall surrender to Sublessor the Premises, together with all improvements, fixtures and equipment belonging to Sublessor or Prime Landlord, their agents, servants or employees, in good condition and repair, normal wear and tear excepted. There shall be no holding over of the Premises by Sublessee.

## 23.   Sublessor's Waiver.

Sublessor's failure at any time or from time to time to require strict compliance by Sublessee with the provisions of this Sublease shall neither waive nor prejudice Sublessor's continued right to insist upon the due and timely performance of this Sublease and to avail itself of all remedies provided by law or by this Sublease.

## 24.   Governing Law.

The invalidity or unenforceability of any provision of this Sublease shall not affect or impair any other provision.  If any provision of this Sublease is capable of two constructions, one of which would render the provision invalid and the other of which would make the provision valid, then the provision shall have the meaning which renders it valid.  The laws of the State of California shall govern the validity, performance, and enforcement of this Sublease.  The submission of this document for examination does not

- 16 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

constitute an offer to lease or to sublease and becomes effective only upon execution and delivery thereof by Sublessor and Sublessee.

## 25.   Recording of Sublease.

This Sublease shall not be recorded, but either party may execute and record a memorandum of sublease. Each party agrees to sign, upon request of the other, such memorandum, in reasonably acceptable form.

## 26.   Sublessee as Independent Contractor.

Sublessee is and shall remain an independent contractor and shall have no authority to act as an agent of Sublessor or power to bind Sublessor in any manner. This Sublease shall not create any relationship of employer-employee, trustee-beneficiary, principal-agent, partnership or joint venture.

## 27.   Sublessee's Inspection.

Sublessee warrants and covenants that Sublessee has made all necessary or desirable examinations, inspections and inquiries regarding the Premises and has consulted with such professional advisors as Sublessee deems necessary or desirable to satisfy Sublessee at Sublessee's discretion and on Sublessee's own initiative, that the Premises is acceptable to Sublessee, that this Sublease is lawful in substance and in form, and that Sublessee is financially prepared to assume any and all risks and obligations of any kind that may be involved in becoming Sublessee. SUBLESSEE HEREBY ACCEPTS THE PREMISES "AS IS, WHERE IS, AND WITH ALL FAULTS" WITH NO REPRESENTATION OR WARRANTY OF SUBLESSOR AS TO THE CONDITION THEREOF.

## 28.   No Other Assurances.

Sublessee has entered into this Sublease in reliance upon its provisions and upon the provisions of the Prime Lease, including any amendments, supplements and extensions, and not in reliance upon any alleged assurances, representations and warranties made by Sublessor, its officers, directors, agents, servants or employees.

## 29.   Brokers.

Each party represents and warrants to the other that it has not directly or indirectly dealt with any broker or agent relative to this Sublease or had its attention called to the Premises by any broker or agent and agrees to indemnify, defend and hold the other party harmless from and against any

- 17 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

and all claims for commission arising out of the execution and delivery of this Sublease.

30. **Notices.**

Where this Sublease requires notices to be given, except where it expressly provides to the contrary, all such notices shall be in writing and shall be deemed given on the date of personal delivery or the lesser of (a) three (3) business days or (b) the period if any for deemed delivery after mailing specified in the Prime Lease after deposit in the United States Mail when mailed by certified mail, postage prepaid, addressed to the party entitled to receive the notice at the address stated in Paragraph 1.11 in the Basic Sublease Information or at such other address as the party to receive the notice last may have designated for such purpose by notice given to the other party.

31. **Miscellaneous.**

31.1 When the sense so requires, words of any gender used in this Sublease shall be held to include any other gender and words in the singular shall be held to include the plural. "Sublessee" shall include the heirs, executors, administrators and personal representatives of any individual Sublessee as well as Sublessee's assigns (subject to Sublessor's prior written consent) and the successor of any incorporated Sublessee unless the context precludes such construction. The captions or headings of particular paragraphs or parts of this Sublease are inserted for convenience only and shall not affect the meaning of this Sublease as a whole, or any paragraph or any part of it.

31.2 No alleged modifications, termination or waiver of this Sublease shall be binding unless it is set out in writing and signed by the party against whom or which it is sought to be enforced. Any document or writing to be binding on Sublessor, whether this Sublease or any amendment, supplement or extension, must be signed by both Sublessee and Sublessor, the latter acting through its President or a Vice President.

32. **Sole Understanding of Parties.**

This Sublease, the Franchise Agreement and that certain Asset Purchase Agreement between Sublessor and Sublessee, dated as of July 19, 2000, and related documents, instruments and agreements, contain the entire understanding between the parties with respect to their respective subject matter, the Premises, and all aspects of the relationship between Sublessee and Sublessor.

- 18 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

CKE # 135
Diamond Bar, CA

**[Signatures Follow on Next Page]**

- 19 -

CKE # 135
Diamond Bar, CA

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first written above.

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
A California Corporation

By: _____

Colleen Ford McDonough
Director, Real Estate Asset Management

By: _____

Robert A. Wilson
Senior Vice President

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
A California Limited Liability Company

By: _____

Harshad Dharod
Majority Member

- 20 -

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

# EXHIBIT "A"

### Legal Description

PARCEL 2 OF PARCEL MAP NO. 4699, AS PR MAP FILED IN BOOK 52, PAGE 39 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, AND OTHER HYDROCARBONS AND OTHER HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATED THEREIN AND THEREUNDER, TOGETHER WITH THE EXCLUSIVE RIGHT TO DRILL FOR, PRODUCE, EXTRACT, TAKE AND MINE THEREFROM SUCH OIL, GAS AND OTHER HYDROCARBONS AND MINERALS AND TO STORE THE SAME UPON THE SURFACE OF SAID LAND, OR BELOW THE SURFACE OF SAID LAND, TOGETHER WITH THE RIGHT TO STORE UPON THE SURFACE OF SAID LAND, OIL, GAS AND OTHER HYDROCARBONS AND MINERALS WHICH MAY BE PRODUCED FROM OTHER LANDS, WITH THE RIGHT OF ENTRY THEREON FOR SAID PURPOSES, AND WITH THE RIGHT TO CONSTRUCT, USE, MAINTAIN, ERECT, REPAIR, REPLACE AND REMOVE THEREON AND THEREFROM, ALL PIPELINES, TELEPHONE AND TELEGRAPH LINES, TANKS, MACHINERY, BUILDING AND OTHER STRUCTURES WHICH MAY BE NECESSARY AND REQUISITE TO CARRY ON OPERATIONS ON SAID LANDS, WITH THE FURTHER RIGHT TO ERECT, MAINTAIN, OPERATE AND REMOVE A PLANT, WITH ALL NECESSARY APPURTENANCES FOR THE EXTRACTION OF GASOLINE FROM GAS, INCLUDING ALL RIGHTS NECESSARY OF CONVENIENT THEREIN, AS RESERVED IN DEED FROM TRANSAMERICA DEVELOPMENT COMPANY, A CORPORATION, RECORDED MARCH 29, 1968 IN BOOK D-3955, PAGE 185, OFFICIAL RECORDS, AS INSTRUMENT NO. 2456, AND RE-RECORDED JUNE 19, 1969 AS INSTRUMENT NO. 1776, OFFICIAL RECORDS.

BY QUITCLAIM DEED RECORDED DECEMBER 29, 1972 IN BOOK D-5715, PAGE 536, OFFICIAL RECORDS, AS INSTRUMENT NO. 8561, AND ON FEBRUARY 26, 1974 IN BOOK 6181, PAGE 515, OFFICIAL RECORDS, AS INSTRUMENT NO. 3189, ALL EASEMENT AND RIGHTS OF WAY AND OTHER RIGHTS TO THE USE AND OCCUPANCY OF THE SURFACE AND FOR THE DISTANCE OF NOT MORE THAN 500 FEET IN DEPTH WERE QUITCLAIMED BY TRANSAMERICA DEVELOPMENT COMPANY, A CORPORATION.

ASSESSOR'S PARCEL NOS. 8717-008-003 AND 8717-008-004

CKE # 135
Diamond Bar, CA

## EXHIBIT "B"

### Consent to Sublease

The undersigned, ROBERT C. WEIL, TRUSTEE of the Weil Family Trust Dated March 2, 1970, the landlord ("Prime Landlord") under the lease dated October 6, 1975 as amended April 1, 1987 ("Prime Lease") hereby consents and agrees to the subletting of the premises described in the Prime Lease ("Premises") by the tenant under the Prime Lease ("Sublessor") to Senior Classic Leasing, LLC, a California limited liability company, (Sublessee"), and consents to the Sublease Agreement ("Sublease"), provided however, that Sublessor shall remain liable as tenant under the Prime Lease.  The undersigned representative certifies by signing below that this Consent to Sublease is binding on the Prime Landlord.

Dated: _____, 2000

WEIL FAMILY TRUST
Dated March 2, 1970


_____
Robert C. Weil, Trustee

E:\CKE\Dharod\Agr\Subleases\#135 Diamond Bar

7369

# THIRD AMENDMENT TO SUBLEASE

THIS THIRD AMENDMENT TO SUBLEASE ("Amendment") is made and entered into as of the _____ day of _____, _____ (the "Effective Date") by and between CARL'S JR. RESTAURANTS LLC, a Delaware limited liability company ("Sublessor"), and SENIOR CLASSIC LEASING, LLC, a California limited liability company ("Sublessee").

## RECITALS

A.    Sublessor and Sublessee entered into a certain Sublease dated December 22, 2000 as amended by a First Amendment to Sublease dated as of September 27, 2016, as amended by a Second Amendment to Sublease dated as of October 11, 2016 (as amended, the "Sublease") concerning certain real property, together with all improvements thereon, commonly known as 141 South Diamond Bar Blvd., Diamond Bar, California ("Premises");

B.    Sublessor and Sublessee acknowledge and agree that the Extended Term is scheduled to expire on March 31, 2027 without any further options to extend the Extended Term; and

C.    Sublessee and Sublessor desire to amend the Sublease to add one (1) five (5) year option to renew and extend the Sublease upon the terms set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2.    All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this Amendment.

3.    Section 1.5.b. of the Sublease is hereby modified and amended to add one (1) additional consecutive five (5) year Option Term to renew and extend the Extended Term of the Sublease as follows:

April 1, 2027 through and including March 31, 2032

Each Option Term shall be subject to the same terms, covenants, and conditions as set forth in the Sublease, as amended hereby, including without limitation the provisions of Section 3 of the Sublease.

4.    Effective April 1, 2027, Paragraph 1.7.b. of the Sublease is hereby deleted and replaced with the following paragraph:

"Sublessee shall pay to Sublessor annually, within fifteen (15) days after the close of each year of the Option Term, the amount, if any, by which eight percent (8%) of

Diamond Bar, CA
141 South Diamond Bar Blvd.
Unit #1100135
2244858.2

Sublessee's Gross Sales during such year exceeds the Minimum Rent paid for such year ("Percentage Rent")."

5. Section 1.7. of the Sublease is hereby amended to include the following new Paragraph 1.7.c.:

""Gross Sales" shall mean for all purposes hereof the aggregate of the following:

(1) The total amount of all sales made upon the Premises from the operation of the business conducted on the Premises, and

(2) All other business done upon the Premises which in standard use and accepted accounting practices are gross sales of Sublessee except the following: (a) the sale price of returned merchandise, (b) sales and/or exchanges made to or with other restaurants operated by Sublessee, (c) bulk sales of inventory incidental to the sale of the business of Sublessee, (d) any sales tax or similar tax levied on the sales by Sublessee and paid by customers, (e) coupons, discounts, or credits or allowances on merchandise sold, and (f) incidental sales of furniture, fixtures and equipment."

6. Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

7. To the extent, if any, that the terms, covenants or conditions of this Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this Amendment shall control.

8. This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Amendment shall have no force or effect unless and until each party executes and delivers this Amendment to the other party.

9. Each of the persons executing this Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Amendment and that each person signing on said party's behalf is authorized to do so.

10. The parties acknowledge and agree that this Amendment shall be interpreted as if it were drafted jointly by all of the parties, and that neither this Amendment, nor any provision within it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney. Any exhibits attached hereto are hereby incorporated herein by this reference.

*[Remainder of page intentionally left blank]*

Diamond Bar, CA
141 South Diamond Bar Blvd.
Unit #1100135
2244858.2

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the Effective Date.

SUBLESSOR:

CARL'S JR. RESTAURANTS LLC
a Delaware limited liability company

By: _____
Name:_____ Kathy Steininger _____
Title:_____ Vice President _____
Real Estate Asset Management

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC,
a California limited liability company

By: _____
Name:_____ Alex Harding _____
Title:_____ General Counsel _____

*[Signature Page to Third Amendment to Sublease Unit #1100135]*

Diamond Bar, CA
141 South Diamond Bar Blvd.
Unit #1100135
2244858.2

CKE #7369
Diamond Bar, CA

## SECOND AMENDMENT TO SUBLEASE

**THIS SECOND AMENDMENT TO SUBLEASE** ("Second Amendment") is made and entered into as of the ___11th___ day of ___October___ 2016 by and between **CARL'S JR. RESTAURANTS LLC**, a Delaware limited liability, successor-in-interest to **CARL KARCHER ENTERPRISES, INC.**, a California corporation, ("Sublessor") and **SENIOR CLASSIC LEASING, LLC**, a California corporation, ("Sublessee").

## RECITALS

A.      Sublessor, through its predecessors-in-interest, and Sublessee entered into a written Sublease dated December 22, 2000. As amended by a First Amendment to Sublease dated December 10, 2010 (the, Sublease") whereby Sublessor is subleasing to Sublessee, and Sublessee is subleasing from Sublessor, that certain real property, together with all buildings, structures and improvements thereon and appurtenances thereto, commonly known as 141 South Diamond Bar Blvd., Diamond Bar, California 91765 ("Premises");

B.      The Term of the Sublease shall expire on March 31, 2017 pursuant to Section 1.5(a) of the Sublease.  Sublessee has one (1) option to extend the Term of the Sublease for a period of five (5) years remaining ("Option Term");

C.      Sections 1.7(a) and 6.1 of the Sublease provide for certain Minimum Rent payable by Sublessee to Sublessor during the Term, all as more particularly set forth in those Sections;

D.      Sublessee and Sublessor now desire to amend the Sublease to provide for the exercise of the Option Term, to provide for the extension of the Term of the Sublease, to provide for Minimum Rent payable by Sublessee to Sublessor during certain periods during the Term of the Sublease, to provide for a remodel of the Premises, to provide for an Administrative Fee, and other matters as set forth below;

## AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2.      All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this Second Amendment.

3.      Sublessee hereby exercises its remaining option to extend and renew the Term of the Sublease for the Option Term for the period from April 1, 2017 through March 31, 2022 upon all of the same terms and conditions of the Sublease except as otherwise provided in this Second Amendment, and Sublessor hereby accepts the

- 1 -

CKE #7369
Diamond Bar, CA

exercise by Sublessee of Sublessee's Option to extend the Term of the Sublease for the Option Term.

4.      Section 1.5(a) of the Sublease is hereby modified and amended to provide that the Term of the Sublease is extended following the Option Term for an additional period of five (5) years from April 1, 2022 through and including March 31, 2027 ("Extended Term").

5.      Sublessee hereby acknowledges the receipt of a copy of the Third Amendment to the Prime Lease dated ___Sept. 27___, 2016 and the Prime Lease and the Prime Lease Rent established thereunder and payable by Sublessee to Sublessor pursuant to Sections 1.7(a) and 6.1 of the Sublease shall now include provisions set forth in such Third Amendment.

6.      Commencing April 1, 2017, Sublessee shall pay to Sublessor an Administrative Fee at the rate of Two Thousand Five Hundred Dollars ($2.500.00) per year, payable in installments of Two Hundred Eight and 33/100 Dollars ($208.33) per month. The Administrative Fee shall be payable by Sublessee to Sublessor along with Sublessee's payment of Monthly Minimum Rent and shall be payable as Additional Rent.

7.      Sublessee hereby agrees to complete a Contemporary Star Remodel project as described in the Memorandum from Michael Murphy dated March 21, 2016, a copy of which is attached hereto as Exhibit "A," (the "Contemporary Star Memorandum") upon the Premises (the "Remodel Work"). Such Remodel Work shall be completed no later than the date set forth for the completion of such Remodel Work in the Contemporary Star Memorandum and shall conform to Sublessor's standard plans and specifications for the Contemporary Star Remodel Work. To the extent required by the Prime Lease, Sublessee shall coordinate with Sublessor to obtain the prior written consent of the Prime Landlord to the plans and specifications for the Contemporary Star Remodel Work. Sublessee hereby agrees to give the Prime Landlord and Sublessor not less than thirty (30) days prior written notice stating the date that such Contemporary Star Remodel Work shall commence on the Premises.

All such Remodel Work shall be performed in accordance with the requirements of and pursuant to the terms of the Prime Lease, the Sublease and all applicable laws and governmental requirements, including without limitation all permitting and building requirements of the local governmental agency with jurisdiction over the same and keeping the Premises and improvements throughout free and clear of mechanic's liens, all at Sublessee's sole cost and expense.

8.      Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

9.      To the extent, if any, that the terms, covenants or conditions of this Second Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this Second Amendment shall control.

- 2 -

CKE #7369
Diamond Bar, CA

10.    This Second Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  This Second Amendment shall have no force or effect unless and until each party executes and delivers this Second Amendment to the other party.

11.    Each of the persons executing this Second Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Second Amendment and that each person signing on said party's behalf is authorized to do so.

12.    The parties acknowledge and agree that this Second Amendment shall be interpreted as if it was drafted jointly by all of the parties, and that neither this Second Amendment, nor any provision within it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney.  Any exhibits attached hereto are hereby incorporated herein by this reference.

13.    This Second Amendment along with any exhibits and attachments or other documents affixed hereto, or referred to herein, constitutes the entire and exclusive agreement between Sublessor and Sublessee with respect to the subject matter of this Second Amendment.  Sublessor and Sublessee hereby agree that all prior or contemporaneous oral or written understandings, agreements or negotiations relative to the subject matter of this Second Amendment which were acceptable to both parties have been merged into this Second Amendment and are included herein.

IN WITNESS WHEREOF, the parties hereto have executed this Second Amendment effective as of the date first above written.

Date: _____Oct 11_____, 2016    SUBLESSOR:

CARL'S JR. RESTAURANTS LLC
A Delaware Limited Liability Company

By: _____
Kathy Steininger
Vice President
Real Estate Asset Management

Date: _____9/29_____, 2016    SUBLESSEE:

SENIOR CLASSIC LEASING, LLC.
A California Limited Liability Company

By: _____
Name: _____Alex Kalinsky_____
Title: _____General Counsel_____

- 3 -

7369

## THIRD AMENDMENT TO SUBLEASE

THIS THIRD AMENDMENT TO SUBLEASE ("Amendment") is made and entered into as of the _16th_ day of ___March___, _2018_ (the "Effective Date") by and between CARL'S JR. RESTAURANTS LLC, a Delaware limited liability company ("Sublessor"), and SENIOR CLASSIC LEASING, LLC, a California limited liability company ("Sublessee").

## RECITALS

A.     Sublessor and Sublessee entered into a certain Sublease dated December 22, 2000 as amended by a First Amendment to Sublease dated as of September 27, 2016, as amended by a Second Amendment to Sublease dated as of October 11, 2016 (as amended, the "Sublease") concerning certain real property, together with all improvements thereon, commonly known as 141 South Diamond Bar Blvd., Diamond Bar, California ("Premises");

B.     Sublessor and Sublessee acknowledge and agree that the Extended Term is scheduled to expire on March 31, 2027 without any further options to extend the Extended Term; and

C.     Sublessee and Sublessor desire to amend the Sublease to add one (1) five (5) year option to renew and extend the Sublease upon the terms set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2. All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this Amendment.

3. Section 1.5.b. of the Sublease is hereby modified and amended to add one (1) additional consecutive five (5) year Option Term to renew and extend the Extended Term of the Sublease as follows:

April 1, 2027 through and including March 31, 2032

Each Option Term shall be subject to the same terms, covenants, and conditions as set forth in the Sublease, as amended hereby, including without limitation the provisions of Section 3 of the Sublease.

4. Effective April 1, 2027, Paragraph 1.7.b. of the Sublease is hereby deleted and replaced with the following paragraph:

"Sublessee shall pay to Sublessor annually, within fifteen (15) days after the close of each year of the Option Term, the amount, if any, by which eight percent (8%) of

Diamond Bar, CA
141 South Diamond Bar Blvd.
Unit #1100135
2244858.2

Sublessee's Gross Sales during such year exceeds the Minimum Rent paid for such year ("Percentage Rent")."

5. Section 1.7. of the Sublease is hereby amended to include the following new Paragraph 1.7.c.:

""Gross Sales" shall mean for all purposes hereof the aggregate of the following:

(1) The total amount of all sales made upon the Premises from the operation of the business conducted on the Premises, and

(2) All other business done upon the Premises which in standard use and accepted accounting practices are gross sales of Sublessee except the following: (a) the sale price of returned merchandise, (b) sales and/or exchanges made to or with other restaurants operated by Sublessee, (c) bulk sales of inventory incidental to the sale of the business of Sublessee, (d) any sales tax or similar tax levied on the sales by Sublessee and paid by customers, (e) coupons, discounts, or credits or allowances on merchandise sold, and (f) incidental sales of furniture, fixtures and equipment."

6. Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

7. To the extent, if any, that the terms, covenants or conditions of this Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this Amendment shall control.

8. This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Amendment shall have no force or effect unless and until each party executes and delivers this Amendment to the other party.

9. Each of the persons executing this Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Amendment and that each person signing on said party's behalf is authorized to do so.

10. The parties acknowledge and agree that this Amendment shall be interpreted as if it were drafted jointly by all of the parties, and that neither this Amendment, nor any provision within it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney. Any exhibits attached hereto are hereby incorporated herein by this reference.

*[Remainder of page intentionally left blank]*

Diamond Bar, CA
141 South Diamond Bar Blvd.
Unit #1100135
2244858.2

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the Effective Date.

SUBLESSOR:

CARL'S JR. RESTAURANTS LLC
a Delaware limited liability company

By: _____
Name: _____
Title: _____

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC,
a California limited liability company

By: _____
Name: _____
Title: _____

*[Signature Page to Third Amendment to Sublease Unit #1100135]*

Diamond Bar, CA
141 South Diamond Bar Blvd.
Unit #1100135
2244858.2

ENTITY: DFG

STORE #: 7495

Exp Date: 2/28/2017

SUBLEASE I

CKE # 670
Pasadena, CA

## SUBLEASE

THIS SUBLEASE AGREEMENT ("Sublease") dated as of the Sublease Date, is made and entered into by and between Sublessor and Sublessee. Sublessor and Sublessee hereby agree as follows:

**1.     Basic Sublease Information.**

All capitalized words not defined herein shall have the meanings ascribed to them in this Section entitled "Basic Sublease Information." The Basic Sublease Information contained herein is an integral part of the Sublease.

1.1   <u>Sublease   Date</u>.   This   Sublease   shall   be   effective   on _Oct 27_, 2000 ("Sublease Date").

1.2.   <u>Sublessor</u>.   CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor").

1.3.   <u>Sublessee</u>.   SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

1.4.   <u>Premises</u>.   The premises subleased hereunder is described in attached Exhibit "A" hereto and incorporated herein by reference ("Premises").   Sublessor is possessed of the Premises pursuant to a lease between Sublessor, as the lessee, and Pasadena-Hastings Center, a co-partnership, as the lessor ("Prime Landlord") dated November 7, 1996 ("Prime Lease").   The Premises is located at 485 North Rosemead Boulevard, Pasadena, California 91107.   Sublessor has constructed on the Premises certain improvements for use as a "Carl's Jr. Restaurant."   The Premises is referred to by Sublessor as Unit No. 670.

1.5   <u>Term</u>.

a.     The primary term of this Sublease will be from Sublease Date to March 1, 2017 ("Primary Term").

b.     One (1) additional consecutive term of this Sublease will be from March 2, 2017 to March 1, 2022 ("Option Term").

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

The Primary Term and the Option Term are hereinafter collectively referred to as the "Term."

1.6. <u>Use</u>. Sublessee shall use the Premises only for a "Carl's Jr. Restaurant" pursuant to Paragraph 5.1 of this Sublease.

1.7. <u>Rent</u>. Minimum rent pursuant to Paragraph 6.1 of this Sublease, and subject to adjustment as provided therein, shall be the minimum or fixed rent which Sublessor is required to pay under the Prime Lease ("Minimum Rent"). Commencing on the Sublease Date, the Minimum Rent shall be $52,500.00 per year.

1.8. <u>Rent Commencement Date</u>. Rent shall commence on the Sublease Date ("Rent Commencement Date").

1.9. <u>Taxes</u>. Pursuant to Paragraph 7.3 of this Sublease, Sublessee's liability for Taxes, as hereinafter defined, shall commence on the Rent Commencement Date and shall be paid in twelve (12) equal monthly installments in advance. Sublessee's initial monthly installment of Taxes shall be $225.

1.10 (Intentionally Deleted)

1.11. <u>Notice Address</u>. The addresses for all notices under this Sublease are:

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
One City Boulevard West, Suite 350
Orange, CA 92868-3621
ATTN: Real Estate Asset Management
Telephone no. (714) 940-3441
Facsimile no. (714) 940-3444

With copy to:
General Counsel
CARL KARCHER ENTERPRISES, INC.
401 W. Carl Karcher Way
Anaheim, California 92801
Telephone no. (714) 778-7133
Facsimile no. (714) 520-4485

SUBLESSEE:
DFG RESTAURANT, INC.
~~SENIOR CLASSIC LEASING, LLC~~
1 Centerpointe Dr., Suite 405
La Palma, CA 90623-1052
Telephone no. (714) 736-8900
Facsimile no. (714) 736-8909

1.12. (Intentionally Deleted)

- 2 -

CKE # 670
Pasadena, CA

2.    **Demise of Premises.**

In consideration of the rent and other sums to be paid by Sublessee, and of the other terms, covenants and conditions on Sublessee's part to be kept and performed, Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises and the improvements thereon.

3.    **Term and Extension of Term.**

The Primary Term of this Sublease shall commence and terminate as stated in Paragraph 1.5.a of the Basic Sublease Information. Sublessee shall have the right to extend the Primary Term of this Sublease for the Option Term as stated in Paragraph 1.5.b of the Basic Sublease Information, provided Sublessee is not in default of this Sublease on the date Sublessee exercises its option to extend or on the last day of the Primary Term. Sublessee may only exercise the option to extend (commencing March 2, 2017 if Sublessee has extended or then extends the Franchise Agreement and has paid Sublessor, as franchisor, any applicable franchise renewal or extension fee.

Sublessee shall exercise such option to extend, if it so elects, by written notice delivered to Sublessor not less than two hundred ten (210) days prior to the expiration of the Primary Term. If Sublessee timely exercises the option to extend the Sublease term, Sublessor shall timely exercise its corresponding option to extend the term under the Prime Lease.

4.    **Title and Condition.**

4.1    The Premises is subleased subject to (a) the existing state of title to the Premises as of the Sublease Date; (b) any state of facts which a survey or physical inspection of the Premises might show; and (c) all zoning regulations, restrictions and other laws and regulations now in effect or hereafter adopted by any governmental authority having jurisdiction over the Premises. The buildings, structures and other improvements comprising a part of the Premises are subleased subject to their condition as of the Sublease Date, and Sublessor does not make any representation or warranty, either express or implied, as to the condition of the Premises or as to the adequacy or suitability of the Premises for the purposes or needs of Sublessee.

4.2    Sublessee warrants and represents to Sublessor that Sublessee has examined the condition of the Premises prior to the execution and

- 3 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

delivery of this Sublease and has found the Premises to be satisfactory for all Sublessee's purposes. Sublessee agrees that Sublessor shall have no responsibility or obligation for expenses with respect to the care, maintenance or operation and conduct of business on the Premises regardless of the nature of the expense.

5.    **Use of Premises.**

Sublessor, as franchisor, and Sublessee, as franchisee, have executed concurrently with the execution of this Sublease, a Carl's Jr. Restaurant Franchise Agreement ("Franchise Agreement") for the operation of a Carl's Jr. Restaurant on the Premises. Any event of default by Sublessee under the Franchise Agreement shall be an event of default under this Sublease, subject to any rights of Sublessee under the Franchise Agreement to cure such default.

Sublessee shall use the Premises for a Carl's Jr. Restaurant and for no other purpose without Sublessor's prior written consent. Such use shall be in a lawful, safe, careful and proper manner, and Sublessee shall not commit or permit any waste or allow the continuance of any nuisance. Sublessee shall carefully preserve, protect, control and guard the Premises from damage, shall maintain the Premises in good repair and shall comply with all requirements imposed by governmental authorities and by insurers of the Premises. Sublessee represents, warrants and covenants to Sublessor that Sublessee shall not cause or permit any hazardous substance or toxic waste to be handled, generated, stored, treated, disposed of or released on, in or about the Premises.

6.    **Rent.**

6.1    Sublessee covenants and agrees to pay to Sublessor Minimum Rent in the amount stated in Paragraph 1.7:a of the Basic Sublease Information commencing on the Rent Commencement Date. Except as provided in Paragraph 6.2 below, Sublessee shall pay to Sublessor, at the address set forth in Paragraph 1.11 of the Basic Sublease Information, Minimum Rent in twelve (12) equal monthly installments ("Monthly Installments") in advance on the first day of each month during the Term hereof. Rent shall be prorated for any partial year or partial month.

Minimum Rent shall be adjusted on the dates required by and to amount of the fixed or minimum rent which Sublessor is then required to pay under the Prime Lease.

6.2    (Intentionally Deleted)

- 4 -

E:\CKE\Dharod\Agri\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

6.3   Rent shall be payable in lawful money of the United States to Sublessor at the address stated in Paragraph 1.11 of the Basic Sublease Information or at such other place as Sublessor may designate in writing.

6.4   Sublessee covenants to pay to Sublessor as additional rent ("Additional Rent") all other amounts, liabilities and obligations which Sublessee herein assumes or agrees to pay and interest at the rate of ten percent (10%) per annum (or such lesser amount as may be the maximum amount permitted by law) on all overdue installments of Minimum Rent or other sums from the due date thereof until payment is received by Sublessor. Such Additional Rent shall be due and payable on demand.

7.   **Taxes.**

7.1   Sublessee covenants to pay to Sublessor as Additional Rent all taxes and assessments, including but not limited to, all real property taxes, any substitute property taxes, all general and special assessments, any business rental or rental excise taxes, and any other obligations which are or may become a lien on or levied against the Premises and/or improvements thereon (collectively, "Taxes"). Sublessee shall pay all personal property taxes, and all excise taxes on personal property and the like directly to the taxing authority, promptly when due.

7.2   In the event the taxing authorities change the manner in which Taxes are levied, charged or assessed from the present tax system, Sublessee shall pay such Taxes imposed upon the Premises under any alternative or revised system of taxation.

7.3   Sublessee shall pay estimated Taxes to Sublessor in twelve (12) equal monthly installments on the first day of each calendar month in advance, in an amount estimated by Sublessor based upon the prior year's Taxes, to be readjusted upon receipt of invoices or bills for actual Taxes. The initial monthly installment amount is stated in Paragraph 1.9 of the Basic Sublease Information.

7.4   Sublessor will determine the amount of deficiency or overpayment in Taxes for the prior tax year and any deficiency by Sublessee shall be paid within ten (10) days after demand by Sublessor and any overpayment will be credited to Sublessee. Sublessor will adjust monthly installments accordingly.

- 5 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

8.    **Acceptance of Payments by Sublessor.**

No payment by Sublessee, or acceptance by Sublessor, of a lesser amount than shall be due from Sublessee to Sublessor shall be treated otherwise than as a payment on account.  The acceptance by Sublessor of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check that such lesser amount shall constitute payment in full, shall be given no effect and Sublessor may accept such payment without prejudice to any other rights or remedies which Sublessor may have against Sublessee.  Any payment, however designated, may be accepted by Sublessor and applied against any part of Sublessee's then due Minimum Rent, Additional Rent or other obligations, or Sublessor may apply such payment against any sum then due or may retain such payment (without interest) as a credit against Sublessee's accruing future obligations.

9.    **Utilities.**

Sublessee shall pay promptly when due, directly to the appropriate utility company, charges for all sewer, water, gas, electrical current, telephone and other utilities ("Utilities") used or consumed in or at the Premises.

10.   **Net Sublease.**

It is the express intent of the parties hereto that this Sublease is a "triple-net" sublease agreement.  The parties agree that the Minimum Rent, Additional Rent, Utilities and Taxes referenced above shall be net to Sublessor so that this Sublease shall yield to Sublessor the Minimum Rent, Additional Rent, Utilities and Taxes specified during the term of this Sublease on an absolutely net basis, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the Premises shall be paid by Sublessee without notice or demand, and without set-off, counterclaim, abatement, suspension or deduction.

11.   **(Intentionally Deleted)**

12.   **Insurance on Premises.**

12.1 During the term of this Sublease, Sublessee shall provide and maintain at Sublessee's sole expense:

a.     plate glass, fire and extended coverage insurance in amounts equal to the full replacement cost of the Premises (including any

- 6 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

additions in or changes in the Premises) as such value may be from time to time. Such insurance policies shall contain a one hundred percent (100%) replacement cost endorsement and an endorsement which automatically increases coverage as a guard against inflation for the Term of this Sublease;

b.      general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises and the adjoining streets, sidewalks and passageways, with primary limits of not less than Two Million Dollars ($2,000,000.00) with respect to bodily injury or death to any one person, not less than Four Million Dollars ($4,000,000.00) with respect to injuries to two or more persons arising out of one accident, and not less than Two Million Dollars ($2,000,000.00) with respect to property damage;

c.      worker's compensation insurance or comparable insurance under applicable laws covering all persons employed in connection with any work done on or about the Premises with respect to which claims for death or bodily injury could be asserted against Prime Landlord, Sublessor, Sublessee or the Premises;

d.      such other insurance upon or with respect to the Premises or the operation thereof in such amounts and against such other insurable hazards as are required by the Franchise Agreement; and

e.      in the event and to the extent that the Prime Lease shall require any insurance coverage not hereinbefore described and/or insurance coverage in limits higher than those hereinbefore described, Sublessee at Sublessee's sole cost and expense shall keep and maintain in force during the Term of this Sublease all such insurance (both as to types of coverage and limits) as may be required under the Prime Lease.

12.2 All such insurance shall be written by companies of recognized financial standing, satisfactory to Sublessor and Prime Landlord, and be authorized to do insurance business in the state in which the Premises is located, and such insurance shall name as additional insureds Sublessor and Prime Landlord (as their respective interests may appear). Sublessor shall not be required to prosecute any claim against or to contest any settlement proposed by, any insurer; provided, that Sublessee may, at its expense, prosecute any such claim or contest any such settlement, and in such event Sublessee may bring such prosecution or contest in the name of Sublessee, and Sublessor will join therein at Sublessee's expense and written request upon the receipt by Sublessor of an indemnity from Sublessee in form and substance satisfactory to Sublessor against any and all costs, liabilities and expenses in connection with such prosecution or contest.

- 7 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

12.3  In the event any damage to or destruction of the Premises shall occur, the provisions of the Prime Lease with respect to damage or destruction shall apply, and if the Prime Lease imposes on Sublessor the obligation to repair or restore improvements or alterations, Sublessee shall be responsible for repair or restoration of improvements or alterations with respect to the Premises.  If the Prime Lease does not require otherwise, then insurance claims by reason of damage to or destruction of any portion of the Premises, shall be adjusted by Sublessee at the election of Sublessor, but Sublessor shall, at Sublessee's expense, have the right to join with Sublessee in adjusting any such loss.  The entire amount of any proceeds paid pursuant to a claim shall be payable to Sublessor.  The entire amount of any proceeds paid to Sublessor shall be delivered to Sublessee from time to time as the work of rebuilding, replacing and repairing the damage or destruction progresses and evidence is furnished by Sublessee of such rebuilding, replacement and repair of an amount at least equal to the proceeds to be paid to Sublessee.  If any proceeds of such insurance remain after final payment has been made to Sublessee for such rebuilding, replacement and repair, such remaining proceeds shall be retained by Sublessor.

12.4  Every policy required by this Paragraph 12 shall contain an agreement by the insurer that it will not cancel or modify such policy except after sixty (60) days' prior written notice sent by registered mail to Sublessor, and that any loss otherwise payable thereunder shall be payable notwithstanding any change in title or other ownership of the Premises.  Sublessee shall submit to Sublessor a binder evidencing all the insurance coverage required hereunder at the time it executes this Sublease and shall submit to Sublessor original insurance policies or certificates of insurance demonstrating Sublessee's full performance of its insurance obligations under this Sublease, together with proof of premium payment, within thirty (30) days following the execution of this Sublease.  Thereafter, Sublessee shall submit to Sublessor copies of renewal policies or renewal certificates with proof of premium payment at least twenty (20) days before the expiration of such policies.  Sublessor's receipt of information whether or not evidence of coverage shall not affect the respective rights and duties of Sublessor and Sublessee as they are stated herein.

12.5  Each party hereby waives claims against the other for property damage provided such waiver shall not invalidate the waiving party's property insurance; each party shall attempt to obtain from its insurance carrier a waiver of its insurance carrier's right of subrogation.  Subtenant hereby waives claims against Prime Landlord and Sublessor for property damage to the Premises or its contents if and to the extent that Sublessor

- 8 -

CKE # 670
Pasadena, CA

Premises arising out of the same, and pay for all permits and licenses required in connection with any such addition or alteration.

## 15.    Condemnation.

In the event of any condemnation involving the Premises, the provisions of the Prime Lease shall govern as to the party entitled to receive the award payable in connection with such taking.    Prime Landlord, Sublessor and Sublessee shall be entitled to awards payable as their respective interests may appear.    Sublessee shall be entitled to rent abatements to the extent Sublessor is entitled to abatements under the Prime Lease.

## 16.    Prime Lease Provisions.

16.1  Sublessor is the "Tenant" or "Lessee" of the Premises pursuant to the Prime Lease.  Sublessor and Sublessee hereby acknowledge and agree that this Sublease is subject and subordinate to the Prime Lease.  Sublessee acknowledges having received and reviewed the Prime Lease.  Sublessee hereby covenants and agrees that it will observe and perform all of the terms and conditions of the Prime Lease that are imposed upon Sublessor as tenant under the Prime Lease, including but not limited to payment of taxes, common area maintenance charges, insurance premiums, utilities and all other charges and amounts payable by Sublessor under the Prime Lease, such terms and conditions shall be deemed to have been incorporated herein as if set forth in full.  The obligations of and restrictions upon Sublessor as tenant under the Prime Lease shall constitute the obligations of and restrictions upon Sublessee under this Sublease, each as and to the extent applicable to the Premises.  The rights of Prime Landlord under the Prime Lease shall constitute the rights of Sublessor under this Sublease, in addition to the other rights of Sublessor under this Sublease, each as and to the extent applicable to the Premises.  In the event of a conflict between any term, condition or provision of the Prime Lease and this Sublease, or in the event that this Sublease creates additional or greater rights of and remedies to Sublessor over those granted Prime Landlord in the Prime Lease, or imposes additional or greater restrictions on or obligations of Sublessee over those imposed on Sublessor as tenant under the Prime Lease, then the terms, conditions and provisions of this Sublease shall govern in all respects the relationship between Sublessor and Sublessee.

Upon the breach of any of such terms, conditions or covenants of the Prime Lease by Sublessee or upon the failure of Sublessee to pay rent or comply with any of the provisions of this Sublease, Sublessor may exercise any and all rights and remedies granted to Prime Landlord by the Prime

- 10 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

Lease, as well as any and all rights and remedies granted to Sublessor by this Sublease.  Sublessee's rights under this Sublease shall be the same as Sublessor's rights as tenant under the Prime Lease, except as otherwise provided by this Sublease.  However, the parties acknowledge and agree that Sublessee has not been granted or assigned the leasehold estate or rights of Sublessor as tenant under the Prime Lease, or any right to purchase or right of first refusal to purchase the Premises, such estate and rights being specifically reserved by Sublessor, provided that all rights of Sublessor that are reasonably necessary for Sublessee's beneficial use and occupancy of the Premises shall be enforced or made available by Sublessor for such use and occupancy.  All notices required or permitted to be given by Sublessee under the Sublease shall be given to both Sublessor and Prime Landlord under the Prime Lease.

16.2  Notwithstanding anything in this Sublease to the contrary, if the Prime Lease imposes any obligation on Prime Landlord or if any obligation of Sublessor under this Sublease is to be performed by Prime Landlord under the Prime Lease and Prime Landlord fails to perform or delays in performance of such obligation, or otherwise defaults in its obligations under the Prime Lease, then Sublessor shall have no liability to Sublessee hereunder as a result of such failure except that Sublessor agrees to use commercially reasonable efforts, upon notice from Sublessee and at Sublessee's expense, to cause Prime Landlord to perform such obligation.  Nothing in this Sublease shall or shall be deemed to limit or restrict any right or remedy of Prime Landlord with respect to the Premises or the Prime Lease.

16.3  Notwithstanding anything in this Sublease to the contrary, any termination of the Prime Lease will cause this Sublease to be terminated as of the same time and date that the Prime Lease is terminated.

16.4  If the Prime Lease grants to Prime Landlord any rights of approval or consent or any similar term, provision or right, and if Sublessee requests from Sublessor such approval or consent, then such approval or consent of Sublessor shall not be effective unless and until Prime Landlord gives its approval or consent. Sublessor shall use commercially reasonable efforts to obtain such approval or consent of Prime Landlord, upon request of Sublessee and at Sublessee's expense.

17.  **Assignment and Subletting.**

17.1  Sublessee may transfer its interest in the Premises only through an assignment of this Sublease with Sublessor's prior written consent.  Any such assignment hereunder shall only be in connection with an assignment or transfer by Sublessee of Sublessee's rights under the Franchise

- 11 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

Agreement in accordance with the terms and provisions thereof. An assignee of the Franchise Agreement approved by Sublessor as franchisor shall be deemed approved by Sublessor as an assignee of this Sublease. Any such assignment shall also be subject to all terms of this Sublease, all duties and obligations of Sublessee hereunder shall be specifically assumed by such assignee, and shall be in a form approved by Sublessor. The consent by Sublessor to one assignment shall not be deemed to be a consent to any subsequent assignment. Unless released in writing by Sublessor, any assignment shall not relieve Sublessee of liability under this Sublease.

17.2 Neither this Sublease nor the Premises hereby subleased shall be mortgaged by Sublessee, nor shall Sublessee mortgage or pledge the interest of Sublessee in the Premises or the rentals payable thereunder without Sublessor's prior written consent.

18.    **Removal of Sublessee's Property.**

18.1 On or before the last day of this Sublease, Sublessee may remove from the Premises all furniture, trade fixtures, equipment and other movable personal property belonging to Sublessee ("Sublessee's Property"). Any damage to the Premises caused by such removal of Sublessee's Property shall be repaired in accordance with Paragraph 22 of this Sublease; in no event shall Sublessee's Property which has become permanently affixed to the Premises be removed. Notwithstanding the foregoing, Sublessee shall, at the end of the Term, or any termination of the Sublease, or upon the termination of Sublessor's right of possession hereunder, leave any improvements or other property required to be left in and on the Premises under the terms of the Prime Lease.

18.2 At the termination of this Sublease, if Sublessee has not removed Sublessee's Property from the Premises, or if this Sublease is terminated by reason of default by Sublessee, Sublessor may, at its option, either, (a) exercise any rights of Sublessor under the Franchise Agreement to purchase Sublessee's Property, or (b) remove Sublessee's Property from the Premises, the costs and expense for such to be for Sublessee's account, which shall be paid in full by Sublessee immediately upon demand by Sublessor, or, at Sublessor's option, deducted from the Security Deposit, or both to the extent necessary to fully pay said costs and expense.

19.    **Access to Premises.**

Sublessor, its agents, servants and employees may enter the Premises upon reasonable notice to Sublessee, which may be oral, for the purpose of

- 12 -

CKE # 670
Pasadena, CA

inspecting the Premises or for the purpose of exercising Sublessor's rights and remedies under this Sublease, the Franchise Agreement or under law.

20.    **Default.**

Sublessee shall be in default if Sublessee:

a.    shall fail to pay when due any Minimum Rent, Monthly Installments thereof, Additional Rent, Utilities, Taxes or other payment required hereunder;

b.    breaches any provision of this Sublease;

c.    assigns, mortgages, sublets, or transfers any interest in this Sublease or in the Premises without Sublessor's prior consent;

d.    causes or allows a default to exist under the Prime Lease;

e.    violates any covenant, term or condition of the Franchise Agreement, any note or other agreement between Sublessee and Sublessor or any of its affiliates;

f.    shall fail to remedy immediately after receipt of notice from Sublessor, any hazardous condition which Sublessee has created or suffered in breach of Sublessee's obligations under this Sublease;

g.    fails to comply with any statute, ordinance, rule or regulation of any governmental body; or

h.    files or has filed against it a petition in bankruptcy, insolvency, or for reorganization or arrangement pursuant to any Federal or state statute.

21.    **Remedies.**

In the event of any default hereof by Sublessee which shall not have been cured within five (5) days, in the case of monetary default, after Sublessee receives notice specifying such default, or within fifteen (15) days after Sublessee receives such notice if such default is not for the payment of money, then Sublessor shall have the option to take any or all of the following actions, without further notice or demand of any kind to Sublessee or any other person:

a.    Collect by suit or otherwise each installment of Minimum Rent, Additional Rent or other sum as it becomes due hereunder, or enforce, by

- 13 -

CKE # 670
Pasadena, CA

suit or otherwise, any other term or provision hereof on the part of Sublessee required to be kept or performed.

b.    Sublessor may terminate this Sublease upon the delivery of notice thereof to Sublessee and Sublessor shall have the right to immediate possession of the Premises and Sublessee shall peacefully surrender possession of the Premises to Sublessor. In the event Sublessee holds the Premises beyond the termination of the Term, Sublessor shall have the right to recover Sublessor's cost in recovering possession of the Premises (including, without limitation, attorneys' fees and litigation costs), such amounts as may be permitted under applicable law and any other amounts due and payable to Sublessor hereunder including, without limitation, past-due rent.

c.    Sublessor, without terminating this Sublease, shall have the right to terminate Sublessee's right to possess the Premises and to recover possession thereof and Sublessee shall peacefully surrender the Premises to Sublessor. Sublessor, at Sublessor's option, may cause the Premises to be prepared for reletting, and may relet the Premises or any part thereof as agent of Sublessee, for a term to expire prior to, at the same time as, or subsequent to the expiration of the Term, at Sublessor's option. In the event of such reletting, Sublessor shall receive the rents therefor, applying the same first, to the repayment of reasonable expenses as Sublessor may have incurred in connection with said resumption of possession, preparing for reletting and reletting (including, without limitation, remodeling costs, brokerage and attorneys' fees), and, second, to the payment of damages and amounts equal to the Rent and Additional Rent due hereunder and to the cost of performing the other obligations of Sublessee as herein provided. Sublessee, regardless of whether Sublessor has relet the Premises, shall pay to Sublessor damages equal to the Rent and Additional Rent herein agreed to be paid by Sublessee less the proceeds of the reletting, if any, and such rent shall be due and payable by Sublessee on the days on which rent is due hereunder. No such reentry and reletting of the Subleased Premises by Sublessor shall be construed as an election on its part to terminate this Sublease unless a written notice of such intention be given to Sublessee pursuant to subsection (b) above, or unless the termination thereof be decreed by a court of competent jurisdiction. Notwithstanding any such reletting without termination, Sublessor may at any time thereafter elect to terminate this Sublease for such previous breach.

d.    Sublessor may perform for Sublessee any of the obligations Sublessee has agreed to perform hereunder if Sublessee has defaulted in the performance of such obligations. Upon demand, Sublessee shall reimburse Sublessor for Sublessor's cost of performing for Sublessee together with

- 14 -

CKE # 670
Pasadena, CA

interest thereon at a rate equal to eighteen percent (18%) per annum, compounded monthly (or such lesser amount as may be the maximum amount permitted by law). Any amounts so expended by Sublessor shall be immediately due and payable and the failure of Sublessee to pay such amounts shall entitle Sublessor to all of the rights and remedies available to it as if Sublessee had defaulted in the payment of rent.

e.     Sublessee shall pay to Sublessor a late charge equal to four percent (4%) of the amount of any installment of Minimum Rent or Additional Rent if such installment becomes more than ten (10) days past due.

f.     Sublessor may exercise any rights allowed Prime Landlord under the Prime Lease.

The remedies given to Sublessor in this Section shall be in addition and supplemental to all other rights or remedies which Sublessor may have under the laws then in force, but subject to the laws of the State of California.

22.   **Surrender of Possession by Sublessee.**

Upon the expiration or earlier termination of this Sublease, or upon termination of Sublessor's right of possession hereunder, at any time and for any reason, Sublessee promptly and peaceably shall surrender to Sublessor the Premises, together with all improvements, fixtures and equipment belonging to Sublessor or Prime Landlord, their agents, servants or employees, in good condition and repair, normal wear and tear excepted. There shall be no holding over of the Premises by Sublessee.

23.   **Sublessor's Waiver.**

Sublessor's failure at any time or from time to time to require strict compliance by Sublessee with the provisions of this Sublease shall neither waive nor prejudice Sublessor's continued right to insist upon the due and timely performance of this Sublease and to avail itself of all remedies provided by law or by this Sublease.

24.   **Governing Law.**

The invalidity or unenforceability of any provision of this Sublease shall not affect or impair any other provision. If any provision of this Sublease is capable of two constructions, one of which would render the provision invalid and the other of which would make the provision valid, then

- 15 -

CKE # 670
Pasadena, CA

the provision shall have the meaning which renders it valid.  The laws of the State of California shall govern the validity, performance, and enforcement of this Sublease.  The submission of this document for examination does not constitute an offer to lease or to sublease and becomes effective only upon execution and delivery thereof by Sublessor and Sublessee.

### 25.   Recording of Sublease.

This Sublease shall not be recorded, but either party may execute and record a memorandum of sublease.  Each party agrees to sign, upon request of the other, such memorandum, in reasonably acceptable form.

### 26.   Sublessee as Independent Contractor.

Sublessee is and shall remain an independent contractor and shall have no authority to act as an agent of Sublessor or power to bind Sublessor in any manner. This Sublease shall not create any relationship of employer-employee, trustee-beneficiary, principal-agent, partnership or joint venture.

### 27.   Sublessee's Inspection.

Sublessee warrants and covenants that Sublessee has made all necessary or desirable examinations, inspections and inquiries regarding the Premises and has consulted with such professional advisors as Sublessee deems necessary or desirable to satisfy Sublessee at Sublessee's discretion and on Sublessee's own initiative, that the Premises is acceptable to Sublessee, that this Sublease is lawful in substance and in form, and that Sublessee is financially prepared to assume any and all risks and obligations of any kind that may be involved in becoming Sublessee.  SUBLESSEE HEREBY ACCEPTS THE PREMISES "AS IS, WHERE IS, AND WITH ALL FAULTS" WITH NO REPRESENTATION OR WARRANTY OF SUBLESSOR AS TO THE CONDITION THEREOF.

### 28.   No Other Assurances.

Sublessee has entered into this Sublease in reliance upon its provisions and upon the provisions of the Prime Lease, including any amendments, supplements and extensions, and not in reliance upon any alleged assurances, representations and warranties made by Sublessor, its officers, directors, agents, servants or employees.

- 16 -

CKE # 670
Pasadena, CA

29.   **Brokers.**

Each party represents and warrants to the other that it has not directly or indirectly dealt with any broker or agent relative to this Sublease or had its attention called to the Premises by any broker or agent and agrees to indemnify, defend and hold the other party harmless from and against any and all claims for commission arising out of the execution and delivery of this Sublease.

30.   **Notices.**

Where this Sublease requires notices to be given, except where it expressly provides to the contrary, all such notices shall be in writing and shall be deemed given on the date of personal delivery or the lesser of (a) three (3) business days or (b) the period if any for deemed delivery after mailing specified in the Prime Lease after deposit in the United States Mail when mailed by certified mail, postage prepaid, addressed to the party entitled to receive the notice at the address stated in Paragraph 1.11 in the Basic Sublease Information or at such other address as the party to receive the notice last may have designated for such purpose by notice given to the other party.

31.   **Miscellaneous.**

31.1  When the sense so requires, words of any gender used in this Sublease shall be held to include any other gender and words in the singular shall be held to include the plural.  "Sublessee" shall include the heirs, executors, administrators and personal representatives of any individual Sublessee as well as Sublessee's assigns (subject to Sublessor's prior written consent) and the successor of any incorporated Sublessee unless the context precludes such construction.  The captions or headings of particular paragraphs or parts of this Sublease are inserted for convenience only and shall not affect the meaning of this Sublease as a whole, or any paragraph or any part of it.

31.2  No alleged modifications, termination or waiver of this Sublease shall be binding unless it is set out in writing and signed by the party against whom or which it is sought to be enforced.  Any document or writing to be binding on Sublessor, whether this Sublease or any amendment, supplement or extension, must be signed by both Sublessee and Sublessor, the latter acting through its President or a Vice President.

- 17 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

32.   **Sole Understanding of Parties.**

This Sublease, the Franchise Agreement and that certain Asset Purchase Agreement between Sublessor and Sublessee, dated as of July 19, 2000, and related documents, instruments and agreements, contain the entire understanding between the parties with respect to their respective subject matter, the Premises, and all aspects of the relationship between Sublessee and Sublessor.

**[Signatures Follow on Next Page]**

- 18 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

CKE # 670
Pasadena, CA

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first written above.

SUBLESSOR:

**CARL KARCHER ENTERPRISES, INC.**
A California Corporation

By: _____

_____
(Print Name)

_____ (Title)

By: _____
Robert A. Wilson
Senior Vice President

SUBLESSEE:

DFG RESTAURANTS, INC.
~~SENIOR CLASSIC LEASING, LLC~~
A California Limited Liability Company

By: _____
Harshad Dharod
Majority Member

- 19 -

E:\CKE\Dharod\Agr\Subleases\#670 Pasadena

## EXHIBIT "A"

### Legal Description

LOT 8 OF TRACT NO. 25919, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 909, PAGE 74 AND 75 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL WATER IN AND UNDER SAID LAND AND RIGHTS IN RELATION THERETO.

Assessor's Parcel No: 5757-022-031

CKE #670/7495
Pasadena, CA

## FIRST AMENDMENT TO SUBLEASE

THIS **FIRST AMENDMENT TO SUBLEASE** ("First Amendment") is made and entered into as of the _____ day of _____ 2016 ("Effective Date") by and between **CARL'S JR. RESTUARANTS LLC**, a Delaware limited liability company, successor-in-interest to CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor") and **DFG RESTAURANTS, INC.**, a California corporation, successor-in-interest to Steve Larson ("Sublessee") .

## R E C I T A L S

A.    By a Ground Lease dated November 7, 1996, as thereafter amended, ("Prime Lease") Pasadena-Hastings Center, a California limited partnership ("Prime Landlord") leased to Sublessor certain real property together with improvements thereon and appurtenances thereto, commonly known as 485 N. Rosemead, Pasadena, California 91107 ("Premises");

B.    Sublessor and Sublessee entered into a written Sublease dated October 27, 2000 (the "Sublease") whereby Sublessor is subleasing to Sublessee, and Sublessee is subleasing from Sublessor the Premises.

C.    The Term of the Sublease expires on March 1, 2017 pursuant to Section 1.5(a) of the Sublease.  The Sublessee has one (1) option to extend the term of the Sublease for the period from March 2, 2017 through March 1, 2022 ("Option Term");

D.    Sections 1.7 and 6.1 of the Sublease provides for certain Minimum Rent payable by Sublessee to Sublessor during the Term, all as more particularly set forth in such Sections;

E.    Sublessee and Sublessor now desire to amend the Sublease to provide for the exercise of the Option to extend and renew the Term of the Sublease, to provide for the extension of the Term, to provide for Minimum Rent payable by Sublessee to Sublessor during certain periods of the Term of the Sublease, to provide for an Administrative Fee, to provide for a remodeling of the Premises, and other matters as set forth below;

## A G R E E M E N T

NOW, **THEREFORE,** in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2.    All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this First Amendment.

CKE #670/7495
Pasadena, CA

3.      Sublessee hereby exercises its Option to extend and renew the Term of the Sublease for the period from March 2, 2017 through and including March 1, 2022 ("Option Period") upon all of the same terms and conditions of the Sublease; and Sublessor hereby accepts the exercise by Sublessee of Sublessee's option to extend and renew the Term of the Sublease for the Option Period.

4.      Section 1.5(a) of the Sublease is hereby amended to provide that the Term of the Sublease shall be extended for an additional five (5) years following the Option Period so that the Term of the Sublease shall now expire on February 28, 2027 ("Extended Period").

5.      Sublessee hereby acknowledges that pursuant to the Fifth Amendment to the Prime Lease, Sections 1.7 and 6.1 of the Sublease, shall now provide that commencing March 1, 2017 as Minimum Rent for the Premises, Sublessee shall pay to Sublessor the following amounts during the following periods of time:

| Period | Annual Minimum Rent | Monthly Minimum Rents |
| --- | --- | --- |
| From 03/01/2017 through 02/28/2022 | $ 127,440.00 | $ 10,620.00 |
| From 03/01/2022 through 02/28/2027 | 146,556.00 | 12,213.00 |

6.      Commencing on March 1, 2022, Sublessee shall pay to Sublessor an Administrative Fee at the rate of Two Thousand Five Hundred Dollars ($2,500.00) per year, payable in installments of Two Hundred Eight and 33/100 Dollars ($208.33) per month.  The Administrative Fee shall be payable by Sublessee to Sublessor along with Sublessee's payment of Monthly Minimum Rent and shall be payable as Additional Rent.

7.      Sublessee hereby agrees to complete a Contemporary Star Remodel project as described in the Memorandum from Michael Murphy dated March 21, 2016, a copy of which is attached hereto as Exhibit "A," (the "Contemporary Star Memorandum") upon the Premises (the "Remodel Work"). Such Remodel Work shall be completed no later than the date set forth for the completion of such Remodel Work in the Contemporary Star Memorandum and shall conform to Sublessor's standard plans and specifications for the Contemporary Star Remodel Work. To the extent required by the Prime Lease, Sublessee shall coordinate with Sublessor to obtain the prior written consent of the Prime Landlord to the plans and specifications for the Contemporary Star Remodel Work. Sublessee hereby agrees to give the Prime Landlord and Sublessor not less than thirty (30) days prior written notice stating the date that such Contemporary Star Remodel Work shall commence on the Premises.

All such Remodel Work shall be performed in accordance with the requirements of and pursuant to the terms of the Prime Lease, the Sublease and all applicable laws and governmental requirements, including without limitation all permitting and building requirements of the local governmental agency with jurisdiction over the same and keeping the Premises and improvements throughout free and clear of mechanic's liens, all at Sublessee's sole cost and expense.

All Remodel Work shall be performed by licensed contractors. Sublessee agrees to indemnify, defend and hold Sublessor and Prime Landlord harmless from and against all losses, liabilities, damages, judgments, claims, expenses, penalties and attorneys' fees arising out of or involving the Contemporary Star Remodeling Project, including without

C:\Users\AlexKalinsky\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\ZT61OBKT\1stSubleaseAmendment01.docx
October 6, 2016

CKE #670/7495
Pasadena, CA

limitation any disputes arising between the Sublessee and Sublessee's contractors or consultants.

8.      Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

9.      To the extent, if any, that the terms, covenants or conditions of this First Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this First Amendment shall control.

10.      This First Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  This First Amendment shall have no force or effect unless and until each party executes and delivers this First Amendment to the other party.

11.      Each of the persons executing this First Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this First Amendment and that each person signing on said party's behalf is authorized to do so.

12.      The parties acknowledge and agree that this First Amendment shall be interpreted as if it was drafted jointly by all of the parties, and that neither this First Amendment, nor any provision within it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney.  Any exhibits attached hereto are hereby incorporated herein by this reference.

13.      This First Amendment along with any exhibits and attachments or other documents affixed hereto, or referred to herein, constitutes the entire and exclusive agreement between Sublessor and Sublessee with respect to the subject matter of this First Amendment.   Sublessor and Sublessee hereby agree that all prior or contemporaneous oral or written understandings, agreements or negotiations relative to the subject matter of this First Amendment which were acceptable to both parties have been merged into this First Amendment and are included herein.

**[SIGNATURES TO FOLLOW ON NEXT PAGE]**

CKE #670/7495
Pasadena, CA

**IN WITNESS WHEREOF**, the parties hereto have executed this First Amendment effective as of the date first above written.

Date: _____, 2016          **SUBLESSOR:**

**CARL'S JR. RESTUARANTS LLC**
A Delaware Limited Liability Company


By: _____
                 Kathy Steininger
                 Vice President, Real Estate Asset Management


Date: ___10/6_____, 2016          **SUBLESSEE:**

**DFG RESTARAUNTS, INC.**
A California Corporation

By: _____
Name: _____Alex Kalinsky_____
Title: _____General Counsel_____

C:\Users\AlexKalinsky\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\ZT61OBKT\1stSubleaseAmendment01.docx
October 6, 2016

7495

# SECOND AMENDMENT TO SUBLEASE

THIS SECOND AMENDMENT TO SUBLEASE ("Amendment") is made and entered into as of the _16th_ day of _March_____, _2018_ (the "Effective Date") by and between CARL'S JR. RESTAURANTS LLC, a Delaware limited liability company ("Sublessor"), and DFG RESTAURANTS, INC., a California corporation ("Sublessee").

## RECITALS

A.      Sublessor and Sublessee entered into a certain Sublease dated October 27, 2000 as amended by a First Amendment to Sublease dated as of October 27, 2016 (as amended, the "Sublease") concerning certain real property, together with all improvements thereon, commonly known as 485 N. Rosemead, Pasadena, California ("Premises");

B.      Sublessor and Sublessee acknowledge and agree that the Extended Period of the Sublease is currently scheduled to expire on February 28, 2027 without any further options to extend the Extended Period; and

C.      Sublessee and Sublessor desire to amend the Sublease to add one (1) five (5) year option to renew and extend the Sublease upon the terms set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

·   1.   Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2.   All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this Amendment.

3.   Section 1.5.b. of the Sublease is hereby modified and amended to add one (1) additional consecutive five (5) year Option Term to renew and extend the Term of the Sublease as follows:

March 1, 2027 through and including February 29, 2032

Each Option Term shall be subject to the same terms, covenants, and conditions as set forth in the Sublease, as amended hereby, including without limitation the provisions of Section 3 of the Sublease.

4.   Section 1.7 of the Sublease is hereby amended to include, immediately after the currently existing Section 1.7, the following Paragraphs 1.7.b and 1.7.c:

"b.      Effective March 1, 2027, Sublessee shall pay to Sublessor annually, within fifteen (15) days after the close of each year of the Option Term, the amount, if any,

Pasadena, CA
485 N. Rosemead
Unit #1100670
2244872.1

by which eight percent (8%) of Sublessee's Gross Sales during such year exceeds the Minimum Rent paid for such year ("Percentage Rent").

"c.    "Gross Sales" shall mean for all purposes hereof the aggregate of the following:

(1) The total amount of all sales made upon the Premises from the operation of the business conducted on the Premises, and

(2) All other business done upon the Premises which in standard use and accepted accounting practices are gross sales of Sublessee except the following: (a) the sale price of returned merchandise, (b) sales and/or exchanges made to or with other restaurants operated by Sublessee, (c) bulk sales of inventory incidental to the sale of the business of Sublessee, (d) any sales tax or similar tax levied on the sales by Sublessee and paid by customers, (e) coupons, discounts, or credits or allowances on merchandise sold, and (f) incidental sales of furniture, fixtures and equipment."

5.    Section 6 of the Sublease is hereby amended to include an additional paragraph, Paragraph 6.5, as follows:

"6.5    As further and additional rent, Sublessee covenants and agrees to pay to Sublessor Percentage Rent as provided in Paragraph 1.7.b of the Basic Sublease Information."

6.    Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

7.    To the extent, if any, that the terms, covenants or conditions of this Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this Amendment shall control.

8.    This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Amendment shall have no force or effect unless and until each party executes and delivers this Amendment to the other party.

9.    Each of the persons executing this Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Amendment and that each person signing on said party's behalf is authorized to do so.

10. The parties acknowledge and agree that this Amendment shall be interpreted as if it were drafted jointly by all of the parties, and that neither this Amendment, nor any provision within

Pasadena, CA
485 N. Rosemead
Unit #1100670
2244872.1

it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney. Any exhibits attached hereto are hereby incorporated herein by this reference.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the Effective Date.

SUBLESSOR:

CARL'S JR. RESTAURANTS LLC
a Delaware limited liability company

By: _____
Name: _____
Title: _____

SUBLESSEE:

DFG RESTAURANTS, INC.
a California corporation

By: _____
Name: _____
Title: _____

*[Signature Page to Second Amendment to Sublease Unit #1100670]*

Pasadena, CA
485 N. Rosemead
Unit #1100670
2244872.1

CKE #670/7495
Pasadena, CA

## FIRST AMENDMENT TO SUBLEASE

THIS FIRST AMENDMENT TO SUBLEASE ("First Amendment") is made and entered into as of the _27th_ day of __October__ 2016 ("Effective Date") by and between **CARL'S JR. RESTUARANTS LLC**, a Delaware limited liability company, successor-in-interest to CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor") and **DFG RESTAURANTS, INC.**, a California corporation, successor-in-interest to Steve Larson ("Sublessee") .

## R E C I T A L S

A.     By a Ground Lease dated November 7, 1996, as thereafter amended, ("Prime Lease") Pasadena-Hastings Center, a California limited partnership ("Prime Landlord") leased to Sublessor certain real property together with improvements thereon and appurtenances thereto, commonly known as 485 N. Rosemead, Pasadena, California 91107 ("Premises");

B.     Sublessor and Sublessee entered into a written Sublease dated October 27, 2000 (the "Sublease") whereby Sublessor is subleasing to Sublessee, and Sublessee is subleasing from Sublessor the Premises.

C.     The Term of the Sublease expires on March 1, 2017 pursuant to Section 1.5(a) of the Sublease.  The Sublessee has one (1) option to extend the term of the Sublease for the period from March 2, 2017 through March 1, 2022 ("Option Term");

D.     Sections 1.7 and 6.1 of the Sublease provides for certain Minimum Rent payable by Sublessee to Sublessor during the Term, all as more particularly set forth in such Sections;

E.     Sublessee and Sublessor now desire to amend the Sublease to provide for the exercise of the Option to extend and renew the Term of the Sublease, to provide for the extension of the Term, to provide for Minimum Rent payable by Sublessee to Sublessor during certain periods of the Term of the Sublease, to provide for an Administrative Fee, to provide for a remodeling of the Premises, and other matters as set forth below;

## A G R E E M E N T

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

2.     All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this First Amendment.

-1-
C:\Users\AlexKalinsky\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\ZT61OBKT\1stSubleaseAmendment01.docx

October 6, 2016

CKE#670/7495
Pasadena, CA

3.      Sublessee hereby exercises its Option to extend and renew the Term of the Sublease for the period from March 2, 2017 through and including March 1, 2022 ("Option Period") upon all of the same terms and conditions of the Sublease; and Sublessor hereby accepts the exercise by Sublessee of Sublessee's option to extend and renew the Term of the Sublease for the Option Period.

4.      Section 1.5(a) of the Sublease is hereby amended to provide that the Term of the Sublease shall be extended for an additional five (5) years following the Option Period so that the Term of the Sublease shall now expire on February 28, 2027 ("Extended Period").

5.      Sublessee hereby acknowledges that pursuant to the Fifth Amendment to the Prime Lease, Sections 1.7 and 6.1 of the Sublease, shall now provide that commencing March 1, 2017 as Minimum Rent for the Premises, Sublessee shall pay to Sublessor the following amounts during the following periods of time:

| Period | Annual Minimum Rent | Month/l.. Minimum Rents |
|---|---|---|
| From 03/01/2017 through 02/28/2022 | $ 127,440.00 | $ 10,620.00 |
| From 03/01/2022 through 02/28/2027 | 146,556.00 | 12,213.00 |

6.      Commencing on March 1, 2022, Sublessee shall pay to Sublessor an Administrative Fee at the rate of Two Thousand Five Hundred Dollars ($2,500.00) per year, payable in installments of Two Hundred Eight and 33/100 Dollars ($208.33) per month. The Administrative Fee shall be payable by Sublessee to Sublessor along with Sublessee's payment of Monthly Minimum Rent and shall be payable as Additional Rent.

7.      Sublessee hereby agrees to complete a Contemporary Star Remodel project as described in the Memorandum from Michael Murphy dated March 21, 2016, a copy of which is attached hereto as Exhibit "A," (the "Contemporary Star Memorandum") upon the Premises (the "Remodel Work"). Such Remodel Work shall be completed no later than December 31, 2019, and shall conform to Sublessor's standard plans and specifications for the Contemporary Star Remodel Work. To the extent required by the Prime Lease, Sublessee shall coordinate with Sublessor to obtain the prior written consent of the Prime Landlord to the plans and specifications for the Contemporary Star Remodel Work. Sublessee hereby agrees to give the Prime Landlord and Sublessor not less than   thirty
(30) days prior written notice stating the date that such Contemporary Star Remodel Work shall commence on the Premises.

All such Remodel Work shall be performed in accordance with the requirements of and pursuant to the terms of the Prime Lease, the Sublease and all applicable laws and governmental requirements, including without limitation all permitting and building requirements of the local governmental agency with jurisdiction over the same and keeping the Premises and improvements throughout free and clear of mechanic's liens, all at Sublessee's sole cost and expense.

All Remodel Work shall be performed by licensed contractors. Sublessee agrees to indemnify, defend and hold Sublessor and Prime Landlord harmless from and against all losses, liabilities, damages, judgments, claims, expenses, penalties and attorneys' fees arising out of or involving the Contemporary Star Remodeling Project,   including without

- 2 -

October 6, 2016

CKE #670/7495
Pasadena, CA

limitation any disputes arising between the Sublessee and Sublessee's contractors or consultants.

8.      Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

9.      To the extent, if any, that the terms, covenants or conditions of this First Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this First Amendment shall control.

10.      This First Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This First Amendment shall have no force or effect unless and until each party executes and delivers this First Amendment to the other party.

11.      Each of the persons executing this First Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this First Amendment and that each person signing on said party's behalf is authorized to do so.

12.      The parties acknowledge and agree that this First Amendment shall be interpreted as if it was drafted jointly by all of the parties, and that neither this First Amendment, nor any provision within it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney. Any exhibits attached hereto are hereby incorporated herein by this reference.

13.      This First Amendment along with any exhibits and attachments or other documents affixed hereto, or referred to herein, constitutes the entire and exclusive agreement between Sublessor and Sublessee with respect to the subject matter of this First Amendment.   Sublessor and Sublessee hereby agree that all prior or contemporaneous oral or written understandings, agreements or negotiations relative to the subject matter of this First Amendment which were acceptable to both parties have been merged into this First Amendment and are included herein.

**[SIGNATURES TO FOLLOW ON NEXT PAGE]**

CKE #670/7495
Pasadena, CA

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment effective as of the date first above written.

Date: _____Oct. 27_____, 2016        SUBLESSOR:

CARL'S JR. RESTUARANTS LLC
A Delaware Limited Liability Company

By: _____
Kathy Steininger
Vice President, Real Estate Asset Management

Date: _____10/6_____, 2016        SUBLESSEE:

DFG RESTARAUNTS, INC.
A California Corporation

By: _____
Name: _____Alex Kalinsky_____
Title: _____General Counsel_____

- 4 -
C:\Users\AlexKalinsky\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\ZT61OBKT\1stSubleaseAmendment01.docx
October 6, 2016

ENtity: SCL

STORE#: 7380

SUBLEASE I

Exp Date: 10/31/2008

CKE # 255
San Gabriel, CA

## SUBLEASE

THIS SUBLEASE AGREEMENT ("Sublease") dated as of the Sublease Date, is made and entered into by and between Sublessor and Sublessee. Sublessor and Sublessee hereby agree as follows:

1. **Basic Sublease Information.**

All capitalized words not defined herein shall have the meanings ascribed to them in this Section entitled "Basic Sublease Information." The Basic Sublease Information contained herein is an integral part of the Sublease.

1.1 Sublease Date. This Sublease shall be effective on *DEC 2 2*, 2000 ("Sublease Date").

1.2. Sublessor. CARL KARCHER ENTERPRISES, INC., a California corporation, ("Sublessor").

1.3. Sublessee. SENIOR CLASSIC LEASING, LLC, a California limited liability company, ("Sublessee").

1.4. Premises. The premises subleased hereunder is described in attached Exhibit "A" hereto and incorporated herein by reference ("Premises"). Sublessor is possessed of the Premises pursuant to a lease between Sublessor, as the lessee, and E. James Stanley and Rhoda M. Stanley, Trustees under the Stanley Family Trust Dated May 23, 1978, as the lessor ("Prime Landlord") dated June 30, 1978 as amended July 11, 1978, September 24, 1978 and November 7, 2000 ("Prime Lease"). The Premises is located at 505 West Las Tunas Avenue, San Gabriel, California 91776. Sublessor has constructed on the Premises certain improvements for use as a "Carl's Jr. Restaurant." The Premises is referred to by Sublessor as Unit No. 255.

1.5 Term.

a. The primary term of this Sublease will be from Sublease Date to October 31, 2008 ("Primary Term").

b. Three (3) additional consecutive terms of this Sublease will be from:
November 1, 2008 to October 31, 2013,
November 1, 2013 to October 31, 2018, and
November 1, 2018 to October 31, 2023,

- 1 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

(each referred to as "Option Term" and collectively "Option Terms").

The Primary Term and the Option Term or Option Terms, as the case may be, are hereinafter collectively referred to as the "Term."

1.6.    Use.    Sublessee shall use the Premises only for a "Carl's Jr. / Green Burrito Dual Concept Restaurant" pursuant to Paragraph 5.1 of this Sublease.

1.7.    Rent.

a.    Minimum rent pursuant to Paragraph 6.1 of this Sublease, and subject to adjustment as provided therein, shall be the minimum or fixed rent which Sublessor is required to pay under the Prime Lease ("Minimum Rent"). Commencing on the Sublease Date, the Minimum Rent shall be $51,300.00 per year.

b.    Sublessee shall pay to Sublessor annually, within fifteen (15) days after the close of each "Lease Year" as defined in the Prime Lease, the amount, if any, by which five percent (5%) of Sublessee's gross sales (which is the percentage of annual gross sales now required to be applied under the Prime Lease) during such Lease Year exceeds the Minimum Rent paid for such Lease Year ("Percentage Rent").

c.    "Gross Sales" as used herein, shall mean for all purposes hereof the aggregate of the following:

(1)    The total amount of all sales made upon the Premises from the operation of the business conducted on the Premises, and

(2)    All other business done upon the Premises which in standard use and accepted accounting practices are gross sales of Sublessee except the following:  (a) the sale price of returned merchandise, (b) sales and/or exchanges made to or with other restaurants operated by Sublessee, (c) bulk sales of inventory incidental to the sale of the business of Sublessee, (d) any sales tax or similar tax levied on the sales by Sublessee and paid by customers, (e) coupons, discounts, or credits or allowances on merchandise sold, and (f) incidental sales of furniture, fixtures and equipment.

1.8.    Rent Commencement Date.    Rent shall commence on the Sublease Date ("Rent Commencement Date").

1.9.    Taxes. Pursuant to Paragraph 7.3 of this Sublease, Sublessee's liability for Taxes, as hereinafter defined, shall commence on the Rent Commencement Date and shall be paid in twelve (12) equal monthly installments in advance.  Sublessee's initial monthly installment of Taxes shall be $930.

- 2 -

CKE # 255
San Gabriel, CA

1.10    (Intentionally Deleted)

1.11.  Notice Address.  The addresses for all notices under this Sublease are:

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
One City Boulevard West,  Suite 350
Orange, CA  92868-3621
ATTN: Real Estate Asset Management
Telephone no. (714) 940-3441
Facsimile no. (714) 940-3444

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
1 Centerpointe Dr., Suite 405
La Palma, CA 90623-1052
Telephone no. (714) 736-8900
Facsimile no. (714) 736-8909

With copy to:
General Counsel
CARL KARCHER ENTERPRISES, INC.
401 W. Carl Karcher Way
Anaheim, California 92801
Telephone no. (714) 778-7133
Facsimile no.  (714) 520-4485

1.12.  Landlord Consent.  If the Prime Lease requires that the consent of Prime Landlord be obtained prior to the effectiveness of this Sublease, then, notwithstanding anything to the contrary contained in this Sublease, this Sublease and the obligations of Sublessor under this Sublease shall be subject to receipt by Sublessor of Prime Landlord's written consent and approval of the terms and conditions hereof substantially in the form of attached Exhibit "B." Sublessee agrees to provide Sublessor with any and all information required by Prime Landlord with respect to the business and financial condition of Sublessee in order for Prime Landlord to consent to this Sublease, and Sublessee hereby authorizes Sublessor to disclose to Prime Landlord any such information which may have been delivered to Sublessor.  If required by the Prime Lease, Sublessor will reimburse Prime Landlord for reasonable expenses, including attorney's fees, incurred by Prime Landlord to review of any request for consent to this Sublease.

2.    Demise of Premises.

In consideration of the rent and other sums to be paid by Sublessee, and of the other terms, covenants and conditions on Sublessee's part to be kept and performed, Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises and the improvements thereon.

3.    Term and Extensions of Term.

- 3 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

The Primary Term of this Sublease shall commence and terminate as stated in Paragraph 1.5.a of the Basic Sublease Information. Sublessee shall have the right to extend the Primary Term of this Sublease for the Option Terms as stated in Paragraph 1.5.b of the Basic Sublease Information, provided Sublessee is not in default of this Sublease on the date Sublessee exercises its option to extend or on the last day of the Primary Term or respective additional term. Sublessee may only exercise the third option to extend (commencing November 1, 2018) if Sublessee has extended or then extends the Franchise Agreement and has paid Sublessor, as franchisor, any applicable franchise renewal or extension fee.

Sublessee shall exercise such option to extend, if it so elects, by written notice delivered to Sublessor not less than two hundred ten (210) days prior to the expiration of the Primary Term. If Sublessee timely exercises the option to extend the Sublease term, Sublessor shall timely exercise its corresponding option to extend the term under the Prime Lease.

4.     **Title and Condition.**

4.1     The Premises is subleased subject to (a) the existing state of title to the Premises as of the Sublease Date; (b) any state of facts which a survey or physical inspection of the Premises might show; and (c) all zoning regulations, restrictions and other laws and regulations now in effect or hereafter adopted by any governmental authority having jurisdiction over the Premises. The buildings, structures and other improvements comprising a part of the Premises are subleased subject to their condition as of the Sublease Date, and Sublessor does not make any representation or warranty, either express or implied, as to the condition of the Premises or as to the adequacy or suitability of the Premises for the purposes or needs of Sublessee.

4.2     Sublessee warrants and represents to Sublessor that Sublessee has examined the condition of the Premises prior to the execution and delivery of this Sublease and has found the Premises to be satisfactory for all Sublessee's purposes. Sublessee agrees that Sublessor shall have no responsibility or obligation for expenses with respect to the care, maintenance or operation and conduct of business on the Premises regardless of the nature of the expense.

5.     **Use of Premises.**

Sublessor, as franchisor, and Sublessee, as franchisee, have executed concurrently with the execution of this Sublease, a Carl's Jr. / Green Burrito Dual Concept Restaurant Franchise Agreement ("Franchise Agreement") for the operation of a Carl's Jr. / Green Burrito Dual Concept Restaurant on the Premises. Any event of default by Sublessee under the Franchise Agreement

- 4 -

CKE # 255
San Gabriel, CA

shall be an event of default under this Sublease, subject to any rights of Sublessee under the Franchise Agreement to cure such default.

Sublessee shall use the Premises for a Carl's Jr. / Green Burrito Dual Concept Restaurant and for no other purpose without Sublessor's prior written consent. Such use shall be in a lawful, safe, careful and proper manner, and Sublessee shall not commit or permit any waste or allow the continuance of any nuisance. Sublessee shall carefully preserve, protect, control and guard the Premises from damage, shall maintain the Premises in good repair and shall comply with all requirements imposed by governmental authorities and by insurers of the Premises. Sublessee represents, warrants and covenants to Sublessor that Sublessee shall not cause or permit any hazardous substance or toxic waste to be handled, generated, stored, treated, disposed of or released on, in or about the Premises.

6.    **Rent and Percentage Rent.**

6.1    Sublessee covenants and agrees to pay to Sublessor Minimum Rent in the amount stated in Paragraph 1.7.a of the Basic Sublease Information commencing on the Rent Commencement Date. Except as provided in Paragraph 6.2 below, Sublessee shall pay to Sublessor, at the address set forth in Paragraph 1.11 of the Basic Sublease Information, Minimum Rent in twelve (12) equal monthly installments ("Monthly Installments") in advance on the first day of each month during the Term hereof. Rent shall be prorated for any partial year or partial month.

Minimum Rent shall be adjusted on the dates required by and to amount of the fixed or minimum rent which Sublessor is then required to pay under the Prime Lease.

6.2    As further and additional rent, Sublessee covenants and agrees to pay to Sublessor during the Term hereof Percentage Rent as provided in Paragraph 1.7.b of the Basic Sublease Information. Notwithstanding anything herein to the contrary, Sublessee shall fully and completely comply with all percentage rent provisions of the Prime Lease, except that Sublessee's statement of gross sales shall be provided to Sublessor within fifteen (15) days after the close of each Lease Year or calendar year as required by the Prime Lease.

6.3    Rent shall be payable in lawful money of the United States to Sublessor at the address stated in Paragraph 1.11 of the Basic Sublease Information or at such other place as Sublessor may designate in writing.

6.4    Sublessee covenants to pay to Sublessor as additional rent ("Additional Rent") all other amounts, liabilities and obligations which Sublessee herein assumes or agrees to pay and interest at the rate of ten percent (10%) per

- 5 -

CKE # 255
San Gabriel, CA

annum (or such lesser amount as may be the maximum amount permitted by law) on all overdue installments of Minimum Rent, Percentage Rent or other sums from the due date thereof until payment is received by Sublessor.   Such Additional Rent shall be due and payable on demand.

7.  **Taxes.**

7.1   Sublessee covenants to pay to Sublessor as Additional Rent all taxes and assessments, including but not limited to, all real property taxes, any substitute property taxes, all general and special assessments, any business rental or rental excise taxes, and any other obligations which are or may become a lien on or levied against the Premises and/or improvements thereon (collectively, "Taxes"). Sublessee shall pay all personal property taxes, and all excise taxes on personal property and the like directly to the taxing authority, promptly when due.

7.2   In the event the taxing authorities change the manner in which Taxes are levied, charged or assessed from the present tax system, Sublessee shall pay such Taxes imposed upon the Premises under any alternative or revised system of taxation.

7.3   Sublessee shall pay estimated Taxes to Sublessor in twelve (12) equal monthly installments on the first day of each calendar month in advance, in an amount estimated by Sublessor based upon the prior year's Taxes, to be readjusted upon receipt of invoices or bills for actual Taxes.  The initial monthly installment amount is stated in Paragraph 1.9 of the Basic Sublease Information.

7.4   Sublessor will determine the amount of deficiency or overpayment in Taxes for the prior tax year and any deficiency by Sublessee shall be paid within ten (10) days after demand by Sublessor and any overpayment will be credited to Sublessee.  Sublessor will adjust monthly installments accordingly.

8.  **Acceptance of Payments by Sublessor.**

No payment by Sublessee, or acceptance by Sublessor, of a lesser amount than shall be due from Sublessee to Sublessor shall be treated otherwise than as a payment on account.  The acceptance by Sublessor of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check that such lesser amount shall constitute payment in full, shall be given no effect and Sublessor may accept such payment without prejudice to any other rights or remedies which Sublessor may have against Sublessee.  Any payment, however designated, may be accepted by Sublessor and applied against any part of Sublessee's then due Minimum Rent, Percentage Rent, Additional Rent or other obligations, or Sublessor may apply such payment against any sum then due or may retain such payment (without interest) as a credit against Sublessee's accruing future obligations.

- 6 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

9.    **Utilities.**

Sublessee shall pay promptly when due, directly to the appropriate utility company, charges for all sewer, water, gas, electrical current, telephone and other utilities ("Utilities") used or consumed in or at the Premises.

10.    **Net Sublease.**

It is the express intent of the parties hereto that this Sublease is a "triple-net" sublease agreement. The parties agree that the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes referenced above shall be net to Sublessor so that this Sublease shall yield to Sublessor the Minimum Rent, Percentage Rent, Additional Rent, Utilities and Taxes specified during the term of this Sublease on an absolutely net basis, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the Premises shall be paid by Sublessee without notice or demand, and without set-off, counterclaim, abatement, suspension or deduction.

11.    **(Intentionally Deleted)**

12.    **Insurance on Premises.**

12.1   During the term of this Sublease, Sublessee shall provide and maintain at Sublessee's sole expense:

a.    plate glass, fire and extended coverage insurance in amounts equal to the full replacement cost of the Premises (including any additions in or changes in the Premises) as such value may be from time to time. Such insurance policies shall contain a one hundred percent (100%) replacement cost endorsement and an endorsement which automatically increases coverage as a guard against inflation for the Term of this Sublease;

b.    general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises and the adjoining streets, sidewalks and passageways, with primary limits of not less than Two Million Dollars ($2,000,000.00) with respect to bodily injury or death to any one person, not less than Four Million Dollars ($4,000,000.00) with respect to injuries to two or more persons arising out of one accident, and not less than Two Million Dollars ($2,000,000.00) with respect to property damage;

c.    worker's compensation insurance or comparable insurance under applicable laws covering all persons employed in connection with any work done on or about the Premises with respect to which claims for death or bodily injury could be asserted against Prime Landlord, Sublessor, Sublessee or the Premises;

- 7 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

   d. such other insurance upon or with respect to the Premises or the operation thereof in such amounts and against such other insurable hazards as are required by the Franchise Agreement; and

   e. in the event and to the extent that the Prime Lease shall require any insurance coverage not hereinbefore described and/or insurance coverage in limits higher than those hereinbefore described, Sublessee at Sublessee's sole cost and expense shall keep and maintain in force during the Term of this Sublease all such insurance (both as to types of coverage and limits) as may be required under the Prime Lease.

   12.2 All such insurance shall be written by companies of recognized financial standing, satisfactory to Sublessor and Prime Landlord, and be authorized to do insurance business in the state in which the Premises is located, and such insurance shall name as additional insureds Sublessor and Prime Landlord (as their respective interests may appear). Sublessor shall not be required to prosecute any claim against or to contest any settlement proposed by, any insurer; provided, that Sublessee may, at its expense, prosecute any such claim or contest any such settlement, and in such event Sublessee may bring such prosecution or contest in the name of Sublessee, and Sublessor will join therein at Sublessee's expense and written request upon the receipt by Sublessor of an indemnity from Sublessee in form and substance satisfactory to Sublessor against any and all costs, liabilities and expenses in connection with such prosecution or contest.

   12.3 In the event any damage to or destruction of the Premises shall occur, the provisions of the Prime Lease with respect to damage or destruction shall apply, and if the Prime Lease imposes on Sublessor the obligation to repair or restore improvements or alterations, Sublessee shall be responsible for repair or restoration of improvements or alterations with respect to the Premises. If the Prime Lease does not require otherwise, then insurance claims by reason of damage to or destruction of any portion of the Premises, shall be adjusted by Sublessee at the election of Sublessor, but Sublessor shall, at Sublessee's expense, have the right to join with Sublessee in adjusting any such loss. The entire amount of any proceeds paid pursuant to a claim shall be payable to Sublessor. The entire amount of any proceeds paid to Sublessor shall be delivered to Sublessee from time to time as the work of rebuilding, replacing and repairing the damage or destruction progresses and evidence is furnished by Sublessee of such rebuilding, replacement and repair of an amount at least equal to the proceeds to be paid to Sublessee. If any proceeds of such insurance remain after final payment has been made to Sublessee for such rebuilding, replacement and repair, such remaining proceeds shall be retained by Sublessor.

   12.4 Every policy required by this Paragraph 12 shall contain an agreement by the insurer that it will not cancel or modify such policy except after

- 8 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

sixty (60) days' prior written notice sent by registered mail to Sublessor, and that any loss otherwise payable thereunder shall be payable notwithstanding any change in title or other ownership of the Premises. Sublessee shall submit to Sublessor a binder evidencing all the insurance coverage required hereunder at the time it executes this Sublease and shall submit to Sublessor original insurance policies or certificates of insurance demonstrating Sublessee's full performance of its insurance obligations under this Sublease, together with proof of premium payment, within thirty (30) days following the execution of this Sublease. Thereafter, Sublessee shall submit to Sublessor copies of renewal policies or renewal certificates with proof of premium payment at least twenty (20) days before the expiration of such policies. Sublessor's receipt of information whether or not evidence of coverage shall not affect the respective rights and duties of Sublessor and Sublessee as they are stated herein.

12.5    Each party hereby waives claims against the other for property damage provided such waiver shall not invalidate the waiving party's property insurance; each party shall attempt to obtain from its insurance carrier a waiver of its insurance carrier's right of subrogation. Subtenant hereby waives claims against Prime Landlord and Sublessor for property damage to the Premises or its contents if and to the extent that Sublessor waives such claims against Prime Landlord under the Prime Lease. Sublessee agrees to obtain, for the benefit of Prime Landlord and Sublessor, such waivers of subrogation rights from its insurer as are required of Sublessor under the Prime Lease.

13.    **Indemnification.**

Sublessee agrees to pay, and to protect, indemnify and hold harmless Sublessor from and against any and all liabilities, losses, damages, costs, expenses (including, without implied limitation, all attorneys' fees and expenses of Sublessor), causes of action, suits, claims, demands or judgments of any nature whatsoever, arising from (a) any injury to, or the death of, any persons or any damage to property in or on the Premises or upon adjoining sidewalks, streets, or ways, or in any manner growing out of or connected with the use, non-use, condition or occupation of the Premises or any part thereof, or resulting from the condition thereof or of adjoining sidewalks, streets or ways; (b) violation by Sublessee of any term or provision of this Sublease; (c) violation by Sublessee of any term or provision of the Prime Lease; (d) violation by Sublessee of the Franchise Agreement or any other contract or agreement to which Sublessee is a party; and (e) violation by Sublessee of any restriction, statute, law, ordinance or regulation, affecting the Premises or any part thereof or the ownership, occupancy or use thereof. The obligations of Sublessee under this Paragraph 13 relating to events occurring during the Term of this Sublease shall survive the expiration or other termination of this Sublease.

- 9 -

CKE # 255
San Gabriel, CA

14.    **Alterations and/or Remodels.**

14.1    To the extent allowed by, and upon satisfaction of all conditions stated in, the Prime Lease and Franchise Agreement, Sublessee shall have the right to make alterations or additions to the Premises with the prior written consent of Sublessor, which consent shall not be unreasonably withheld.

14.2    In the event Sublessee is permitted to make alterations or additions, such additions to and alterations of the buildings, structures or other improvements constituting part of the Premises shall be at Sublessee's sole cost and expense and be made in a good and workmanlike manner. Such additions or alterations shall be expeditiously completed in compliance with all laws, ordinances, orders, rules, regulations and requirements applicable thereto.

14.3    Sublessee shall promptly pay all costs and expenses of each such addition or alteration and shall discharge all liens filed against the Premises arising out of the same, and pay for all permits and licenses required in connection with any such addition or alteration.

15.    **Condemnation.**

In the event of any condemnation involving the Premises, the provisions of the Prime Lease shall govern as to the party entitled to receive the award payable in connection with such taking.    Prime Landlord, Sublessor and Sublessee shall be entitled to awards payable as their respective interests may appear. Sublessee shall be entitled to rent abatements to the extent Sublessor is entitled to abatements under the Prime Lease.

16.    **Prime Lease Provisions.**

16.1    Sublessor is the "Tenant" or "Lessee" of the Premises pursuant to the Prime Lease. Sublessor and Sublessee hereby acknowledge and agree that this Sublease is subject and subordinate to the Prime Lease.    Sublessee acknowledges having received and reviewed the Prime Lease.    Sublessee hereby covenants and agrees that it will observe and perform all of the terms and conditions of the Prime Lease that are imposed upon Sublessor as tenant under the Prime Lease, including but not limited to payment of taxes, common area maintenance charges; insurance premiums, utilities and all other charges and amounts payable by Sublessor under the Prime Lease, such terms and conditions shall be deemed to have been incorporated herein as if set forth in full. The obligations of and restrictions upon Sublessor as tenant under the Prime Lease shall constitute the obligations of and restrictions upon Sublessee under this Sublease, each as and to the extent applicable to the Premises. The rights of Prime Landlord under the Prime Lease shall constitute the rights of Sublessor under this Sublease, in addition to the other rights of Sublessor under this Sublease, each as and to the extent applicable to the Premises. In the event of a

- 10 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

conflict between any term, condition or provision of the Prime Lease and this Sublease, or in the event that this Sublease creates additional or greater rights of and remedies to Sublessor over those granted Prime Landlord in the Prime Lease, or imposes additional or greater restrictions on or obligations of Sublessee over those imposed on Sublessor as tenant under the Prime Lease, then the terms, conditions and provisions of this Sublease shall govern in all respects the relationship between Sublessor and Sublessee.

Upon the breach of any of such terms, conditions or covenants of the Prime Lease by Sublessee or upon the failure of Sublessee to pay rent or comply with any of the provisions of this Sublease, Sublessor may exercise any and all rights and remedies granted to Prime Landlord by the Prime Lease, as well as any and all rights and remedies granted to Sublessor by this Sublease. Sublessee's rights under this Sublease shall be the same as Sublessor's rights as tenant under the Prime Lease, except as otherwise provided by this Sublease. However, the parties acknowledge and agree that Sublessee has not been granted or assigned the leasehold estate or rights of Sublessor as tenant under the Prime Lease, or any right to purchase or right of first refusal to purchase the Premises, such estate and rights being specifically reserved by Sublessor, provided that all rights of Sublessor that are reasonably necessary for Sublessee's beneficial use and occupancy of the Premises shall be enforced or made available by Sublessor for such use and occupancy. All notices required or permitted to be given by Sublessee under the Sublease shall be given to both Sublessor and Prime Landlord under the Prime Lease.

16.2   Notwithstanding anything in this Sublease to the contrary, if the Prime Lease imposes any obligation on Prime Landlord or if any obligation of Sublessor under this Sublease is to be performed by Prime Landlord under the Prime Lease and Prime Landlord fails to perform or delays in performance of such obligation, or otherwise defaults in its obligations under the Prime Lease, then Sublessor shall have no liability to Sublessee hereunder as a result of such failure except that Sublessor agrees to use commercially reasonable efforts, upon notice from Sublessee and at Sublessee's expense, to cause Prime Landlord to perform such obligation. Nothing in this Sublease shall or shall be deemed to limit or restrict any right or remedy of Prime Landlord with respect to the Premises or the Prime Lease.

16.3   Notwithstanding anything in this Sublease to the contrary, any termination of the Prime Lease will cause this Sublease to be terminated as of the same time and date that the Prime Lease is terminated.

16.4   If the Prime Lease grants to Prime Landlord any rights of approval or consent or any similar term, provision or right, and if Sublessee requests from Sublessor such approval or consent, then such approval or consent of Sublessor shall not be effective unless and until Prime Landlord gives its approval or consent. Sublessor shall use commercially reasonable efforts to obtain such

- 11 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

approval or consent of Prime Landlord, upon request of Sublessee and at Sublessee's expense.

## 17.    Assignment and Subletting.

17.1    Sublessee may transfer its interest in the Premises only through an assignment of this Sublease with Sublessor's prior written consent. Any such assignment hereunder shall only be in connection with an assignment or transfer by Sublessee of Sublessee's rights under the Franchise Agreement in accordance with the terms and provisions thereof. An assignee of the Franchise Agreement approved by Sublessor as franchisor shall be deemed approved by Sublessor as an assignee of this Sublease. Any such assignment shall also be subject to all terms of this Sublease, all duties and obligations of Sublessee hereunder shall be specifically assumed by such assignee, and shall be in a form approved by Sublessor. The consent by Sublessor to one assignment shall not be deemed to be a consent to any subsequent assignment. Unless released in writing by Sublessor, any assignment shall not relieve Sublessee of liability under this Sublease.

17.2    Neither this Sublease nor the Premises hereby subleased shall be mortgaged by Sublessee, nor shall Sublessee mortgage or pledge the interest of Sublessee in the Premises or the rentals payable thereunder without Sublessor's prior written consent.

## 18.    Removal of Sublessee's Property.

18.1    On or before the last day of this Sublease, Sublessee may remove from the Premises all furniture, trade fixtures, equipment and other movable personal property belonging to Sublessee ("Sublessee's Property"). Any damage to the Premises caused by such removal of Sublessee's Property shall be repaired in accordance with Paragraph 22 of this Sublease; in no event shall Sublessee's Property which has become permanently affixed to the Premises be removed. Notwithstanding the foregoing, Sublessee shall, at the end of the Term, or any termination of the Sublease, or upon the termination of Sublessor's right of possession hereunder, leave any improvements or other property required to be left in and on the Premises under the terms of the Prime Lease.

18.2    At the termination of this Sublease, if Sublessee has not removed Sublessee's Property from the Premises, or if this Sublease is terminated by reason of default by Sublessee, Sublessor may, at its option, either, (a) exercise any rights of Sublessor under the Franchise Agreement to purchase Sublessee's Property, or (b) remove Sublessee's Property from the Premises, the costs and expense for such to be for Sublessee's account, which shall be paid in full by Sublessee immediately upon demand by Sublessor, or, at Sublessor's option, deducted from the Security Deposit, or both to the extent necessary to fully pay said costs and expense.

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

19.    **Access to Premises.**

Sublessor, its agents, servants and employees may enter the Premises upon reasonable notice to Sublessee, which may be oral, for the purpose of inspecting the Premises or for the purpose of exercising Sublessor's rights and remedies under this Sublease, the Franchise Agreement or under law.

20.    **Default.**

Sublessee shall be in default if Sublessee:

a.    shall fail to pay when due any Minimum Rent, Monthly Installments thereof, Percentage Rent, Additional Rent, Utilities, Taxes or other payment required hereunder;

b.    breaches any provision of this Sublease;

c.    assigns, mortgages, sublets, or transfers any interest in this Sublease or in the Premises without Sublessor's prior consent;

d.    causes or allows a default to exist under the Prime Lease;

e.    violates any covenant, term or condition of the Franchise Agreement, any lease, sublease, note or other agreement between Sublessee and Sublessor or any of its affiliates;

f.    shall fail to remedy immediately after receipt of notice from Sublessor, any hazardous condition which Sublessee has created or suffered in breach of Sublessee's obligations under this Sublease;

g.    fails to comply with any statute, ordinance, rule or regulation of any governmental body; or

h.    files or has filed against it a petition in bankruptcy, insolvency, or for reorganization or arrangement pursuant to any Federal or state statute.

21.    **Remedies.**

In the event of any default hereof by Sublessee which shall not have been cured within five (5) days, in the case of monetary default, after Sublessee receives notice specifying such default, or within fifteen (15) days after Sublessee receives such notice if such default is not for the payment of money,

- 13 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

then Sublessor shall have the option to take any or all of the following actions, without further notice or demand of any kind to Sublessee or any other person:

a.      Collect by suit or otherwise each installment of Minimum Rent, Percentage Rent, Additional Rent or other sum as it becomes due hereunder, or enforce, by suit or otherwise, any other term or provision hereof on the part of Sublessee required to be kept or performed.

b.      Sublessor may terminate this Sublease upon the delivery of notice thereof to Sublessee and Sublessor shall have the right to immediate possession of the Premises and Sublessee shall peacefully surrender possession of the Premises to Sublessor.  In the event Sublessee holds the Premises beyond the termination of the Term, Sublessor shall have the right to recover Sublessor's cost in recovering possession of the Premises (including, without limitation, attorneys' fees and litigation costs), such amounts as may be permitted under applicable law and any other amounts due and payable to Sublessor hereunder including, without limitation, past-due rent.

c.      Sublessor, without terminating this Sublease, shall have the right to terminate Sublessee's right to possess the Premises and to recover possession thereof and Sublessee shall peacefully surrender the Premises to Sublessor.  Sublessor, at Sublessor's option, may cause the Premises to be prepared for reletting, and may relet the Premises or any part thereof as agent of Sublessee, for a term to expire prior to, at the same time as, or subsequent to the expiration of the Term, at Sublessor's option.  In the event of such reletting, Sublessor shall receive the rents therefor, applying the same first, to the repayment of reasonable expenses as Sublessor may have incurred in connection with said resumption of possession, preparing for reletting and reletting (including, without limitation, remodeling costs, brokerage and attorneys' fees), and, second, to the payment of damages and amounts equal to the Rent and Additional Rent due hereunder and to the cost of performing the other obligations of Sublessee as herein provided.  Sublessee, regardless of whether Sublessor has relet the Premises, shall pay to Sublessor damages equal to the Rent and Additional Rent herein agreed to be paid by Sublessee less the proceeds of the reletting, if any, and such rent shall be due and payable by Sublessee on the days on which rent is due hereunder.  No such reentry and reletting of the Subleased Premises by Sublessor shall be construed as an election on its part to terminate this Sublease unless a written notice of such intention be given to Sublessee pursuant to subsection (b) above, or unless the termination thereof be decreed by a court of competent jurisdiction.  Notwithstanding any such reletting without termination, Sublessor may at any time thereafter elect to terminate this Sublease for such previous breach.

d.      Sublessor may perform for Sublessee any of the obligations Sublessee has agreed to perform hereunder if Sublessee has defaulted in the performance of such obligations.  Upon demand, Sublessee shall reimburse

- 14 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

Sublessor for Sublessor's cost of performing for Sublessee together with interest thereon at a rate equal to eighteen percent (18%) per annum, compounded monthly (or such lesser amount as may be the maximum amount permitted by law). Any amounts so expended by Sublessor shall be immediately due and payable and the failure of Sublessee to pay such amounts shall entitle Sublessor to all of the rights and remedies available to it as if Sublessee had defaulted in the payment of rent.

e.      Sublessee shall pay to Sublessor a late charge equal to four percent (4%) of the amount of any installment of Minimum Rent, Percentage Rent or Additional Rent if such installment becomes more than ten (10) days past due.

f.      Sublessor may exercise any rights allowed Prime Landlord under the Prime Lease.

The remedies given to Sublessor in this Section shall be in addition and supplemental to all other rights or remedies which Sublessor may have under the laws then in force, but subject to the laws of the State of California.

## 22.   Surrender of Possession by Sublessee.

Upon the expiration or earlier termination of this Sublease, or upon termination of Sublessor's right of possession hereunder, at any time and for any reason, Sublessee promptly and peaceably shall surrender to Sublessor the Premises, together with all improvements, fixtures and equipment belonging to Sublessor or Prime Landlord, their agents, servants or employees, in good condition and repair, normal wear and tear excepted. There shall be no holding over of the Premises by Sublessee.

## 23.   Sublessor's Waiver.

Sublessor's failure at any time or from time to time to require strict compliance by Sublessee with the provisions of this Sublease shall neither waive nor prejudice Sublessor's continued right to insist upon the due and timely performance of this Sublease and to avail itself of all remedies provided by law or by this Sublease.

## 24.   Governing Law.

The invalidity or unenforceability of any provision of this Sublease shall not affect or impair any other provision. If any provision of this Sublease is capable of two constructions, one of which would render the provision invalid and the other of which would make the provision valid, then the provision shall have the

- 15 -

CKE # 255
San Gabriel, CA

meaning which renders it valid.  The laws of the State of California shall govern the validity, performance, and enforcement of this Sublease.  The submission of this document for examination does not constitute an offer to lease or to sublease and becomes effective only upon execution and delivery thereof by Sublessor and Sublessee.

## 25.   Recording of Sublease.

This Sublease shall not be recorded, but either party may execute and record a memorandum of sublease.  Each party agrees to sign, upon request of the other, such memorandum, in reasonably acceptable form.

## 26.   Sublessee as Independent Contractor.

Sublessee is and shall remain an independent contractor and shall have no authority to act as an agent of Sublessor or power to bind Sublessor in any manner. This Sublease shall not create any relationship of employer-employee, trustee-beneficiary, principal-agent, partnership or joint venture.

## 27.   Sublessee's Inspection.

Sublessee warrants and covenants that Sublessee has made all necessary or desirable examinations, inspections and inquiries regarding the Premises and has consulted with such professional advisors as Sublessee deems necessary or desirable to satisfy Sublessee at Sublessee's discretion and on Sublessee's own initiative, that the Premises is acceptable to Sublessee, that this Sublease is lawful in substance and in form, and that Sublessee is financially prepared to assume any and all risks and obligations of any kind that may be involved in becoming Sublessee.  SUBLESSEE HEREBY ACCEPTS THE PREMISES "AS IS, WHERE IS, AND WITH ALL FAULTS" WITH NO REPRESENTATION OR WARRANTY OF SUBLESSOR AS TO THE CONDITION THEREOF.

## 28.   No Other Assurances.

Sublessee has entered into this Sublease in reliance upon its provisions and upon the provisions of the Prime Lease, including any amendments, supplements and extensions, and not in reliance upon any alleged assurances, representations and warranties made by Sublessor, its officers, directors, agents, servants or employees.

## 29.   Brokers.

Each party represents and warrants to the other that it has not directly or indirectly dealt with any broker or agent relative to this Sublease or had its attention called to the Premises by any broker or agent and agrees to indemnify,

- 16 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

defend and hold the other party harmless from and against any and all claims for commission arising out of the execution and delivery of this Sublease.

30.    **Notices.**

Where this Sublease requires notices to be given, except where it expressly provides to the contrary, all such notices shall be in writing and shall be deemed given on the date of personal delivery or the lesser of (a) three (3) business days or (b) the period if any for deemed delivery after mailing specified in the Prime Lease after deposit in the United States Mail when mailed by certified mail, postage prepaid, addressed to the party entitled to receive the notice at the address stated in Paragraph 1.11 in the Basic Sublease Information or at such other address as the party to receive the notice last may have designated for such purpose by notice given to the other party.

31.    **Miscellaneous.**

31.1    When the sense so requires, words of any gender used in this Sublease shall be held to include any other gender and words in the singular shall be held to include the plural. "Sublessee" shall include the heirs, executors, administrators and personal representatives of any individual Sublessee as well as Sublessee's assigns (subject to Sublessor's prior written consent) and the successor of any incorporated Sublessee unless the context precludes such construction.  The captions or headings of particular paragraphs or parts of this Sublease are inserted for convenience only and shall not affect the meaning of this Sublease as a whole, or any paragraph or any part of it.

31.2    No alleged modifications, termination or waiver of this Sublease shall be binding unless it is set out in writing and signed by the party against whom or which it is sought to be enforced.  Any document or writing to be binding on Sublessor, whether this Sublease or any amendment, supplement or extension, must be signed by both Sublessee and Sublessor, the latter acting through its President or a Vice President.

32.    **Sole Understanding of Parties.**

This Sublease, the Franchise Agreement and that certain Asset Purchase Agreement between Sublessor and Sublessee, dated as of July 19, 2000, and related documents, instruments and agreements, contain the entire understanding between the parties with respect to their respective subject matter, the Premises, and all aspects of the relationship between Sublessee and Sublessor.

**[Signatures Follow on Next Page]**

- 17 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first written above.

SUBLESSOR:

CARL KARCHER ENTERPRISES, INC.
A California Corporation

By: _____
Colleen Ford McDonough
Director, Real Estate Asset Management

By: _____
W. Fillmore Wood, Jr.
Senior Vice President

SUBLESSEE:

SENIOR CLASSIC LEASING, LLC
A California Limited Liability Company

By: _____
Harshad Dharod
Majority Member

- 18 -

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE # 255
San Gabriel, CA

## EXHIBIT "A"

### Legal Description

LOTS 71 AND 72 OF TRACT NO. 5819, IN THE CITY OF SAN GABRIEL, AS PER MAP RECORDED IN BOOK 60, PAGES 58 AND 59 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE INTEREST IN THE SOUTHERLY 4 FEET OF SAID LOT 72 WHICH WAS CONVEYED TO THE CITY OF SAN GABRIEL, A MUNICIPAL CORPORATION, FOR PUBLIC STREET AND HIGHWAY PURPOSES, BY DEED RECORDED MAY 12, 1939 IN BOOK 16649, PAGE 23, OFFICIAL RECORDS.

Assessor's Parcel No.: 5363-024-002

CKE # 255
San Gabriel, CA

## EXHIBIT "B"

### Consent to Sublease

The undersigned, E. JAMES STANLEY and RHODA M. STANLEY, TRUSTEES under the Stanley Family Trust Dated May 23, 1978, the landlord ("Prime Landlord") under the lease dated June 30, 1978 as amended July 11, 1978, September 24, 1978 and November 7, 2000 ("Prime Lease") hereby consent and agree to the subletting of the premises described in the Prime Lease ("Premises") by the tenant under the Prime Lease ("Sublessor") to Senior Classic Leasing, LLC, a California limited liability company, (Sublessee"), and consent to the Sublease Agreement ("Sublease"), provided however, that Sublessor shall remain liable as tenant under the Prime Lease. The undersigned representative certifies by signing below that this Consent to Sublease is binding on the Prime Landlord.

Dated: _____, 2000

**STANLEY FAMILY TRUST**
Dated May 23, 1978

By: _____
        E. James Stanley, Trustee

By: _____
        Rhoda M. Stanley, Trustee

E:\CKE\Dharod\Agr\Subleases\#255 San Gabriel

CKE #7380
San Gabriel, CA

# FIRST AMENDMENT
## TO SUBLEASE

THIS FIRST AMENDMENT TO SUBLEASE ("First Amendment") is made and entered into as of the ___18___ day of ___August___ 2010 by and between **CARL KARCHER ENTERPRISES, INC.**, a California Corporation, ("Sublessor") and **SENIOR CLASSIC LEASING, LLC,** a California limited liability company, ("Sublessee").

## R E C I T A L S

A.    Sublessor and Sublessee entered into a written Sublease dated December 22, 2000 ("Sublease") whereby Sublessor is subleasing to Sublessee, and Sublessee is subleasing from Sublessor, that certain real property, together with all buildings, structures and improvements thereon and appurtenances thereto, commonly known as 505 West Las Tunas Avenue, San Gabriel, California 91776;

B.    As the result of Sublessee's exercise of the first (1st) of its three (3) options to extend and renew the term of the Sublease as provided in Section 1.5.b. of the Sublease, the Term of the Sublease shall expire on October 31, 2013;

C.    Sublessee has two (2) options remaining to extend and renew the Term of the Sublease as set forth in Section 1.5.b. of the Sublease, the first of its remaining options being for the period from November 1, 2013 through and including October 31, 2018 ("Second Option Period"), and the second of its remaining options being for the period from November 1, 2018 through and including October 31, 2023 ("Third Option Period");

D.    Section 1.7.a. of the Sublease provides for certain Minimum Rent payable by Sublessee to Sublessor during the Term, all as more particularly set forth in that Section;

E.    Sublessee and Sublessor now desire to amend the Sublease to provide for the exercise of the two (2) remaining options to extend and renew the Term of the Sublease, to provide for three (3) additional options to extend and renew the Sublease, to provide for Minimum Rent payable by Sublessee to Sublessor during certain periods of the Term of the Sublease, to provide for a Management Fee, and other matters as set forth below;

## A G R E E M E N T

NOW, THEREFORE, in consideration of the foregoing, the mutual promises and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Each and all of the Recitals set forth above are true and correct, and are incorporated herein by this reference as though set forth in full.

- 1 -

F:\CKE\California\SanGabriel\#7380\agr\1stSubleaseAmendment02

05/24/10

2.     All capitalized terms used herein shall have the same meaning as is given such terms in the Sublease unless expressly superseded by the terms of this First Amendment.

3.     Sublessee hereby exercises (a) its second (2nd) option to extend and renew the Term of the Sublease for the period from November 1, 2013 through and including October 31, 2018 ("Second Option Period"), and (b) its third (3rd) option to extend and renew the Term of the Sublease for the period from November 1, 2018 through and including October 31, 2023 ("Third Option Period") upon all of the same terms and conditions of the Sublease; and Sublessor hereby accepts the exercise by Sublessee of both of Sublessee's options to extend and renew the Term of the Sublease for the Second Option Period and the Third Option Period, respectively so that the Term of the Sublease shall now expire on October 31, 2023

4.     Section 1.5.b. of the Sublease is hereby modified and amended to provide that, in addition to the three (3) options to extend and renew the Sublease previously granted, all of which having now been duly exercised, Sublessor hereby grants to Sublessee three (3) additional options to extend and renew the Sublease, each for five (5) years, such that Sublessee now has remaining options to extend and renew the Sublease for the following periods:

| | |
|---|---|
| Fourth Option Period | November 1, 2023 through October 31, 2028; |
| Fifth Option Period | November 1, 2028 through October 31, 2033; and |
| Sixth Option Period | November 1, 2033 through October 31, 2038. |

5.     Section 1.7.a. of the Sublease is hereby modified and amended to provide that as Minimum Rent for the Premises, Sublessee shall pay to Sublessor the following amounts during the following periods of time:

| *Period:* | *Annual Minimum Rent:* | *Monthly Minimum Rent:* |
|---|---|---|
| From 11/01/2008 to 10/31/2013 | $ 62,073 | $ 5,172.00 |
| From 11/01/2013 to 10/31/2018 | 65,176.65 | 5,431.39 |
| From 11/01/2018 to 10/31/2023 | 71,694.32 | 5,974.53 |
| From 11/01/2023 to 10/31/2028 * | 78,863.75 | 6,571.98 |
| From 11/01/2028 to 10/31/2033 * | 86,750.13 | 7,229.18 |
| From 11/01/2033 to 10/31/2038  * | 95,425.14 | 7,952.10 |

* In the event the respective Option to extend the Lease is duly exercised by Lessee

6.     Commencing November 1, 2023, Sublessee shall pay to Sublessor a Management Fee at the rate of Two Thousand Five Hundred Dollars ($2,500.00) per year, payable in installments of Two Hundred Eight and 33/100 Dollars ($208.33) per month.  The Management Fee shall be payable by Sublessee to Sublessor along with Sublessee's payment of Monthly Minimum Rent and shall be payable as Additional Rent.

7.     Within 18 months following the mutual execution of this First Amendment, Sublessee shall diligently commence and thereafter complete an upgrade and remodeling of the restaurant building and other improvements to the Premises

- 2 -

F:CKE\California\SanGabriel\#7380\agr\1stSubleaseAmendment02

05/24/10

(collectively the "Remodeling"). Such Remodeling shall specifically include, without limitation, the upgrading and modernization of the restaurant facilities including the restrooms and common area within the Premises as necessary to bring the Premises into compliance with all applicable laws including the *Americans With Disabilities Act*, all at Sublessee's sole cost and expense. During the Remodeling, the rent and all other charges due from Sublessee under the Sublease shall remain in full force and effect without abatement, reduction or setoff.

8.     So long as Sublessee is not in default (a) hereunder, or (b) under the terms and provisions of the Franchise Agreement in effect between Sublessor and Sublessee (or any of their affiliates or principals) for the use of the Premises as a *Carl's Jr. Restaurant* ("Franchise Agreement"), Sublessor agrees to extend the term of such Franchise Agreement to coincide with the extended term of this Sublease pursuant to the terms and provisions of the Franchise Agreement relating to such an extension of the term, including, without limitation, the payment of any applicable fees for such extension.

9.     Except as otherwise provided herein, all of the terms, covenants and conditions of the Sublease are hereby continued, approved and ratified and, as hereby amended, shall continue in full force and effect and shall be binding upon, and shall inure to the benefit of Sublessor and Sublessee and their respective agents, attorneys, employees, representatives, affiliates, parents, beneficiaries, subsidiaries, officers, directors, members, heirs, executors, administrators, personal representatives, successors and assigns.

10.     To the extent, if any, that the terms, covenants or conditions of this First Amendment conflict with the terms, covenants or conditions of the Sublease, the terms, covenants and conditions of this First Amendment shall control.

11.     This First Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This First Amendment shall have no force or effect unless and until each party executes and delivers this First Amendment to the other party.

12.     Each of the persons executing this First Amendment on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this First Amendment and that each person signing on said party's behalf is authorized to do so.

13.     The parties acknowledge and agree that this First Amendment shall be interpreted as if it was drafted jointly by all of the parties, and that neither this First Amendment, nor any provision within it, shall be construed against any party or its attorney because it was drafted in full or in part by any party or its attorney. Any exhibits attached hereto are hereby incorporated herein by this reference.

14.     This First Amendment along with any exhibits and attachments or other documents affixed hereto, or referred to herein, constitutes the entire and exclusive agreement between Sublessor and Sublessee with respect to the subject matter of this First Amendment. Sublessor and Sublessee hereby agree that all prior or contemporaneous oral or written understandings, agreements or negotiations relative to

F:CKE\California\SanGabriel\#7380\agr\1stSubleaseAmendment02

05/24/10

CKE #7380
San Gabriel, CA

the subject matter of this First Amendment which were acceptable to both parties have been merged into this First Amendment and are included herein.


        IN WITNESS WHEREOF, the parties hereto have executed this First Amendment effective as of the date first above written.


Date: _____, 2010        **SUBLESSOR:**

                                   **CARL KARCHER ENTERPRISES, INC.**
                                   A California Corporation

                                   By: _____
                                       Colleen Ford-McDonough
                                       Vice President, Real Estate Management

Date: _____, 2010        **SUBLESSEE:**

                                   **SENIOR CLASSIC LEASING, LLC**
                                   A California Limited Liability Company

                                   By: _____
                                       _____ (Print Name)
                                       _____ (Title)


- 4 -

F:\CKE\California\SanGabriel\#7380\agr\1stSubleaseAmendment02

05/24/10

| In re:<br><br>Sun Gir Incorporated<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:26-bk-11056 |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2566 Overland Ave., Suite 650
Los Angeles, CA 90064

**A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION AND OMNIBUS MOTION OF THE DEBTOR AND DEBTOR-IN- POSSESSION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF CERTAIN UNEXPIRED SUBLEASES OF NONRESIDENTIAL REAL PROPERTY EFFECTIVE AS OF APRIL 2, 2026 (THE "PETITION DATE") PURSUANT TO 11 U.S.C. § 365; AND (II) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF ALEX KALINSKY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  May 20, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Eric Bensamochan Eric@eblawfirm.us
United States Trustee ustpregion16.sa.ecf@usdoj.gov
Kenneth Misken DOJ-UST Kenneth.M.Misken@usdoj.gov
William Schumacher wschumacher@winthrop.com
Atle T. Saterbak asaterbak@winthrop.com
Andrew J. Steil asteil@winthrop.com
Eric D Goldberg eric.goldberg@dlapiper.com
Dustin P Branch branchd@ballardspahr.com
Nahal Zarnighian zarnighiann@ballardspahr.com
Michael John Agoglia  michael.agoglia@alston.com
Jacob A. Johnson jacob.Johnson@alston.com
Dustin P. Branch branchd@ballardspahr.com
Neama Cory Barari nbarari@caskeyholzman.com
Martin P. Eramo MPEramo@aol.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On May 20, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth St., Ste. 5130
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 20, 2026 | Jennifer Svonkin | /s/Jennifer Svonkin |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-8
Case 8:26-bk-11056-SC
Central District of California
Santa Ana
Wed May 20 10:24:57 PDT 2026

Athena Property Management
34192 Violet Lantern, Ste 6
Dana Point, CA 92629-2846

McLane Foodservice, Inc.
c/o Alston & Bird LLP
Attn: Jacob Johnson
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3467

Sun Gir Incorporated
1 Centerpointe Dr., Suite 400
La Palma, CA 90623-2530

The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

Watt Laverne, LLC
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

Carl's Jr. Restaurants LLC
c/o DLA Piper LLP
1201 W Peachtree St., Ste 2800
Atlanta, GA 30309-3450

Carl's Jr. Restaurants LLC
c/o Eric Goldberg, Esq.
2000 Avenue of the Stars, Ste 400 N Towe
Los Angeles, CA 90067-4735

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

The Wasserstrom Company
4500 E Broad St
Columbus, OH 43213-1360

US Securities & Exchange Commission
444 S Flower St., # 900
Los Angeles, CA 90071-2934

United States Trustee
411 W Fourth Street
Santa Ana, CA 92701-4504

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Watt Laverne, LLC
c/o Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Eric Bensamochan
The Bensamochan Law Firm, Inc.
2566 Overland Ave, Ste 650
Los Angeles, CA 90064-3371

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Carl's Jr. Restaurants, LLC

(d)The Northern Trust Company
50 South LaSalle Street
Chicago, IL 60603-1003

(u)Nydia Del Socorro Lazo

End of Label Matrix
Mailable recipients    15
Bypassed recipients     3
Total                  18