

**FILED & ENTERED**

MAY 22 2026

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY bolte      DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

In re:

Sun Gir Incorporated,

Debtor and
Debtor-in-Possession.

☐ Affects Harshad & Nasir, Incorporated

☐ Affects Senior Classic Leasing, LLC

☐ Affects DFG Restaurants, Incorporated

☐ Affects Second Star Holdings, LLC

☐ Affects Third Star Investments, LLC

☒ Affects All Debtors

Case No.: 8:26-bk-11056-SC

CHAPTER 11

**ORDER (1) DENYING WITHOUT PREJUDICE EX PARTE EMERGENCY MOTION FOR INTERIM AUTHORIZATION TO PAY CERTAIN OPERATIONAL AND ADMINISTRATIVE EXPENSES AND (2) DIRECTING DEBTORS TO APPEAR AND SHOW CAUSE WHY A CHAPTER 11 TRUSTEE SHOULD NOT BE APPOINTED OR WHY THESE CASES SHOULD NOT BE CONVERTED TO CHAPTER 7**

Date:        June 3, 2026
Time:        1:30 p.m.
Courtroom: 5C

-1-

The Court has reviewed the docket in these jointly administered Chapter 11 cases,[1] including the cash management filings, the cash collateral filings and orders, the schedules and case-commencement documents, the pending application to employ The Bensamochan Law Firm, Inc. as general bankruptcy counsel [Dk. 121], and the Ex Parte Emergency Motion for Interim Authorization to Pay Certain Operational and Administrative Expenses Pending June 3, 2026 Hearing [Dk. 167] (the "Emergency Motion"), together with the supporting declaration, attached budget, and Administrative Services Agreement.

For the reasons set forth below, the Court cannot approve the requested ex parte relief on the current showing. The Emergency Motion does not provide sufficient payment-level detail, does not reconcile the requested relief with the Court's existing cash collateral orders, and does not adequately address the Debtors' proposed use of non-debtor affiliates in connection with estate funds. Those issues also raise broader concerns regarding the Debtors' cash management, affiliate-payment structure, and ability to administer estate funds with the transparency required in Chapter 11. The Court therefore will deny the Emergency Motion without prejudice and will require the Debtors to appear on June 3, 2026, at 1:30 p.m. to show cause why a Chapter 11 trustee should not be appointed, why these cases should not be converted to Chapter 7, or why other appropriate relief should not be ordered.

## I.      Emergency Motion

The Debtors seek interim authority, pending the June 3, 2026 cash collateral hearing, to pay operational and administrative expenses through Friendly Franchisees Corporation ("FFC") and to continue using FFC's centralized operational and administrative services for payroll, accounting, vendor coordination, IT/POS systems, insurance administration, and related back-office functions.

---

[1] Sun Gir Incorporated, Harshad & Nasir, Incorporated, Senior Classic Leasing, LLC, DFG Restaurants, Incorporated, Second Star Holdings, LLC, and Third Star Investments LLC are debtors and debtors-in-possession in these jointly administered Chapter 11 cases (collectively, the "Debtors").

The Emergency Motion relies on an Administrative Services Agreement dated January 1, 2026, among affiliated debtor and non-debtor entities. The agreement provides for management and administrative services, a monthly administration fee of approximately $3 million a year, or $250,000 per month, reimbursement of extraordinary expenses, indemnification of the administrator, and a limitation of liability.

The Debtors already have interim authority to use cash collateral through June 3, 2026, subject to the terms and limitations of the Court's prior cash collateral orders. The Emergency Motion does not explain why separate ex parte relief is required before the June 3 hearing. Nor does it identify the specific payments that must be made before June 3, including the payees, amounts, due dates, petition-date status, relationship of each payee to the Debtors, and consequences of nonpayment.

The attached budget does not provide the necessary showing. It appears to cover the weeks ending April 27, May 4, May 11, and May 18, 2026, although the Emergency Motion was filed on May 21, 2026 and seeks relief pending the June 3 hearing. The Debtors do not identify which amounts have already been paid, which remain unpaid, which are prospective, which are prepetition or postpetition, or which require emergency relief before the scheduled hearing.

The requested payment structure also is unclear. The Emergency Motion seeks authority to pay expenses "through" FFC, a non-debtor affiliate, but does not explain whether FFC would act only as a conduit for payments to third-party vendors, whether FFC would receive or retain any funds, whether FFC would be reimbursed for advances or overhead, or whether any requested payment would constitute a management fee, administrative fee, extraordinary-expense reimbursement, insider compensation, affiliate reimbursement, or payment under or on account of the Administrative Services Agreement.

Those distinctions matter because the Court's prior cash collateral orders restrict the use of cash collateral and do not authorize payments to insiders or insider-related entities, management fees, or prepetition obligations except as expressly authorized by

the Court or consented to by the secured creditors. The Emergency Motion does not provide a payment-level reconciliation sufficient for the Court to determine whether the requested payments are authorized ordinary operating expenses, prohibited management fees, affiliate reimbursements, scheduled prepetition claims, or performance under the Administrative Services Agreement.

The Administrative Services Agreement raises additional concerns. It appears to be a prepetition agreement among affiliated debtor and non-debtor entities. It includes a monthly administration fee, indemnification, and limitation-of-liability provisions. It also appears to have been signed by the same individual on behalf of both debtor-side "Contractors" and non-debtor "Administrator" entities. The Emergency Motion does not seek assumption under § 365 and does not state that the requested relief would not assume, ratify, cure, modify, or authorize performance under that agreement.

The evidentiary support for the Emergency Motion is provided by FFC's Chief Operating Officer, Ben Zandi, rather than an independent debtor-side financial officer or independent fiduciary. Because FFC is the non-debtor affiliate through which the Debtors seek authority to make payments and whose expenses are implicated by the requested relief, that declaration does not resolve the affiliate-payment, cash-collateral, and conflict concerns raised by the Emergency Motion.

The Court therefore cannot approve the requested relief on an ex parte basis.

## II.    Basis for Order to Show Cause

Section 105(a) permits the Court to issue orders necessary or appropriate to carry out the Bankruptcy Code and to act sua sponte to enforce court orders or rules or to prevent an abuse of process. 11 U.S.C. § 105(a). The Ninth Circuit has held that § 105(a) authorizes a bankruptcy court to consider appointment of a Chapter 11 trustee sua sponte when necessary to protect the estate. *In re Bibo, Inc.*, 76 F.3d 256, 258-59 (9th Cir. 1996). Section 105(a) also permits sua sponte action under § 1112(b) after appropriate notice and an opportunity to be heard. *Kingsway Capital Partners, LLC v. Sosa*, 549 B.R. 897, 902-03 (N.D. Cal. 2016).

Section 1104(a)(1) requires appointment of a Chapter 11 trustee, after notice and a hearing, for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management. 11 U.S.C. § 1104(a)(1). Section 1104(a)(2) separately requires appointment of a trustee if appointment is in the interests of creditors, equity security holders, and other interests of the estate. 11 U.S.C. § 1104(a)(2).

Section 1112(b)(1) provides that, on request of a party in interest and after notice and a hearing, the court shall convert or dismiss a Chapter 11 case for cause, whichever is in the best interests of creditors and the estate, unless appointment of a trustee or examiner under § 1104(a) is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). Cause includes gross mismanagement of the estate, unauthorized use of cash collateral that is substantially harmful to one or more creditors, and failure to comply with a court order. 11 U.S.C. § 1112(b)(4)(B), (D), (E). If cause is established, the court must determine whether dismissal, conversion, or appointment of a trustee or examiner is in the best interests of creditors and the estate. *In re Premier Golf Properties, LP*, 564 B.R. 710, 721-23 (Bankr. S.D. Cal. 2016).

After reviewing the oral transcripts of the prior hearings in this case, in addition to the docket, the Court has substantial concerns regarding the Debtors' cash management, use of cash collateral, affiliate-payment structure, proposed payments through non-debtor affiliates, disclosures concerning FFC and Central Street Management LLC, and current management's ability to administer estate funds with the transparency required in Chapter 11.

At the April 9 and April 23, 2026 cash collateral hearings, the Court raised concerns regarding the Debtors' use of cash collateral, centralized cash management structure, postpetition disbursements, intercompany transfers, and the flow of funds

among debtor and non-debtor affiliates. The Court required further disclosure regarding postpetition payments and the treatment of any principal contribution.[2]

The Debtors' prior cash management filings described a centralized system under which store-level receipts and operating revenues were swept into concentration accounts maintained by affiliated entities and then used to fund enterprise-wide operating expenses. Those filings did not clearly disclose that FFC, a non-debtor affiliate, was providing centralized administrative services or that estate funds would be paid to or through or advanced by FFC.

The Debtors' cash collateral filings and budgets also used terminology that has not been reconciled. Prior filings included a "Management Fees" line item, and the Court previously raised concerns regarding payments to insiders, affiliates, management personnel, and FFC-related expenses. The Emergency Motion uses different terminology, including "operational and administrative expenses," "administrative support services," and expenses incurred "through" FFC. The Administrative Services Agreement separately refers to administrative fees and extraordinary-expense reimbursement. The Debtors have not adequately explained whether those terms describe the same expenses, overlapping expenses, or separate obligations.

The schedules identify FFC and Central Street Management LLC as parties to the Administrative Services Agreement. They also identify FFC and Central Street Management LLC as scheduled creditors in at least one of the jointly administered cases. The Debtors have not adequately reconciled those scheduled claims with the Emergency Motion's request for authority to make payments "through" FFC.
The pending application to employ The Bensamochan Law Firm, Inc. raises additional FFC-related concerns. The application states that the Firm received a prepetition retainer from Sun Gir, while the agreement attached to the employment application

---

[2] The Administrative Services Agreement was presented as a central operative document only with the Emergency Motion filed on May 21, 2026, after these cases were commenced in April 2026 and shortly before the June 3, 2026 hearing. That timing, and the apparent significance of the agreement to the Debtors' current payment structure is problematic given the prior nondisclosure.

identifies the source of the retainer as Friendly Franchisees Corporation's cash on hand. FFC therefore appears, based on the current filings, in multiple overlapping roles: source of Debtors' counsel's retainer, scheduled creditor, counterparty to the Administrative Services Agreement, alleged centralized administrative-services provider, and proposed conduit for operational payments. The Debtors have not adequately explained those relationships or disclosed whether FFC has advanced operational or case-related expenses, whether FFC expects reimbursement, how any reimbursement would be treated, or whether any such payments would implicate the Court's cash collateral restrictions.

Taken together, these issues raise substantial questions whether current management can segregate estate funds, comply with the Court's cash collateral orders, avoid unauthorized insider or affiliate payments, and provide complete and transparent disclosure without appointment of a Chapter 11 trustee. They also raise substantial questions whether cause exists to convert these cases to Chapter 7. The hearing will address whether the Debtors can establish a sufficient basis to remain in possession and continue operating as debtors-in-possession, including whether current management can administer estate funds, comply with the Court's cash collateral orders, avoid unauthorized insider or affiliate payments, and provide complete and transparent disclosure without appointment of a Chapter 11 trustee or conversion to Chapter 7.

**III.    Issues for Briefing**

The parties shall address the following issues in their briefing:

1. Cash Management and Flow of Funds. The parties shall address the Debtors' current cash management system, including the flow of funds among debtor and non-debtor entities; the accounts into which store-level receipts are deposited; the accounts from which operating expenses are paid; and whether any estate funds are transferred to, from, through, or advanced by FFC, Central Street Management LLC, or any other non-debtor affiliate.

2. <u>Use of Cash Collateral and Compliance with Prior Orders</u>. The parties shall address the Debtors' compliance with all cash collateral orders, including whether any postpetition payment to, from, through, or advanced by FFC, Central Street Management LLC, or any other affiliate was authorized by the Court, included in an approved budget, or consented to by the secured creditors.

3. <u>Payments to or Through FFC and Central Street Management LLC</u>. The parties shall identify all postpetition transfers to, from, through, or advanced by FFC, Central Street Management LLC, or any other non-debtor affiliate, including the amount, date, source account, final payee, purpose, petition-date status of the obligation, and whether the transfer was a pass-through vendor payment, management fee, administrative fee, reimbursement, insider or affiliate payment, prepetition obligation, or postpetition operating expense.

4. <u>Administrative Services Agreement</u>. The parties shall address the status, treatment, and enforceability of the Administrative Services Agreement, including whether Debtors intend to file a motion to assume and whether it is is being performed postpetition without assumption.

5. <u>Authority and Conflicts</u>. The parties shall address the authority of any individual who signed the Administrative Services Agreement on behalf of both debtor and non-debtor parties, and whether that structure creates any conflict, affiliate-transaction concern, or limitation on current management's ability to exercise independent fiduciary judgment for the Debtors' estates.

6. <u>FFC's Multiple Roles</u>. The parties shall address FFC's role as alleged source of Debtors' counsel's retainer, scheduled creditor, counterparty to the Administrative Services Agreement, administrative-services provider, and proposed conduit for operational payments. The parties shall address whether FFC has advanced operational or case-related expenses, whether FFC expects reimbursement, and how any reimbursement would be treated.

7. <u>Trustee Appointment, Conversion, or Other Relief</u>. The parties shall address whether appointment of a Chapter 11 trustee is warranted under § 1104(a)(1) or § 1104(a)(2), whether conversion to Chapter 7 is warranted under § 1112(b), and which remedy is in the best interests of creditors and the estates.

**IV.   Order**

Accordingly, the Court orders as follows:

1. The Emergency Motion is DENIED WITHOUT PREJUDICE.

2. A hearing on this Order to Show Cause will be held on June 3, 2026, at 1:30 p.m. in Courtroom 5C, United States Bankruptcy Court, Central District of California, Santa Ana Division, 411 West Fourth Street, Santa Ana, California 92701.

3. The Debtors shall file and serve a written response to this Order to Show Cause no later than May 29, 2026. The response shall be supported by admissible evidence and legal authority and shall address the issues identified in this Order.

4. Any response by the United States Trustee, any secured creditor, or any party in interest shall be filed and served no later than May 29, 2026.

5.  Any party may file and serve a reply to any response filed under this Order no later than June 2, 2026, at 3:00 p.m.

6. The Debtors shall serve this Order on the United States Trustee, all secured creditors, the twenty largest unsecured creditors, all parties requesting notice, FFC, Central Street Management LLC, and any other party to the Administrative Services Agreement no later than 72 hours after entry of this Order, and shall serve any known counsel for FFC or Central Street Management LLC by the same deadline. The Debtors shall file proof of service by the same 72-hour deadline.

///

///

///

7.  The Court may determine this Order to Show Cause on the papers and the record before it if Debtors fail to file a response, if any party fails to appear at the hearing, or otherwise fails to comply with this Order.

**IT IS SO ORDERED.**

**###**

Date: May 22, 2026

Scott C. Clarkson
United States Bankruptcy Judge