ERIC D. GOLDBERG (SBN 157544)
eric.goldberg@us.dlapiper.com
DAVID M. RILEY (SBN 292087)
david.riley@us.dlapiper.com
RILEY M. SISSUNG (SBN 329951)
riley.sissung@us.dlapiper.com
ANTHONY S. HAN (SBN 365255)
anthony.han@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone: (310) 595-3000
Facsimile: (310) 595-3300

*Counsel for Carl's Jr. Restaurants LLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re

SUN GIR INCORPORATED, *et al.*[1]

Debtor.

Affects:

☐ Harshad & Nasir, Incorporated

☐ Senior Classic Leasing, LLC

☐ DFG Restaurants, Incorporated

☐ Second Star Holdings, LLC

☐ Third Star Investments, LLC

☒ Affects All Debtors

Case No. 8:26-bk-11056-SC

Chapter 11

Jointly Administered With:
8:26-bk-11057-SC
8:26-bk-11058-SC
8:26-bk-11060-SC
8:26-bk-11061-SC
8:26-bk-11062-SC

**OPPOSITION OF CARL'S JR. RESTAURANTS LLC TO THE TRUSTEE'S ORAL MOTION AND BRIEF IN SUPPORT OF AN EXTENSION OF THE DEADLINE UNDER 11 U.S.C. § 365(d)(4) TO ASSUME OR REJECT CERTAIN LEASES OF NONRESIDENTIAL REAL PROPERTY**

Status Conference
Date: September 16, 2026
Time: 1:30 p.m.
Ctrm: 5C
411 West Fourth Street Santa Ana, California 92701

[1] "Debtors" means Sun Gir Incorporated, and its jointly administered affiliated debtors, Harshad & Nasir, Incorporated (Case No.: 8:26-bk-11057-SC); Senior Classic Leasing, LLC (Case No.: 8:26-bk-11058-SC); DFG Restaurants, Incorporated (Case No.: 8:26-bk-11060-SC); Second Star Holdings, LLC (Case No.: 8:26-bk-11061-SC); and Third Star Investments LLC (Case No.: 8:26-bk-11062-SC).

## TABLE OF CONTENTS

**PAGE**

Preliminary Statement ........................................ 1
Background ........................................ 3
Argument ........................................ 4
I. The Statutory Deadline Is a Substantive Right That Cannot Be Extended After the Fact. ........................................ 4
Ii. There Is No Basis to Extend the Statutory Deadline ........................................ 6
A. Excusable Neglect is Not a Basis to Extend the Statutory Deadline ........................................ 6
B. Even If Excusable Neglect Were a Basis to Extend the Statutory Deadline—And It Isn't—Any Neglect Here Was Not Excusable ........................................ 9
Iii. The Subleases and Franchise Agreements Do Not Comprise a Single Integrated Transaction That Is Exempt from the Statutory Deadline ........................................ 11
A. The Trustee Is Judicially Estopped from Asserting that the Subleases and Franchise Agreements are Integrated for Purposes of Section 365(d) ........................................ 12
B. The Subleases and Franchise Agreements Do Not Constitute a Single Integrated Transaction so as to Justify Application Of The 365(d)(2) Deadline 13
C. Even if the Franchise Agreements and the Subleases Did Comprise a Single Integrated Transaction for Purposes of Section 365(d), the Statutory Deadline Would Still Apply to the Subleases ........................................ 15
Iv. Recharacterization of the Subleases And Franchise Agreements as a Single Integrated Transaction Does Not Help the Trustee ........................................ 17
Conclusion ........................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Johnson*,
720 F.3d 1183 (9th Cir. 2013) .......... 6, 7, 9

*In re Argonaut Fin. Servs.*,
164 B.R. 107 (N.D. Cal. 1994) .......... 7, 8

*In re Arizona Appetito's Stores, Inc.*,
893 F.2d 216 (9th Cir. 1990) .......... 5

*Armstrong v. Norwest Bank, Minneapolis, N.A.*,
964 F.2d 797 (8th Cir. 1992) .......... 10

*Camel Invs. L.L.C. v. J&M Food Servs. LLC (In re J&M Food Servs.)*,
2017 Bankr. LEXIS 3118 (Bankr. D. Ariz. Sept. 14, 2017) .......... 6, 7, 9

*In re Catapult Entertainment, Inc.*,
165 F.3d 747 (9th Cir. 1999) .......... 16

*In re Damach, Inc.*,
235 B.R. 727 (Bankr. D. Conn. 1999) .......... 7, 9

*In re Ducks in a Row, Inc.*,
2004 Bankr. LEXIS 2454 (Bankr. E.D. Va. Apr. 16, 2004) .......... 1, 6

*In re FPSDA I, LLC*,
450 B.R. 392 (Bankr. E.D.N.Y. 2011) .......... 13, 14

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) .......... 11

*In re Harrison*,
117 B.R. 570 (Bankr. C.D. Cal. 1990) .......... 14

*Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.)*,
657 F.2d 1076 (9th Cir. 1981) .......... 10

*In re Lovitt*,
757 F.2d 1035 (9th Cir. 1985) .......... 16

*In re Maxway Corp.*,
27 F.3d 980 (4th Cir. 1994) .......... 5

*In re Moreggia & Sons, Inc.*,
852 F.2d 1179 (9th Cir. 1988) .......... 4

*N.C.P. Mktg. Group v. Blanks (In re N.C.P. Mktg. Group)*,
337 B.R. 230 (D. Nev. 2005) .......... 17

*NLRB v. Bildisco & Bildisco*,
465 U.S. 513 (1984) .......... 15

*In re Pacific Express, Inc.*,
780 F.2d 1482 (9th Cir. 1986) .......... 12

*In re Philadelphia Athletic Club, Inc.*,
17 B.R. 345 (Bankr. E.D. Pa. 1982) .......... 10

*In re Pinnacle Foods of Cal. LLC*,
2024 Bankr. LEXIS 2521 (Bankr. E.D. Cal. Oct. 10, 2024) .......... 16

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) .......... 8, 9

*In re R. Ring Enters.*,
2009 Bankr. LEXIS 685 (Bankr. N.D. Cal. Feb. 19, 2009) .......... 4, 5, 7

*Rissetto v. Plumbers & Steamfitters Local 343*,
94 F.3d 597 (9th Cir. 1996) .......... 10

*Salgado v. Garcia*,
384 F.3d 769 (9th Cir. 2004) .......... 13

*Stewart v. Wachowski*,
574 F. Supp. 2d 1074 (C.D. Cal. 2006) .......... 8, 9

*In re Tubular Techs.*,
348 B.R. 699 (Bankr. D.S.C. 2006) .......... 4

*United States v. Navarro*,
160 F.3d 1254 (9th Cir. 1998) 13

**Statutes**

11 U.S.C. § 365(b)(2) .......... 17

11 U.S.C. § 365(d)(2) .......... *passim*

11 U.S.C. § 365(d)(4) .......... *passim*

11 U.S.C. § 365(g) .......... 15

Lanham Act ........ 16

**Other Authorities**

Collier on Bankruptcy ¶ 365.05[3][d] ........ 4

Fed. R. Bankr. P. 4007(c) ........ 6

Fed. R. Bankr. P. 9006 ........ 1, 6, 7, 9

H.R. Rep. No. 109-31(I), at 86 (2005) ........ 5, 13

Carl's Jr. Restaurants LLC ("Carl's Jr.") files this opposition ("Opposition") to the oral motion ("Motion") and the brief in support ("Brief")[2] filed by the Chapter 11 trustee ("Trustee") for the Debtors in the above-captioned cases seeking a retroactive extension of the Bankruptcy Code section 365(d)(4) deadline ("Statutory Deadline") for the Trustee to assume or reject the Debtors' unexpired leases of nonresidential real property, including its subleases with Carl's Jr. ("Subleases"). In support of this Opposition, Carl's Jr. states as follows:

## **Preliminary Statement**

The Statutory Deadline expired on July 31st without the Trustee having taken any action to extend it. Accordingly, all the Debtors' unexpired leases of nonresidential real property, including all their unexpired Subleases with Carl's Jr. were automatically deemed rejected by law on July 31, 2026, and the Trustee was required to immediately "surrender possession" of the Subleases premises to Carl's Jr. But that's not what has happened.[3]

Instead, at a status conference on August 5, five days after the expiration of the Statutory Deadline, the Trustee, at the Court's suggestion, made an oral motion to extend it, arguing that "excusable neglect" justified extending the Statutory Deadline, and the Court ordered further briefing. Neither the Bankruptcy Code, the Bankruptcy Rules, nor any of the authorities interpreting them authorize such an after-the-fact extension on the basis of excusable neglect, or for any other reason. Even if excusable neglect were a valid basis to extend the Statutory Deadline— and it isn't—the Trustee has only shown neglect—a calendaring failure within counsel's control; that is not ***excusable*** neglect.

---

[2] The *Chapter 11 Trustee's Brief Regarding the Oral Motion to Extend the Deadline to Assume or Reject Unexpired Leases of Commercial Real Property and Notice of Deadline to File Written Opposition; Declarations of Kyra Andrassy and Bradley Sharp in Support Thereof* [D.I. 417] was filed on August 19, 2026.

[3] Carl's Jr. reserves all rights to seek emergency relief compelling turnover of the premises and an order authorizing administrative rents for any holdover periods.

Acknowledging the weakness in his position, in his Brief the Trustee takes the fallback position that the Subleases and the Franchise Agreements (each defined below) for all the Debtors' locations comprise a single integrated transaction subject to the more lenient assumption/rejection deadline set forth in Bankruptcy Code section 365(d)(2). This argument is unsupported by Ninth Circuit law, and fares no better.

As a threshold matter, the Trustee is judicially estopped from asserting its newly manufactured "integrated transaction" theory, having previously (1) acknowledged on the record at the August 5 status conference that the Statutory Deadline had expired; (2) orally moved to extend the deadline he now contends does not apply; (3) obtained orders rejecting eleven Subleases as separately rejectable agreements; and (4) scheduled each of the Debtors' Subleases and Franchise Agreements as a separate contract.

On the merits, while it is true that the Subleases and Franchise Agreements are interrelated—of course they are—the fact that they are interrelated does not mean that they comprise a single transaction. Regardless of their being cross-defaulted to each other, each of the Subleases and Franchise maintains its separateness. For example, each Franchise Agreement expressly contemplates its survival following the loss of the related leasehold; is governed by differing law (Tennessee law for the Franchise Agreements; California law for the Subleases); and contains an entire-agreement clause.

But even if all of these separate agreements really comprise a "single integrated transaction"—and they don't—that does not compel the conclusion that the Statutory Deadline does not apply. As a matter of statutory construction, the specific Statutory Deadline would still govern the Subleases, while section 365(c) preserves Carl's Jr.'s right to withhold consent to any assumption or assignment of the Franchise Agreements.

As a lessor under the Subleases, Carl's Jr. is entitled to rely on the substantive protections granted to it by Congress under section 365(d)(4). Accordingly, Carl's Jr. requests that the Court deny the Motion; enter an order deeming the Subleases rejected as of July 31, 2026; and grant such other relief as is just and proper.

## **Background**

On April 2, 2026 ("Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Court").

As of the Petition Date the Debtors were parties to a total of 43 Subleases for nonresidential real property locations where Carl's Jr. is the sublessor.[4] The Debtors also are parties to a total of 59 franchise agreements with Carl's Jr. (collectively, the "Franchise Agreements").[5] To date, the Court has authorized the rejection of 11 leases and Subleases [*See* D.I. 225 (approving stipulation), 263, 264, 342, and 343]. No Franchise Agreements have been rejected.

On April 30, 2026, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (collectively, "Schedules"), listing each of the Subleases and Franchise Agreements as a separate executory contract. [D.I. 114, 115, 116, 117, 118, and 119]. Certain Schedules were amended on May 26, 2026. [D.I. 184, 186, 188, 190, 192, and 194].

On June 3, 2026, the Court ordered the appointment of a chapter 11 trustee. [D.I. 230]. On June 16, 2026, the Office of the United States Trustee appointed Bradley D. Sharp to serve as Trustee, and the Court approved that appointment. [D.I. 270, 271, and 273].

On July 31, 2026, the 120-day period within which the Trustee must assume or reject nonresidential real property leases under 11 U.S.C. § 365(d)(4), i.e., the Statutory Deadline, expired. On August 5, 2026, at a hearing before this Court, counsel for the Trustee advised the Court that the Statutory Deadline had in fact expired. August 5, 2026 Hr'g Tr., 4:20–23 ("[T]he 365(d)(4) deadline passed on Friday, and I did not file a motion

[4] A true and correct copy of an exemplar of a Sublease is attached hereto as **Exhibit 1**.

[5] A true and correct copy of an exemplar of a Franchise Agreement is attached hereto as **Exhibit 2**.

to extend the time because I did not have the date calendared.").[6] This Court thereafter invited the Trustee's counsel to make an emergency oral motion to extend the Statutory Deadline by ninety (90) days, and set a briefing schedule on certain issues, including whether excusable neglect had been shown and was legally sufficient to extend the Statutory Deadline on the facts and circumstances of these cases. [*See* D.I. 387].

## Argument

### I. The Statutory Deadline is a Substantive Right That Cannot Be Extended After the Fact

Section 365(d)(4)(A) provides that an unexpired lease of nonresidential real property "shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—(i) the date that is 120 days after the date of the order of relief; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4)(A). Subparagraph (B) provides the only avenue for assumption or rejection beyond the statutory period: "[t]he court may extend the period under subparagraph (A), ***prior to the expiration of the 120-day period***, for 90 days on the motion of the trustee or lessor for cause." 11 U.S.C. § 365(d)(4)(B) (emphasis added); *see also Collier on Bankruptcy*, 16th Edition, § 365.05[3][d] ("It is now clear that any order extending the initial 120-day period must be entered *before the expiration of the deadline*.") (emphasis added).

Section 365(d)(4) "clearly provides that if any extension is desired, Debtor must obtain the extension by an order entered within the 120-day period prescribed." *In re Tubular Techs.*, 348 B.R. 699, 709 (Bankr. D.S.C. 2006) ("The language of revised § 365(d)(4) is so clear that during the hearing on Debtor's Motion to Extend, Debtor admitted that § 365(d)(4) required the Court to enter an order extending the time to assume or reject a lease for a nonresidential real property before the 120th day after Debtor

---

[6] A true and correct copy of the transcript of the August 5, 2026 hearing is attached hereto as **Exhibit 3.**

filed its bankruptcy petition"). "BAPCPA § 365(d)(4)(B) modified pre-BAPCPA § 365(d)(4) by requiring entry of a court order within the 120-day period when a debtor has moved to extend the 120-day time period." *In re R. Ring Enters.*, 2009 Bankr. LEXIS 685 at *6-7 (Bankr. N.D. Cal. Feb. 19, 2009) (concluding that "under BAPCPA, both the debtor and the court must act within 120 days for the debtor to obtain an extension of time").

The Statutory Deadline exists "to protect lessors from delay and uncertainty by forcing the trustee or debtor-in-possession to act quickly to assume unexpired leases." *In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1185 (9th Cir. 1988); *see also In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 220 (9th Cir. 1990).

The legislative history supports this plain meaning and majority interpretation of section 365(d)(4): in revising this section, Congress "sought to establish a firm, bright line deadline by which an unexpired lease of nonresidential real property must be assumed or rejected . . . An extension of time may be granted, within the 120-day period, . . . This provision is designed to remove the bankruptcy judge's discretion to grant extensions of time." H.R.Rep. No. 109–31(I), at 86 (2005). Congress was precise with this amendment; the plain language of the statute and the legislative history each unambiguously indicate that a debtor may not obtain an extension to assume a lease unless the extension is *granted within the first 120 days of a case*. *See In re R. Ring Enters.*, 2009 Bankr. LEXIS 685 at *6-7 ("BAPCPA § 365(d)(4)(B) modified pre-BAPCPA § 365(d)(4) by requiring entry of a court order within the 120-day period when a debtor has moved to extend the 120-day time period"); *In re Maxway Corp.*, 27 F.3d 980, 982 (4th Cir. 1994) (noting that the sole function of the court is to enforce a statute according to its terms).

The plain language, legislative history and precedents are clear: an extension of the Statutory Deadline may be approved only "***prior to the expiration of the 120-day period***." 11 U.S.C. § 365(d)(4). Here, the Trustee did not file a motion to extend the Statutory Deadline prior to its expiration. Accordingly, by operation of law all the Subleases were deemed rejected as of July 31, 2026, and the Trustee was required to

immediately surrender possession of the leased premises to Carl's Jr. That has not happened and the Trustee therefore is in violation of section 365(d)(4)'s mandates.

**II. There Is No Basis to Extend the Statutory Deadline**

In an effort to avoid the foreseeable consequences of the expiration of the Statutory Deadline, the Trustee contends that his failure to seek an extension prior to the expiration of the Statutory Deadline constituted excusable neglect. This argument fails for two reasons: (a) as a matter of law, excusable neglect is not a basis to extend the Statutory Deadline; and (b) even if it were (and it isn't), the neglect here was not excusable.

**a. Excusable Neglect Is Not a Basis to Extend the Statutory Deadline**

Excusable neglect, under Bankruptcy Rule 9006, is not a basis to extend the Statutory Deadline. The plain language of Bankruptcy Rule 9006(b) provides for extensions based on excusable neglect only when the applicable deadline is set by the "rules, a notice given under these rules, or a court order." *See* Fed. R. Bankr. P. 9006(b). Absent from this exclusive list is a 'deadline provided by the Bankruptcy Code'—including the Statutory Deadline. "[T]he bankruptcy court d[oes] not have the power to extend statutory timelines, even where excusable neglect exist[s]." *Camel Invs. L.L.C. v. J&M Food Servs. LLC (In re J&M Food Servs.)*, 2017 Bankr. LEXIS 3118 at *20 (Bankr. D. Ariz. Sept. 14, 2017) (citing to *Anwar v. Johnson*, 720 F.3d 1183, 1187-88 (9th Cir. 2013)).

Rule 9006(b) allows for an extension of time "when an act is required or allowed to be done at or within a specific period *by these rules or by a notice given thereunder or by order of court*." *See In re Ducks in a Row, Inc.*, 2004 Bankr. LEXIS 2454 at *5 (Bankr. E.D. Va. Apr. 16, 2004) ("Rule 9006(b) does not give the court the power to alter the statutory provisions of § 365(d)(4) of the bankruptcy code, even if the court were to find that the equities were in favor of reinstating the lease."). But the Statutory Deadline "is not specified by rule or court order but by federal statute"; a statute that deems the applicable leases automatically rejected due to the debtor's failure to timely assume or reject. *Id*. Ultimately, "Rule 9006(b) does not give the court the power to alter the statutory provisions

of § 365(d)(4) of the bankruptcy code, even if the court were to find that the equities were in favor of reinstating the lease." *Id*. at 5.

Ninth Circuit precedent binds: "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Anwar*, 720 F.3d at 1187 (holding that an extension of the deadline for filing nondischargeability complaints under Bankruptcy Rule 4007(c) may be granted only upon a timely motion). Because the deadline to be extended in *Anwar*, like the Statutory Deadline here, required action *before* its expiration ("The motion shall be filed before the time has expired."), the movant "was not entitled to a retroactive extension of the filing deadline based on equitable considerations." *Id*. ("Because granting [movant] a retroactive extension of the filing deadline would conflict with the plain language of [the rules], the bankruptcy court could not rely on its equitable powers to do so"). Likewise in this case, granting an extension under Rule 9006(b) would conflict with the Statutory Deadline.[7] Equitable considerations, then, do not provide a basis to deviate from the dictates of the Statutory Deadline.

Further, "because the automatic rejection of leases under § 365(d)(4) is substantive, rather than procedural, this Court does not have the authority or equitable powers to modify or increase the time periods prescribed in the statute." *In re J&M Food Servs.*, 2017 Bankr. LEXIS 3118 at *20; *see also In re Damach, Inc.*, 235 B.R. 727, 732 (Bankr. D. Conn. 1999) (Finding that interpreting rule 9006(b) "to modify the substantive rights and obligations under Bankruptcy Code § 365(d)(4) would not only be contrary to the plain language of such rules but would be unenforceable as exceeding the power delegated to the Supreme Court under the respective rules-enabling acts"); *Law v. Siegel*,

---

[7] Notably, the equitable considerations in *Anwar* were substantially more compelling than those presented here. In *Anwar*, counsel missed the filing deadline by less than an hour due to a computer malfunction, yet the court still found that it had no authority to extend the deadline. *Id.* at 1185-86. Here, the Debtors completely neglected to file a motion to extend the deadline, as required by the plain language of section 365(d)(4). Where the Ninth Circuit has denied an extension for a delay of less than an hour, it would run against precedent to grant an extension for a materially longer delay.

571 U.S. 415 (2014) ("A bankruptcy court may not exercise its authority to carry out the provisions of the Code. . . by taking action prohibited elsewhere in the Code").

The Trustee's reliance on *In re Argonaut Financial Services* is misplaced. *See* Brief, at p.3. First, *Argonaut* was decided in 1994, more than a decade before BAPCPA, and involved the interpretation of the pre-BAPCPA version of section 365(d)(4), which is materially different from the version of the statute at issue here. *See generally In re Argonaut Fin. Servs.*, 164 B.R. 107 (N.D. Cal. 1994). The earlier version of section 365(d)(4) that was at issue in *Argonaut* required assumption or rejection within 60 days of the order for relief, subject to a court's open-ended grant of extensions. *Id*. BAPCPA substantially amended section 365(d)(4), requiring action by both the debtor *and the court* within the 120-day period to effectuate any extension. *See R. Ring Enters.*, 2009 Bankr. LEXIS 685 at *6-7. Accordingly, the *Argonaut* framework—which allowed for discretionary and even *nunc pro tunc* extensions and equitable relief from the statutory deadline—rests on a statute that is substantively different from the version of section 365(d)(4) at issue here.

Second, *Argonaut* is clear that a bankruptcy court only has "the power to fashion equitable remedies in response to a *constitutional violation*, even in the absence of explicit empowerment by the Bankruptcy Code." *In re Argonaut Fin. Servs.*, 164 B.R. at 115 (finding the court had equitable power to remedy a due process violation). No such constitutional violation exists here; the only due process concern is with respect to the third-party landlords who were not present at the hearing and now may operate under the reasonable assumption that their Subleases have been deemed rejected as of July 31, 2026.

Accordingly, as a matter of law, excusable neglect is not a valid basis to extend the Statutory Deadline and the Motion must be denied on this basis.

**b. Even if Excusable Neglect Were a Basis to Extend the Statutory Deadline—And It Isn't—Any Neglect Here Was Not Excusable**

The Trustee has failed to satisfy his burden to show that any neglect in allowing the Statutory Deadline to expire was excusable. In determining whether a party's neglect was "excusable," courts consider "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). The failure in this case was entirely within counsel's reasonable control. *See Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1121 (C.D. Cal. 2006) (holding that counsel's missing of deadlines and failure to comply with court orders did not constitute excusable neglect).

While the length of the delay here was relatively minor, the reason for delay (the first and third *Pioneer* factors) is insufficient to constitute excusable neglect within the meaning of Rule 9006. Counsel to the Trustee attributes the lapse to an internal calendaring error, despite more than a month passing between the Trustee's appointment and the Statutory Deadline. August 5, 2026 Hr'g Tr., 4:20–23 ("[T]he 365(d)(4) deadline passed on Friday, and I did not file a motion to extend the time because I did not have the date calendared."). This explanation squarely identifies a failure within counsel's own control, not a lapse due to an external factor, and does not constitute excusable neglect.

Where a deadline is fixed and crucial, the failure to calendar is not the sort of excusable neglect contemplated by rule 9006(b), it reveals a lack of basic diligence. *See* Fed. R. Bankr. P. 9006(b); *see also Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1121 (C.D. Cal. 2006) ("Generally, counsel's carelessness or ignorance of the law does not constitute excusable neglect."). The excuse proffered here by Trustee's counsel is materially weaker than the excuse offered—and rejected by the Ninth Circuit—in *Anwar* where counsel's computer malfunctioned and caused a delay of less than an hour. *Anwar v. Johnson*, 720 F.3d at 1185-86. The Trustee was appointed to this case on June 16,

2026, leaving over a month to determine the deadline for the Debtors to assume or reject their real property leases in a 59 location retail / franchising case. *See* Brief, at p. 3.

The second *Pioneer* factor likewise weighs against the Trustee. The Statutory Deadline is not a scheduling convenience, but rather a substantive right of the impacted landlords. *In re J&M Food Servs.*, 2017 Bankr. LEXIS 3118 at *20 (recognizing that "the automatic rejection of leases under § 365(d)(4) is substantive, rather than procedural"); *see also In re Damach, Inc.*, 235 B.R. 727, 732 (Bankr. D. Conn. 1999) (Interpreting rule 9006(b) "to modify the substantive rights and obligations under Bankruptcy Code § 365(d)(4) would not only be contrary to the plain language of such rules but would be unenforceable as exceeding the power delegated to the Supreme Court under the respective rules-enabling acts"). The Subleases were automatically deemed rejected as of July 31, 2026, and the Trustee was required to immediately surrender possession. The Trustee doesn't simply seek additional time to make a decision; he seeks retroactive reversal of substantive relief that benefited Carl's Jr. Reinstatement of rejected Subleases would prejudice Carl's Jr., as Carl's Jr. would incur additional legal expenses that are currently unnecessary and would obviate Carl's Jr.'s substantive rights. Indeed, Carl's Jr. would be prejudiced as it has reasonably relied on the Statutory Deadline to initiate the process of putting new franchisees in place and retake the various premises.

The fourth *Pioneer* factor (the Trustee's good faith) is neutral.

Accordingly, the Trustee has failed to establish excusable neglect and the proffered excuse does not warrant an extension of the Statutory Deadline, even if this Court had the power to grant one.

### III. The Subleases and Franchise Agreements Do Not Comprise a Single Integrated Transaction That Is Exempt from the Statutory Deadline

Understanding the deficiencies in arguing excusable neglect, the Trustee argues in the alternative that the Debtors' 43 Subleases and 59 Franchise Agreements comprise a "single integrated transaction" and that such "integration" somehow nullifies the Statutory Deadline and replaces it with the longer deadline for executory contracts set forth in Bankruptcy Code section 365(d)(2). This argument fails for two reasons. First, after previously acknowledging that the Statutory Deadline expired, and making an oral motion to extend it, the Trustee[8] now is judicially estopped from arguing, as he does in the Brief, that the Subleases are not even subject to that deadline because they are suddenly part of a "single integrated transaction." Second, even if the Subleases were part of a "single integrated transaction," they still would be subject to the now-expired Statutory Deadline.

---

[8] For the avoidance of doubt, the Trustee is bound by, and can be judicially estopped from taking positions contrary to, actions of the Debtors while they remained in possession. *Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.)*, 657 F.2d 1076, 1080 (9th Cir. 1981) (holding that a subsequently appointed trustee could not contest a lien on lawsuit proceeds that was previously granted by the debtor and authorized by the court). Courts evaluating this successive relationship have recognized that to hold that the actions of the debtor are not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor to conduct its business because it would discourage third parties from dealing with the debtor for fear that the court would later appoint a trustee and declare that the actions previously taken by the debtor invalid and not binding on the trustee. *In re Philadelphia Athletic Club, Inc.*, 17 B.R. 345, 347 (Bankr. E.D. Pa. 1982) (indicating that "[s]uch a result [wa]s inconsistent with the purpose of chapter 11 of the [Bankruptcy] Code to allow the debtor in possession to conduct its business and formulate a successful plan of reorganization."); *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 800 (8th Cir. 1992) ("Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee.").

**a. The Trustee Is Judicially Estopped from Asserting that the Subleases and Franchise Agreements are Integrated for Purposes of Section 365(d)**

Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The majority view requires that judicial estoppel is applicable when the inconsistent position was "actually adopted by the court in… earlier litigation." *Rissetto*, 94 F.3d at 601. The minority view allows for application of the judicial estoppel even if the litigant was unsuccessful in its assertion of the inconsistent position. *Id*. In either view, the Trustee is judicially estopped from now arguing that the Subleases and Franchise Agreements comprise a single integrated transaction that is exempt from the Statutory Deadline.

The Trustee's oral motion expressly sought to extend the section 365(d)(4) deadline; he did not contend that any other provision was applicable, nor did he take the position that the Statutory Deadline did not apply to the Subleases because they were allegedly part of a "single integrated transaction." This argument only arose in briefing after the fact.

The Debtors here previously filed numerous rejection motions and *successfully* obtained orders authorizing the rejection of 11 of the 59 locations' leases and Subleases. The Trustee has already gained the advantage of treating the Subleases as *separately* assumable or rejectable agreements: annualized savings in excess of $2 million according to the Debtors' own numbers.[9] The Trustee cannot now take the inconsistent position that

---

[9] *See Notice of Motion and Motion of the Debtor and Debtor-in-Possession for Entry of an Order (I) Authorizing the Rejection of Certain Unexpired Lease of Nonresidential Real Property Effective as of April 2, 2026 (the "Petition Date") Pursuant to 11 U.S.C. § 365; and (II) Granting Related Relief)* [D.I. 83] (each such motion, a "Rejection Motion"), at p. 5 (asserting $331,408 in annual savings upon rejection of the subject lease); Rejection Motion [D.I. 109], at p.3 (asserting $72,932 in annual savings upon rejection of the subject lease); Rejection Motion [D.I. 141], at p.3 (asserting $445,450 in annual savings upon rejection of the subject lease); Rejection Motion [D.I. 149], at p.3 (asserting

all the Franchises and Subleases are part of a "single integrated transaction" when they've already rejected 7 Carl's Jr. Subleases that are supposedly part of that "single transaction."

Additionally, the Debtors' Schedules list each of the Subleases and Franchise Agreements as a separate contract. *See* Schedules, Schedule G [D.I. 118]. After making this representation, as accepted by this Court and the Debtors' creditors, including Carl's Jr., the Trustee cannot now take the inconsistent position that the agreements are a single, integrated transaction. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784-85 (9th Cir. 2001) (holding that debtor was judicially estopped from pursuing claims omitted from its schedules, reasoning that "[i]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely.").

Accordingly, the Trustee should be judicially estopped from advancing these new and inconsistent arguments.

**b. The Subleases and Franchise Agreements Do Not Constitute a Single Integrated Transaction so as to Justify Application of the 365(d)(2) Deadline**

The Trustee's argument on integration justifying application of the more lenient 365(d)(2) deadline fails. Ninth Circuit precedent provides that agreements that may be part of a single transaction do not necessarily constitute a single contract for purposes of section 365. *In re Pacific Express, Inc.*, 780 F.2d 1482, 1486 (9th Cir. 1986). The *Pacific Express* court found that if the agreements could be "disaggregated", then they constitute two separate contracts. *Id*. The court considered the lower court's order to assume or reject one of the agreements as an "assumption that the [two agreements] could be considered separately as constituting an executory contract." *Id*. at 1487. This Court has done precisely this by granting the Debtors' motions to reject 11 separate leases and

---

$242,088 in annual savings upon rejection of the subject lease); Rejection Motion [D.I. 159], at p.3 (asserting $1,168,576 in annual savings upon rejection of the subject lease).

Subleases without having ordered the rejection of a single Franchise Agreement. This Court's multiple rejection orders likewise implicitly assume that the Franchise Agreements and Subleases could be "disaggregated" to warrant separate treatment under § 365.

The language of the Franchise Agreements further severs them from the Subleases such that the Sublease remain subject to the Statutory Deadline. The Franchise Agreements explicitly contemplate their survival despite the loss of the related leasehold. *See* Ex. 2, § 2(A) ([I]f the right to possession [of the premises] is lost through no act or failure to act on Franchisee's part, Franchisee may relocate the Franchised Restaurant. . ."). Furthermore, the Franchise Agreements are governed by Tennessee law; the Subleases are governed by California law. *See* Ex. 2, § 27(a); Ex. 1, § 24. How could a "single integrated transaction" be governed by the law of two different states?

The Franchise Agreements additionally contain an entire-agreement clause, which provides that the Franchise Agreement is "the entire, full and complete agreement between the parties"—contractually acknowledging that the Franchise Agreement is distinct from the Subleases, and any other agreement. *See* Ex. 2, § 25. Therefore, the Franchise Agreements and Subleases are not so "inextricably intertwined" as to justify integration for purposes of section 365(d). Accordingly, the Franchise Agreements and Subleases, while related to and cross-defaulted with each other, each constitutes a separate contract for purposes of section 365(d).

The Trustee's assertion that "[a]ll of the subleases with CKE require that the locations be operated as Carl's Jr. location" is contradicted by the Trustee's own evidence. *See* Brief, at p. 4. The first exhibit annexed to the Brief provides that "[t]he premises shall be used for a fast-food hamburger type restaurant business and for any other lawful purpose with the written consent of the Lessor." *See* Brief, Ex. 1, § 4. The broadened potential use of the premises, explicitly contemplated on the face of the limited evidence provided, weighs against any assertion by the Trustee that the Franchise Agreements and Subleases are an integrated transaction.

Under the Trustee's theory, the leases without a use restriction would be subject to the Statutory Deadline, while the subleases containing use restrictions would be subject to the more open-ended section 365(d)(2) deadline. This conclusion would lead to divergent treatments of effectively the same set of transactions, which would lead to judicial disarray and impose harm to creditors by imposing differing lease-by-lease deadlines. H.R.Rep. No. 109–31(I), at 86 (2005) (section 365(d)(4) was enacted "to establish a firm, bright line deadline by which an unexpired lease of nonresidential real property must be assumed or rejected."). This provision is designed to remove the bankruptcy judge's discretion to grant extensions of time."

**c. Even if the Franchise Agreements and the Subleases Did Comprise a Single Integrated Transaction for Purposes of Section 365(d), the Statutory Deadline Would Still Apply to the Subleases.**

Even if the Subleases and Franchise Agreements did comprise a "single integrated transaction" for purposes of section 365(d), as the Trustee newly contends, the fundamental rules of statutory construction require application of the lease-specific Statutory Deadline to the Subleases. It is well-established practice to give weight to specific statutory provisions over general ones. *Salgado v. Garcia*, 384 F.3d 769, 773-74 (9th Cir. 2004) ("It is an elementary tenet of statutory construction that where there is no clear indication otherwise, a specific statute will not be controlled or nullified by a general one") (quoting *United States v. Navarro*, 160 F.3d 1254, 1256 (9th Cir. 1998)). Where statutes conflict, as the deadlines do here under sections 365(d)(2) and 365(d)(4), the more specific provision qualifies and supplies exceptions to the general. *See Id*. at 1256-57. Under the Ninth Circuit's approach to statutory construction, § 365(d)(4) "qualifies and supplies exceptions" to the general deadline for executory contracts set forth in section 365(d)(2). *Id.*

The Trustee cites *In re FPSDA I, LLC*, 450 B.R. 392 (Bankr. E.D.N.Y. 2011) for his proposed application of the section 365(d)(2) deadline to "integrated transactions" that include leases of non-residential real property. This out-of-circuit case is readily

distinguishable: In *FPSDA,* the debtors sought and obtained a determination that the subject agreements were integrated and subject to the section 365(d)(2) deadline *prior to the expiration of the Statutory Deadline*. *In re FPSDA I, LLC*, 450 B.R. at 395. No such pre-expiration motion was brought here.

Further, the court's ruling in *FPSDA* proves too much. Section 365(d)(4) specifically contemplates the grant of an extension "for cause." 11 U.S.C. § 365(d)(4). The basis for the application of the section 365(d)(2) deadline—that deemed rejection would render the "franchise agreements . . . worthless" and that the "franchise agreements and the accompanying leases [were] the most valuable assets" of the debtors' estates, *In re FPSDA I, LLC*, 450 B.R. at 400-01, are precisely the showings of cause that would justify extension under section 365(d)(4), *had the Trustee here made such a motion before the Statutory Deadline expired.* Instead, a more reasonable statutory interpretation provides for a debtor to use the integrated nature of a transaction as an argument that a court should extend the Statutory Deadline until the debtor can decide whether to assume.

The Trustee also cites *In re Harrison*, in which the court held that the lease and dealer agreements were an integrated transaction and granted the more lenient 365(d)(2) deadline, but relied heavily on the unique nature of franchising involving petroleum products. *See In re Harrison*, 117 B.R. 570, 572 (Bankr. C.D. Cal. 1990) ("Congress has regarded a franchise in the petroleum products industry as unusual, in fact perhaps, unique [as the] relationship is . . . often complex and characterized by at times competing interests"); *In re FPSDA I, LLC*, 450 B.R. at 400 ("[T]he *Harrison* case involved gas station franchisees who were given special protection by Congress."). The Subleases and Franchise Agreements do not implicate any such special industry concerns.

Further, acceptance of the Trustee's argument would set dangerous precedent. The Trustee argues that integrated transactions that involve leases warrant abandonment of the Statutory Deadline and application of the more lenient deadline under section 365(d)(2). But this invites a serious question: what are the bounds? Under the Trustee's

position, could the presence of a typical set of tenant covenants, conditions, and restrictions remove a lease from the scope of section 365(d)(4)? Would a separate, but "integrated" confidentiality agreement do so?

The legislative history is clear that section 365(d)(4) was enacted to protect lessors from the uncertainties of a bankrupt tenant. The Trustee's new position in the Brief would effectively nullify those protections for a vast swathe of lessors, namely, any lessor that has connected its lease to an agreement that falls under the scope of section 365(d)(2). If leases can be deemed to be something other than what they are – agreements for the use of nonresidential real property subject to the Statutory Deadline, simply by tying them to other agreements, the Statutory Deadline—and the protections that Congress contemplated thereunder—would face harshly limited application.

The Court should decline to expand the meaning of "integration" to swallow the precisely applicable statutory limitation.

## IV. Recharacterization of the Subleases and Franchise Agreements as a Single Integrated Transaction Does Not Help the Trustee

It is well-settled that the rejection of an executory contract constitutes a prepetition breach. *See* 11 U.S.C. § 365(g); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 530 (1984). If taken as a single integrated transaction as espoused by the Trustee, under the cross-default provision present in each Franchise Agreement,[10] the prior rejection of a *single* Sublease would constitute a breach of *every* Sublease and *every* Franchise Agreement. Taken to its logical conclusion, each of the Subleases and Franchise Agreements is already subject to termination based on incurable post-petition breaches via rejection.

The only alternative scenario is one where the prior rejection of several of the Subleases was *not* effective in terminating the other Franchise Agreements and the Subleases. In that case, the cessation of operations at the now-closed locations would

[10] Under the Franchise Agreements, Carl's Jr. is permitted to terminate without a cure period if among other things, the "Franchisee . . . remains in default beyond the applicable cure period under any other agreement with CKE or its affiliates . . ." *See*, **Ex. 2**, § 18(A)(13).

constitute a breach of the operating covenants in *all* of the remaining Franchise Agreements and Subleases.[11] Accordingly, the remaining Franchise Agreements and Subleases would be subject to termination for post-petition default. This result would leave the Trustee with no remaining assets to sell.

Additionally, if the Trustee wishes to advance the argument that the Franchise Agreement and Subleases are a single integrated transaction, then the Trustee can't pick and choose locations, as it has been. Instead, under the Trustee's "single integrated transaction" theory, he would have to either (a) *assume all* the Subleases and Franchise Agreements together, or (b) *reject all* the Subleases and Franchise Agreements together. That is barred by applicable law. *See In re Lovitt*, 757 F.2d 1035, 1041 (9th Cir. 1985) ("Because rejection of an executory contract is retroactive to the date of the filing of the bankruptcy petition, such a contract never becomes a part of the bankrupt's estate. A bankruptcy court has no jurisdiction over assets outside of the bankrupt's estate, and therefore lacks authority to approve their sale or transfer.") (internal citations omitted).

Further, if the Franchise Agreements—fundamentally incorporating trademark and other intellectual property licenses—and Subleases were integrated into a single transaction, assumption of the integrated agreement would be subject to section 365(c), *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), and the provisions of the Lanham Act. *See, e.g.*, *In re Pinnacle Foods of Cal. LLC*, 2024 Bankr. LEXIS 2521 at *16 (Bankr. E.D. Cal. Oct. 10, 2024) ("*Catapult* compels the conclusion that [debtor] can neither assign nor assume the Franchise agreements without [franchisor's] consent."); *see also N.C.P. Mktg. Group v. Blanks (In re N.C.P. Mktg. Group)*, 337 B.R. 230, 237 (D. Nev. 2005) ("Because we find that under applicable trademark law, trademarks are personal and non-assignable without the consent of the licensor, the [licensor's] trademark would

---

[11] Under the Franchise Agreements, Carl's Jr. is permitted to terminate without a cure period if "Franchisee ceases to continuously operate the Franchised Restaurant for a period in excess of 5 consecutive days, unless the closing is due to an act of God, fire or other natural disaster or is approved in writing in advance by [Carl's Jr.]". *See*, **Ex. 2**, § 18(A)(1).

be unassumable as part of the bankruptcy estate . . . without the [licensor's] consent"). Under the Trustee's integrated transaction theory, assumption of any and every sublease would be subject to the stricter 365(c) standard, as opposed to the lenient assumption standard under section 365(b)(2). Carl's Jr. reserves all rights to withhold this consent in its sole and absolute discretion.

**Conclusion**

WHEREFORE, Carl's Jr. respectfully requests that the Court deny the Motion, decline to extend the Statutory Deadline, and enter an order deeming the Subleases rejected as of July 31, 2026 and granting such other relief as is just and proper.

Dated: August 26, 2026

**DLA PIPER LLP (US)**

*/s/ Eric D. Goldberg*
Eric D. Goldberg (SBN 157544)
*Counsel for Carl's Jr. Restaurants LLC*