**RAINES FELDMAN LITTRELL LLP**
Kyra E. Andrassy (State Bar No. 207959)
*kandrassy@raineslaw.com*
Robert S. Marticello (State Bar No. 244256)
*rmarticello@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Counsel for Bradley D. Sharp,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

In re:

SUN GIR INCORPORATED, *et al.*,

Debtor.

☐ Affects Sun Gir Incorporated
☐ Affects Harshad & Nasir, Incorporated
☐ Affects Senior Classic Leasing, LLC
☐ Affects DFG Restaurants Incorporated
☐ Affects Second Star Holdings, LLC
☐ Affects Third Star Investments, LLC
☒ **Affects All Debtors**

Case No.: 8:26-bk-11056-SC

Chapter: 11

(Jointly Administered with Case Nos. 8:26-bk-11057-SC; 8:26-bk-11058-SC; 8:26-bk-11060-SC; 8:26-bk-11061-SC; 8:26-bk-11062-SC)

**STATUS REPORT IN SUPPORT OF OBJECTION TO NOTICE OF INSIDER COMPENSATION OF ALEX KALINSKY**

**Hearing Information:**
Date: September 16, 2026
Time: 1:30 p.m.
Place: Courtroom 5C
411 W. Fourth St.
Santa Ana, CA 92701

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS, AND ALEX KALINSKY:**

Bradley Sharp, the chapter 11 trustee (the "**Trustee**") for the above-captioned debtors (collectively, the "**Debtors**"), files this status report in support of his *Objections to Notices of Setting Insider Compensation of Ben Zandi and Alex Kalinsky* [Docket No. 337] (the "**Trustee Objection**").

The Court previously had two notices of insider compensation before it, one for Ben Zandi [Docket No. 111] (the "**Zandi Notice**"), and one for Alex Kalinsky [Docket No. 110] (the "**Kalinsky Notice**").

In the Trustee Objection, the Trustee joined in the objection to insider compensation filed by Carl's Jr. Restaurants LLC [Docket No. 147] (the "**Carl's Objection**"). The Trustee separately objected to the Zandi Notice. As to the Kalinsky Notice, the Trustee stated that he was still evaluating his position. The Trustee recognized that Mr. Kalinsky has provided some services, but he is also counsel to affiliated entities and to Mr. Harshad Dharod personally. Mr. Dharod is the sole or majority owner of each of the Debtors through the Dharod Family Trust. (*See* Ex. A at 12:16-27.)[1] The Trustee raised that it was unclear whether Mr. Kalinsky was being paid any compensation from his non-debtor clients.

The Court denied the Zandi Notice by order entered on July 22, 2026 [Docket No. 354]. The Court concluded that because the Trustee objected to the Zandi Notice, it "no longer reflects a current request by the estate fiduciary authorized to operate the Debtors' business." (*See* Order at 3:3-4.) The Court continued the Kalinsky Notice to September 16, 2026. The Court ordered the Trustee to file a status report fourteen days before the status conference addressing the Trustee's position, the amount and basis of any compensation the Trustee supports, and whether the matter may be resolved by Court order without further hearing. (*See* Docket No. 382.)

The Trustee has now completed his evaluation of the Kalinsky Notice. The Trustee's position is that the Kalinsky Notice should be denied in its entirety and the Trustee does not support any compensation being paid to Mr. Kalinsky from the estates. The Trustee has no objection to the Kalinsky Notice being denied without further hearing.

[1] Attached hereto as **Exhibit A** is a true and correct copy of an unofficial transcript of the continued 341(a) meeting of creditors conducted on June 25, 2026, that was obtained from counsel for Carl's Jr.

First, Mr. Kalinsky has unavoidable conflicts of interest. According to Mr. Zalinsky, he is the General Counsel of a non-debtor affiliate Friendly Franchisees Corporation ("**FFC**"), but he provides services to the Debtors as well. (*See* Debtors' Opp'n., Kalinsky Decl. [Docket No. 156] at ¶ 1.) There is no dispute that Mr. Kalinsky serves as personal counsel for Mr. Dharod. (*See* Carl's Obj. at 2; *see also id.*, Ex. 1 at 13.) Mr. Kalinsky testified that he is also the general counsel of all of the affiliates of the Debtors that provide services to the Debtors or that lease real property to the Debtors. (*See* Ex. A at 12:13; *see also id.* at 17:12; *id.* at 8 to 12, describing the various affiliated entities.) As raised in the Trustee's Objection, the latter is of particular concern to the Trustee as the Debtors' affiliate leases were amended before the bankruptcy filing to shorten the terms and increase the rents, amendments which hampered sale efforts. (*See* Trustee Obj. at 3:3-10.) All of the affiliates are 100% owned by the Dharod Family Trust, of which Mr. Dharod is the trustee. (*See* Ex. A at 12:8-10.) Thus, Mr. Kalinsky is concurrently representing entities that have direct adverse interests to the estates. Moreover, as the Trustee has been appointed and has retained his own counsel, Mr. Kalinsky's role as general counsel for the estates is not needed.

Second, while Mr. Kalinsky purports to serve as general counsel for a range of entities, *i.e.*, the Debtors, the non-debtor affiliates, and Mr. Dharod, the request is for the Debtors to pay 100% of Mr. Kalinsky's compensation. Mr. Kalisky testified that he has historically been paid from one source—through FCC, the Debtors' management company. (*See* Ex. A at 17:7-9; *see also* Debtors' Opp'n., Kalinsky Decl. [Docket No. 156] at ¶ 4.) It is not clear whether, pre-petition, the Debtors were the sole source of funding for payment to Mr. Kalinsky. However, now, the proposal is for Mr. Kalinsky to be paid $269,380 per year from the Debtors' revenues. (*See* Kalinsky Notice at 2.) In the Trustee's opinion, that is not appropriate.

///

///

///

In sum, the Trustee requests that the Kalinsky Notice be denied for the same reasons as the Zandi Notice—the estate fiduciary charged with operating the Debtors' position does not support the request.

Dated: September 2, 2026

**RAINES FELDMAN LITTRELL LLP**

By: *<u>/s/ Robert S. Marticello</u>*
Robert S. Marticello
Attorneys for Bradley D. Sharp,
Chapter 11 Trustee

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

In re

SUN GIR INCORPORATED, et al.[1]

Debtor.

Affects:

☐ Harshad & Nasir, Incorporated

☐ Senior Classic Leasing, LLC

☐ DFG Restaurants, Incorporated

☐ Second Star Holdings, LLC

☐ Third Star Investments, LLC

☒ Affects All Debtors

Case No.: 8:26-bk-11056-SC

Chapter 11

Telephonic Meeting
Thursday, 9:00 a.m.
June 25, 2026

**UNOFFICIAL TRANSCRIPT OF THE SECOND SESSION OF THE SECTION 341(A) MEETING OF CREDITORS HELD BY THE UNITED STATES TRUSTEE**

Proceedings produced by electronic sound recording; transcript produced by DLA Piper LLP (US).

[1] "Debtors" means Sun Gir Incorporated, and its jointly administered affiliated debtors, Harshad & Nasir, Incorporated (Case No.: 8:26-bk-11057-SC); Senior Classic Leasing, LLC (Case No.: 8:26-bk-11058-SC); DFG Restaurants, Incorporated (Case No.: 8:26-bk-11060-SC); Second Star Holdings, LLC (Case No.: 8:26-bk-11061-SC); and Third Star Investments LLC (Case No.: 8:26-bk-11062-SC).

<u>Telephonic Meeting, June 25, 2026</u>

<u>Thursday, 9:00 a.m.</u>

**Ms. Ng:** Good morning, everyone. My name is Queenie Ng. I'm the trial attorney for the United States Trustee's Office.

This is the continued 341A meeting of In Re: Sun Gir Incorporated, case number A:26-BK-11056SC. This Chapter 11 was filed on April 2, 2026, and this continued 341A was set for June 25, 2026, at 9:00 AM.

Can I get an appearance from, from, the debtor's counsel and the debtor's representative, followed by the Chapter 11 trustee and the counsel?

**Mr. Kuperman:** Renee Kuperman, here for debtor's counsel.

**Ms. Ng:** Thank you.

We have the two representatives from the debtor?

**Mr. Kalinsky:** Yes, this is Alex Kalinsky and also here is Harshad Dharod.

**Ms. Ng:** Thank you.

And then we have the Chapter 11 trustee?

**Mr. Sharp:** Good morning, this is Bradley Sharp, Chapter 11 trustee.

**Ms. Ng:** Thank you.

And then we have the trustee's counsel?

**Ms. Andrassy:** Good morning, this is Kyra Andrassy, proposed counsel for the Chapter 11 trustee.

**Mr. Marticello:** Good morning, this is Robert Marticello of Raines Feldman and Littrell, proposed counsel for the Chapter 11 trustee.

**Ms. Ng:** Thank you.

We have Mr. Skillman.

**Mr. Skillman:** Yes, good morning.

It's Tim Skillman with CR3 Partners, financial advisors to the debtors.

**Ms. Ng** Thank you.

Do we have the representative with the Northern Trust Company?

**Mr. Schumacher:** Yes, you have William Schumacher appearing on behalf of Northern Trust, along with my colleague, Atle Saterbak.

**Ms. Ng:** Thank you.

We have Mr. Goldberg?

**Mr. Goldberg:** Yes, this is Eric Goldberg representing Carl's Jr Restaurants.

**Ms. Ng:** Thank you.

And I think we have Mr. Johnson?

**Mr. Johnson:** Yes, this is Jacob Johnson representing McLane Food Service.

**Ms. Ng:** Thank you.

Are there anyone else on the line that we haven't made the appearance?

**Mr. Friedman:** Yes, this is Alan Friedman, Shulman Bastian Friedman, Bui & O'Dea.

I represent Harshad Dharod and a number of the related affiliated entities to the debtors.

**Ms. Ng:** Thank you.

This meeting will be tape recorded as required by the bankruptcy rules, so I ask everyone to speak clearly when asking or answering any questions.

At this point, I'm going to swear in the debtor's representative.

We have... I'm sorry, can you remind me of your name again?

**Mr. Kalinsky:** Alex Kalinsky and Harshad Dharod.

**Ms. Ng:** Okay, let's do Mr. Alex first.

Can you please raise your right hand?

**Mr. Kalinsky:** Yes.

**Ms. Ng:** Do you solemnly swear that the testimony you're about to give is the truth, the whole truth, and nothing but the truth?

**Mr. Kalinsky:** Yes.

**Ms. Ng:** Do you understand that you are testifying under oath today?

**Mr. Kalinsky:** Yes.

**Ms. Ng:** Okay, thank you. Can you just state your full name and address for the record, please?

**Mr. Kalinsky:** Sure.

Alex Kalinsky, K-A-L-I-N-S-K-Y, and the address is 1 Centerpointe Drive, it's one word - Centerpointe, with an 'e' at the end, Drive, Suite 400 La Palma, California 90623.

**Ms. Ng:** Okay, thank you.

And you have Mr. Harshad?

**Mr. Dharod:** Yes, this Harshad Dharod.

**Ms. Ng:** Do you mind to please raise your right hand, let me know when you're done.

**Mr. Dharod:** Sure.

**Ms. Ng:** Do you solemnly swear that the testimony you're about to give is the truth, the whole truth, and nothing but the truth?.

**Mr. Dharod:** Yes.

**Ms. Ng:** And do you understand that you are testifying under oath today?

**Mr. Dharod:** Yes.

**Ms. Ng:** Can you also please state your full name and address for the record please?

**Mr. Dharod:** Harshad Dharod and my address is the same as Alex's address, which is 1 Centerpointe Drive, La Palma.

**Ms. Ng:** Thank you.

I am going to ask the debtor's counsel to confirm whether or not the voices we just heard are in fact the debtor's two representatives.

**Mr. Kuperman:** It is.

**Ms. Ng:** Thank you.

At this point I am going to turn to the Chapter 11 Trustee or his counsel for questions.

**Mr. Sharp:** Good morning, thank you.

This is Bradley Sharp, I was appointed Chapter 11 Trustee June 17th.

The order is docket 273.

I am going to ask some questions of Mr. Dharod to verify signatures with respect to the amended schedules statement of financial affairs filed on May 26th.

Then I am going to ask Mr. Kalinsky a few questions about the preparation of the schedules – the amended schedules and so forth, and the case at large.

And then after that I will open it up for any questions or as the US Trustee would like.

So, first off, Mr. Dharod, can you hear me?

**Mr. Dharod:** Yes, I can hear you.

**Mr. Sharp:** Alright, I'm going to walk through the amended schedules that were filed in this matter. And just for everyone's perspective, these were all filed in the main case, the Sun Gir case. The case number is 11056. I'm going to walk through each one to verify that this was Mr. Dharod's signature.

So, Mr. Dharod, I want to focus you first on docket number 184, and this is schedules for the in the Sun Gir, amended schedules in the Sun Gir bankruptcy. Do you have that document?

**Mr. Dharod:** Yes.

**Mr. Sharp:** I would refer you in that document to page one of 51 towards the bottom. Is that your signature on that document?

**Mr. Dharod:** Yes.

**Mr. Sharp:** All right, thank you. Now I'm going to refer you to docket number 185. This is also in the Sun Gir bankruptcy, and this starts off Schedule D. Again, you'll see towards the bottom of that document, is that your signature?

**Mr. Dharod:** Yes.

**Mr. Sharp:** All right, thank you. We're now going to shift to the Second Star case, and this is docket number 186. Again, the first page of that document, towards the bottom of that page, Mr. Dharod, do you see that signature?

**Mr. Dharod:** Yes.

**Mr. Sharp:** Is that your signature?

**Mr. Dharod:** Oh, yeah.

**Mr. Sharp:** I will now refer you to document 187. Again, the first page towards the bottom. Is that your signature on this document?

**Mr. Dharod:** Yes.

**Mr. Sharp:** All right, thank you.

Now I'm going to be shifting to the Third Star matter and this is docket 188, page 1 of 55. Mr. Dharod, is that your signature on this document?

**Mr. Dharod:** Yes.

**Mr. Sharp:** Thank you. And now shifting to document 189. Is that your signature?.

**Mr. Dharod:** Yes.

**Mr. Sharp:** Thank you. Now, the Harshad and Nasir matter, and this is docket number 190. Mr. Dharod, at the bottom of that page, is that your signature?

**Mr. Dharod:** Yes.

**Mr. Sharp:** Thank you. Docket number 191, at the bottom of the page, is that your signature, Mr. Dharod?

**Mr. Dharod:** Yes.

**Mr. Sharp:** Thank you. Docket number 192, at the bottom, is that your signature on that document?

**Mr. Dharod:** Yes. Yes.

**Mr. Sharp:** Thank you. Docket number 193, towards the bottom, is that your signature on this document?

**Mr. Dharod:** Yes.

**Mr. Sharp:** Thank you. Docket number 194, towards the bottom, is that your signature on this document?

**Mr. Dharod:** Yes.

**Mr. Sharp:** Thank you. And finally, docket number 195, towards the bottom, is that

your signature on this docket?

**Mr. Dharod:** Yes.

**Mr. Sharp:** All right, thank you, and you understand that each of these documents were signed under penalty of perjury?

**Mr. Dharod:** Yes.

**Mr. Sharp:** All right, thank you, sir. Mr. Kalinsky, I have a few questions with you. Could you please state your role with the debtors?

**Mr. Kalinsky:** Yes, I am general counsel for the debtors.

**Mr. Sharp:** All right, thank you. Are you familiar with the process that created the amended schedules and statements of financial affairs?

**Mr. Kalinsky:** Yes.

**Mr. Sharp:** Can you please walk us through the process to create these amended schedules and statement of financial affairs?

**Mr. Kalinsky:** Sure. So, we have the CR3 team led by Tim Skillman. We provided our books and records, accounting books and records, to his team. And then his team, in coordination with our counsel, which is Eric Bensamochan, he has a couple of people working in his office. They prepared these schedules in coordination with each other.

**Mr. Sharp:** Thank you. Have you reviewed these schedules?

**Mr. Kalinsky:** Yes.

**Mr. Sharp:** Are they correct to the best of your knowledge?

**Mr. Kalinsky:** Yes.

**Mr. Sharp:** Are there anything in the, are these incomplete in any way, to the best of your knowledge?

**Mr. Kalinsky:** I believe they're complete to the best of my knowledge.

**Mr. Sharp:** All right, thank you. We have, could you just briefly explain the debtors, what their business operations are?

**Mr. Kalinsky:** Sure. So, we have six entities. Each one of these entities is a franchisee in the Carl's Jr. system. They have franchise agreements with CKE, Carl's Jr.

restaurants. And so in total, at the time of petition filing, there were 59 restaurants, combined, spread across these six entities. Most of the restaurants are under Senior Classic Leasing LLC. And then, you know, the balance is with the other five. So, we closed a couple of restaurants about 10 days ago. So now there are a total of 57 restaurants. So, all of these are Carl's Jr. restaurants.

**Mr. Sharp:** All right. Thank you. Are there any non-debtor affiliated entities that provide services to the debtors?

**Mr. Kalinsky:** Yes.

**Mr. Sharp:** Could you briefly walk us through what affiliates those are and what services they provide to the debtors?

**Mr. Kalinsky:** Sure. So, there's a management company, Friendly Franchisees Corporation. And there's a smaller management company called Central Street Management. So in combination, they provide accounting, accounts payable, legal, HR, budgetary, you know, insurance procurement, bank account setup, and reconciliation, so, these types of services to the debtors. The management companies employ staff to provide these services. And in exchange for providing these services, there is a management fee charged to the debtors via an administrative services agreement entered into between the management companies and the debtors. So, that's the management companies.

**Mr. Sharp:** Sorry to interrupt, but I'm going to ask a quick question. Is the management agreement listed on Schedule G of each of the amended schedules for the debtors?

**Mr. Kalinsky:** I believe so, yes.

**Mr. Sharp:** Thank you. Thank you. Are there other affiliates that provide services to the debtors?

**Mr. Kalinsky:** Yes. So, there's a company called Friendly Maintenance LLC. So, Friendly Maintenance is a maintenance company, repair and maintenance company. It employs about five individuals, all of whom are building technicians, equipment

technicians, handyman, that kind of profession. So, whenever there is a repair and maintenance need, that's not a complicated need, so kind of your routine plumbing, electrical, kitchen equipment repairs, there is a work order placed by one of the debtor entities to Friendly Maintenance LLC, and then an equipment technician or a building technician is dispatched to the particular restaurant, provides the necessary services, the repairs to the restaurant, and then the debtor entity that operates that restaurant pays to Friendly Maintenance for the work that is provided. So, Friendly Maintenance only services these restaurants. They don't service any other business. And the billings are on a pass-through basis, meaning that the restaurants pay for the cost of services and parts. So, that's Friendly Maintenance LLC.

**Mr. Sharp:** All right, are there others?

**Mr. Kalinsky:** Sure, yes. So, there is a company called CDP Leasing, LLC. So, there is a joint workers' compensation insurance policy that covers the employees in all the restaurants and also covers employees at these affiliated companies that I'm going through, Friendly Franchisees, Friendly Maintenance, and etc., and then also covers employees in completely unrelated real estate businesses that Harshad Dharod also owns. So, because it's one joint policy, we set up CDP Leasing LLC as a workers' comp admin company that collects the premium and deductible amounts from each of the covered entities based on the employee percentages that comprise the overall total. And then within CDP Leasing, there's also three employees that provide safety and training services to the covered entities. And so the covered entities, which include the fixed debtors, pay their proportional costs of the workers' comp insurance policy and the salaries, the proportional salaries of the employees within CDP Leasing to CDP Leasing. So, that's CDP Leasing. There's a couple, there's a few more.

So, we have two employee leasing companies that employ all the employees that work for Second Star Holdings and Third Star Investments. So, Second Star Holdings and Third Star Investments, between them have seven stores in Northern California. All of the crew members within these two entities, and so the crew members being the cooks and

cashiers in the seven restaurants, all of them are employees of RCIH, LLC. So that's the affiliate entity, RCIH LLC.

All of the general managers in these seven restaurants and the two district managers in these restaurants that cover the area, the two district managers, are employees of NW Star Management LLC. So that's the second affiliate, NW Star Management LLC. So, every payroll, which is every two weeks, Second Star Holdings and Third Star Investments send the total payroll needed for their respective employees to these two affiliates. And then these two affiliates produce the payroll checks to the employees in the restaurants. So that's done every two weeks. And so those are the two what we call employee leasing companies.

**Mr. Sharp:** All right. Are there any other services provided to the debtors?

**Mr. Kalinsky:** Sure. So, there's a, we have an India office called Silver Star. I believe it's Silver Star Ventures. And so the India office has a number of employees that provide and do all of the day-to-day accounts payable work. They receive all the bills. They enter them into the system. They set up bill pay through our bank accounts. They have phone calls with vendors, et cetera. So, every two weeks, there's payroll for that company. And so the debtors, again, make payments to that company for payroll for the accounts payable that's provided, the work that's provided there.

**Mr. Sharp:** All right.

**Mr. Kalinsky:** And I think there are no other entities that are providing services. We do have what are affiliated real estate ownership entities that own 13 Carl's Jr. restaurants, and they collect rent from the debtors. So...

**Mr. Sharp:** Okay, and what is the name of those entities?

**Mr. Kalinsky:** Sure. So, there's SNSD Restaurants II, like Roman numeral II, LLC, SNSD Restaurants II LLC; SNSD Restaurants III LLC; and SNSD Restaurants IV LLC. There's also Lankershim Asset LLC; Blue Valley Investments LLC; and Clipper Property Investments, LLC. So, all together, these entities own, some of them own just one property, Clipper Property Investments own just one building; Blue Valley Investments

owns two buildings. But, in total, they own 13 fee properties, and there's a lease in place for each of these properties between the ownership entity and the debtor that operates that particular restaurant.

**Mr. Sharp:** Thank you. Other than the entities that we have discussed, the services and the facility provided to the debtors, are there any other affiliated entities that transact with the debtors?

**Mr. Kalinsky:** Let me see if I'm missing. We have one other one that I can think of. So, Silver Star Real Estate LLC. There are a couple of credit cards that are used by district managers for the debtors that are under Silver Star Real Estate LLC. So, Silver Star Real Estate LLC doesn't provide any services to the debtors, but there are periodic reimbursements that are made by the debtors to Silver Star Real Estate for credit card purchases that are business related purchases for the debtors when a credit card bill is paid by Silver Star Real Estate.

**Mr. Sharp:** Thank you, I appreciate that. Are there any further transactions with affiliates?

**Mr. Kalinsky:** No.

**Mr. Sharp:** Thank you. Ms. Ng, I have no further questions for the witnesses at this time.

**Ms. Ng:** Okay, thank you. Are there any creditors who would like to ask questions? If so, can you please state your name and your party that you represent on the record? Okay, so I hear no response.

**Mr. Johnson:** [STATIC] Sorry, this is Jacob Johnson from McLane Food Service.

**Ms. Ng:** Okay, Mr. Johnson, go ahead, please.

**Mr. Johnson:** For these entities that were just listed, I won't go through them all, could you please describe any overlap in management, officers, day-to-day management or ownership and how that relates to the management and ownership of the debtors?

**Mr. Kalinsky:** Can you clarify? You're asking about the ownership of the affiliate entities.

**Mr. Johnson:** Yeah. Could you walk through the ownership? Let's just take it one at a time. Can you walk through the ownership of these affiliated entities?

**Mr. Kalinsky:** Sure. I just want to clarify. I think our counsel is on the phone. I just want to make sure that I should be answering these questions related to the affiliates. If Mr. Friedman can confirm?

**Mr. Friedman:** Yeah, Alex, that question I think is appropriate because it's going to tie back to the debtor so you can go ahead and answer that. There's no secret there.

**Mr. Kalinsky:** Sure. Um, okay. So, the ownership of all of these affiliates is 100% owned by Dharod Family Trust. And Harshad Dharod is the trustee of the trust. He's also the manager of each one of these affiliated entities. Is there further information you would like?

**Mr. Johnson:** Do any of these entities have any other officers?

**Mr. Kalinsky:** I am general counsel for each of these entities as well.

**Mr. Johnson:** Okay. Thank you. And then if you mind walking through the ownership of the debtors?

**Mr. Kalinsky:** Sure. So, for Senior Classic Leasing LLC, that entity is owned by another LLC called SCL Investment Holdings LLC. And then SCL Investment Holdings, LLC is owned 100% by Dharod Family Trust. Then DFG Restaurants, Inc., Sun Gir, and Harshad and Nassir, those three debtors are owned 100% by Dharod Family Trust. And then Second Star Holdings, LLC and Third Star Investments LLC are owned approximately 88% by Dharod Family Trust. And then the other 12% is owned by several employees. So, we have Greg Funkhouser. He is one of the district managers and directors of operations for the Northern California region. He owns 8% of Second Star Holdings and Third Star Investments. Shawn Rezaei, he is a director of operations for all of Carl's Jr., both Southern California and Northern California in our company. He owns approximately close to 5%. And then we have another district manager, his name is Isidro, I-S-I-D-R-O, Camacho, C-A-M-A-C-H-O, he owns about half a percent. So, all together, that's 100%.

**Mr. Johnson:** And if we could talk briefly about the compensation of those

individuals and whether those were treated and disclosed as insiders and the compensation of pre-petition wages and with respect to their credit position wages.

**Mr. Kalinsky:** Their compensation, I don't have their compensation in front of me in terms of their salaries. So, they do get a salary from the debtors for the services that they provide as district managers or directors of operations. I don't have that number in front of me.

**Mr. Johnson:** And do they provide any services to any entities aside from the debtors to your knowledge?

**Mr. Kalinsky:** No.

**Mr. Johnson:** So, in terms of written agreements between these entities, am I correct in understanding that the only written agreements between the entities would be the leases between the real estate companies and the management, the services agreement, administrative services agreement, you mentioned with the Friendly Franchisees? Is that correct?

**Mr. Kalinsky:** No, there's also service agreements with the other entities I mentioned. So Friendly Maintenance has a service agreement with the debtors. CDP Leasing has a service agreement with the debtors. RCIH LLC and NW Star Management LLC have service agreements with the debtors. I'm not sure if Silver Star Ventures has a service agreement. I would have to double check that. But, yeah, the ones that I mentioned have service agreements.

**Mr. Johnson:** And have those been provided to the Chapter 11 trustee or his counsel?

**Mr. Kalinsky:** I believe so.

**Mr. Johnson:** Okay. I don't have any further questions on this line.

**Ms. Ng:** Thank you. Are there any other creditors who would like to ask questions?

**Mr. Schumacher:** This is, sorry, I'm losing my voice a little bit here, but this is William Schumacher on behalf of Northern Trust Company.

**Ms. Ng:** Thank you.

**Mr. Schumacher:** Just a few questions here. One is, the schedules originally stated that there weren't transfers and then were amended. Are there any other transfers that occurred in the last year that are not listed?

**Mr. Kalinsky:** Not to my knowledge. So, my belief is that they're all listed in these schedules.

**Mr. Schumacher:** And why did the schedules not originally disclose the transfers?

**Mr. Kalinsky:** I think that, you know, the schedules had to be put together. There's a lot of information that had to be processed and, you know, analyzed by Tim Skillman and his team in coordination with our counsel. So, yeah, the original schedules were done without all of that being completed. And so, these amendments were filed to further disclose various financial information.

**Mr. Schumacher:** And what was EBITDA in 2024 and 2025 just so I understand performance here.

**Mr. Kalinsky:** I don't have that in front of me, but it should be listed, I would think, in these schedules.

**Mr. Schumacher:** And so, if I noted, it is probably around $8.6 million for 2024, does that sound right?

**Mr. Kalinsky:** Again, I don't have the number in front of me, so I would defer to whatever is listed here or, you know, we can get back to you with that information.

**Mr. Schumacher:** That would be helpful if you can. And clearly there's been a decline in performance. What's the cause of that?

**Mr. Kalinsky:** There's multiple causes. You know, Carl's Jr. system overall has had a decline in sales and decline in transactions for different reasons. It's, you know, it's impacting all the franchisees in the system. So, if you look at the trend over the last several years, there's been a decline in overall sales and transactions. There's also impact from the higher minimum wage in California that's specifically affecting fast food restaurants that there's $20 per hour. I think it went into effect last year. There's higher food costs from the various inputs that we need for our customers. Insurance has gone up. There's

increases in other expenses. So, you know, when you combine it all together, there's a negative impact on overall EBITDA.

**Mr. Schumacher:** And it's not a factor of some of the transfers of transfers away from the debtors?

**Mr. Kalinsky:** No.

**Mr. Schumacher:** And for Mr. Harshad Dharod, you submitted a declaration in the case saying that you would be putting in $850,000. Did you do that?

**Mr. Dharod:** Yes. You know, yes, I explained it to Tim, how I was going to put it in and then you know he created the documentation, he submitted to the court. And that $850,000, we did deposit it, you know, in the court.

**Mr. Schumacher:** But wasn't that $850,000 really the debtor's own money? And you committed to providing, your statement here says, I have committed to provide funding to the debtors in the amount of $850,000.

**Mr. Dharod:** Yeah, I explained it, I explained all that stuff to Tim, and then Tim prepared it, you know, our documentation, and he filed it, you know, I did not review, you know, that documentation, you know, to me, you know, like I, you know, I have to come up with $850,000 and we come up, you know, we had the money in FFC. And we put that money and FFC, you know, I own 100%.

**Mr. Schumacher:** Yep, but you signed that declaration under a penalty of perjury, correct?

**Mr. Dharod:** Yes, I did find it, but you know, it was just I pretty much assumed what I told him. That's what he filed it, you know. And he prepared the documentation according to according to, you know, me and Tim had a conversation, you know. And it was just, you know.

**Mr. Schumacher:** All right, well, nothing further.

**Ms. Ng:** Thank you. Are there any other creditors?

**Mr. Jacobs:** This is Jacobs.

**Mr. Goldberg:** Hi, this is Eric Goldberg, I have a few questions.

**Mr. Goldberg:** Yeah, hi, thank you. Mr. Dharod, this is either for you or Alex. I'm not sure who'd have the right information, but the question has to do with liquidity. And when I refer to liquidity, I'm asking about how much money the debtor has to continue operating. Do you know, as of today, how much money the debtor has in cash and how long the debtor will be able to continue operations without any additional cash?

**Mr. Kalinsky:** This is Alex. That question is probably best answered by Tim Skillman. He was putting the budget together, I believe, yesterday in coordination with the trustee, the Chapter 11 trustee, Mr. Sharp. So, they would have the best information for that question.

**Mr. Goldberg:** Okay, and then before we switch to Mr. Skillman, I did have a question for you, Alex, and this relates to your role or one of the roles you have, and I believe you testified at the initial 341 that in addition to being a general counsel to the debtors, you also are personal counsel to Mr. Dharod, is that correct?

**Mr. Skillman:** In a limited capacity, yes.

**Mr. Goldberg:** Okay, and when you perform legal services for Mr. Dharod personally, as opposed to working for the debtor, are you compensated by Mr. Dharod or are you compensated by any of the debtors for those services?

**Mr. Skillman:** I'm not compensated for those services by either the debtors or Mr. Dharod.

**Mr. Goldberg:** Do you ever prepare invoices or bills for those services?

**Mr. Skillman:** No.

**Mr. Goldberg:** Do you have any sort of written agreement with Mr. Dharod to provide legal services to him personally?

**Mr. Skillman:** Yes.

**Mr. Goldberg:** And that agreement does not provide for any compensation from any source?

**Mr. Skillman:** That's correct.

**Mr. Goldberg:** Okay, thank you.

No further questions.

**Mr. Johnson:** Yeah, this is Jacob Johnson. I have a few follow-up questions on both of those lines.

**Ms. Ng:** Go ahead, please.

**Mr. Johnson:** Mr. Kalinsky, do you mind describing the nature of your compensation, both from the debtor entities and all of the affiliates that you've listed today?

**Mr. Kalinsky:** Sure. So I'm an employee of Friendly Franchisees Corporation. I am not an employee of any other entity, so 100% of my compensation comes from Friendly Franchisees Corporation.

**Mr. Johnson:** And that you provide services to all of the entities you've listed today, correct?

**Mr. Kalinsky:** That's correct. I'm general counsel for all of these entities.

**Mr. Johnson:** Are you also counsel to the Dharod Family Trust in any capacity, limited or otherwise?

**Mr. Kalinsky:** Uh, no, I'm not counsel to the Dharod Family Trust.

**Mr. Johnson:** Do you provide advice to Mr. Dharod with respect to his activities as trustee with respect to that trust as it relates to the entities that we've discussed today?

**Mr. Kalinsky:** No, not in that capacity.

**Mr. Johnson:** In, I'm sorry, in what capacity?

**Mr. Kalinsky:** Well, you were asking if I provide services to Mr. Dharod as trustee of Dharod Family Trust, correct?

**Mr. Johnson:** I was asking, let me clarify. Do you provide legal advice to Mr. Dharod with respect to his activities, decisions as trustee of the Dharod Family Trust with respect to the debtors or any of the other entities that we've discussed today?

**Mr. Kalinsky:** No.

**Mr. Johnson:** All right, I have one question for Mr. Dharod. So you were speaking earlier with respect to the $850,000 contribution and I think you stated that that contribution was viewed as being from you because it was being made by Friendly Franchisees. And

I think you stated that you owned that entity. Is that a correct statement of your testimony?

**Mr. Dharod:** Yes .

**Mr. Johnson:** So that entity is not owned by the Dharod Family Trust?

**Mr. Dharod:** Yeah, it is owned by Dharod Family Trust.

**Mr. Johnson:** Is there a distinction between those two?

**Mr. Goldberg:** I'm not sure Mr. Dharod is understanding the question.

**Mr. Dharod:** I don't understand that question. I don't. . .

**Mr. Johnson:** Is there a, is there a difference in the ownership of Friendly Franchise Corporation being with Dharod Family Trust or being by you personally?

**Mr. Friedman:** Hey, counsel, this is Alan Friedman. I represent both Harshad. I do not represent the trust. But the counsel, you're asking him for a legal conclusion, it sounds like. I don't think it's an appropriate question, especially, um, given that this is a 341 for the debtors, not for Friendly Franchise corporation or the trust.

**Mr. Johnson:** I appreciate that. I'm trying to understand Mr. Dharod's statements with respect to a declaration that he signed in these cases that relates to the financial condition of these cases. But I think it's appropriate for me to understand the testimony.

I would appreciate an answer the best of his understanding as to what is the difference between Friendly Franchise corporation being owned by Dharod family trust or being owned by him personally. If he is. . . the difference.

**Mr. Friedman:** Again, I still don't believe it's an appropriate line of questioning for the 341(a) and I ask Ms. Ng to ask everyone to move on at this point.

**Ms. Ng:** Mr. Johnson, do you have any further questions?

Mr. Johnson, do you have any further questions?

**Mr. Johnson:** Are you, is he? I do. That was my further question.

**Ms. Ng:** Mr. Friedman, are you instructing your client not to answer that question?

**Mr. Friedman:** No, not instructing him not to answer. I don't believe it's an appropriate line of questioning for the debtor 341(a) is all in.

**Ms. Ng:** Mr. Johnson, can you provide the docket number of the declaration that

you're referencing on the case? Just so we have a record of what docket number you're referring to.

**Mr. Johnson:** Yeah, I can pull that up.

**Mr. Schumacher:** This is Will Schumacher. It's 142.

**Mr. Johnson:** Thanks, Will.

**Ms. Ng:** Okay, thank you.

If you're seeking clarification from Mr. Harshad regarding declaration, you can state whatever question you have on the record.

I do have the declaration in front of me. Maybe you can specify to him what paragraph are you asking him. And this is a document filed in this case.

**Mr. Johnson:** Yeah, Will, Will, it seems like you have that in front of me and you asked the original question through respect to the statement. I don't want to [multiple speakers].

**Mr. Schumacher:** This is Will Schumacher, it's paragraph seven.

**Ms. Ng:** Okay, and do you need any clarification with respect to that paragraph?

If you so, you can maybe clarify that or rephrase that for the debtor's representative, Mr. Harshad.

**Mr. Johnson:** Yes, yes, my understanding of the prior testimony with respect to paragraph seven of the declaration, was that Mr. Harshad viewed the $850,000 transfer made from Friendly Franchisees Corporation to the debtors as satisfying the statement that he would provide funding to the debtors in the amount of $850,000. Is that a correct characterization of your testimony, Mr. Dharod?

**Mr. Dharod:** What was my testimony? Can I hear it? Earlier, what did I say?

**Mr. Johnson:** I don't think we have a transcriptionist here that can read back the record.

**Ms. Ng:** Yeah, unfortunately, I can't play back the record, but anybody can request a copy of the recording from our office after the 341(a).

**Mr. Johnson:** Yeah, so I'll rephrase the question and make it a little more simple.

In your mind, with respect to a transfer from Friendly Franchisee to the debtors, satisfying an obligation that you provide funding, which is what's stated in the declaration.

Is there a difference between Friendly Franchisee being owned 100% by you directly or being owned by the Dharod Family Trust? And if there is a difference, what is that difference?

**Mr. Dharod:** In my mind, I don't think that it's different because it's owned by the Dharod Family Trust and I own Dharod Family Trust also.

**Mr. Johnson:** What does it mean that you own Dharod Family Trust?

**Mr. Dharod:** I'm a trustee for Dharod Family Trust.

**Mr. Johnson:** And so as a trustee, you own assets of the trust?

**Mr. Dharod:** Yes.

**Mr. Friedman:** Hang on, Harshad. Again, you're asking him to make a legal conclusion about what the, you know, what's in, what the trust owns, what it doesn't own.

I don't think it's appropriate, again. And I would instruct you at this point not to answer these questions, Mr. Dharod.

**Mr. Dharod:** Okay.

**Ms. Ng:** And Mr. Johnson, do you want to put your questions on the record or do you want to move on in light of the fact that Mr. Friedman asked his client not to testify anymore on this issue.

**Mr. Johnson:** Yeah, I mean, I think the record is sufficiently clear at this point.

**Ms. Ng:** Okay, thank you. Do you have any other further questions?

**Mr. Johnson:** No, not on this line of questioning. Thank you.

**Ms. Ng:** Ms. Pike?

**Mr. Schumacher:** This is Will Schumacher on behalf of Northern Trust Company. I did have one follow-up for Mr. Kalinsky, if that's okay.

**Ms. Ng:** Sure, thank you.

**Mr. Schumacher:** Mr. Kalinsky, you mentioned that you are only an employee of Friendly Franchise. Is that correct?

**Mr. Kalinsky:** Yeah.

**Mr. Schumacher:** Are you also the Director of Transactions for Silver Star, a related entity?

**Mr. Kalinsky:** I'm General Counsel for Silver Star. I'm not Director of Transactions.

**Mr. Schumacher:** So that website's just inaccurate?

**Mr. Kalinsky:** I'm not sure which website you're looking at, but my only position with Silver Star Real Estate is as General Counsel.

**Mr. Schumacher:** But you're employed as General Counsel then for Silver Star?

**Mr. Kalinsky:** I serve as general counsel for Silver Star, but I'm an employee of Friendly Franchisees Corporation.

**Mr. Schumacher:** Yeah, look, I'm not sure that's, I assume you're, you're, you know, you're getting employed somewhere, right, to actually be general counsel, but I'll stop there.

**Ms. Ng:** Okay, thank you. Are there any other creditors who would like to ask questions today?

Okay, I don't hear any response, so thank you everyone for coming today. The 341(a) is being concluded. Thank you again for coming.

**[END OF RECORDING]**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4675 MacArthur Court, Suite 1550, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **STATUS REPORT IN SUPPORT OF OBJECTION TO NOTICE OF INSIDER COMPENSATION OF ALEX KALINSKY**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **September 2, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) ______, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **September 2, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Personal Delivery**
Hon. Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| September 2, 2026 | Connie-Marie Santiago | /s/ Connie-Marie Santiago |
| *Date* | *Printed Name* | *Signature* |

1. **<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:

- **Kyra E Andrassy** kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Jessica L Bagdanov** jbagdanov@bg.law, ecf@bg.law
- **Amir Gamliel** amir.gamliel@ashurstperkins.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Craig S Ganz** ganzc@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- **Eric D Goldberg** eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Eric D Goldberg** eric.goldberg@us.dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **David B Golubchik** dbg@lnbyg.com, dbg@lnbyg.com
- **David M Goodrich** dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com
- **Steven T Gubner** sgubner@bg.law, ecf@bg.law
- **Ira David Kharasch** ikharasch@pszjlaw.com
- **Kenneth Misken** Kenneth.M.Misken@usdoj.gov
- **Shane J Moses** smoses@foley.com, llanglois@foley.com;lanii-langlois-4514@ecf.pacerpro.com
- **Stephen M. Mott** smott@raineslaw.com, csantiago@raineslaw.com;bclark@raineslaw.com
- **Michael S Myers** myersm@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- **David M Poitras** dpoitras@bg.law
- **David M Riley** david.riley@us.dlapiper.com, davidzriley@gmail.com;DLAPiper@ecfxmail.com
- **Todd C. Ringstad** becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Joseph M Rothberg** jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
- **Daren M Schlecter** daren@schlecterlaw.com, assistant@schlecterlaw.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Christopher A Ward** cward@lowenstein.com, lsuprum@lowenstein.com